IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-00724-M

| | |
|---|---|
| JEFFERSON GRIFFIN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **MEMORANDUM IN SUPPORT OF** |
| ) | **JUSTICE ALLISON RIGGS'S MOTION** |
| NORTH CAROLINA STATE BOARD OF ) | **TO INTERVENE** |
| ELECTIONS, ) | |
| ) | |
| Respondent. ) | |

Justice Allison Riggs submits this Memorandum in Support of her Motion to Intervene, respectfully requesting to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

Justice Riggs won her 2024 general election contest against Judge Jefferson Griffin. Now, six weeks after more than 5.5 million North Carolinians cast their votes and elected both Democrats and Republicans to statewide offices, Judge Griffin seeks to throw out over 66,000 votes—more than one out of every hundred votes cast in North Carolina—in violation of federal and North Carolina law. As Judge Griffin says in his Petition for Writ of Prohibition, he "anticipates" that if these "ballots are excluded, then he will have won the contest." Pet. at 6, 8, ECF No. 1-4. Necessarily, if Judge Griffin could win the election by virtue of his lawsuit, then this action has the potential to overturn the outcome of the election in which Justice Riggs won.

Justice Riggs has a vital interest in the outcome of this lawsuit but was not named as a party to it. Justice Riggs brings this Motion to Intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure so that she will be allowed to protect her interests in having her election contest evaluated

properly in accordance with federal and North Carolina law and in recognition of the more than 2.7 million voters who elected her to stay on our Supreme Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Justice Riggs currently serves as an Associate Justice (Seat 6) of the North Carolina Supreme Court. She was the Democratic candidate for the Seat 6 Associate Justice position in the November 5, 2024, general election. After the statewide votes were tallied, Justice Riggs prevailed over her opponent, Judge Griffin, by 734 votes.

Judge Griffin requested a statewide machine recount, and then a partial-hand-to-eye recount of the ballots cast. After the recounts were concluded, the results showed that Justice Riggs remained the victor, with vote totals of 2,770,412 for Justice Riggs and 2,769,678 for Judge Griffin. Justice Riggs's margin of victory (734 votes) over Judge Griffin had not changed. *See* Decision & Order at 2, ECF No. 1-5 at 41.

In addition to requesting recounts, Judge Griffin filed more than 300 election protests across the State. *See id*. These protests proceeded on two tracks – certain protests that were more factual in nature proceeded before the individual county boards of elections; other protests that presented broad legal challenges to counting the votes of certain groups of voters were heard at the State Board of Elections. *Id.* at 3-4.

On November 20, 2024, at Judge Griffin's urging, the State Board voted to exercise its statutory authority to take jurisdiction of three broad categories of protests filed by Judge Griffin:

a. Protests as to ballots cast by registered voters whose voter registration database records contained neither the voter's driver's license number nor the last four digits of the voter's Social Security number (60,273 voters);

b. Protests as to ballots cast by overseas citizens who have not resided in North Carolina but whose parents or legal guardians were eligible voters before leaving the United States (266 voters); and

> c. Protests as to ballots cast by military or overseas citizens pursuant to Article 21A of Chapter 163 of the North Carolina General Statutes, when those ballots were not accompanied by a photocopy or a photo ID or North Carolina ID Exception Form (1,409 voters).

*Id.*

The State Board of Elections held a public hearing on December 11, 2024, to address the three categories of protests described above. *Id.* at 1.

On December 13, 2024, the State Board entered its Decision and Order dismissing the three categories of protests it addressed in the hearing. *See id.* at 40.[1]

In its ruling, the State Board addressed numerous issues involving federal law, including (1) the Help America Vote Act, *see* 52 U.S.C. § 21083 ("HAVA"); (2) the National Voter Registration Act, *see* 52 U.S.C. § 20507 ("NVRA"); and (3) the Uniformed and Overseas Citizens Absentee Voting Act, *see* 52 U.S.C. § 20301 ("UOCAVA"). *See, e.g.*, Decision & Order at 14, 18, 19, 21, 25-27, 30, 37-39.

On December 18, 2024, Judge Griffin filed a Petition for Writ of Prohibition in the North Carolina Supreme Court, seeking to stop the State Board from certifying the result in the election for Seat 6 of the North Carolina Supreme Court. *See* No. 320P24 (filed Dec. 18, 2024). The petition seeks declaratory rulings interpreting HAVA, the NVRA, UOVACA, the Voting Rights Act ("VRA"), 52 U.S.C. § 10307, the Civil Rights Act ("CRA"), 52 U.S.C. § 10101, and the Fourteenth

---

[1] Several of Judge Griffin's statements related to his arguments that Board Member Siobhan Millen should have been disqualified from the proceeding involving Judge Griffin's protests, and that the Board's decision dismissing those protests was somehow illegitimate due to Ms. Millen's involvement, *see* Pet. at 8, are false. Ms. Millen's husband (Pressly Millen, a partner in the undersigned counsel's law firm) is not and has not been Justice Riggs's "lead attorney" in this proceeding. He is subject to an ethical screen to ensure he does not participate in any State Board of Elections-related matter, he has not appeared on behalf of or participated in any way in connection with Justice Riggs's legal proceedings related to voting issues in the 2024 Election, and he has expressly declined any share of any profits in this matter. *See* Mem. at 1–2 (State Board Chair concluding that "it would be inappropriate for Member Millen to be removed from consideration of this matter"), ECF No. 1-5 at 120.

Amendment to the United States Constitution, asking the North Carolina Supreme Court to "hold" that "all arguments" under these statutory and constitutional arguments "are rejected." Pet. at 70-71.

Despite having prevailed in the 2024 general election for Seat 6 on the Supreme Court, Justice Riggs was not named as a party to Judge Griffin's Petition for Writ of Prohibition.

On December 19, 2024, the State Board filed a Notice of Removal of Judge Griffin's Petition. ECF No. 1. Justice Riggs now seeks to intervene in this action to protect her interests in preserving her election victory, which could be impaired absent her intervention.

## LEGAL STANDARD

Federal Rule of Civil Procedure 24 provides "two types of intervention [ ]: intervention as a matter of right under Rule 24(a); and permissive intervention under Rule 24(b)." *Florcon Corp. v. Devere Constr. Co., Inc.*, No. 5:06cv114, 2007 WL 2997499, at *1 (W.D.N.C. Oct. 12, 2007). Subsection (a) of Rule 24 states a party has the "unconditional right to intervene" when she "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(1)-(2). Conversely, subsection (b) of Rule 24 provides District Courts the discretionary authority to permit a party to intervene when mandatory intervention is unavailable. Fed. R. Civ. P. 24(b)(1).

## ARGUMENT

This Court should grant Justice Riggs's Motion to Intervene because she has an unconditional right to intervene in this action pursuant to Rule 24(a). Alternatively, assuming arguendo that Justice Riggs does not have a mandatory right to intervention under Rule 24(a), this Court should nevertheless permit Justice Riggs to intervene in this action pursuant to Rule 24(b).

### A. Justice Riggs has a right to intervention pursuant to Rule 24(a).

Rule 24(a) provides a mandatory right to intervene when the following elements are satisfied: (1) the proposed intervenor's request for intervention is timely; (2) the proposed intervenor has "an interest in the litigation" that would "be impaired absent intervention"; and (3) The proposed intervenor's interests would not be protected "by the existing parties." *Scott v. Bond*, 734 F. App'x 188, 191 (4th Cir. 2018); *N.C. Green Party v. N.C. State Bd. of Elections*, 619 F. Supp. 3d 547, 561 (E.D.N.C. 2022) (same); *Ortiz v. N.C. State Bd. of Elections*, No. 5:24-CV-00420-BO, 2024 WL 3764561, at *5 (E.D.N.C. Aug. 12, 2024) (same). Justice Riggs satisfies each of these elements.

#### i. Justice Riggs's Motion to Intervene is timely.

"Timeliness" under Rule 24 is not governed by a precise deadline but is instead "determined by the court in the exercise of its sound discretion" based on "all the circumstances" of the action. *NAACP v. New York*, 413 U.S. 345, 366 (1973); *see also* Gould *v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989) ("This Circuit has stressed the importance of timeliness [regarding Rule 24(a)] and the wide discretion afforded the district courts."). In consideration of this principle, a district court evaluating the timeliness of a motion to intervene must consider the following factors: "(1) how far the case has progressed, (2) the prejudice to other parties caused by any tardiness in filing the motion, and (3) the reason for any tardiness." *Scott*, 734 F. App'x at 191 (citing *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014)). Given the early stage of this litigation, these factors confirm that Judge Riggs's request to intervene is timely.

Specifically, Justice Riggs is seeking to intervene barely 24 hours after Judge Griffin's Petition was filed, and the very same day the State Board of Elections removed this action to federal court. This case has not advanced beyond the pleadings stage and no substantive proceedings have yet to occur. As a result, allowing Justice Riggs to intervene at the very outset of this case will not

cause any prejudicial delay to the other parties. Moreover, as the Petition was filed on December 18, 2024, there is no "tardiness" to Justice Riggs's Motion to Intervene. *See N.C. Green Party*, 619 F. Supp. 3d at 561 ("As for the first element, the intervenors' motion was timely, filed just three days after plaintiffs filed their original complaint."). Accordingly, and in the interest of justice, this Court should utilize its "wide discretion" to conclude that Justice Riggs's request to intervene is sufficiently timely. *Gould*, 883 F.2d at 286; *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970) (holding the "timeliness" requirement of Rule 24(a) has "accommodating flexibility toward both the court and the litigants [in order] to regulate intervention in the interest of justice.").

> ii. **Justice Riggs has a sufficient interest in the subject of this action which cannot be protected absent intervention.**

The "sufficient interest" element of Rule 24(a) analysis is satisfied when the proposed intervenor has "a significantly protectable interest" in the underlying litigation. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991). Such an interest exists when the proposed intervenor "stand[s] to gain or lose by the direct legal operation of the district court's judgment on [the operative] complaint." *Id.*

Here, Justice Riggs seeks intervention to protect her election win. Justice Riggs won the election for Supreme Court Associate Justice. Pet. at 5. Judge Griffin "anticipates" that if the ballots he seeks to invalidate "are excluded, then he will have won the contest." *Id*. at 6, 8. Accordingly, the adjudication of this case absent intervention could directly impair Justice Riggs's ability to protect her interest in preserving the election results of the November 2024 election. *See Ortiz*, 2024 WL 3764561, at *6 (holding that, because "JFA will be effectively shut out of the election" by an adverse ruling, proposed intervenors' "interest would be practically impaired if [they] were denied the ability to intervene."). Justice Riggs thus has sufficient interest in the subject matter of this litigation to require intervention. *See N.C. Green Party*, 619 F. Supp. 3d at 562

(holding proposed intervenors the North Carolina Democratic Party and Democratic Senatorial Campaign Committee had "protectable interests" in action challenging the Board's decision not to place Green Party candidates on election ballot to ensure "a competitive playing field" in a public election) (collecting cases); *Ortiz*, 2024 WL 3764561, at *6 (holding proposed intervenors the Presidential nominee and party chair of the Justice For All Party had a "significant protectable interest" in action challenging the Board's decision not to certify Justice For All as a new political party because "their survival as players in the 2024 general election, are at stake here").

### iii. The State Board does not represent Justice Riggs's interests.

A proposed intervenor sufficiently establishes an action's existing parties will not protect her interests by showing "that representation of h[er] interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). This lenient standard is satisfied upon a showing that the proposed intervenor and the existing parties have "distinct interests, which, although related, are not identical." *United Guar. Residential Ins. Co. of Iowa v. Phila. Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987). The proposed intervenor's "burden of making that showing should be treated as minimal." *Trbovich*, 404 U.S. at 538 n.10.

Here, while Justice Riggs's interests and the Board's interests regarding the November 2024 election may align "[a]t a high level of abstraction," they are not sufficiently "identical" for purposes of Rule 24(a) analysis. *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022). The Supreme Court's decision in *Trbovich* is instructive. In *Trbovich*, the Secretary of Labor sued to set aside an election of officers of the United Mine Workers of America (UMWA). 404 U.S. at 529. The proposed intervenor, a member of UMWA who filed the initial complaint which led to the Secretary of Labor's suit, sought intervention "(1) to urge two additional grounds for setting aside the election,[] (2) to seek certain specific safeguards with respect to any new election that may be ordered,[] and (3) to present evidence and argument in support of the Secretary's challenge to the

election." *Id.* at 529-30. In determining that the proposed intervenor had a mandatory right to intervene under Rule 24(a), the Supreme Court acknowledged the proposed intervenor and the Secretary of Labor had "related" interests regarding the UMWA election. *Id.* at 538. Despite this, the Supreme Court ultimately determined the interests of the proposed intervenor and the Secretary of Labor were not "identical" for purposes of Rule 24(a) analysis because the Secretary of Labor also had a *general* interest in assuring all union elections are properly conducted. *Id.* at 539; *see also Berger*, 597 U.S. at 196 (articulating the Court's determination in *Trbovich* that the interests of the Secretary of Labor and the proposed intervenor were not "identical" because "the union member sought relief against his union, full stop; meanwhile, the Secretary also had to bear in mind broader public-policy implications."). Accordingly, the Supreme Court determined the proposed intervenor's interests were not adequately protected absent intervention because "the Secretary has an obligation to protect the vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Trbovich*, 404 U.S. at 539.

Like the Secretary of Labor in *Trbovich*, the Board has a *general* interest in ensuring the adequacy and fairness of the November 2024 general election. *See* N.C.G.S. § 163-182.12 (articulating the Board's authority "to assure that an election is determined without taint of fraud or corruption and without irregularities that may have changed the result of an election."); *Berger*, 597 U.S. at 198 (articulating that "the Board's overriding concern" is "for stability and certainty" in the laws governing state elections).

By contrast, Justice Riggs has an individual and *specific* interest in preserving her election to North Carolina Supreme Court Associate Justice Seat 6. These interests are not identical and would likely result in different approaches to this litigation in the event of Justice Riggs's intervention. *See Trbovich,* 404 U.S. at 539 (holding intervention under Rule 24(a) was proper because the conflicting

interests of the Secretary of Labor and the proposed intervenor "may not always dictate precisely the same approach to the conduct of the litigation."); *Ortiz*, 2024 WL 3764561, at *6 (holding that although "Plaintiffs and Intervenors seek the same long term and short-term goals . . . only the intervenors are in full control of the record relating to the Board's certification effort. This informational asymmetry prevents Plaintiffs from adequately representing intervenors.").

Accordingly, Justice Riggs has a right to intervention because the Board's broader interests do not provide adequate protection for her narrower and more specific interest of preserving her election win. *See Trbovich,* 404 U.S. at 539; *Berger*, 597 U.S. at 198-99 (holding speaker of State House of Representatives and president pro tempore of the State Senate were entitled to intervene in action against the Board challenging the constitutionality of photo ID law because they would "bring a distinct state interest to bear on this litigation" and, unlike the Board, would "focus on defending the law vigorously on the merits without an eye to crosscutting administrative concerns."); *N.C. Green Party*, 619 F. Supp. 3d at 562 (relying on *Trbovich* to hold North Carolina Democratic Party and Democratic Senatorial Campaign Committee had a right to intervention because they did "not share identical interests" with the Board).

### B. Alternatively, Justice Riggs should be permitted to intervene in this action pursuant to Rule 24(b).

Pursuant to Rule 24(b), a district court has the discretion to permit intervention when the proposed intervenor files a "timely motion" and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A)-(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. 24(b)(3). While the authority to permit intervention under Rule 24(b) is discretionary, "[l]iberal intervention . . . is desirable to dispose of as much of a controversy involving as many apparently concerned person as is compatible with

efficiency and due process." *Ortiz*, 2024 WL 3764561, at *7 (quoting *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986)).

As explained above, Justice Riggs's Motion to Intervene is timely and her intervention would not unduly delay this action or prejudice the named parties. In addition, Justice Riggs's defense of her election win to North Carolina Supreme Court Associate Justice Seat 6 will share "with the main action a common question of law or fact" regarding the validity of the votes counted in the November 2024 election that Judge Griffin seeks to throw out. Accordingly, this Court should alternatively permit Justice Riggs to intervene in this action pursuant to Rule 24(b).[2]

## **CONCLUSION**

For the foregoing reasons, Justice Riggs respectfully requests that her Motion to Intervene be granted pursuant to Rule 24 of the Federal Rules of Civil Procedure.

---

[2] A copy of Justice Riggs's brief before the State Board, which sets forth her positions on Judge Griffin's protests and the various reasons that those protests must fail as a matter of federal and state law, is attached as Exhibit 1. While, as a general rule, a motion to intervene "must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), the Fourth Circuit has recognized that strict adherence to this general rule is unnecessary when the motion to intervene "set[s] forth sufficient facts and allegations to apprise [the parties] of [the proposed intervenor's] claims." *Spring Constr. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980); *Veasey v. Wilkins*, 2015 WL 7776557, at *2 (E.D.N.C. Dec. 2, 2015). An additional "pleading" is unnecessary in this case to understand Justice Riggs's interests in intervention. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) ("Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion."). In any event, it is unclear what specific "pleading" Justice Riggs would file in response to Judge Griffin's Petition.

Respectfully submitted this the 19th day of December, 2024.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Raymond M. Bennett*
Raymond M. Bennett
N.C. State Bar No. 36341
Samuel B. Hartzell
N.C. State Bar No. 49256
555 Fayetteville Street
Suite 1100
Raleigh, NC 27601
(919) 755-2100 (telephone)
*ray.bennett@wbd-us.com*
*sam.hartzell@wbd-us.com*

*Counsel for North Carolina Associate Justice Allison Riggs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically provide notice of this filing to all attorneys of record by electronic means.

This 19th day of December, 2024.

/s/ *Raymond M. Bennett*
Raymond M. Bennett
N.C. State Bar No. 36341
