# EXHIBIT 1

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE STATE BOARD OF ELECTIONS

IN RE PROTESTS OF JEFFERSON
GRIFFIN, ASHLEE ADAMS, FRANK
SOSSAMON, AND STACIE MCGINN

**BRIEF OF ASSOCIATE JUSTICE ALLISON RIGGS
IN OPPOSITION TO ELECTION PROTESTS**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 2

    A. "Incomplete Voter Registration Information" Protests .............................. 4

    B. "FPCA" and "UOCAVA ID" Protests ........................................................ 7

ARGUMENT .......................................................................................................... 8

    I.   The Protests Are An Illegal Attempt to Change the Election Rules
        After the Votes Have Been Cast and Counted .............................................. 9

        A. The Civil Rights Act Bars Most of the Challenges ............................ 9

        B. The National Voter Registration Act and Voting Rights Act
           Bar the Protests .................................................................................. 10

        C. The U.S. and N.C. Constitutions Bar the Protests ........................... 11

    II.  The Protests Are Procedurally Improper Mass Challenges That Fail
        to Provide Voters with Notice and an Opportunity to Be Heard .............. 13

    III. Judge Griffin Is Wrong on the Merits ....................................................... 16

        A. Judge Griffin Has Not Demonstrated Probable Cause That
           Any Voter's Registration Application Was "Incomplete" ............... 16

        B. Judge Griffin Has Not Demonstrated Probable Cause to
           Show That Overseas Voters Are Ineligible ..................................... 21

        C. Military and Overseas Voters Were Not Required to Show
           Photo ID When Casting Their Ballots ............................................. 25

CONCLUSION ..................................................................................................... 30

Justice Allison Riggs files this brief in opposition to the three categories of election protests—those labeled "Incomplete Voter Registration Information," "FPCA," and "UOCAVA ID"—that Judge Jefferson Griffin filed and that are now before the State Board of Elections.

## INTRODUCTION

Justice Riggs won the race for Supreme Court Associate Justice Seat 6. The official canvass results showed that she received 734 more votes than Judge Griffin. The counties then conducted a full machine recount, which once again found that Justice Riggs won by 734 votes.

Having failed to win over the voters, Judge Griffin now pleads his case here. He asks the Board to change the voting rules, decide that tens of thousands of voters failed to satisfy those changed rules, and then throw out their votes for failure to anticipate the new rules. While that request is legally and constitutionally improper, it is wrong on an even more basic level—one familiar in every North Carolina schoolyard. Whether playing a board game, competing in a sport, or running for office, the runner-up cannot snatch victory from the jaws of defeat by asking for a redo under a different set of rules. Yet that is what Judge Griffin is trying to do here.

The Board should deny the protests as an illegal attempt to change the election rules after the votes have been cast and counted. Indeed, Judge Griffin's lead claim— that the State Board made a paperwork error affecting over 60,000 voters—has already been presented to this Board and a federal court. This Board rejected it outright, and the Eastern District of North Carolina determined that the Republican Party cannot obtain any relief on it for the November 5, 2024 election.

1

The Board should also deny the protests as non-compliant with the protest rules. Judge Griffin failed to provide the challenged voters with adequate notice, and his attempt to bring a mass challenge against tens of thousands of voters makes individualized inquiry impossible. These protests create an intolerable risk of disenfranchisement.

Finally, the Board should reject Judge Griffin's arguments as misstating North Carolina law. While it is far too late to bring bulk challenges related to the November 2024 election, none of Judge Griffin's arguments here establish that a single voter should have been deemed ineligible. Judge Griffin's arguments are about *how* the voters cast their ballots; he argues that certain voters should have jumped through additional hoops before registering and voting. But this attempt to elevate form over substance fails on its own terms, because North Carolina law does not erect the obstacles to voting that he claims. In other words, each of his tactics for changing the rules is simply wrong under North Carolina law.

## BACKGROUND

On November 19, 2024, Judge Griffin appears to have filed over three hundred election protests across all one hundred counties. The timing and number of these protests is unclear; Judge Griffin's counsel declined to copy Justice Riggs' counsel when filing them.

According to Judge Griffin, "the vast majority of the protests were emailed by or before [the] 5:00pm [deadline] on 19 November 2024."[1] Later that night, Judge

---

[1] Br. Supp. Election Protests at 25 (State Bd. Elecs. filed Nov. 27, 2024) ("Griffin Br.").

Griffin provided the State Board and counsel for Justice Riggs with 306 protests.[2] But when Judge Griffin purported to serve the protests on the affected voters, he sent them a postcard—addressed to the voter "or current resident"—containing a QR code that mobile phone users can use to visit a North Carolina Republican Party website. That website presented links to at least 315 protests ostensibly filed by Griffin.[3] This collection of 315 protests appears to be both under- and over-inclusive: it omits protests sent to the State Board and Justice Riggs,[4] but it also includes other protests not sent to those recipients.[5] This sloppy approach has left Justice Riggs—and presumably the Board—unclear about exactly which protests were filed and served. Worse, it prevents voters from knowing whether their vote is being challenged here.

Whatever the number of votes at issue, Judge Griffin's protests fit into one of six categories. The first three—labeled "Deceased Voter," "Felon," and "Not Registered"—together cover roughly one thousand voters and are being heard by the county boards of elections. Those county boards are overwhelmingly dismissing Judge Griffin's challenges, referring only a handful of potential issues to this Board for further action. While these hearings are ongoing, it is clear that any potential issues affect far fewer than 734 votes and thus could not have affected the outcome of this election. The county boards are finding that the vast majority of Judge

---

[2] *See* https://dl.ncsbe.gov/?prefix=Legal/Nov%202024%20Protests/Griffin/, archived at https://perma.cc/G9QX-CDZK. There is also one apparent duplicate: "Granville-Griffin-Incomplete Voter Registration Protest."

[3] *See* https://www.nc.gop/griffin_protest, archived at https://web.archive.org/web/20241129185534/https://www.nc.gop/griffin_protest.

[4] *E.g.*, "Alamance - Griffin - Incomplete Protest" and "Anson - Griffin - Not Registered Protest."

[5] *E.g.*, "Ashe - Griffin - Deceased Protest" and "Cabarrus - Griffin -Deceased Protest."

Griffin's protests seek to challenge ballots cast by eligible voters or that the county boards had already removed from the official count before Judge Griffin filed his protests.

The remaining three categories of protests are pending before this Board and are discussed below.

### A. "Incomplete Voter Registration Information" Protests

Most of the voters that Judge Griffin is challenging—apparently over 60,000—are part of the protests labeled "Incomplete Voter Registration Information." These protests reprise previously unsuccessful arguments under the Help America Vote Act of 2002 (HAVA).[6]

In October 2023, non-party Carol Snow filed an administrative HAVA complaint with this Board. She alleged that the voter registration application form then in use "would imply" to applicants with a driver's license or social security number that they need not provide those numbers when registering to vote.[7]

In November 2023, the Board voted unanimously to resolve Ms. Snow's complaint by finding that a HAVA violation "could occur as a result of the voter registration application form" and that "the appropriate remedy is the implementation of staff's recommended changes to the voter registration application form."[8] The Board "did not approve the requested remedy to contact all existing

---

[6] 52 U.S.C. § 20901 *et seq.*
[7] N.C. HAVA Administrative Complaint Form at 2 (State Bd. Elecs. filed Oct. 6, 2023), archived at https://perma.cc/Y4C5-EKUT.
[8] Minutes of Meeting at 4 (State Bd. Elecs. Nov. 28, 2023), archived at https://perma.cc/CCW2-YX7R.

registered voters whose electronic records do not show a driver's license number or last four digits of a Social Security number."[9] The Board explained that "the law's purpose of identifying the registrant upon initial registration is already accomplished because any voter who did not provide a driver's license number or the last four digits of a Social Security number would have had to provide additional documentation to prove their identity before being allowed to vote."[10] "In other words, no one who lacked this information when registering since the enactment of HAVA would have been allowed to vote without proving their identity consistent with HAVA."[11]

Nearly a year later, and less than 90 days before the election, the Republican National Committee and North Carolina Republican Party filed a lawsuit parroting Ms. Snow's allegations.[12] They alleged in their August 23, 2024 complaint "that 225,000 people, including 'possible non-citizens' and other ineligible voters, registered to vote using the previous form," and they claimed that this "Board was required to strike these ineligible voters from the North Carolina voter rolls."[13] The Eastern District of North Carolina dismissed that lawsuit in part,[14] but it permitted the plaintiffs to maintain a claim under the North Carolina Constitution.[15] In allowing that claim to proceed, the district court acknowledged this Board's argument that the

---

[9] Order at 4 (State Bd. Elecs. Dec. 6, 2023), archived at https://perma.cc/5KPY-SQP5.

[10] *Id.* at 4–5.

[11] *Id.* at 5.

[12] *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 120 F.4th 390, 398 (4th Cir. 2024).

[13] *Id.* at 399.

[14] *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, No. 5:24-CV-00547-M, 2024 WL 4523912, at *21 (E.D.N.C. Oct. 17, 2024).

[15] Order at 4, *Republican Nat'l Comm.* (E.D.N.C. Nov. 22, 2024) (ECF No. 73) (attached as Exhibit 1).

5

plaintiffs had waited too long to bring their claim—until just weeks before the November 2024 election. The district court declined to dismiss plaintiffs' claim because their argument could potentially have forward-looking applicability for future elections. The district court noted, however, that plaintiffs "are not going to obtain any relief in connection with the most recent election."[16]

Meanwhile, Judge Griffin filed protests raising this same HAVA argument in connection with the most recent election, seeking the retroactive application that the district court already rejected in the North Carolina Republican Party's lawsuit. Judge Griffin claims to have identified over 60,000 ballots statewide that were cast (a) before election day and (b) by voters whose registration records with the State Board "do not contain data in one or more of the following data fields: (1) Driver's License Number; or (2) Last Four Digits of Social Security Number."[17] Judge Griffin asks the Board to inform those 60,000 voters that they "have a cure period during which the voter can provide the missing information."[18] If those voters "fail to provide a validated drivers license or social security number during the cure period," he asks the Board to throw out their ballots.[19] Judge Griffin thus seeks to force these voters to comply with a new—and superfluous—requirement to have their vote counted.

---

[16] *Id.*

[17] *E.g.*, "Durham-Griffin-Incomplete Voter Registration Information Protest" at Bonifay Aff. ¶ 10.a, archived at https://perma.cc/W84R-HQRG.

[18] *Id.* at 2.

[19] *Id.* at 3.

## B. "FPCA" and "UOCAVA ID" Protests

The final two categories of protests reprise claims already rejected by the North Carolina trial and appellate courts. In the "FPCA" protests, Judge Griffin claims to have identified some number of "likely matches"—apparently more than 250 voters—who submitted Federal Post Card Application forms "in 2024 seeking a North Carolina ballot, and who self-identified as never having lived in the United States."[20] The "UOCAVA ID" protests purport to cover an indefinite number of absentee ballots that were, on "information and belief," cast "by overseas voters who did not provide a copy of photo identification (or an exception form)."[21]

These arguments mirror claims that the North Carolina Republican Party and others brought in October 2024 in an action styled *Kivett v. North Carolina State Board of Elections*. The plaintiffs in that case alleged that this Board "allows and has allowed persons to register to vote under N.C. Gen. Stat. § 163-258.2(1)(e), including persons who were never and are not presently residents of North Carolina."[22] Judge Griffin raises that same issue here in his "FPCA" protests.

The *Kivett* plaintiffs also claimed that the Board had improperly exempted overseas and military voters from "N.C. Gen. Stat. § 163-166.12's HAVA identification provisions."[23] Judge Griffin has now repackaged that claim in his

---

[20] *E.g.*, "Durham-Griffin-Felon Protest" at Bonifay Aff. ¶¶ 15, 19, archived at https://perma.cc/7BEP-TMJB.

[21] *E.g.*, "Durham-Griffin-UOCAVA ID Protest" at 2, archived at https://perma.cc/ZVV5-27FW.

[22] Compl. ¶ 78, *Kivett v. N. Carolina State Bd. of Elections*, No. 24CV031557-910 (N.C. Super Ct. filed Oct. 2, 2024) (attached as Exhibit 2).

[23] *Id.* ¶ 90.

"UOCAVA ID" protests, arguing that all military and overseas voters must satisfy the photo ID requirements that apply to domestic absentee ballots.

Just over two weeks before the election, the Wake County Superior Court heard the *Kivett* plaintiffs' request for a preliminary injunction.[24] The plaintiffs abandoned their photo ID argument by announcing that they were proceeding only on their claim that overseas voters were ineligible to vote in North Carolina.[25] The Superior Court then denied their request for an injunction, finding that the plaintiffs had "failed to make a threshold showing that they are likely to succeed on the merits."[26] The plaintiffs immediately appealed, and the Court of Appeals unanimously denied their Petition for Writ of Supersedeas and Motion for Temporary Stay and Temporary Injunction.[27] Then, four days before the election, the plaintiffs filed in our Supreme Court a Petition for Writ of Supersedeas and for Discretionary Review, but the Supreme Court did not intervene before the election.[28] (Justice Riggs is recused from that Petion, which is still pending.) The election thus proceeded without the changes that Judge Griffin now asks this Board to impose retroactively.

## ARGUMENT

The three categories of protests pending before this Board—those labeled "Incomplete Voter Registration Information," "FPCA," and "UOCAVA ID"—are

---

[24] Order Denying Pls.' Mot. at 1, *Kivett* (N.C. Super. Ct. Oct. 21, 2024) (attached as Exhibit 3).

[25] *Id.* at 2 ¶ 1.

[26] *Id.* at 4 ¶ 2.

[27] Order, *Kivett v. N. Carolina State Bd. of Elections*, No. P24-735 (N.C. Ct. App. Oct. 29, 2024) (attached as Exhibit 4).

[28] *See* Pls.' Pet. Writ Supersedeas & Discret. Rev., *Kivett v. N. Carolina State Bd. of Elections*, No. 281P24 (N.C. filed Nov. 1, 2024) (attached as Exhibit 5).

attempts to revive arguments that already failed to change the rules in the weeks and days leading up to the election. Those claims were meritless and untimely before the election, and they are even more improper now.

## I. The Protests Are An Illegal Attempt to Change the Election Rules After the Votes Have Been Cast and Counted

The Board should deny all Judge Griffin's protests on the ground that the runner-up in an election cannot attempt to change the outcome by striking voters from the voting rolls or adding new voting requirements.

### A. The Civil Rights Act Bars Most of the Challenges

Judge Griffin asks the Board to throw out tens of thousands of votes based on an alleged technicality that sheds no light on whether the voter had a right to vote.

For the bulk of the challenges—those in the "Incomplete Voter Registration Information" protests—Judge Griffin relies on a list of voters whose registration records with the State Board "do not contain data in one or more of the following data fields: (1) Driver's License Number; or (2) Last Four Digits of Social Security Number."[29] This list establishes only what is in Board records. It does not establish that any person lacks either number, that any person declined to provide those numbers, or that any person is not qualified to vote. Yet Judge Griffin asks the State Board to throw out tens of thousands of votes on this basis alone.

That request violates the Civil Rights Act of 1964, which prohibits public officials from "deny[ing] the right of any individual to vote in any election because of

---

[29] *E.g.*, "Durham-Griffin-Incomplete Voter Registration Information Protest" at Bonifay Aff. ¶ 10.a.

an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election."[30]  This "law protecting against racially discriminatory voting practices and 'providing for equal rights'" prohibits the sort of hyper-technical challenges that Judge Griffin brings here.[31]  Allegations that State Board records suffer from a paperwork error is not a basis to throw out votes.

### B. The National Voter Registration Act and Voting Rights Act Bar the Protests

Judge Griffin's protests seek to strike tens of thousands of people from the voter rolls *after* they cast their votes.  That request violates the National Voter Registration Act of 1993 (NVRA) and the Voting Rights Act of 1965 (VRA).[32]  The NVRA "prohibits systematic removal programs '90 days before an election because that is when the risk of dis[en]franchising eligible voters is the greatest.'"[33]  When the election is at least 90 days away, "eligible voters who are incorrectly removed have enough time to rectify any errors."[34]  But when the election is imminent, any

---

[30] 52 U.S.C. § 10101(a)(2)(B).

[31] *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 120 F.4th 390, 406 (4th Cir. 2024).

[32] *Cf.* N.C. Gen. Stat. § 163-82.14(a1) ("List maintenance efforts under this section shall be nondiscriminatory and shall comply with the provisions of the Voting Rights Act of 1965, as amended, and with the provisions of the National Voter Registration Act.").

[33] *Republican Nat'l Comm.*, 120 F.4th at 401 (alteration in original) (quoting *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014)); *see also id.* ("North Carolina has a unified registration system for both state and federal elections, and thus is bound by the provisions of the NVRA for the registrants at issue here.").

[34] *Arcia*, 772 F.3d at 1346.

systematic removal effort risks disenfranchisement because of the limited time remaining for voters to show that they are eligible to vote.

The mass challenges here wouldn't just create that risk; they would all but ensure that eligible voters would be disenfranchised. That disenfranchisement would violate the NVRA's prohibition on systematic removal. And it would also violate the VRA's separate requirement that "[n]o person acting under color of law shall fail or refuse to permit any person to vote who is entitled to vote under any provision of chapters 103 to 107 of [Title 52] or is otherwise qualified to vote, or willfully fail or refuse to tabulate, count, and report such person's vote."[35] Judge Griffin is asking the Board to throw out votes cast by those who were (and still are) qualified to vote. His arguments for changing the registration and voting rules now are, in addition to being meritless, not a permissible basis for throwing out votes already cast.

### C. The U.S. and N.C. Constitutions Bar the Protests

Judge Griffin's attempts to change the rules after the election are also unconstitutional.[36] The retroactive changes he seeks would disenfranchise voters and

---

[35] 52 U.S.C. § 10307(a).

[36] As the Supreme Court of Wisconsin put it when rejecting the Trump campaign's post-election effort to invalidate more than 220,000 ballots: "Our laws allow the challenge flag to be thrown regarding various aspects of election administration. The challenges raised by the Campaign in this case, however, come long after the last play or even the last game; the Campaign is challenging the rulebook adopted before the season began." *Trump v. Biden*, 394 Wis. 2d 629, 647, 951 N.W.2d 568, 577 (2020); *see also id.* at 629 n.12, 951 N.W.2d at 577 n.12 ("Granting the relief requested by the Campaign may even be unconstitutional.").

thus violate the Equal Protection and Due Process Clauses of the U.S. Constitution,[37] as well as their North Carolina analogues.[38]

In state elections, "the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election."[39] Accordingly, a state "may not, by later arbitrary and disparate treatment, value one person's vote over that of another."[40]

Likewise, it "is settled that if the election process reaches the point of 'patent and fundamental unfairness,' the due process clause may be violated."[41] That level of unfairness exists—and "a court will strike down an election on substantive due process grounds"—if "two elements are present: (1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that

---

[37] "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

[38] "Article I, Section 19 of the North Carolina Constitution guarantees both due process rights and equal protection under the law by providing that no person shall be 'deprived of his life, liberty, or property, but by the law of the land' and that '[n]o person shall be denied the equal protection of the laws.'" *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) (alteration in original) (quoting N.C. Const. art. I, § 19).

[39] *Kim v. Bd. of Educ. of Howard Cnty.*, 93 F.4th 733, 741 (4th Cir. 2024) (quoting *Hadley v. Junior Coll. Dist. of Metro. Kansas City, Mo.*, 397 U.S. 50, 56 (1970)); *see also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 36 n.78 (1973) (noting "the protected right, implicit in our constitutional system, to participate in state elections on an equal basis with other qualified voters whenever the State has adopted an elective process for determining who will represent any segment of the State's population").

[40] *Bush v. Gore*, 531 U.S. 98, 104–05 (2000) (per curiam); *see also Lecky v. Virginia State Bd. of Elections*, 285 F. Supp. 3d 908, 920 (E.D. Va. 2018) ("Courts have generally found equal protection violations where a lack of uniform standards and procedures results in arbitrary and disparate treatment of different voters.").

[41] *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978)).

results from a change in the election procedures."[42]  Those elements are satisfied when, for example, "the losing candidate contest[s] the validity of the absentee ballots" cast in accordance with officially sponsored election procedure.[43]  Even if that procedure turns out to have been flawed in hindsight, a "state's retroactive invalidation" of those absentee ballots "violate[s] the voters' rights under the fourteenth amendment."[44]

Judge Griffin's protests seek that sort of retroactive invalidation.  Over a year ago, this Board unanimously declined "to contact all existing registered voters whose electronic records do not show a driver's license number of last four digits of a Social Security number."[45]  The state and federal courts likewise declined to alter the election rules in response to the North Carolina Republican Party's lawsuits.  This Board and those courts were correct not to intervene then, and it would be unconstitutional to do so now.

## II.  The Protests Are Procedurally Improper Mass Challenges That Fail to Provide Voters with Notice and an Opportunity to Be Heard

The General Assembly empowered and directed this Board to "prescribe forms for filing protests."[46]  For over six years, the protest form has begun with a warning that it "shall not be used to challenge the registration of an individual voter."[47]  This Board's Election Protest Procedures Guide thus clarifies that "[a]llegations of

---

[42] *Bennett v. Yoshina*, 140 F.3d 1218, 1226–27 (9th Cir. 1998).
[43] *Lecky*, 285 F. Supp. 3d at 917.
[44] *Griffin*, 570 F.2d at 1070.
[45] Order at 4 (State Bd. Elecs. Dec. 6, 2023), archived at https://perma.cc/5KPY-SQP5.
[46] N.C. Gen. Stat. § 163-182.9(c).
[47] 8 N.C. Admin. Code 2.0111.

unqualified voters participating may not be brought as election protests; these must be brought as voter qualification challenges filed within the time period required by law."[48]

Judge Griffin's protests are untimely challenges—attacks on the eligibility of specific North Carolina voters. By attempting to bring these untimely challenges as part of the protest process, Judge Griffin is making it impossible for the affected voters to receive the individualized attention that these accusations merit.

Consider the obligation to "timely serve all Affected Parties."[49] This service requirement obligates Judge Griffin to "serve copies of all filings on every person with a direct stake in the outcome of this protest" by "personal delivery, transmittal through U.S. Mail or commercial carrier service . . . , or by any other means affirmatively authorized by the Affected Party."[50] If Judge Griffin could proceed with these challenges as protests, he would have to serve over 60,000 people with copies of those protests. But rather than attempt to carry that heavy (and costly) burden, Judge Griffin's counsel claims to have sent a postcard to over 60,000 voters across the state stating that their "vote *may be affected* by one or more protests filed in relation to the 2024 General Election," all without explaining that *he* was the one filing the protests or even telling the addressee *which protests* apply to their vote.[51] Judge Griffin tried to offload that work onto the voter by providing a QR code that links to

---

[48] State Board of Elections, Election Protest Procedures Guide at 9 (June 27, 2022), archived at https://perma.cc/PD92-HWDZ.
    [49] 8 N.C. Admin. Code 2.0111.
    [50] *Id.*
    [51] Affidavit of Kyle Offerman at Attach. 1 (emphasis added) (attached as Exhibit 6).

the North Carolina Republican Party website where some of the protests are available. The postcards gave no indication of service of formal legal documents that might implicate voters' constitutional rights. Nor did the postcards attach copies of the protests or any other legal document.

These mailings are not designed to provide actual notice, much less accomplish service. They are just as likely to be tossed in the trash—or rejected as potential mail fraud—as taken seriously. After all, the Federal Trade Commission and Social Security Administration warn the public that "scammers hide harmful links in QR codes to steal personal information."[52] Judge Griffin cites no law supporting electronic service by QR code. Nor can he. The applicable regulations provide that other forms of service, such as electronic service, are permissible only if "affirmatively authorized by the Affected Party."[53] There is no evidence that any of the voters challenged here consented to service by QR code.

These procedural violations—attempting to bring mass challenges as protests while failing to serve affected parties—underscore the fundamental unfairness of Judge Griffin's approach. He is asking to throw out votes cast by registered voters who followed the rules applicable to them. While these voters cannot be forced to jump through new, additional hoops after the election just to have their votes

---

[52] Federal Trade Commission, "Scammers hide harmful links in QR codes to steal your information" (Dec. 6, 2023), archived at https://perma.cc/UZ4F-9YBE; *see also* Social Security Administration, "Protecting Yourself from QR Code Fraud" (Feb. 23, 2024), archived at https://perma.cc/YY6V-CGZF.
[53] 8 N.C. Admin. Code 2.0111.

counted, Judge Griffin's approach ensures that many of those voters will never even have the opportunity to be heard.

## III.  Judge Griffin Is Wrong on the Merits

Issues of timing and procedure aside, Judge Griffin's legal theories for disenfranchising voters are wrong on the merits.[54]

### A.  Judge Griffin Has Not Demonstrated Probable Cause That Any Voter's Registration Application Was "Incomplete"

In the "Incomplete Voter Registration Information" protests, Judge Griffin alleges that state law requires voters to provide their driver's license number or the last four digits of their social security number when registering to vote.  He claims that "approximately 60,000 people" may have failed to include that information on their voter applications—in some cases years or *decades* ago.[55]  Because of that potential paperwork error, Judge Griffin contends that these 60,000 North Carolinians' votes should not count in this election even if their votes have been repeatedly counted in past elections.  These protests fail to comprehend, or accurately describe, federal and North Carolina law on voter registration.

North Carolina law implements and is governed by HAVA, which provides procedures for voter registration.[56]  County boards are responsible for registering

---

[54] The arguments in this section overlap somewhat with those presented in Terence Everitt's, Woodson Bradley's, Bryan Cohn's and the North Carolina Democratic Party's Responsive Brief in Opposition to Election Protests.

[55] Griffin Br. at 1.

[56] *See, e.g.*, N.C. Gen. §§ 163-82.11(c), 163-82.27.  The 2024 general election was a federal and state election.  Because the county boards used combined ballots for federal and state office in this election, *see* N.C. Gen. Stat. § 163-165.5B, the federal requirements of HAVA applied to the county boards of elections and the 60,000 voters in this election.

16

eligible voters.[57]   A person registers by completing a form that requests various information, including a driver's license or social security number.[58]   Eligible voters who do not have either number are still entitled to register to vote; in that case, the state assigns a "unique identifier number to an applicant."[59]

Once a voter completes a voter registration form, the *burden is on the county,* not on the voter, to identify and address any errors in the registration.  If information on a registration form is missing, that omission does not invalidate the registration.  Instead, the county board must "make a diligent effort to complete for the registration records any information requested on the form that the applicant does not complete."[60]   Despite this mandate, if a county board received a voter registration form without a driver's license or social security number, the county board might have assumed that a voter *did not have those numbers*.[61]   It is ultimately the county board—not the voter—that must determine whether the information provided by the voter (including any lack of driver's license or social security number) meets federal and state requirements.[62]   If it reaches such a determination, the county board proceeds with mail verification and registration.[63]

---

Judge Griffin does not allege whether any of the 60,000 voters cast ballots in any prior federal elections.

[57] N.C. Gen. Stat. § 163-82.1(b).

[58] *See* 52 U.S.C. § 21083(a)(5)(A)(i); N.C. Gen. Stat. § 163-82.4(a)(11).

[59] 52 U.S.C. § 21083(a)(1)(A), (5)(A)(ii); N.C. Gen. Stat. §§ 163-82.4(b), 163-82.10A.

[60] N.C. Gen. Stat. § 163-82.4(a).

[61] *See* 52 U.S.C. § 21083(5)(A)(ii) ("Special rule for applicants without driver's license or social security number"); N.C. Gen. Stat. § 163-82.4(b) ("No Drivers License or Social Security Number Issued").

[62] 52 U.S.C. § 21083(a)(5)(A)(iii); N.C. Gen. Stat. §§ 163-82.7(a), 163-82.11(d).

[63] N.C. Gen. Stat. § 163-82.7(c), (d), (e).

17

Federal and state law do not demand omniscience or perfection from the county boards when reviewing voter registration forms. If a county board erroneously registered voters by mail without collecting their driver's license or social security numbers, there is an easy remedy: voters are required to submit a photo ID or a document establishing their residency before they vote in their first election.[64] This requirement applies to all voters, including not only people who did not provide a driver's license or social security number, but also people who provided those numbers but their numbers did not match public records. N.C. Gen. Stat. § 163-166.12(d) thus explains that a failure to match driver's license or social security number to a voter "shall not prevent that individual from registering to vote and having that individual's vote counted" if they present photo ID or HAVA ID. State law also allows any registered voter in a county to challenge other voters if they can prove that they are ineligible to vote.[65]

The "Incomplete Voter Registration Information" protests all rest on the faulty assumption that the cure provision in N.C. Gen. Stat. § 163-82.4(f) somehow renders the 60,000 voters' registrations invalid, but this argument fails for two reasons.

First, § 163-82.4(f) applies only when the county board has not already registered the voter.[66] Once a county board approves a voter's registration, the state's

_____

[64] 52 U.S.C. § 21083(a)(5)(A), (b)(1)(A), (b)(1)(B), (b)(2)(A) (setting out rules for registration for federal elections if county boards do not comply with HAVA registration procedures); *see* N.C. Gen. Stat. § 163-166.12(a), (b) (implementing HAVA for federal elections such as the 2024 general election).

[65] *See* N.C. Gen. Stat. §§ 163-85(c), 163-87, 163-89(c).

[66] *See* 52 U.S.C. § 21083(a)(5)(A)(iii); N.C. Gen. Stat. §§ 163-82.1(b) and (c), 163-82.7(a), 163-82.11(d).

voter registration system becomes the official record of the registration; under N.C. Gen. Stat § 163-82.10(a), the voter's registration form is merely "backup to the official registration record of the voter." The county boards' approval of the 60,000 voters' registrations is thus legally binding under federal and state law; it cannot be undone except when a voter is *ineligible*.[67]

Second, the protests assert that the 60,000 voters failed to "cure" any alleged defect in their voter registration form, but that claim is not supported by any facts. For example, because of the new photo ID law in effect during the 2024 general election, many of the 60,000 voters likely showed their drivers' licenses to election officials before casting their ballots. In that event, *even under Judge Griffin's (incorrect) legal theory, any purported "deficiency" was timely cured by the 60,000 voters when they voted.*

Judge Griffin also argues that the Board "admitted" that it broke the law.[68] But this argument mischaracterizes the Board's December 2023 Order resolving Ms. Snow's administrative complaint. That Order changed the registration form to require voters to do one of three things: (1) provide a driver's license; (2) provide a social security number; or (3) check a box affirmatively stating they have not been issued either number.[69] This alteration, which clarified for the county boards how

---

[67] 52 U.S.C. §§ 20507(a)(3), (4), 21083(a)(2)(A)(i), (ii); N.C. Gen. Stat. § 163-82.1(c); *see also* N.C. Gen. Stat. §§ 163-82.14(a) (explaining list maintenance is limited to removing "the names of ineligible voters from the official lists of eligible voters"), 163-82.14(a1) (requiring compliance with the NVRA), 163-85(b) & (c) (setting out the grounds for challenging a voter's registration).

[68] Griffin Br. at 6.

[69] *See* N.C. Voter Registration Application (rev. Jan. 2024) (attached as Exhibit 7); *see also* Order at 4 (State Bd. Elecs. Dec. 6, 2023), archived at https://perma.cc/5KPY-SQP5.

they should respond when a voter leaves that section blank, was consistent with the State Board's discretion under state law. But it in no way was an admission, as Judge Griffin claims, that this Board "broke the law."[70] In fact, the North Carolina Republican Party made this same argument to the Fourth Circuit, which went out of its way to note that it was "not convinced that [the Board] conceded to a violation of HAVA."[71]

Regardless, this Board expressly decided that no action was necessary for previously registered voters, such as the 60,000 voters, because they have proven their identity in the manner required by HAVA.[72] Thus, counting the votes cast by the 60,000 voters is authorized—not prohibited—by HAVA.

\*      \*      \*

The "Incomplete Voter Registration Information" protests fail to allege probable cause. Each of the 60,000 voters is eligible to vote: they have executed sworn statements to this effect by registering and voting, and Judge Griffin makes no allegations that impeach those statements. The county boards accepted and processed the 60,000 voters' registration forms long ago, and the 60,000 voters confirmed their identity by presenting either a photo ID or an approved document establishing residency in their first federal election (whether in the 2024 general election or decades ago). Judge Griffin has offered no individualized evidence to establish when the 60,000 voters first voted, or what documentation they presented.

---

[70] Griffin Br. at 5.
[71] *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 120 F.4th 390, 398 (4th Cir. 2024).
[72] Order at 4–5 (State Bd. Elecs. Dec. 6, 2023).

Accordingly, he cannot establish probable cause to believe that *any* voter identified in his "Incomplete Voter Registration Information" protests was ineligible to vote. Judge Griffin's hyper-technical reading of federal and state law does not allege an election irregularity, much less one that could sway the outcome of this race.

### B. Judge Griffin Has Not Demonstrated Probable Cause to Show That Overseas Voters Are Ineligible

Judge Griffin next alleges in the "FPCA" protests that any voter who checked a box indicating that they "never lived in the United States" is automatically ineligible to vote in state elections because, he claims, "[s]omeone who has never lived in the United States has never resided in North Carolina."[73]  Again, Judge Griffin gets the law wrong.  "Living" and "residing" in North Carolina are two different things.

The N.C. Constitution guarantees the right to vote to eligible individuals who resided in North Carolina for 30 days before an election.[74]  The Constitution does not define "resided."  North Carolina courts have thus interpreted "resided" in line with common law principles of domicile.[75]

Domicile does not merely mean where someone "lives." Domicile means a permanent, legal residence as defined by law.[76]  There are three types of domicile: domicile of origin, domicile of choice, and domicile by law.[77]  A person who has never

---

[73] Griffin Br. at 8.
[74] N.C. Const. art. VI, § 2(1).
[75] *Hall v. Wake Cnty. Bd. of Elections*, 280 N.C. 600, 605 (1972), *modified by Lloyd v. Babb*, 296 N.C. 416 (1979); *accord Owens v. Chaplin*, 228 N.C. 705, 708–09 (1948).
[76] *Hall*, 280 N.C. at 605.
[77] *Thayer v. Thayer*, 187 N.C. 573, 122 S.E. 307, 308 (1924).

lived in North Carolina admittedly cannot make North Carolina their domicile *of choice*. But living in North Carolina is unnecessary for our state to be someone's domicile of origin or domicile by law.

### i.   An Overseas Voter May Be a North Carolina Resident Due to Their Domicile of Origin

At birth, a person inherits their parents' domicile as their "domicile of origin."[78] That is true even if the child is born away from home and, by some twist of fate—or, in this case, the military obligations of their overseas parents—never visits her parents' permanent residence. Thus, "it is entirely logical that on occasion, a child's domicile . . . will be in a place where the child has never been."[79]

For example, a child born to a North Carolina servicemember stationed overseas would inherit her parent's North Carolina "residence." That residence would persist until the child (or her parents) established a new permanent residence elsewhere. Since military families often move from temporary assignment to temporary assignment without adopting a new permanent residence, the child may grow up and go off to college without ever establishing a permanent residence to supplant her North Carolina domicile of origin.

Judge Griffin claims that a child's domicile of origin expires when she becomes an adult.[80] That is wrong. Domicile of origin does not expire upon reaching majority—suddenly leaving a U.S. citizen without a domicile anywhere in the United

---

[78] *Id.*

[79] *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

[80] Griffin Br. at 18 n.3.

States. Instead, that domicile of origin continues until the person establishes a new domicile by choice.[81] Like any domicile, it "is presumed to continue until it is shown to have changed," and the burden rests on the party seeking to show a change.[82] Judge Griffin's citation to *Lloyd v. Babb*, which discusses how residency rules apply to college students, shows that young adults retain their domicile of origin while living away from home if they so choose.[83]

Judge Griffin's mass protests fail to grapple with the individual circumstances of any voter. There is no evidence that any of them changed their residency since becoming adults. Without that evidence, particularized for each voter Judge Griffin targets, there is no probable cause to believe that an election irregularity occurred.

### ii. Overseas Voters May Be North Carolina Residents by Law

Along with domicile of origin and domicile of choice, the North Carolina General Assembly can establish domicile by law.[84] The General Assembly has ratified common law principles in defining "residence" in the election code, as reflected in N.C. Gen. Stat. § 163-57(1). A person's residence is their "fixed" "habitation."[85] And consistent with common law principles, if a person permanently relocates within the United States, then she is considered to have lost her prior residence in accordance with N.C. Gen. Stat. §§ 163-57(4) and (5).

---

[81] *Hall*, 280 N.C. at 605.
[82] *Reynolds v. Lloyd Cotton Mills*, 177 N.C. 412, 419 (1919).
[83] Griffin Br. at 17–18 (citing *Lloyd v. Babb,* 296 N.C. 416, 444, 251 S.E.2d 843, 861 (1979)).
[84] *Thayer*, S.E. at 308.
[85] N.C. Gen. Stat. § 163-57(1).

But this rule does not apply to voters who permanently move overseas. Instead, the General Assembly decided in 2011, without a single nay vote, to expand voting rights to voters living abroad by adopting the Uniform Military and Overseas Voters Act ("UMOVA"). For overseas voters who do not satisfy North Carolina's general residency requirement, state law "assign[s]" overseas voters a North Carolina residence: either "the last place of residence of the voter in" North Carolina or, for the children of former North Carolina residents, "the address of the last place of residence in [North Carolina] of the parent or legal guardian of the voter."[86] This law ensures that North Carolina citizens retain the right to vote even if living abroad. In expanding voting rights in state elections this way, the General Assembly mirrored action taken by Congress for federal elections.[87]

Judge Griffin argues that the "State residency requirement" supplemented by UMOVA means something other than what it is.[88] But UMOVA expanded suffrage to the very people Judge Griffin now tries to disenfranchise: overseas voters who do not satisfy the residency requirement in N.C. Gen. Stat. § 163-57(1) but are otherwise eligible to vote. Those voters are "assigned" a residential address in North Carolina by law and may vote.[89]

Retreating, Judge Griffin asks this Board "to refuse to enforce" UMOVA, suggesting that it is unconstitutional.[90] But legislation is presumptively

---

[86] *Id.* § 163-258.5.
[87] *See* 52 U.S.C. § 20302(a).
[88] Griffin Br. at 15.
[89] N.C. Gen. Stat. § 163-258.5.
[90] Griffin Br. at 16.

constitutional; constitutional limitations upon the General Assembly "must be explicit"; and a violation of that limitation "must be proved beyond a reasonable doubt."[91] Here, nothing in the Constitution prohibits the General Assembly from assigning North Carolina residences to certain U.S. citizens abroad The constitutional provision at issue incorporates common law rules on residency, to include the legislative power to declare certain U.S. citizens living abroad to be domiciled in North Carolina by law for elections purposes. And, as discussed above (in Part I.C), Judge Griffin cannot invalidate a thirteen-year-old statute and retroactively disenfranchise voters through this protest process.[92]

<center>*     *     *</center>

The overseas voters targeted by Judge Griffin are North Carolina residents via their domicile of origin or domicile by law. Judge Griffin has not alleged any facts about any of these voters that would support a probable cause finding to the contrary. Thus, no irregularity occurred in counting these voters' ballots, and the "FPCA" protests should be dismissed.

### C. Military and Overseas Voters Were Not Required to Show Photo ID When Casting Their Ballots

Finally, Judge Griffin challenges thousands of military and overseas voters in a shameless attempt to disenfranchise military servicemembers, their families, and other North Carolinians overseas by changing settled law after the fact.

---

[91] *Harper v. Hall*, 384 N.C. 292, 323, 886 S.E.2d 393, 414 (2023).

[92] *Cf.* N.C. Gen. Stat. § 1-267.1(c) ("No order or judgment shall be entered [that] . . . finds that an act of the General Assembly is facially invalid on the basis that the act violates the North Carolina Constitution or federal law, except by a three-judge panel of the Superior Court of Wake County.").

<center>25</center>

In the "UOCAVA ID" protests, Judge Griffin alleges that overseas voters had to submit photo IDs with their ballots.[93]  But as he admits, this position contradicts the Board's rule.[94]  That rule states that the military and overseas voters he targets were *not* required to provide photocopies of their photo IDs.

Judge Griffin does not contest the plain meaning of the regulation.  He argues instead—in a post-election protest—that this Board's rule "is invalid" because it conflicts with his interpretation of state statutes.[95]  He claims that the photo ID requirement for absentee ballots (which is contained in and governed by Article 20 of the elections code[96]) must also apply to military-overseas ballots (which are governed by Article 21A).  This argument cherry-picks irrelevant statutes and ignores the overall statutory scheme for military-overseas ballots.

Federal law (the Uniformed and Overseas Citizens Absentee Voting Act or "UOCAVA") requires states to allow active-duty military and overseas voters to register, request a ballot, and vote by mail in federal elections using prescribed federal forms.[97]  In 2011, the General Assembly decided to allow military and overseas voters to vote in state elections using *the same method*.  Voters covered by UMOVA are entitled to cast a "military-overseas ballot."[98]

The General Assembly delegated to this Board the power to implement UMOVA, including by adopting "standardized absentee-voting materials, including

---

[93] Griffin Br. at 18–22.
[94] *Id.* at 21 (citing 8 N.C. Admin. Code 17.0109(d)).
[95] *Id.*
[96] N.C. Gen. Stat. § 163-230.1.
[97] 52 U.S.C. § 20302(a).
[98] N.C. Gen. Stat. § 163-258.2(1), (3), (4), (7).

privacy and transmission envelopes and their electronic equivalents, authentication materials, and voting instructions, to be used with the military-overseas ballot."[99] This Board utilized this authority in deciding that UMOVA voters need not provide photo IDs.

That rule is not "invalid." Indeed, as written, UMOVA *prohibits* application of the photo ID requirement. The only authentication material required under UMOVA is "a declaration for use by a covered voter to swear or affirm specific representations pertaining to the voter's identity, eligibility to vote, status as a covered voter, and timely and proper completion of an overseas-military ballot."[100] This requirement is exclusive: "An authentication, other than the declaration specified in G.S. 163-258.13 or the declaration on the federal postcard application and federal write-in absentee ballot, *is not required* for execution of a document under this Article."[101]

Judge Griffin argues that the photo ID requirements contained in Article 20 (governing domestic absentee voters) necessarily extend to UMOVA voters, who are governed by Article 21A. This argument takes three forms, none of which is persuasive.

First, Judge Griffin argues that if the legislature intended to exempt military-overseas voters from the photo ID requirement, it would have said so explicitly. This argument fails because UMOVA sets out the exclusive requirements for military-overseas voters to authenticate their ballots. Additionally, this argument incorrectly

---

[99] *Id.* § 163-258.4(d).
[100] *Id.* §§ 163-258.4(e), 163-258.13.
[101] *Id.* § 163-258.17(b) (emphasis added).

27

suggests that photo ID laws were already on the books when UMOVA was passed. The opposite is true. UMOVA was passed in 2011 and became effective in January 2012. The first photo ID law was signed in August 2013. If the legislature had intended to impose a photo ID requirement on military and overseas voters under Article 21A, it would have amended UMOVA just as it amended the absentee ballot statute under Article 20.

Second, Judge Griffin cites a hodgepodge of other statutes, none of which can be fairly read to supplant UMOVA. He argues that UMOVA does not mention a "sealed container return envelope," and speculates that the absence of this term requires the State Board to look outside Article 21A to Article 20 for guidance.[102] Yet the reason UMOVA does not mention a "sealed container return envelope" is that, under UMOVA, the State Board prescribes "privacy and transmission envelopes and their electronic equivalents . . . to be used with the military-overseas ballot of a voter authorized to vote in any jurisdiction in this State."[103]

Third, Judge Griffin argues that absentee ballots and military-overseas ballots are "generally treated alike."[104] But he ignores several material differences. For example, covered voters can register and request an absentee ballot simultaneously and electronically.[105] Military-overseas ballots can be submitted electronically.[106] They include unique declarations.[107] And they will be counted as long as they are

---

[102] Griffin Br. at 19–20.
[103] N.C. Gen. Stat. § 163-258.4(d).
[104] Griffin Br. at 20.
[105] N.C. Gen. §§ 163-258.6, 163-258.7.
[106] *Id.* § 258.4(d).
[107] *Id.* § 258.4(e)

28

received before the county canvass.[108]  Covered voters *may* submit "an absentee ballot under Article 20 of this Chapter."[109]   But a military-overseas ballot submitted in accordance with Article 21A is distinguished by the statute.[110]   Judge Griffin's claimed similarities, in contrast, are sparse and do not establish that a military-overseas ballot is subject to the same requirements of a domestic absentee ballot.

In one last try to save his protest, Judge Griffin attacks the constitutionality of UMOVA in its entirety, arguing that making voting easier for military and overseas voters violates our state constitution's equal protection clause.[111]   Again, Judge Griffin cannot level facial constitutional challenges as part of a post-election protest.   But regardless, UMOVA survives constitutional scrutiny.   Submitting a ballot abroad is significantly more burdensome for those who serve our country or who live abroad.   Reducing barriers to voting otherwise applicable to North Carolinians, such as transmission methods (e.g., electronic), or a reduction of unnecessary authentication methods (e.g., requiring declaration under penalty of perjury only), is a fair, reasonable, and rational way to offset those burdens.

In any event, even if photo ID were required for military-overseas ballots, UMOVA explicitly provides that "[i]f a voter's mistake or omission in the completion of a document under this Article does not prevent determining whether a covered voter is eligible to vote, the mistake or omission does not invalidate the document."[112]

---

[108] *Id.* § 258.12(a).
[109] *Id.* § 258.7(f).
[110] *Id.*
[111] *See* Griffin Br. at 21 (citing N.C. Const. art. I, § 19).
[112] N.C. Gen. Stat. § 163-258.17(a).

The omission of photo ID by military-overseas voters does not prevent the State Board from determining their eligibility. As discussed above, all military-overseas ballots include a declaration swearing to each voters' eligibility, including their identity.[113] Judge Griffin offers no evidence that any of these declarations are deficient. Thus, the lack of a photo ID with military-overseas voters' ballots, is not sufficient by itself, to invalidate these ballots or to establish probable cause to support the protests.

Judge Griffin has failed to show that military or overseas voters should have submitted photo IDs. His "UOCAVA ID" protests should therefore be dismissed.

## CONCLUSION

The Board should dismiss Judge Griffin's protests.

Dated: December 6, 2024

Respectfully submitted,

**Womble Bond Dickinson (US) LLP**

Raymond M. Bennett
N.C. State Bar No. 36341
Samuel B. Hartzell
N.C. State Bar No. 49256
555 Fayetteville Street
Suite 1100
Raleigh, NC 27601
(919) 755-2100
ray.bennett@wbd-us.com
sam.hartzell@wbd-us.com

*Counsel for North Carolina Associate Justice Allison Riggs*

---

[113] *Id.* §§ 163-258.4(e), 163-258.13.

30

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that a copy of this Brief of Associate Justice Allison Riggs in Opposition to Election Protests was filed and served by email on December 6, 2024, addressed as follows:

Karen Brinson Bell
karen.bell@ncsbe.gov

*State Board Executive Director*

Paul Cox
paul.cox@ncsbe.gov

*State Board General Counsel*

Craig Schauer
cschauer@dowlingfirm.com

Mike Dowling
mike@dowlingfirm.com

Troy Shelton
tshelton@dowlingfirm.com

Philip R. Thomas
pthomas@chalmersadams.com

*Counsel for Judge Jefferson Griffin*

Samuel B. Hartzell

STATE OF NORTH CAROLINA
WAKE COUNTY

BEFORE THE STATE BOARD OF ELECTIONS

| IN RE PROTESTS OF JEFFERSON GRIFFIN, ASHLEE ADAMS, FRANK SOSSAMON, AND STACIE MCGINN | **APPENDIX** |
|---|---|

Justice Allison Riggs respectfully submits the following appendix to her Brief in Opposition to the election protests filed by Judge Jefferson Griffin now before the State Board.

| Exhibit | Document | Page No. |
|---|---|---|
| 1 | 11/20/2024 Order, Republican Nat'l Comm. V. North Carolina State Board of Elections, et al., Case No. 5:24-CV-00547-M, ECF 073 | App. 001 |
| 2 | 10/2/2024 *Telia Kivett et al. v. North Carolina State Board of Elections et al.* Complaint | App. 005 |
| 3 | 10/21/2024 *Telia Kivett et al. v. North Carolina State Board of Elections et al.* Order Denying Plaintiffs' Motion for Preliminary Injunction | App. 035 |
| 4 | 10/29/2024 *Telia Kivett et al. v. North Carolina State Board of Elections et al.* Order for Petition for Writ of Supersedeas and Motion to Stay Injunction | App. 039 |
| 5 | 11/1/2024 -- Petition for Writ of Supersedes and for Discretionary Review | App. 041 |
| 6 | 11/22/2024 Offerman Affidavit re Service and Filing | App. 138 |
| 7 | 01/2024 Voter Registration Form | App. 143 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:24-CV-00547-M

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE and NORTH CAROLINA REPUBLICAN PARTY,<br><br>      Plaintiffs,<br><br>      v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,<br><br>      Defendants,<br><br>      and<br><br>DEMOCRATIC NATIONAL COMMITTEE,<br><br>      Intervenor Defendant. | ORDER |

This matter comes back to the court after the United States Court of Appeals for the Fourth Circuit reversed this court's order remanding Count 2 of Plaintiffs' Complaint to state court and remanded the matter (to this court). *Republican National Committee and North Carolina Republican Party v. North Carolina State Board of Elections et al.*, No. 24-2044 (4th Cir. Oct. 29, 2024), ECF. No. 66 at 4-5; *see also* DE 72 (mandate taking effect Nov. 21, 2024). The Fourth Circuit concluded that this court possesses federal question jurisdiction over Count 2, as well as removal jurisdiction under 28 U.S.C. § 1443(2). *Id.* at 5.

The court accepts subject matter jurisdiction, as ordered. Defendants' motion to dismiss [DE 30] remains partially pending as to Count 2, Plaintiffs' state constitutional claim. The

1

Democratic National Committee ("DNC") filed a memorandum in support of Defendants' motion, DE 48, and Plaintiffs opposed the motion, DE 50. The court has previously considered these filings and held a hearing on them. DE 57. With that background, the court finds that Defendants' motion to dismiss Count 2 should be denied, for the following reasons:

- Defendants contend that Plaintiffs' "threadbare allegations" of vote dilution "cannot survive a motion to dismiss." DE 31 at 22. The court disagrees. Plaintiffs have alleged (1) that Defendants improperly permitted 225,000 individuals to register to vote in North Carolina, (2) that some subset of those 225,000 individuals are ineligible to vote, and (3) that ineligible voters will vote in future elections and dilute the votes of eligible voters. DE 1-3 at 3-4, 11, 15-17, 20. These allegations based on Plaintiffs' "information and belief" are sufficient at this stage because "the necessary information" to substantiate them "lies within defendants' control." *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021); *accord Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) ("when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint"); *cf. Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (holding that plaintiff may make allegations upon information and belief "where the belief is based on factual information that makes the inference of culpability plausible");

- Defendants assert that Plaintiffs' equal protection claim "is [] foreclosed by a wealth of case law," in that "[f]ederal courts have routinely rejected [federal] equal-protection claims . . . grounded in vote dilution." DE 31 at 24. This assertion is unpersuasive because Plaintiffs' constitutional claim arises under North Carolina's Constitution. *See Cooper v.*

2

*State of Cal.*, 386 U.S. 58, 62 (1967) (acknowledging "State's power to impose higher standards [for analogous state constitutional provisions] than [those] required by the Federal Constitution if it chooses to do so"); *see also Deminski on behalf of C.E.D. v. State Bd. of Educ.*, 377 N.C. 406, 413, 858 S.E.2d 788, 793 (2021) (plaintiff pleads a colorable state constitutional claim where theory represents "a reasonable and logical extension or modification of the current law");

- The DNC argues that Plaintiffs' equal protection claim is not cognizable, citing *Harper v. Hall*, 384 N.C. 292, 886 S.E.2d 393 (2023). DE 48 at 19. But that case merely held that partisan gerrymandering does not violate the state Equal Protection Clause because it does not implicate "the one-person, one-vote standard." *Harper v. Hall*, 384 N.C. 292, 367, 886 S.E.2d 393, 441 (2023). *Harper* is inapposite in the context of a vote dilution claim premised on a theory of dilution by ineligible voters, not eligible voters of another political party;

- The DNC contends that "the NVRA precludes states from removing people from the voter rolls as plaintiffs request." DE 48 at 20. This contention may be correct, based on a recent opinion from the Fourth Circuit. *See Virginia Coalition for Immigrant Rights v. Beals*, Case No. 24-2071, at 3-4 (4th Cir. Oct. 27, 2024), ECF No. 22; *but see Beals v. VA Coal. for Immigrant Rts.*, No. 24A407, 2024 WL 4608863, at *1 (U.S. Oct. 30, 2024) (staying 4th Circuit's order pending appeal and petition for certiorari). But that would be a reason to deny Plaintiffs a particular form of relief, not to dismiss their constitutional claim outright. *See* Fed. R. Civ. P. 8(a)(3) (pleading must contain "a demand for the relief sought, which may include relief in the alternative or different types of relief");

3

- The DNC asserts that *Purcell v. Gonzalez*, 549 U.S. 1 (2006) prohibits granting Plaintiffs relief in connection with the most recent election. DE 48 at 28. Again, this assertion has merit, but not in the context of a motion to dismiss, particularly where Plaintiffs also seek prospective relief unconnected with the most recent election. *See* DE 1-3 at 21 (seeking "court-approved plan . . . to ensure future compliance with state law and HAVA"); and

- Both Defendants and the DNC argue that the doctrine of laches bars Plaintiffs' claim. DE 3 at 12-15; DE 48 at 26-28. But for that affirmative defense to apply, the plaintiff's delay in bringing suit "must have worked to the disadvantage, injury or prejudice of the person seeking to invoke" the defense. *Stratton v. Royal Bank of Canada*, 211 N.C. App. 78, 89, 712 S.E.2d 221, 231 (2011). Plaintiffs in this action are not going to obtain any relief in connection with the most recent election. But as the court noted at the October 17 hearing, there will be future elections. The alleged improprieties Plaintiffs have raised in their Complaint will persist. To the extent Plaintiffs delayed in bringing this suit, that delay will not operate to the prejudice of Defendants or the DNC because the outcome of this suit will have no bearing on the most recent election.

Defendants' motion to dismiss [DE 30] is DENIED IN PART as to Count 2. That claim shall proceed, and this matter is referred to Magistrate Judge Robert B. Jones, Jr. for entry of a scheduling order.

SO ORDERED this 22 day of November, 2024.

Richard E Myers II

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

4

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Case No.: 24 CV _____

---

TELIA KIVETT; WANDA NELSON FOWLER; the REPUBLICAN NATIONAL COMMITTEE; and the NORTH CAROLINA REPUBLICAN PARTY,

*Plaintiffs*

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections; ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; JEFF CARMON, in his official capacity as Secretary of the North Carolina State Board of Elections; STACY EGGERS IV, KEVIN N. LEWIS, and SIOBHAN O'DUFFY MILLEN, in their official capacities as members of the North Carolina State Board of Elections,

*Defendants*.

**COMPLAINT**

---

NOW COMES Plaintiffs Telia Kivett, Wanda Nelson Fowler (collectively "Individual

Plaintiffs"), the Republican National Committee ("RNC"), and the North Carolina Republican

Party ("NCGOP") (collectively, " Plaintiffs"), by and through undersigned counsel and pursuant

to Rules 7 and 57 of the North Carolina Rules of Civil Procedure and N.C. Gen. Stat. § 1-253 *et*

*seq.*, files this Complaint for Declaratory Judgment against Defendants the North Carolina State

Board of Elections ("NCSBE") and its members, Alan Hirsch, Jeff Carmon, Siobhan Millen, Stacy

Eggers IV, and Kevin Lewis in their respective official capacities, and the NCSBE's Executive

1

Director Karen Brinson Bell (collectively "Defendants"). Plaintiffs seek a declaratory judgment and preliminary and permanent injunctive relief confirming that certain provisions of North Carolina law, specifically, Article 21a of the North Carolina General Statutes, violate Article VI § 2 of the North Carolina Constitution, and remedying the same. In support, Plaintiffs allege as follows:

## INTRODUCTION

1.      The North Carolina Constitution limits voter qualifications to North Carolina residents and only North Carolina residents.

2.      As set forth in Article VI § 2 of the state Constitution, "Any person who has resided in the State of North Carolina for one year and in the precinct, ward, or other election district for 30 days next preceding an election, and possesses the other qualifications set out in this Article, shall be entitled to vote at any election held in this State."

3.      This fundamental voter qualification requirement has been repeatedly reaffirmed by the North Carolina Supreme Court. *See, e.g., Hall v. Wake Cnty. Bd. of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972) ("Since 1868 our Constitution has required a voter to be a person who has 'resided' in the State.").

4.      Congress enacted the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301, *et. seq.* ("UOCAVA") to ensure our military servicemembers and certain other overseas citizens may register and vote in federal elections in a state they are temporarily absent from or previously resided. UOCAVA has the effect of partially preempting state residency requirements for *some*, but not all, overseas voters.

5.      Despite the state Constitution's unambiguous requirement of residency as a prequalification to vote, North Carolina's Uniform Military and Overseas Voters Act ("UMOVA")

2

purports to extend voter qualifications to certain individuals not covered by UOCAVA and who do not and have never resided in North Carolina. *See* N.C. Gen. Stat. § 163-258.2(1)(e). Specifically, UMOVA defines "covered voter"—a person entitled to all of the voter eligibility, registration, and absentee ballot privileges afforded by the law—to include certain persons overseas who never actually resided in North Carolina. *Id.* Indeed, these overseas "covered voters" may never have resided *anywhere* in the United States, let alone North Carolina. This is a group of voters that fall outside the scope of UOCAVA.

6.      As a result, under UMOVA, certain people not covered by UOCAVA who have never resided in North Carolina (or perhaps anywhere else in this country) are registering to vote and voting in all its elections, including local, state, and federal contests, statewide ballot measures, and any other election where absentee ballots are employed. *See* N.C. Gen. Stat. § 163-258.3.

7.      This is not only a violation of the North Carolina Constitution, but, as applied to Plaintiffs, it dilutes their votes and harms their organizational missions.

8.      Further, North Carolina election officials have unlawfully treated UMOVA voters as if they were UOCAVA voters, including by exempting them from voter identification requirements found in N.C. Gen. Stat. § 163-166.12 that apply to first-time voters. Only UOCAVA voters—not UMOVA voters—are entitled to exemption from those requirements. Accordingly, North Carolina election officials have registered to vote people who have never resided in North Carolina and have allowed them to vote in North Carolina's state and federal election without taking the required steps to verify their identities. This not only exposes our elections to substantial risk of fraud and other misconduct, but it is contrary to state law.

## PARTIES

9.      Telia Kivett is a resident of Salemburg, North Carolina. She is a registered Republican voter in Sampson County. Ms. Kivett has voted in previous local, state, and federal

3

elections and she intends to vote in future elections. As a concerned citizen and a registered voter in North Carolina, Ms. Kivett has an interest in protecting her vote from being diluted by votes cast by individuals who were unlawfully registered as a result of Defendants' unconstitutional actions.

10. Wanda Nelson Fowler is a resident of Cape Carteret, North Carolina. She is a registered Republican voter in Carteret County. Ms. Fowler has voted in previous local, state, and federal elections and she intends to vote in future elections. As a concerned citizen and a registered voter in North Carolina, Ms. Fowler has an interest in protecting her vote from being diluted by votes cast by individuals who were unlawfully registered as a result of Defendants' unconstitutional actions.

11. The Republican National Committee is the national committee for the Republican Party; representing all registered Republicans across both the state and nation, as well as the values they stand for. The RNC serves as the collective voice for the Republican Party's platform. It is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14) and a political party as defined by N.C. Gen. Stat. § 163-96. The RNC's principal place of business is 310 First Street SE, Washington, D.C.

12. The RNC's core mission involves organizing lawful voters and encouraging them to support Republican candidates at all levels of government, including throughout North Carolina. The RNC expends significant time and resources fighting for election security and voting integrity across the nation, including in North Carolina. These efforts are intended to ensure that the votes and voices of its members, its candidates, and the party are not silenced or diluted in any way. Recent rises in non-citizens and other unqualified persons voting or seeking to vote in elections

4

has forced the RNC to divert its efforts and funds in order to hold elections officials accountable to what both federal and state laws require.

13.    The North Carolina Republican Party is a state committee of the Republican Party, as defined by 52 U.S.C. § 30101(15), and a political party as defined by N.C. Gen. Stat. § 163-96. The NCGOP represents the interests of registered Republicans across North Carolina. Its headquarters and principal place of business is 1506 Hillsborough St, Raleigh, NC 27605. The NCGOP represents the interests of registered Republican voters, residing across all one hundred counties in the state. The NCGOP also advocates for the interests of tens of thousands of non-affiliated voters who align with various aspects of the Republican Party platform.

14.    The NCGOP's mission and platform largely mirror that of the RNC, including an emphasis on election integrity and security. The NCGOP's core mission includes counseling interested voters and volunteers on election participation including hosting candidate and voter registration events, staffing voting protection hotlines, investigating reports of voter fraud and disenfranchisement, and providing election day volunteers in all one hundred counties across North Carolina. The NCGOP spends tremendous time and effort advocating for its members throughout all levels of state government, working to make sure they are heard both at the ballot box and beyond.

15.    The RNC and NCGOP have organizational standing to bring this action. Defendants' as-applied violations of the State Constitution directly impact the RNC and NCGOP's core organizational missions of election security and providing services aimed at promoting Republican voter engagement and electing Republican candidates for office. Defendants' violations of the State Constitution have forced the RNC and NCGOP to divert significantly more of their resources into combatting election illegalities in North Carolina. The RNC and NCGOP's

5

organizational and voter outreach efforts have been and will continue to be significantly stymied due to Defendants' ongoing failures. As a result, the RNC and NCGOP will have no choice but to expend increased amounts of time and money, beyond what they would have already spent, in order to combat this unwarranted interference with their central activities. For example, because of Defendants' violations of the State Constitution, the RNC and NCGOP will need to commit added time and resources into monitoring North Carolina's voter rolls, voter activity, and responding to instances of potential illegal voting in upcoming elections—tasks required of Defendants by law.

16.     Additionally, the NCGOP has associational standing because its members have standing in their own right to challenge Defendants' actions here. The NCGOP represents millions of registered Republican voters across the state of North Carolina, including at least one registered Republican voter in every one of the state's one hundred counties, which is a matter of public record. The NCGOP's members are directly harmed by non-resident voters registering and voting in the state's elections. These members' votes are undoubtedly diluted as a result ineligible voters participating in elections due to Defendants' actions. Additionally, these members' rights to participate in a fair and secure electoral process, free from illegal voting, will be significantly hindered. Ensuring such freedom and security in all elections throughout North Carolina is germane to the NCGOP's organizational mission.

17.     Plaintiffs are further harmed in their ability to effectively compete in elections across the state as Defendants' refusal to ensure that only qualified voters may register and vote in the state's elections risks opening the door to potentially illegal voting and inaccurate election results.

6

18.     The North Carolina State Board of Elections is the state agency tasked with "general supervision over primaries and elections of the state." *See* N.C. Gen. Stat. § 163-22. NCSBE is tasked with ensuring that elections in North Carolina comply with all relevant state and federal laws and, in NCSBE's own words, "ensur[ing] that elections are conducted lawfully and fairly." The NCSBE is the agency responsible for implementing UMOVA. *See* N.C. Gen. Stat. § 163-258.4.

19.     Karen Brinson Bell is the Executive Director of NCSBE and the state's "Chief Election Official" as defined by N.C. Gen. Stat. § 163-82.2. In this capacity, Ms. Brinson Bell oversees elections in all one hundred counties in North Carolina and administers all elections occurring therein. *See* N.C. Gen. Stat. § 163-27(d). Ms. Brinson Bell is sued in her official capacity.

20.     Alan Hirsch is the Chair of NCSBE. He resides in Chapel Hill, North Carolina. Mr. Hirsch is sued in his official capacity.

21.     Jeff Carmon is the Secretary of NCSBE. He resides in Snow Hill, North Carolina. Mr. Carmon is sued in his official capacity.

22.     Stacy Eggers, IV is a member of NCSBE. He resides in Boone, North Carolina. Mr. Eggers, IV is sued in his official capacity.

23.     Kevin N. Lewis is a member of NCSBE. He resides in Rocky Mount, North Carolina. Mr. Lewis is sued in his official capacity.

24.     Siobhan O'Duffy Millen is a member of NCSBE. She resides in Raleigh, North Carolina. Ms. Millen is sued in her official capacity.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over the claims asserted herein pursuant to N.C. Gen. Stat. § 1-253, *et seq.* and N.C. Gen. Stat. 7A-245.

7

26.     This Court has personal jurisdiction over NCSBE as it is a state agency in North Carolina.

27.     This Court has personal jurisdiction over Executive Director Karen Brinson Bell, Chair Alan Hirsch, Secretary Jeff Carmon, Stacy Eggers IV, Kevin Lewis, and Siobhan O'Duffy Millen as each is sued in their official capacities as appointed officials in North Carolina. Each is a citizen of North Carolina and each resides in the state.

28.     Venue is proper in this court pursuant to N.C. Gen. Stat. § 163-22(l) and N.C. Gen. Stat. § 1-82.

## FACTUAL ALLEGATIONS

29.     As alleged above, the North Carolina Constitution limits voting eligibility to persons who are residents of the state. N.C. Const. art. VI, § 2.

30.     For presidential elections, the state Constitution allows the General Assembly to reduce the time of residency requirement for those who wish to vote. *Id.* at § 2(2). It does not, however, allow for any alteration to the prerequisite of actual residency.

**I.    *UMOVA Purports to Provide the Right to Vote in North Carolina's Elections to Persons Who Do Not and Have Never Resided in North Carolina.***

31.     Article 21A of Chapter 163 of North Carolina's General Statutes—Uniform Military and Overseas Voters Act ("UMOVA")—sets forth certain conditions upon which non-resident uniformed and overseas voters may register and vote in North Carolina elections. *See generally,* N.C. Gen. Stat. § 163-258.1 *et seq.*

32.     UMOVA defines a "covered voter" within the scope of the statute as:

> "a.    A uniformed-service voter or an overseas voter who is registered to vote in this State.
>
> [ . . .]

8

      c.    An overseas voter who, before leaving the United States, was last eligible to vote in this State and, except for a State residency requirement, otherwise satisfies this State's voter eligibility requirements.

      d.    An overseas voter who, before leaving the United States, would have been last eligible to vote in this State had the voter then been of voting age and, except for a State residency requirement, otherwise satisfies this State's voter eligibility requirements.

      e.    An overseas voter who was born outside the United States, is not described in sub-subdivision c. or d. of this subdivision, and, *except for a State residency requirement*, otherwise satisfies this State's voter eligibility requirements, if:

          1.    The last place where a parent or legal guardian of the voter was, or under this Article would have been, eligible to vote before leaving the United States is within this State; and

          2.    The voter has not previously registered to vote in any other state."

*Id.* at § 163-258.2(1) (emphasis added).

33.    Critically, under subsection (e) UMOVA's definition of a "covered voter" encompasses certain persons who have *never* been residents of North Carolina, provided that their parent or current legal guardian would have been eligible to vote in North Carolina before leaving the United States and that they have not previously registered to vote in another state. *Id.* at § 163-258.2(1)(e)(1)(2); *see also* §§ 163-258.6 - 258.17 (UMOVA statutes permitting "a covered voter" to register, apply for, and vote an absentee ballot in the same manner as UOCAVA voters).

34.    For clarity, this means that UMOVA extends the right to register to vote and to vote in North Carolina's elections to persons who have never lived in the United States, let alone in North Carolina. UMOVA could also be read to extend those rights to certain persons living overseas who may have, at one time, lived in a state other than North Carolina, provided they did

not ever register to vote in that state, depending on whether their parent or current legal guardian was eligible to vote in North Carolina "before leaving the United States." [1]

35.    The fact that this subsection allows non-residents to vote in North Carolina elections is buttressed by other definitions within the same section of UMOVA, including subsection (c) which covers persons who were eligible to vote in North Carolina prior to leaving the United States, and subsection (d) which covers persons who would have been eligible to vote in North Carolina prior to leaving the United States but-for the voting age requirement at the time of their departure. *Id*. at § 163-258.2(1)(c)-(d).

36.    Simply put, UMOVA purports to allow certain persons who have never resided in North Carolina—or potentially never set foot in the state—to register and vote in all of the state's elections. *Id.* at § 163-258.3.

## II.    *UOCAVA Does Not Preempt State Residency Requirement for People Who Have Never Resided in the State.*

37.    Federal law partially preempts the North Carolina Constitution's residency requirement for some, but not all, of the overseas voters to whom UMOVA provides the right to vote.

38.    Although UOCAVA may preempt Article VI, § 2 of the North Carolina Constitution's residency requirement for certain voters participating in federal elections, it does not preempt the requirement for voters who never resided in the state, as described in § 163-258.2(1)(e). In short, those voters are not UOCAVA voters, nor are they within UOCAVA's scope.

---

[1] On its terms, the law would even appear to extend North Carolina voting rights to a person who has absolutely no connection to North Carolina at all. Consider, for example, a person whose parents gave birth to him after they left the United States from Florida, who returned to North Carolina without him after he turned eighteen, and who thereafter then left the United States again.

10

39.     UOCAVA requires states to "permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office[.]" 52 U.S.C § 20302(a)(1).

40.     UOCAVA's definitions of "absent uniformed services voter" and "overseas voter" do not encompass individuals who have never resided in the state in which they wish to register and vote, including those § 163-258.2(1)(e) purports to exempt from the state constitution's residency requirement. UOCAVA addresses two categories of voters. First, an "absent uniformed services voter" means a "member of a uniformed service on active duty" or "the merchant marine who, by reason of service" who is "absent from the place of residence where the member is otherwise qualified to vote" and such an individual's "spouse or dependent . . . who by reason of the active duty or service of the member, is absent from the place of residence where the spouse or dependent is otherwise qualified to vote[.]" *Id*. § 20310(1). Second, is an "overseas" voter which "means":

> (A) an absent uniformed services voter who, by reason of active duty or service is absent from the United States on the date of the election involved;
> (B) a person who resides outside the United States and is qualified to vote in the last place in which the person was domiciled before leaving the United States; or
> (C) a person who resides outside the United States and (but for such residence) would be qualified to vote in the last place in which the person was domiciled before leaving the United States.

*Id.* § 20310(5).

41.     In both form and function, UOCAVA only extends voter eligibility to voters who are temporarily away from the state and others who at least have been domiciled in the state at some point. *Id*.

11

42. UOCAVA, consequently, does not preempt the North Carolina Constitution's residency qualification for voters who never resided in the state, which applies to "any election held in this State." *See* N.C. Const. art. VI, § 2.

43. Section 163-258.2(1)(e) conflicts with N.C. Const. art. VI, § 2 to the extent it is implemented to exempt certain voters from the residency requirement for individuals voting in North Carolina elections and because neither UOCAVA nor any other federal law preempts art. VI, § 2's residency requirement as it applies to voters who never resided in the state.[2]

III. *Defendants' Implementation of UMOVA Violates State and Federal Law*

44. Defendant NCSBE members are responsible for "implementing" UMOVA. N.C. Gen. Stat. § 163-258.4(a).

### a. Defendants' Violations of the State Constitution

45. Section 163-258.4 imposes various responsibilities on Defendants to administer UMOVA's voting requirements, including the provision of an "electronic transmission system through which covered voters may apply for and receive voter registration materials, military-overseas ballots, and other information...." *Id.* at (c). Defendants' responsibilities also include developing various voting materials for UMOVA voters and instructions for UMOVA voters. *Id.* at (d).

46. UMOVA also permits Defendant NCSBE members to delegate some of the Board's responsibilities for administering UMOVA to Defendant Brinson Bell, including the requirement

---

[2] The final report of the Uniform Military and Overseas Voting Act from the National Conference of Commissioners on Uniform State Laws noted that it expressly intended to expand voting eligibility beyond UOCAVA: "Although UOCAVA makes no provision for these citizens" "[t]he definition of "covered voter," in paragraph (1)(E), also extends the act's coverage to U.S. citizens born abroad who have not established a voting residency in the United States." Uniform Military and Overseas Voters Act, National Conference of Commissioners on Uniform State Laws, Sept. 30, 2010, at 5, available at: https://tinyurl.com/26uuflrj

12

to "make available to covered voters information regarding voter registration procedures for covered voters and procedures for casting military-overseas ballots." *Id*. § 163-258.4(b).

47.     UMOVA allows a covered voter to register and apply for an absentee ballot utilizing the Federal Post Card Application ("FPCA") or a federal Write In Absentee Ballot ("FWAB"). N.C. Gen. Stat. § 163-258.6.

48.     Notably, both the FPCA registration form and the FWAB require voters to affirm they meet one of several voter eligibility options, one of which states "I am a U.S. citizen living outside the country, and I have never lived in the United States."[3]

49.     Upon information and belief, if an applicant selected this option on the FPCA or FWAB, the NCSBE would accept and process the application, even if the applicant is not a resident of North Carolina and has never been a resident of the state.

50.     The NCSBE website's "FAQ: Military and Overseas Voting" page confirms this: "North Carolina allows citizens who have never resided in the United States to use a parent's voting residence as their own to register to vote, and may request a military/overseas absentee ballot."[4]

51.     Defendants are thus facilitating ongoing violations of the North Carolina Constitution by carrying out their UMOVA responsibilities which necessarily entail permitting unqualified non-residents to vote in North Carolina elections.

52.     As applied to Individual Plaintiffs, this impermissibly dilutes their votes, and as applied to all Plaintiffs, it infringes upon their Constitutional and statutory rights.

---

[3] The FPCA is available at: https://votebymail.ncsbe.gov/app/fpca/fpca-form (last accessed Sept. 27, 2024); the FWAB is available at: https://s3.amazonaws.com/dl.ncsbe.gov/Forms/2021-09-13-FWAB.pdf (last accessed September 29, 2024); and North Carolina's online FPCA form is available at: https://votebymail.ncsbe.gov/app/fpca/fpca-form (last accessed September 29, 2024).
[4] Available at: https://tinyurl.com/24xfp323 .

13

**b. Defendants' Additional Violations of State Voter Identification Law**

53.     Additionally, Defendants are, upon information and belief, impermissibly using UMOVA to circumvent their obligations to require certain identification from persons registering to vote. Defendants' failure to require this identification threatens the integrity of North Carolina's elections because it permits the counting of ballots that do not meet the state's legal requirements for counting and it degrades the validity and accuracy of the state's voter registration lists.

54.     The federal Help America Vote Act ("HAVA") requires an individual registering to vote to provide certain identifying information on their application. 52 U.S.C. § 21083(a)(5)(A). Individuals who have a driver's license must provide their license number. *Id.* § 21083(a)(5)(A)(i)(I). All others must provide the last four digits of their social security number. *Id.* § 20507(a)(5)(A)(i)(II). Voters who have neither are exempt from this requirement. *Id.* § 21083(a)(5)(A)(ii).

55.     North Carolina has enacted a statute to implement this HAVA requirement. N.C. Gen. Stat. §§ 163-82.4(a)(11), 163-82.12, 163-12(d).

56.     HAVA further provides for a process to match the identifying information provided by the individual applying to register with the "State motor vehicle authority" and "Commissioner of Social Security" "to verify the accuracy of the information provided...." 52 U.S.C. § 21083(a)(5)(B).

57.     North Carolina has similarly enacted a statute to implement this HAVA requirement. N.C. Gen. Stat. § 163-82.12(3), (6)-(8).

58.     HAVA requires certain first-time voters who register by mail—either those whose identification numbers officials could not verify or voters who did not provide the identification number—to provide certain identification, or in the case of an absentee voter, a copy of

14

identification when returning their ballot (the "HAVA ID Requirement"). 52 U.S.C. § 21083(b)(2)(A), (b)(3)(B).

59. HAVA does not exempt a UOCAVA voter from the requirement to provide the driver's license number or last four digits of their social security number, if the individual has either, or the requirement that the state verify the information provided. HAVA does, however, exempt UOCAVA voters from the HAVA ID Requirement. *Id.* § 21083(b)(3)(C)(i).

60. HAVA requires states treat an absentee ballot from a voter subject to the HAVA ID Requirement, but who fails to comply with it, as a provisional ballot. *Id.* § 21083(b)(2)(B)(ii). HAVA defers to state law on whether that ballot is ultimately counted. *Id.* § 21082(a)(4).

61. North Carolina has enacted statutes to implement these HAVA requirements. *See* N.C. Gen. Stat. § 163-166.12. One departure from HAVA is that North Carolina applies the HAVA ID Requirement to all registrants whose information officials were unable to match, not just those registering by mail. *Id.* § 163-166.12(d).

62. North Carolina specifically exempts from its HAVA ID Requirement "[a]n individual who is entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act." N.C. Gen. Stat. § 163-166.12(f)(3).

63. North Carolina statutes do not exempt voters who have never resided in the state from its HAVA ID Requirement, including UMOVA voters.

64. On September 24, the NCSBE, through its General Counsel, transmitted to all county election officials guidance (the "Guidance") explaining the applicability of and exemptions from the HAVA ID Requirement for overseas voters. A true and accurate copy of the Guidance is attached hereto as **Exhibit A**.

15

65.     The Guidance explained correctly the state and federal legal requirements that individuals registering to vote through an FPCA or FWAB must provide a driver's license number or last four digits of their social security number and that county officials are required to attempt to match that information with records in official databases.

66.     The Guidance also stated: "Unlike civilian voters, North Carolina law expressly exempts UOCAVA voters from the requirement to provide HAVA ID if the number fails to match across agency databases. *See* GS 163-166.12(f)(3)." *See* Ex. A.

67.     The Guidance conflates "UOCAVA voters" as UOCAVA defines them, and the UMOVA voters who have never resided in North Carolina, despite the latter plainly not being UOCAVA voters.

68.     For example, the Guidance states: "I'm writing to clarify the requirement for identification numbers for new registrants who register via FPCA or FWAB." *See* Ex. A. North Carolina allows voters who have never resided in the state to utilize an FPCA or FWAB to register to vote. N.C. Gen. Stat. § 163-258.6(a), (b).

69.     On August 25, 2024, Defendant Brinson Bell emailed a member of the Henderson County Board of Elections and blind carbon copied Defendant NCSBE Members and all county election directors (the "Email"). A true and accurate copy of the email is attached hereto as **Exhibit B**.

70.     The Email states: "When a military or overseas citizen voter submits their ballot, neither federal nor state law requires them to provide ID when returning their ballot." *See* Ex. B.

71.     The Email fails to make any distinction between UOCAVA voters who are exempt from the HAVA ID Requirement under state and federal law and voters who never resided in the state who, by definition, are not UOCAVA voters.

16

72.     The Guidance and Email make abundantly clear that Defendants are disregarding the requirements of N.C. Gen. Stat. § 163-166.12(f)(3), which exempts from its HAVA ID Requirement only individuals who are "entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act."

**CLAIMS FOR RELIEF**
**Count One:**
**Declaratory Judgment & Permanent Injunction – Violation of N.C. Const. art. VI § 2 as applied to Plaintiffs**

73.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

74.     Plaintiffs bring this claim for declaratory judgment pursuant to N.C. Gen. Stat.§ 1-253 *et seq.* as to the rights, status, or other legal relations between Plaintiffs and Defendants.

75.     NCSBE is an agency created by statute that only has the authority expressly provided to it by the North Carolina General Assembly and the Constitution of the State of North Carolina.

76.     Article VI, § 2 of the North Carolina Constitution expressly limits the right to vote in the state's elections to those persons who are residents of the state.

77.     Defendants are implementing N.C. Gen. Stat. § 163-258.2(1)(e) in a manner that violates the North Carolina Constitution.

78.     Upon information and belief, NCSBE allows and has allowed persons to register to vote under N.C. Gen. Stat. § 163-258.2(1)(e), including persons who were never and are not presently residents of North Carolina.

79.     As applied to Individual Plaintiffs, this impermissible action dilutes their votes and infringes on their right to free and fair elections. *See* N.C. Const. art. I, § 10.

17

80.     Similarly, NCSBE's violation of the North Carolina Constitution as applied to Plaintiff RNC and NCGOP has directly harmed their organizational missions, including election integrity, voter outreach, and working so that Republican candidates are elected to office.

81.     Defendants must immediately cease their violations of the North Carolina Constitution and take all steps necessary to remedy the harm they have caused to Plaintiffs by allowing non-resident voters who are not eligible to vote under UOCAVA to register to vote in North Carolina elections.

82.     An actual, real, presently existing, concrete and justiciable controversy exists between Plaintiffs and Defendants in regard to, among other things, whether the NCSBE may allow non-residents to register and vote in North Carolina elections.

83.     Further, the NCSBE's actions have harmed and will continue to harm Plaintiffs by infringing on their constitutional and statutory rights as citizens, voters, participants in the electoral process, and a political party under the North Carolina General Statutes.

84.     Specifically, Plaintiffs seek a declaratory judgment that:

a.  The NCSBE's use of N.C. Gen. Stat. §163-258.2(1)(e) is unconstitutional as applied to Plaintiffs as it specifically violates Article VI, § 2 of the North Carolina Constitution; and

b.  Any participation by a non-North Carolina resident who has never resided in the state in the state's elections is a violation of Article VI, § 2 of the North Carolina Constitution as applied to Plaintiffs.

c.  In order to remedy their violations, Defendants must immediately instruct county boards of election to not process and to segregate any ballots returned by individuals who have never resided in the state, including but not be limited to,

18

anyone who registered to vote by submitting an FPCA or FWAB and checked the aforementioned box on the application;

    d. Defendants must also remove the aforementioned eligibility box that applies to voters who have never resided in the United States from its online FPCA application, as allowing it to remain risks facilitating both new and ongoing violations of Plaintiff's Constitutional and statutory rights;

85. Additionally, Defendants must be preliminarily and permanently enjoined from utilizing N.C. Gen. Stat. § 163-258.2(1)(e) in this manner and ordered to cease and correct the harm their unconstitutional actions have caused Plaintiffs, including:

    a. Defendants must immediately instruct county boards of election to not process and to segregate any ballots returned by individuals who have never resided in the state, including but not be limited to, anyone who registered to vote by submitting an FPCA or FWAB and checked the aforementioned box on either form;

    b. Defendants must also remove the aforementioned box from North Carolin's online FPCA application as allowing it to remain risks facilitating both new and ongoing violations of Plaintiff's Constitutional and statutory rights;

    c. Defendants must reject voter registration applications in any form from individuals who have never resided in North Carolina;

    d. Defendants must take all steps necessary to ensure that votes from individuals who have checked the aforementioned box on an FPCA or FWAB are not transmitted or counted in any elections;

19

e.   Defendants must update their website in order to specify the Constitutional requirements to vote in North Carolina, including the prohibition on non-residents voting in the state's elections; and

f.   Defendants must notify the U.S. Department of Defense's Federal Voting Assistance Program ("FVAP") that individuals who have never resided in North Carolina are ineligible to vote in the state's elections and to provide FVAP with updated state-specific instructions to include in FVAP's materials made available to UOCAVA voters on its website and through other means.

**Count Two:**
**Declaratory Judgment and Permanent Injunction– Defendants' Policy and Guidance Regarding UMOVA Voters' Exemptions from the HAVA ID Requirement Violates North Carolina Law**

86.   The foregoing paragraphs are incorporated by reference as if fully set forth herein.

87.   Plaintiffs bring this claim for declaratory judgment pursuant to N.C. Gen. Stat.§ 1-253 *et seq.* as to the rights, status, or other legal relations between Plaintiffs and Defendants.

88.   North Carolina General Statute § 163-166.12(f)(3) expressly exempts UOCAVA voters from the state's HAVA ID Requirement.

89.   In contrast, the statute does not exempt UMOVA voters. and they are thus subject to the default HAVA ID Requirement in § 163-166.12(f)(3).

90.   As such, the NCSBE's guidance and policies directing county election officials to exempt certain UMOVA voters—specifically those who never resided in the state—from N.C. Gen. Stat. § 163-166.12's HAVA identification provisions is in direct violation of state law.

91.   An actual, real, presently existing, concrete and justiciable controversy exists between Plaintiffs and Defendants in regard to, among other things, whether the NCSBE may allow non-residents and non-citizens to register and vote in North Carolina elections.

92.     Specifically, Plaintiffs seek a declaratory judgment that:

   a. The NCSBE's policy and guidance to county election officials that voters who never resided in North Carolina but are attempting to register to vote in the state are exempt from the HAVA ID Requirement is null and void because it conflicts with the plain language of N.C. Gen. Stat. § 163-166.12 as the statute specifically only exempts a UOCAVA voter from the HAVA ID Requirement.

93.     Additionally, Defendants must be preliminarily and permanently enjoined from enforcing N.C. Gen. Stat. § 163-258.2(1)(e) in a manner that nullifies N.C. Gen. Stat. § 163-166.12's HAVA ID Requirement, and they must be ordered to cease and correct the extreme harm their unlawful actions have caused Plaintiffs, including:

   a. The NCBSE must issue a directive to county boards of elections stating that voters who never resided in North Carolina but are attempting to register to vote in the state are subject to the same HAVA ID Requirement as all non-UOCAVA voters, which may include the requirement to return an identification acceptable under § 163-166.12 or the person's ballot will not be counted;

   b. The NCSBE must instruct county boards of election that any voters who have never resided in North Carolina but are attempting to register to vote in the state but who have not satisfied the HAVA ID Requirement must do so in order for their ballot to count;

   c. The NCSBE must update all guidance and instructions on its website and on other materials to make clear that voters who have never resided in North Carolina but are attempting to register to vote in the state are subject to the HAVA ID Requirement.

    d.  Defendants must notify FVAP that individuals who have never resided in North Carolina are not exempt from the HAVA ID Requirement and to provide FVAP with updated state-specific instructions on the requirement for it to include in FVAP's materials made available to overseas voters on its website and through other means.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.  Issue a declaratory judgment that:

    a.  The NCSBE's use of N.C. Gen. Stat. §163-258.2(1)(e) is unconstitutional as applied to Plaintiffs to the extent it violates Article VI, § 2 of the North Carolina Constitution; and

    b.  Any participation by a non-North Carolina resident who has never resided in the state in the state's elections is a violation of Article VI, § 2 of the North Carolina Constitution as applied to Plaintiffs.

2.  Issue a declaratory judgment that:

    a.  The NCSBE's policy and guidance to county election officials that voters who never resided in North Carolina but are attempting to register to vote in the state are exempt from the HAVA ID Requirement is null and void because it conflicts with the plain language of N.C. Gen. Stat. § 163-166.12 as the statute specifically only exempts a UOCAVA voter from the HAVA ID Requirement.

3.  Preliminarily and permanently enjoin Defendants from accepting any voter registration forms, in any format, from individuals who register or attempt to register under N.C. Gen. Stat. §163-258.2(1)(e) unless and until such persons can confirm residency and provide the necessary HAVA ID Requirement;

22

4.  Order Defendants to take all steps necessary to remedy the harm caused by their unconstitutional actions, including:

    a.  Issuing all necessary directives and guidance to county elections officials;

    b.  Updating all necessary voter registration forms, including but not limited to the aforementioned FPCA and FWAB forms; and

    c.  Updating all public facing websites and voter registration portals within Defendants' custody or control to reflect the constitutional prohibition on non-residents voting in North Carolina elections.

5.  Award Plaintiffs their reasonable attorney's fees, litigation expenses, and associated costs incurred in connection with this action, as otherwise permitted by law; and

6.  Grant such further relief deemed just and proper.

This, the 2nd day of October, 2024.


**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Counsel for Plaintiffs*

# VERIFICATION

I, Wanda Nelson Fowler, affirm under the penalty of perjury, that the foregoing representations in this Verified Complaint are true to my own knowledge, except as to matters stated upon information and belief, and as to those matters, I believe them to be true.

By: *Wanda Nelson Fowler*

Chair, Carteret County GOP

Date: 10-2-24

Carteret County

STATE OF NORTH CAROLINA

Sworn and subscribed to me on this, the 2 day of October , 2024





*Barbara A. Smith*

Notary Public

My commission expires: 12-05-26



**EXHIBIT**
**A**

---

**From:** Holland, Parker <Thomas.Holland@ncsbe.gov>
**Sent:** Wednesday, September 4, 2024 5:39 PM
**To:** Holland, Parker <Thomas.Holland@ncsbe.gov>
**Subject:** RE: PLEASE READ: UOCAVA Requests for new registrants

Directors (via BCC):

This is a follow up from the previous email by General Counsel Paul Cox. We have notified the impacted counties individually of those FPCA or FWABS processed without an identification number. Please follow the guidance below for any UOCAVA Requests for new registrants. If you have any questions, please feel free to reach out.

Best Regards,

**Parker Holland, CERA**
**Elections Administration Manager**
O: (919) 814-0727
M: (919) 480-9855



---

**From:** Cox, Paul <paul.cox@ncsbe.gov>
**Sent:** Wednesday, September 4, 2024 1:01 PM
**To:** SBOE_Grp - Legal <Legal@ncsbe.gov>
**Subject:** PLEASE READ: UOCAVA Requests for new registrants

Directors (via BCC):

I'm writing to clarify the requirement for identification numbers for new registrants who register via FPCA or FWAB. I addressed this briefly in the Huddle chat last Wednesday, but we've gotten some additional questions. So we wanted to be clear about the proper procedures, since UOCAVA ballots start going out Friday.

**If a person is registering for the first time using an FPCA or FWAB, the requirement to provide driver's license/DMV number or, if they don't have it, last four of their social security number, _applies_ to these voters—just like for all other new registrants.** This requirement in HAVA applies to all new registrants, whether they are civilian or UOCAVA registrants. _See_ 52 USC 21083(a)(5)(A)(i).

These new registrants were included in the State Board's decision last December to require new registrations going forward to include one of these numbers, unless the registrant affirms that they don't have either number. We regret if that was not clear.

We are going to have our IT department run a list of **new** FPCA/FWAB registrants since the State Board's order was released in December 2023, to flag any that may have been processed without one of these numbers, and we'll share that data with your office for review and action. The list should not be very long, since most FPCA/FWAB voters come through the portal, and the portal doesn't allow a UOCAVA voter to submit their request without including one of these numbers.

**In the meantime, please review your pending FPCAs before ballot transmission on Friday, to ensure that they included one of these numbers**. Be sure to include that number when you enter data into VoterScan. If the record doesn't result in a database match, the FPCA (registration and ballot request) must still be processed. Unlike civilian voters, North Carolina law expressly exempts UOCAVA voters from the requirement to provide HAVA ID if the number fails to match across agency databases. *See* GS 163-166.12(f)(3).

If any new FPCA/FWAB registrant did not include DL/DMV number or last four of their SSN as of December 14, 2023, and they do not state in writing that they lack these numbers, you will need to reach out to the registrant to obtain one of these numbers before processing their registration/ballot request. Please email the voter the attached letter requesting this information. If you do not have an email address for the voter, contact the voter by any other means you have available to obtain the information. Should the letter be returned, you will need to scan in the letter as VOTER CHANGE/UPDATE DOCUMENT in the web scanning app. If the voter does not return the request for information the FPCA request will need to be spoiled. Please include in the comments "Spoiled-ID not provided." Spoiling a ballot will need to occur before ballots go out on Friday, for any pending requests that did not include one of the required numbers.

Best regards,

**Paul Cox**
General Counsel
NORTH CAROLINA STATE BOARD OF ELECTIONS
RALEIGH, NC 27611
919.814.0700
www.ncsbe.gov

EXHIBIT

B

From: "Bell, Karen B" <Karen.Bell@ncsbe.gov>
Sent: Sunday, August 25, 2024 5:04pm
To: "lrevelle@reagan.com" <lrevelle@reagan.com>
Cc: "SBOE_Grp - Legal" <Legal@ncsbe.gov>, "Gannon, Patrick" <Patrick.Gannon@ncsbe.gov>
Subject: Your recent letter

Ms. Rebuck, (bcc: State Board Members and county election directors)

We write to express concern about a letter that you wrote that was forwarded to us by the elections director in another county, who received it from a state legislator asking her to respond. Your letter has been forwarded to a wide audience, and unfortunately, it contains false and misleading statements, and partisan remarks.

We are forwarding your letter and our response to the five members of the State Board of Elections and to all county directors so they can respond as necessary if they receive inquiries. This has required State Board staff to spend our limited resources drafting this letter and researching and providing the facts.

We are always available to county board members with questions or concerns about election administration, and we hope that in the future you will reach out to us should you need clarification to avoid the potential spread of false or misleading information, which undermines our common goals of administering elections according to the law and promoting confidence in our elections.

Please see our responses in red to your italicized statements below. We are happy to answer any questions you have about them.

*"I am a member of the Henderson County Board of Elections and have served on the Board for over 6 years. I am frankly very discouraged about the upcoming election. I want to strongly state my belief that if you do not intervene immediately either legislatively or legally, we are going to lose NC to the Dems in November which will likely mean we lose the country. The responsibility will be yours, one way or the other."*

Given the partisan statements in the above, we remind you of the requirements of Article 4A of Chapter 163 of the North Carolina General Statutes. Whether or not the statements violate these provisions, it undermines the public's confidence in the fair administration of elections if their elections officials are widely communicating their desire for a particular outcome in an election they oversee.

*"I am aware that Henderson County has recently received hundreds of new UNOCAVA (Overseas Civilian) applications." There is NO requirement to verify these people AND they do NOT have to provide ID when sending back their vote (by mail or email)."*

UOCAVA, which stands for Uniformed and Overseas Citizens Absentee Voting Act, is a federal law prescribing specific procedures for military and overseas citizens to be allowed to vote in federal elections. Our state has adopted laws under Article 21A of Chapter 163 to carry out these procedures. When military and overseas citizens register to vote under these procedures, they typically provide either their Social Security Number or driver's license on the prescribed federal form. When county officials input those values into the statewide database, the statewide database

automatically attempts to validate those numbers with the DMV and Social Security Administration. For civilian voters, if a number does not validate, state law requires the voter to provide an alternative form of ID before they vote for the first time. UOCAVA voters are expressly exempt from this requirement by state statute and have been for nearly 20 years. GS 163-166.12(f)(3).

When a military or overseas citizen voter submits their ballot, neither federal nor state law requires them to provide ID when returning their ballot.

*"I believe this is a concerted effort to turn Henderson County blue. However, I believe that if you check with other counties, you will see that the numbers have grown substantially in every county. I have heard numbers as high as 300,000 statewide so far. I believe that there is a statewide effort under way to undermine the election."*

Again, we caution you about statements favoring or opposing particular outcomes in the elections you oversee.

We spoke with the Henderson County director, and she confirmed on August 23 that Henderson had received fewer than 150 UOCAVA requests. In 2020, according to State Board data, Henderson County received 347 requests for absentee ballots from military and Henderson County voters living abroad at the time. So, the number of requests is not necessarily high in 2024 as you suggest. Ballots go out in two weeks.

It is also possible that advocacy groups and others are encouraging military and overseas voters who are U.S. citizens to request their ballots. There is nothing wrong with that and, in fact, that activity protected by the First Amendment of the U.S. Constitution.

Until ballot styles are finalized, we do not know how many UOCAVA requests have come in statewide. However, the State Board has no evidence of a "statewide effort underway to undermine the election." If you have actual evidence of such, please provide it to the State Board or to the law enforcement agency of your choice. Otherwise, your statements are sensationalistic and inflammatory and will undermine voter confidence with no facts to back them up.

*"Additionally, Henderson County has received numerous new voter applications that do not have HAVA required information to register (missing Driver's License and/or last 4 of SS or those numbers were not validated). The State BOE has instructed Counties to go ahead a register them without verification."*

This is false. The State Board, both in emails and in a statewide Huddle training session, have instructed county boards as follows:

· If a new voter does not provide their driver's license number or last four digits of their Social Security number and does not check the box to indicate that they do not have either of these numbers, then the voter will not be registered and will be sent an incomplete letter seeking the missing information.

· If an applicant provides a driver's license number or last four of their Social Security number but that number does not validate, then their registration should be processed but they must be sent a "request for identification letter." If the voter subsequently provides the ID information, their

profile is updated. If they do not, they must provide an alternative ID proving their identity (so-called "HAVA ID") before voting, or vote provisionally. See GS 163-166.12(c). See the Request for Identification Information letter.

· If a new voter checks the box to indicate they do not have either identification number, then they will be sent a "request for identification" letter and be required to show a HAVA ID before they vote.

*"There have been over 10,000 voters registered state-wide in the last 3 months with unverified or no Dr License or last 4 of SS numbers and therefore HAVE NOT BEEN VERIFIED. So even though the information provided does not match (validated) the application is automatically approved. This is just common sense-the identity of the voter should be verified before entering them on the voter rolls. This is an open invitation for missing or unvalidated applications to be approved and entered into the system."*

See the note above about the additional verification requirement for voters whose ID numbers fail to validate.

Here's some additional important context. When a number does not match, SEIMS will not populate that field, so if we run a query in the database to see which registrations lack these identifiers, the query shows registrations where an identifier *was* provided but the number did not validate. To attempt to validate DLs or last-four SSNs, the SEIMS system sends a database query to DMV databases and the Social Security Administration databases, asking those databases to attempt to match specific information in records on both sides. It is not uncommon for a person's ID to fail validation. There are a number of benign reasons this can occur, and occur regularly, which has been well documented. The DMV/SSA requires exact field matching on name, DOB, DL/SSN so there is no current way to identify possible matches. Common reasons for validation failure are: misspelling of names, variation of names (Bob vs. Robert, maiden name vs. married name, varied designation of surnames for minority ethnicities, etc.), nickname or a missing suffix missing (Jr. or Sr.), inadvertent typos like missed numbers or transposed numbers in DL or last-four SSN, typos in birthdates, and situations where a registrant listed month/day/year in the wrong order on their registration form (there could be national origin-based reasons for this). Recognizing the faults in matching between distinct databases, the General Assembly enacted the provisions in GS 163-166.12(c) which allow a registrant whose DL or SSN did not match to provide HAVA ID either before or when first voting.

*"Another concern is preventing non-citizens from voting. Putting the matter on the ballot in November is too little, too late. The legislature passed SB 747 requiring clerks of superior court to provide lists of people who have been excused from jury duty indicating that they are not US citizens. However, according to the SBOE this will not take place until after the November election."*

This is false. The superior court clerks are (and have) provided such lists, and State Board staff is reviewing those and contacting any registered voters who are identified and for whom a state and federal database check does not show they have obtained citizenship. After nearly every county clerk submitted any records of jurors excused for non-citizenship, there were 9 registrants total identified through these checks statewide. While it is true that federal law (NVRA) prevents us from outright removing these records this close to a federal election, we are nonetheless going to

encourage any of these identified registrants to cancel their registration if they indeed lack citizenship. After the federal election, we can resume this program and conduct removals similar to how we process felon removals, rather than the notices and invitation to cancel registration which is as much as we can do and still comply with federal law.

*"You have allowed the SBOE to drag its feet (I believe on purpose) on all of these matters. This must be rectified if you want to win in November. I am not asking for anything that would be unfair to anyone, I just want the laws enforced to make it fair for everyone. Frankly, the county BOEs are nothing more than a rubber stamp and we have to sit there and vote to certify without any real ability to legally object. Again, the success or failure of this election in November is on you. I implore you to either fix this legislatively or in Court.*

*Best wishes in November, you will need it!"*

Again, we remind you of the prohibitions in the law on political activity by county board members.

We again invite you to contact us in the future to clear up your misunderstandings about election processes and the law.

Regards,

**Karen Brinson Bell, CERA, PMP**

Executive Director, NCSBE

(919) 814-0700 Main Line



FILED
DATE:October 21 2024
App. 039
TIME:4:27:51 PM
WAKE COUNTY
CLERK OF SUPERIOR COURT
BY: S. Jones

NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 24CV031557-910

TILIA KIVETT; WANDA NELSON
FOWLER; THE REPUBLICAN
NATIONAL COMMITTEE; and THE
NORTH CAROLINA REPUBLICAN
PARTY,

    *Plaintiffs*

       vs.

NORTH CAROLNA STATE BOARD OF
ELECTIONS; KAREN BRINSON BELL
in her official capacity as Executive
Director of the North Carolina State Board
of Elections; ALAN HIRSCH in his
official capacity as Chair of the North
Carolina State Board of Elections; JEFF
CARMON in his official capacity
Secretary of the North Carolina State
Board of Elections; STACY EGGERS IV,
KEVIN N. LEWIS, and SIOBHAN
O'DUFFY MILLEN in their official
capacities as members of the North
Carolina State Board of Elections,

       And

DEMOCRATIC NATIONAL
COMMITTEE

    *Defendants*

ORDER

DENYING PLAINTIFFS' MOTION

FOR TEMPORARY RESTRAINING ORDER

AND DENYING, IN THE ALTERNATIVE,

AN EXPEDITED  PRELIMINARY INJUNCTION

THIS MATTER came before the undersigned during this October 21, 2024, regular

session of Wake County Superior Court upon plaintiff's motion for a temporary restraining order

or in the alternative an emergency preliminary injunction; and all parties appeared through

counsel and had received notice of this hearing and were prepared to go forward with the

- 1 -

hearing; and the court having jurisdiction over both the subject matter and the parties; and the

court having heard from counsel for the Plaintiffs and Defendants on the record in open court;

and the court having carefully considered the allegations and contentions of the Plaintiffs and

having reviewed the entire record, including the verified complaint; the court makes the

following findings and conclusions:

1. Plaintiffs announced that they are proceeding only on the first claim for relief.

2. Plaintiffs contend North Carolina General Statute 163-258.2(1)(e) is being misinterpreted by

   the State Board of Elections so as permit the registration of non-residents to vote in violation

   of the United States Constitution and the North Carolina Constitution. The provision on

   which Plaintiffs focus is part of the Uniform Military and Overseas Voters Act, that defines a

   "covered voter" as follows:

   > e . An overseas voter who was born outside the United States, is not described in
   > sub-subdivision c. or d. of this subdivision, and, except for a State residency
   > requirement, otherwise satisfies this State's voter eligibility requirements, if:
   > 1. The last place where a parent or legal guardian of the voter
   > was, or under this Article would have been, eligible to vote
   > before leaving the United States is within this State; and
   > 2. The voter has not previously registered to vote in any other
   > state.

3. That statue has been on the books at least since 2011 as a bill adopted with bi-partisan

   support under Speaker of the House Thom Tillis and President *pro tem* of the Senate Walter

   Dalton; and has not been challenged until the filing of this complaint and motion. Both the

   Plaintiffs and the Defendants have been involved in elections under the existing statute since

   its passage without complaint.

4. Plaintiffs have presented no substantial evidence of any instance where the harm that

   plaintiffs seek to prevent has ever "fraudulently" occurred. Plaintiffs have contended on the

   record in this hearing that subsection 163-258.2(1)(e) is facially constitutional. Although

Plaintiffs have failed to present evidence of any actual occurrence, the court does infer that there may be persons who fall within the very narrow statutory exemption who may have registered and may have voted; but there is absolutely no evidence that any person has ever fraudulently claimed that exemption and actually voted in any North Carolina election. Plaintiffs concede and the court finds that Plaintiffs have not presented any evidence of even a single specific instance of any registrant unlawfully availing themselves of the statutory provision.

5. All of the factual evidence presented to this court shows that Defendants have not and will not knowingly allow a non-resident who does not fall within the statutory exception to register or vote in our state elections.

6. Plaintiffs implicitly seek to have this court determine that they are likely to succeed in nullifying or modifying the implementation of a provision of the Uniform Military and Overseas Voters Act of the North Carolina General Statutes that allows adult children of North Carolina residents born outside of the United States who have not resided within the state to register to vote in this state under very narrow circumstances. The plaintiffs have failed to persuade this court that they are more likely than not to succeed on that claim.

7. Plaintiffs have failed to show any likelihood of irreparable harm.

8. Should the speculative possibility of a person fraudulently claiming a privilege of voting under subsection (e) actually occur, the Plaintiffs have other adequate remedies at law to address and rectify any instance in which Plaintiffs can show that they may have been adversely affected in any election.

9. Plaintiffs have failed to show that the issuance of a preliminary injunction is necessary to maintain a *status quo* during this litigation since the effect of the relief sought by way of a

- 3 -

mandatory injection would in fact change the *status quo* which has been in place since at least 2011.

10. This court has weighed the hypothetical possibility of harm to plaintiffs against the rights of the defendants and finds that on balance the equitable discretion of this court should not be invoked to treat an entire group of citizens differently based upon unsupported and speculative allegations for which there is not even a scintilla of substantive evidence.

11. Plaintiffs have failed to show to the satisfaction of this court that an injunction is necessary to protect Plaintiff's rights during this litigation.

THIS COURT CONCLUDES:

1. Plaintiffs have failed to show that they will suffer irreparable harm if a temporary restraining order or emergency preliminary injunction is not issued.

2. Plaintiffs have failed to make a threshold showing that they are likely to succeed on the merits of their claim.

3. There is no showing that this court should exercise its discretion, and Plaintiffs are not entitled to the relief sought as a matter of law.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Plaintffs' motion for a temporary restraining order or, in the alternative, an emergency preliminary injunction should be and hereby is DENIED.

SO ORDERED this the 21st day of October, 2024.

_____
John W. Smith
Superior Court Judge Presiding

- 4 -



# North Carolina Court of Appeals

**EUGENE H. SOAR, Clerk**

Fax: (919) 831-3615
Web: https://www.nccourts.gov

Court of Appeals Building
One West Morgan Street
Raleigh, NC 27601
(919) 831-3600

Mailing Address:
P. O. Box 2779
Raleigh, NC 27602

**No. P24-735**

**TELIA KIVETT; WANDA NELSON FOWLER; THE REPUBLICAN NATIONAL COMMITTEE; AND THE NORTH CAROLINA REPUBLICAN PARTY**

v.

**NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; ALAN HIRSCH, IN HIS OFFICIAL CAPACITY OF CHAIR OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; JEFF CARMON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE NORTH CAROLINA BOARD OF ELECTIONS; STACY EGGERS IV, KEVIN N. LEWIS, AND SIOBHAN O'DUFFY MILLEN IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS**

From Wake
( 24CV031557-910 )

**O R D E R**

The following order was entered:

By unanimous vote, the "Petition for Writ of Supersedeas and Motion for Temporary Stay and Temporary Injunction" filed in this cause by petitioners Telia Kivett, Wanda Nelson Fowler, the Republican National Committee, and the North Carolina Republican Party on 23 October 2024 is decided as follows: The petition for writ of supersedeas is denied. The motion for temporary stay and temporary injunction is dismissed as moot.

By order of the Court, sitting as a three-judge panel, this the 29th of October 2024.

WITNESS my hand and the seal of the North Carolina Court of Appeals, this the 29th day of October 2024.

Eugene H. Soar
Clerk, North Carolina Court of Appeals

Copy to:
Mr. Phillip J. Strach, Attorney at Law, For Kivett, Telia; Fowler, Wanda Nelson; Republican Nat'l Comm. - (By Email)
Mr. Jordan A. Koonts, Attorney at Law - (By Email)
Ms. Sarah G. Boyce, Deputy Attorney General, For The North Carolina State Board of Elections - (By Email)
Ms. Mary Carla Babb, Special Deputy Attorney General - (By Email)
Mr. Terence Steed, Special Deputy Attorney General - (By Email)
Mr. Jim W. Phillips, Jr., Attorney at Law - (By Email)

Ms. Shana L. Fulton, Attorney at Law - (By Email)
Mr. William A. Robertson, Attorney at Law - (By Email)
Mr. James W. Whalen, Attorney at Law - (By Email)
Mr. Eric M. David, Attorney at Law, For Democratic National Committee - (By Email)
Ms. Shaunesi Y. DeBerry - (By Email)
Mr. Jeffrey Loperfido, Attorney at Law - (By Email)
The Honorable Clerk of Superior Court, Wake County

# No. 281P24

No.                                     TENTH JUDICIAL DISTRICT

## SUPREME COURT OF NORTH CAROLINA
**************************************

TELIA KIVETT; WANDA NELSON
FOWLER; the REPUBLICAN
NATIONAL COMMITTEE; and the
NORTH CAROLINA REPUBLICAN
PARTY

                       Plaintiffs,

vs.

NORTH CAROLINA STATE BOARD
OF ELECTIONS; KAREN BRINSON
BELL, in her official capacity as Executive
Director of the North Carolina State Board
of Elections; ALAN HIRSCH, in his
official capacity as Chair of the North
Carolina State Board of Elections; JEFF
CARMON, in his official capacity as
Secretary of the North Carolina State
Board of Elections; STACY EGGERS IV,
KEVIN N. LEWIS, and SIOBHAN
O'DUFFY MILLEN, in their official
capacities as members of the North
Carolina State Board of Elections,

                       Defendants,

and

THE DEMOCRATIC NATIONAL
COMMITTEE,

                       Intervenor-Defendant.

From NCCOA
No. P24-735

**************************************************
**PLAINTIFFS' PETITION FOR WRIT OF SUPERSEDEAS AND FOR
DISCRETIONARY REVIEW**
**************************************************

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................................ iii

INTRODUCTION ................................................................................................................................ 3

FACTUAL AND PROCEDURAL BACKGROUND ........................................................................ 6
I.   Factual Background........................................................................................................... 6
II.  Procedural Background ..................................................................................................... 7

REASONS WHY THIS WRIT SHOULD ISSUE ........................................................................... 9
I.   A Writ Of Supersedeas Will Preserve The Status Quo And Avoid Irreparable Harm To Plaintiffs'
Constitutional Rights.......................................................................................................... 9
II.  Plaintiffs Are Likely To Succeed On The Merits............................................................. 11
III. Plaintiffs Are Likely To Suffer Irreparable Harm Unless Relief Is Granted. ................. 13

PETITION FOR DISCRETIONARY REVIEW ............................................................................. 16
I.   Reasons Why Certification Should Issue ......................................................................... 16
II.  Issue To Be Briefed.......................................................................................................... 18

CONCLUSION.................................................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**                                                                Page(s)

*City of New Bern v. Walker,*
   255 N.C. 355 (1961) ................................................................................. 9

*Craver v. Craver,*
   298 N.C. 231 (1979) ................................................................................. 9

*Dunn v. Blumstein,*
   405 U.S. 330 (1974) ................................................................................. 3

*Hall v. Wake Cnty. Bd. of Elections,*
   280 N.C. 600 (1972) ....................................................................... 3, 6, 12

*James v. Bartlett,*
   359 N.C. 260, 607 S.E.2d 638 (2005) .................................................. 2,3

*Kennedy v. N. Carolina State Bd. of Elections,*
   905 S.E.2d 55 (N.C. 2024) ....................................................................... 9

*State v. Jordan,*
   385 N.C. 753 (2024) ................................................................................. 9

**North Carolina Constitution**

N.C. Const. art. VI § 2 ....................................................................... Passim
N.C. Const. art. I § 10 ........................................................................ 13, 16

**Statutes**

52 U.S.C. § 20301 ...................................................................................... 6

N.C. Gen. Stat. § 1-269 ............................................................................. 9
N.C. Gen. Stat. § 7A-31 ................................................................... 2, 3, 15
N.C. Gen. Stat. § 163-258.1 ....................................................... 6, 10, 15, 16
N.C. Gen. Stat. § 163-89 .......................................................................... 10
N.C. Gen. Stat. § 163-258.2 .......................................................... 6, 4, 8, 16
N.C. Gen. Stat. § 7A-31 ........................................................................... 16

**Rules**

N.C. R. App. P. 15 ..................................................................................... 2
N.C. R. App. P. 23 .................................................................................. 2, 9

No.                                            TENTH JUDICIAL DISTRICT

SUPREME COURT OF NORTH CAROLINA
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| TELIA KIVETT; WANDA NELSON FOWLER; the REPUBLICAN NATIONAL COMMITTEE; and the NORTH CAROLINA REPUBLICAN PARTY<br><br>       Plaintiffs,<br><br>vs.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections; ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; JEFF CARMON, in his official capacity as Secretary of the North Carolina State Board of Elections; STACY EGGERS IV, KEVIN N. LEWIS, and SIOBHAN O'DUFFY MILLEN, in their official capacities as members of the North Carolina State Board of Elections,<br><br>       Defendants,<br><br>and<br><br>THE DEMOCRATIC NATIONAL COMMITTEE,<br><br>     Intervenor-Defendant. | From NCCOA<br>No. P24-735 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**PLAINTIFFS' PETITION FOR WRIT OF SUPERSEDEAS AND FOR DISCRETIONARY REVIEW**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF NORTH CAROLINA:**

Plaintiffs Telia Kivett, Wanda Nelson Fowler, the Republican National Committee, and the North Carolina Republican Party (collectively, "Plaintiffs"), pursuant to N.C. R. App. P. 23, respectfully petitions this Court to issue a writ of supersedeas of the Court of Appeals' October 29, 2024 order denying Plaintiffs a writ of supersedeas and a temporary stay and injunction of the Superior Court's October 21, 2024 order. Plaintiffs seek a simple but necessary solution to remedy an ongoing and increasingly dangerous threat to the integrity of North Carolina's elections. Evidence in the record makes clear that Defendants are allowing, in their own words, an "unknown" number of overseas citizens who have never resided in North Carolina to register and vote in the state's elections. This is an unabashed violation of Article VI § 2 of the state Constitution. Thus, Plaintiffs seek an order enjoining Defendants from counting these potentially illegal ballots and instead segregating and counting them as provisional ballots until the voter's qualifications under all applicable and constitutional state and federal laws can be adequately established. This Court's inherent power to command such actions is well-recognized. *See James v. Bartlett*, 359 N.C. 260, 607 S.E.2d 638 (2005) (holding that NCSBE improperly counted certain identifiable groups of provisional ballots in violation of North Carolina law). Because these ballots are readily identifiable and the harm easily remedied, Plaintiffs respectfully request emergency relief from this Court.

Alongside this petition for a writ of supersedeas, Plaintiffs submit a petition for discretionary review pursuant to N.C. Gen. Stat. § 7A-31(c) and N.C. R. App. P. 15(a), respectfully requesting this Court to certify for discretionary review of the Court of Appeals' October 29, 2024 order denying Plaintiffs' request for a writ of supersedeas regarding the Superior Court's October 21, 2024 order denying Plaintiffs' request for injunctive relief. The October 21, 2024 order is

attached hereto as Exhibit 7. Plaintiffs maintain that review is appropriate because the subject matter of this appeal has significant public interest and involves principles of major significance. *See* N.C. Gen. Stat. § 7A-31(c)(1), (2).

Due to the exigent circumstances presented herein, Plaintiffs respectfully request expedited treatment of these petitions. Defendants are actively allowing certain groups of people who have never resided in the United States, let alone in North Carolina, to participate in the state's ongoing elections in plain violation of Article VI Section 2 of the North Carolina Constitution. As explained below, this Court has the power to grant effective relief prior to November 5, 2024, but it must act swiftly. By acting now this Court can still avoid the irreparable harm which would befall Plaintiffs and the voting populace of North Carolina, should persons ineligible to do so participate in this state's elections, potentially with decisive effect on races up to and including the contest for President of the United States.

## INTRODUCTION

"To permit unlawful votes to be counted along with lawful ballots in contested elections effectively " disenfranchises" those voters who cast legal ballots, at least where the counting of unlawful votes determines an election's outcome." *James v. Bartlett*, 359 N.C. 260, 270, 607 S.E.2d 638, 644 (2005).

Article VI Section 2 of the North Carolina Constitution limits voter qualifications to North Carolina residents and only North Carolina residents. This limitation has been in place since 1868 and has been upheld by this Court. *See Hall v. Wake Cnty. Bd. of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972).[1] It is a fundamental principle of our state's elections: Subject to any

---

[1] Plaintiffs note that in their appellate papers below, both Defendants and Intervenor-Defendant questioned the viability of the North Carolina Constitution's voter residency requirement in light

constitutional federal law to the contrary, only North Carolina residents can participate in North Carolina elections.

This case is about Defendants' failure to adhere to that fundamental principle. Contrary to the constitution, they are allowing certain adults who have resided overseas for their entire lives, many of whom may have never stepped foot in the United States, let alone North Carolina, to nevertheless have a say—a potentially decisive one at that—in the state's November 5, 2024 election results. These "Never Residents" are adults born overseas to U.S. Citizen-parents whose last residence in this country was North Carolina. While Never Residents are U.S. Citizens, they have never resided in North Carolina, and for that reason, they are—and always have been—constitutionally ineligible to vote in this state. Nevertheless, Defendants have inexplicably and unjustifiably opened up North Carolina's ballot boxes to these individuals. This Court must act to ensure North Carolina's elections are, as its Constitution demands, for North Carolinians and only North Carolinians.

North Carolina has notoriously close elections. From the top of the ballot to the bottom, recent memory proves that some of the state's top races can be decided by a few votes. Now more than ever, counting every legitimate vote from every eligible voter—and **only** legitimate votes from eligible voters—matters. Defendants' justification for violating the Constitution does not hold water. They point to a certain provision of North Carolina's Uniform Military and Overseas Voters Act, N.C. Gen. Stat. § 163-258.2(1)(e)(1)(2) ("UMOVA"), as justification for their granting

---

of the Supreme Court case, *Dunn v. Blumstein*, 405 U.S. 330 (1974). However, *Dunn* and its progeny make clear that *bona fide* residency requirements, such as the one in Article VI Section 2, are perfectly acceptable and remain in full effect. *See id.* at 343; *see also Holt Civic Club v. City of Tuscaloosa*, 439, U.S. 60, 68-69 (1978). As such, any attempts to conflate North Carolina's constitutional residency requirement with that of *Dunn* is both misplaced and of no effect.

voting rights to Never Residents. But a statute cannot override the Constitution. And Defendants must enforce the Constitution first and foremost.

The consequences of Defendants' conduct are significant. First, they are allowing ineligible persons to participate in North Carolina's elections, with potentially decisive effect. This year, the potential consequences are particularly dire, as the results of the presidential election *in this state* could very well determine the race. To state it plainly: If the margin of victory in this state is less than the number of ballots cast by Never Residents, the President of the United States very well may be elected by votes cast by persons ineligible to participate in the state's elections. Second, although Never Residents are supposed to register at the address at which their parents lived 18 or more years ago when they departed the United States, they have no personal knowledge that their parents ever lived at any such address. After all, they never lived at that address. And Defendants do not take *any steps at all* to verify Never Residents' claim to be connected to any given address. As a result, Never Residents can effectively float their vote throughout the state, picking and choosing the congressional, legislative, or other districts in which they feel their vote might have the most impact.

The Superior Court and Court of Appeals substantially erred when they denied Plaintiffs the narrowly tailored but vitally important requested relief. The Superior Court based its denial in large part on its view that there was no evidence of a Never Resident having yet actually voted. But that is belied by Defendants' own admissions. And even if it were true that Never Residents have never voted in North Carolina's elections, that would only confirm that *no harm* whatsoever could come from a judicial decree compelling Defendants to enforce the Constitution of this state preventing them from doing so in this election. Considering the quickly closing window for effective pre-election relief, Plaintiffs turn to this Court seeking a writ of supersedeas and a petition

for discretionary review. Absent this Court's issuance of a writ of supersedeas, staying the Court of Appeals' order and preserving the status quo, Plaintiffs will suffer irreparable harm.

<h2 style="text-align:center">FACTUAL AND PROCEDURAL BACKGROUND</h2>

## I.    FACTUAL BACKGROUND

The North Carolina Constitution explicitly limits voting eligibility to residents of the state, providing: "Any person who has resided in the State of North Carolina for one year and in the precinct, ward, or other election district for 30 days next preceding an election, and possesses the other qualifications set out in this Article, shall be entitled to vote at any election held in this State." *See* Complaint ("Compl."), at ¶ 2 (attached hereto as Exhibit 1); *see also Hall v. Wake Cnty. Bd. of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972).

North Carolina law, N.C. Gen. Stat. § 163-258.1, *et seq.* ("UMOVA"), identifies several categories of U.S. citizens, including both military personnel, their dependents, and certain civilians, who may vote in North Carolina despite living overseas.[2] The vast majority of UMOVA is unobjectionable; it largely confers voting rights on citizens that already have those exact came rights pursuant to a federal law–52 U.S.C. § 20301, *et seq.*, the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"). Further UMOVA generally confers voting rights only on people who have, at some point, actually resided in North Carolina. UMOVA has one provision which differs from UOCAVA—subsection (1)(e). This subsection is the vehicle by which Defendants are conferring the right to vote in North Carolina upon people who have never lived in the United States, let alone this state.

---

[2] Plaintiffs are not challenging the eligibility of uniformed service members and their spouses and qualified dependents to vote in North Carolina under both federal law and provisions of state law which are not at issue here. To be clear, nothing in Plaintiffs' requested relief would in any way impact affect these voters' rights. *See* N.C. Gen. Stat. § 163-258.2(1)(a)-(d); *see also* 52 U.S.C. § 20310(1).

Defendants can easily identify and segregate ballots received from Never Residents. That is because when an overseas person registers to vote in North Carolina they submit either a Federal Post Card Application ("FPCA") or a Federal Write-In Absentee Ballot ("FWAB"). *See* Compl. at ¶¶ 47-49. North Carolina's FPCA form contains an option for a registrant to certify that they are a United States citizen who has *never* lived in the United States. *See id.* at ¶ 48; *see also* NC FPCA, attached hereto as Exhibit 6.This box is a massive red flag for Never Residents attempting to vote, thus warranting immediate further inquiry. Evidence in the record makes clear that Defendants have instructed county elections officials to accept and process applications from persons who register to vote by selecting this option without any further inquiry into the registrants' qualifications to vote. *Id.* at ¶¶ 45-51.

Defendants are acutely aware of these registrations and ballots. *See* Compl. at Ex. A. Defendants have separately identified and segregated these registrations for use in other contexts. *See id.* Defendants have also marketed to the public the exact process by which Never Residents could register to vote and apply for absentee ballots in North Carolina. *Id.* at ¶ 50. Thus, upon information and belief, Defendants have allowed and will continue to allow Never Residents to register and participate in North Carolina elections. *Id.* at ¶¶ 51, 53. *See* Defs. Brf. in Opp. to Mtn. for PI, at p. 2 (noting that "many" Never Residents "**have almost certainly already cast ballots.**") (emphasis added).

## II.    PROCEDURAL BACKGROUND

On October 2, 2024, Plaintiffs filed their Verified Complaint. On October 11, 2024, Plaintiffs filed their Motion for Preliminary Injunction ("Motion for PI"). Then, on October 21, 2024, the Motion for PI was heard before the Honorable Judge John W. Smith. In their Motion for PI, Plaintiffs asked the Court to enter an order directing Defendants to instruct the county boards

of election to immediately separate and segregate ballots received from readily identifiable potential Never Resident voters and hold them pending confirmation of the person's qualifications to vote in the state. *See* Motion for PI, attached hereto as Exhibit 4, at ¶¶ 35-37. Plaintiffs made clear that once that confirmation is made—whether through NCSBE independently determining the person is covered by federal law or an unchallenged section of UMOVA, or by the individual offering proof of qualification once contacted—that the vote can and should be counted by the canvass date. *See id.*

On October 21, 2024, Judge Smith denied the Motion for PI (the "Order"), finding that Plaintiffs had failed to meet their burden insofar as they did not identify a specific Never Resident voter whom Defendants had allowed to vote. Judge Smith further stated his personal opinion, completely at odds with Defendants' position in this litigation, that Defendants would not "knowingly" allow such persons to vote in the state's election. Order at ¶ 5. Judge Smith also held that Plaintiffs would have an adequate remedy at law, should Never Resident votes be cast in the state's elections. *Id.* at ¶ 8. However, the Order did not specifically identify what that "remedy" might be. *Id.* Additionally, the Order artificially narrowed Plaintiffs' claims to ones of "fraudulent[ ]" voting occurrences under § 163-258.2(1)(e)(1)(2). *Id.* at ¶ 4.[3]

Plaintiffs filed their Notice of Appeal with the trial court on October 22, 2024. *See* Ex.5. Soon thereafter Plaintiffs filed a petition for writ of supersedeas with the Court of Appeals, based on the fact that the Order failed to prevent serious and ongoing violations of the North Carolina Constitution, all of which are readily and easily redressable, the beginning of early voting notwithstanding. As a result, Plaintiffs filed their petition to preserve the status quo—i.e., uphold

---

[3] This standard reflects an erroneous view of Plaintiffs' allegations as the Complaint and Motion for PI focused on Defendants misleading Never Residents into believing they were eligible to vote in North Carolina. Plaintiffs do not allege claims of "fraudulent" voting.

and reaffirm the Constitution's longstanding residency requirement by segregating ballots cast by potential Never Resident voters—until Plaintiffs' appeal can be heard. On October 29, 2024, the Court of Appeals, denied Plaintiffs' petition. *See* Ex. 4. The Court of Appeals' order failed to meaningfully address the substantial and heightened risk of harm caused by Defendants' actions. Because the risk of irreparable harm to Plaintiffs due to Defendants' ongoing Constitutional violations has significantly increased even since the Superior Court and the Court of Appeals' orders, a writ of supersedeas should be issued.

## **REASONS WHY THIS WRIT SHOULD ISSUE**

## I.  **A WRIT OF SUPERSEDEAS WILL PRESERVE THE STATUS QUO AND AVOID IRREPARABLE HARM TO PLAINTIFFS' CONSTITUTIONAL RIGHTS.**

The purpose of a writ of supersedeas is "to preserve the status quo pending the exercise of the appellate court's jurisdiction" and "is issued only to hold the matter in abeyance pending review." *City of New Bern v. Walker*, 255 N.C. 355, 356, 121 S.E.2d 544, 545-46 (1961). A writ of supersedeas is available "to stay the . . . enforcement of any . . . order, or other determination of a trial tribunal which is not automatically stayed by the taking of appeal when an appeal has been taken . . . ." N.C. R. App. P. 23(a)(1); *see also* N.C. Gen. Stat. § 1-269 (authorizing the writ of supersedeas). "The writ of supersedeas may issue in the exercise of, and as ancillary to, the revising power of an appellate court," and the writ's purpose "is to preserve the status quo pending the exercise of appellate jurisdiction." *Craver v. Craver*, 298 N.C. 231, 237-38, 258 S.E.2d 357, 362 (1979); *see also City of New Bern v. Walker*, 255 N.C. 355, 121 S.E.2d 544, 545-46 (1961). Based upon the limited record before the Court at this juncture, the Court's review is limited to the legal questions presented and Plaintiffs have provided substantial evidence to support their legal theories, thus warranting the narrow relief requested. *See Kennedy v. N. Carolina State Bd. of*

*Elections*, 905 S.E.2d 55 64-65 (N.C. 2024) (Dietz, J., dissenting) (citing *State v. Jordan*, 385 N.C. 753, 757, 898 S.E.2d 279 (2024)).

In this case, a writ of supersedeas is proper because it would preserve the status quo immediately prior to the trial court's Order. Specifically, Never Residents will, consistent with the Constitution of this state, not be allowed to participate in the state's elections. This has been the status quo in North Carolina since 1868. The trial court's Order eviscerates that well-established principle based on little more than an observation that N.C. Gen. Stat. § 163-258.1 *et seq.* was passed in 2011 and that the RNC and NCGOP have engaged in general elections without litigation since 2011. Order at ¶ 3. This passing—and irrelevant—observation does little to account for the substantial rights implicated and the potential harm facing Plaintiffs should Never Residents' ballots be counted. *See* Compl. at ¶¶ 79-83. As such, the true status quo—the status quo reflected in our Constitution—should remain while this Court reviews and addresses that Order.[4] By refusing to provide injunctive relief, the Order, without any justification, cancels Plaintiffs' statutory and constitutional rights, inflicting grave harm on them while votes from Never Residents are freely cast and counted in an election expected to be decided by a razor-thin margin. And while the trial court's order generally refers to Plaintiffs having "adequate remedies at law" should Never Resident votes be cast,[5] this finding is simply wrong. It premised on the tenuous assumption that Plaintiffs would be able to timely identify and challenge such ballots after they have been

_____

[4] Defendants and Intervenor-Defendant both argued in their appellate papers that the status quo here is limited to the passage of UMOVA in 2011 to the present. To the extent this argument is grounded in an unconstitutional application of UMOVA, Plaintiffs maintain that this cannot constitute the basis for denying Plaintiffs their requested relief.

[5] It is unclear from the Order what the trial court meant in this regard. However, based upon the court's questioning at the October 21, 2024 hearing, Plaintiffs interpret this reference to mean a post-election voter challenge. That would be no remedy to the harms alleged in this suit which will be complete and irreparable after November 5, 2024.

tabulated. *See* N.C. Gen. Stat. § 163-89. And any remedy available to Plaintiffs, at any time, will necessarily be injunctive—and thus equitable in nature.

## II.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Plaintiffs have established a reasonable likelihood of success on the merits of their claims through, *inter alia*, pointing to Defendants' own guidance to both county elections officials and the public in general, all of which clearly establish that Defendants allow Never Residents to register and vote in North Carolina's elections. Compl. ¶¶ 50 n. 4, 64-72. Based on the evidence presented it is evident that Defendants are actively violating the Constitution and Plaintiffs' rights thereunder.

Defendants' first effort to resist the obvious conflict between the North Carolina Constitution and UMOVA is to cast this litigation as an effort to disenfranchise American Citizens. This rhetoric is detached from reality. North Carolina has never lawfully conferred the franchise on Never Residents in the first place. But for Defendants' actions here, this would remain the case. People who have not been lawfully enfranchised, cannot be disenfranchised. Further, Plaintiffs' requested relief which would simply require ballots to be segregated until a Court determines that Never Residents likely can lawfully vote in this state or until Defendants otherwise confirm voter qualifications, is readily attainable and necessary.[6]

Next, Defendants try to say that the legislature can, under Article VI § 2(2) of the North Carolina Constitution, eliminate the residency requirement by "reduc[ing] the time of residence to

---

[6] In the October 21, 2024 hearing Defendants did not take the position that they cannot comply with the relief Plaintiffs request, rather, Defendants' arguments solely rested on the alleged burden they contend compliance would create. Defendants did not introduce any evidence of burden into the record, effectively waiving the argument for purposes of this motion.

zero." This is nonsensical.[7] If Defendants were correct that the North Carolina Constitution empowers the legislature to reduce residency to zero, then it could extend the franchise to any United States citizen, including South Carolinians, Texans, and even residents of far-flung territories like Guam. There is no evidence, *anywhere*, that the North Carolinians who ratified that section of the Constitution so radically surrendered their sovereignty when they enhanced the legislature's flexibility to reduce the residency period solely for President and Vice President.

In any event, there is no support in the text of UMOVA for the novel proposition that it reduces the residency requirement to zero. UMOVA itself references the state's "residency requirement." N.C. Gen. Stat. § 163-258.2(1)(e). There is only one such requirement and it is set forth in Article VI, § 2(1). UMOVA purports to exempt persons from that requirement. It does not reduce that requirement..

Lastly, Defendants argue that Never Residents somehow "inherit" North Carolina residency from their parents. As they see it, so long as a Never Resident's parent never formed an intent to remain overseas, they retained their North Carolina residency and passed that residency on to their children, who are now voting-age adults. This argument fails on many fronts. To begin, there is no reason to believe that Never Residents' parents remained North Carolina residents while overseas for at least 18 years. Second, even if some did, there is no reason to believe that their now adult children—the Never Residents themselves—never formed an intent to remain overseas. Third, the argument ignores that while children might share a residence with their parents since they have limited autonomy to decide where to live, the same is not true for adults. And every

---

[7] Although Defendants' interpretation of Article VI is incorrect, if it were accurate, it would only entitle a Never Resided individual to vote for President and Vice President. Defendants have not argued, nor have they presented any evidence to show that they are in fact limiting these voters to only voting for President and Vice President.

Never Resident is, indisputably, an adult. Finally, Defendants' argument ignores the fact that North Carolina law is clear that residency is established first by "presence" and second by an "intent to remain," and for those who have departed the state, by an "intent to return." *See Hall v. Wake Cnty. Bd. of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972). To have an "intent to return," to a place, an adult must first have lived in that place. Never Residents cannot satisfy that requirement because, by definition, they have never lived in North Carolina.

Finally, while the trial court's Order faulted Plaintiffs for not being able to specifically identify a Never Resident voting in the ongoing election, it ignored the fact that Defendants implicitly conceded that these voters exist, just that the number of voters is, at this point, unknown. Thus, as was explained to the trial court, the exact extent of harm caused by Never Residents will be uncovered in discovery. However, the heightened risk of Never Resident votes illegally infecting North Carolina's election results clearly exists, and coupled with the record evidence which shows Defendants' acute awareness of these voters, proves why Plaintiffs' narrowly tailored injunctive relief remains necessary.

## III. PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM UNLESS RELIEF IS GRANTED.

Plaintiffs' undeniable constitutional and statutory rights to vote in free and fair elections, where only qualified voters participate, are at immediate risk, absent an injunction. *See* N.C. Const. art. VI § 2; *see also* N.C. Const. art. I § 10. This harm will be immensely exacerbated, should relief not be granted before the November 5, 2024 election. Simply put, the bulk of the damage will already be done. The trial court and Court of Appeals chose to ignore this risk, relegating it to conclusory labels despite ample record evidence warranting the narrow relief Plaintiffs seek.

In contrast, Defendants will suffer little if any harm, should the injunction issue. Registration and absentee application forms submitted by Never Residents are readily and easily

identifiable as seen by evidence attached to the Complaint. *See* Compl. at Ex. A. As these exhibits make clear, Defendants have previously directed their staff to run reports to filter down to certain registrants. *Id.* Defendants can run those same reports and cross-reference them with ballots received from those registrants, then segregate those ballots until the voter's qualifications under all applicable and constitutional state and federal law can be adequately established.

Additionally, the relief Plaintiffs seek is in both form and function identical to actions Defendants are already taking. For example, if an in-person voter forgets their identification and does not certify a reasonable impediment, then the voter's ballot is cast as provisional, pending them providing the necessary information to the county boards.

Defendants can identify, locate, and segregate ballots returned by potential Never Residents. Accordingly, the applications, registrations, and any ballots cast by Never Residents are both readily identifiable and should be segregated until such point that the voters' qualifications can be adequately established. As Plaintiffs made clear to the trial court, just because a registrant selects the aforementioned FPCA option does not mean their registration or vote is *per se* invalid, rather, it operates as the starting point for relief and a warning sign for possible Never Residents attempting to vote.[8] Considering the severe and irreparable risk of harm created by Never Resident voting, Plaintiffs' narrowly-tailored relief is that much more necessary and the public interest favors such relief.

In both their briefings and the October 21, 2024 hearing, Defendants and Intervenor-Defendants raised the specter of voter disenfranchisement and reliance, but both arguments are

---

[8] Because there are potentially conceivable circumstances where an otherwise qualified registrant may check the identified FPCA or FWAB options, Plaintiffs' requested relief is narrowly tailored to require Defendants to confirm voter qualifications instead of presuming them. This significantly addresses the risk of Never Resident voters while providing qualified voters the opportunity to confirm their ability to vote in North Carolina under all relevant state and federal laws.

misplaced. First, as explained throughout, Plaintiffs do not ask the Court to engage in any *per se* vote rejection. Instead, Plaintiffs have identified Defendants' ongoing and increasing violations of the state Constitution which demand immediate relief in the form of a simple additional layer of inquiry. Second, because Never Residents would have resided outside of the United States for at least eighteen (18) years, there is no justifiable reliance interest at issue here. Never Residents, by their very nature, are adults who have never lived in the state and have taken no actions to establish residency in North Carolina.[9] In the October 21, 2024 hearing Defendants tellingly argued to the trial court that, had these persons known they might not be able to vote in North Carolina, then they might have looked to register elsewhere. That is exactly the issue. Defendants' implicit advocacy for voter registration forum-shopping proves Plaintiffs' point; the Gene ral Assembly could not have intended for N.C. Gen. Stat. § 163-258.2(1)(e)(1)(2) to be applied in such a manner.

Defendants are already constitutionally prohibited from allowing Never Residents to vote in North Carolina's elections. Thus, to the extent Defendants claim a burden in having to ensure residency requirements of a group of individuals, the same is already required by North Carolina law. In sum, the equities favor Plaintiffs especially insofar as they are seeking to vindicate pre-established rights and protect the validity of their votes.

As Plaintiffs have repeatedly explained, the relief they seek is narrowly tailored and readily attainable, yet it avoids an immense and imminent harm. Defendants are already actively segregating ballots and counting them as provisional pending voter qualification confirmation in other contexts; that is all Plaintiffs seek here. To the extent there is any doubt whatsoever, the Court should err on the side of caution, ordering Defendants to immediately identify and separate

---

[9] For this consideration in balancing the equities, it is also worth noting that there are other instances of U.S. citizens who cannot vote in a state's elections such as U.S. citizens residing in U.S. territories.

these ballots until the voter's qualifications under all constitutional state and federal laws can be confirmed or until a Court determines that Never Residents likely can lawfully vote in this state. Indeed, once these ballots are counted, there is no going back.

<div align="center">*    *    *    *</div>

<div align="center">

**PETITION FOR DISCRETIONARY REVIEW**

</div>

Pursuant to N.C. Gen. Stat. § 7A-31(c) and Rule 15(a) of the North Carolina Rules of Appellate Procedure, Defendants respectfully petition this Court to certify discretionary review of the Court of Appeals' October 29, 2024 order denying Plaintiffs' request for a writ of supersedeas regarding the Superior Court's October 21, 2024 order denying Plaintiffs' request for injunctive relief.

Review is appropriate because of the significant public interest involved and the serious legal principles at issue, all of which directly affect North Carolina's constitution and its election integrity. *See* N.C. Gen. Stat. § 7A-31(c)(1) and (2).

## I.    REASONS WHY CERTIFICATION SHOULD ISSUE

Plaintiffs incorporate by reference the background section set forth in their petition for writ of supersedeas.

North Carolina General Statute 7A-31 allows this Court to certify a decision of the Court of Appeals for discretionary review when the decision is one of "significant public interest" or when it "involves legal principles of major significance." *Id.* at (c)(1) and (2). Each of these options are soundly established.

First, the issue presented—whether or not Defendants' allowing Never Residents to vote in North Carolina's elections is a violation of the state Constitution's residency requirement and whether such a practice violates Plaintiffs' clearly established constitutional rights—is one of foundational election integrity and, by its nature, a significant public interest. As explained in their petition for writ of supersedeas, Defendants are applying North Carolina law in such a way that flies in the face of the state Constitution and infringes Plaintiffs' rights. The North Carolina public certainly has an interest in ensuring its elections are determined only by the votes of qualified voters. Absent relief from this Court, Defendants would allow Never Residents to pick and choose which races they want to affect and potentially sway with their votes, regardless of any connection—or lack thereof—to the district(s) and race(s) they choose to vote in. This directly implicates several provisions of the state Constitution, including Article I Section 10.

Second, the Court of Appeals' decision to reject Plaintiffs' petition below involved extremely significant legal principles. Namely, Defendants' practice of applying N.C. Gen. Stat. § 163-258.1 *et seq.* to allow Never Resident voting directly conflicts with the state Constitution and the rights of Plaintiffs derived thereunder. As explained prior, Defendants' and Intervenor-Defendant's attacks on the validity of North Carolina's residency requirement, along with their reading of N.C. Gen. Stat. § 163-258.2(1)(e)(1)(2) to implicitly eliminate the state's residency requirement by "reducing" it to zero days, defy the plain text of the Constitution and statute, and cannot be squared with common sense or canons of statutory interpretation. *See, e.g. Mazda Motors of Am., Inc. v. Sw. Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979). Additionally, Plaintiffs have made it abundantly clear that covered military members and their spouses and qualified defendants are in no way impacted by the relief Plaintiffs seek. Thus, Defendants have failed to articulate a colorable basis for allowing Never Resident voting in North

Carolina. Therefore, this case directly implicates this Court's role to provide guidance on significant legal issues, including those affecting the interpretation of the North Carolina Constitution.

## II.    ISSUE TO BE BRIEFED

If the Court allows the petition, Plaintiffs will offer the following issue for briefing:

> Did the Court of Appeals err by denying Plaintiffs' petition for a writ of supersedeas and motion for temporary stay requesting the identification, segregation, and confirmation of ballots received from potential Never Residents?

## CONCLUSION

Plaintiffs respectfully request that this Court grant their petition for writ of supersedeas and, if the Court determines a review of the Court of Appeals' decision below is necessary, then allow discretionary review of the question presented herein.

Respectfully submitted, this, the 1st day of November, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
By: */s/   Phillip J. Strach*
Phillip J. Strach
North Carolina State Bar No. 29456
Jordan A. Koonts
North Carolina State Bar No. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Petition for Writ of Supersedeas and Petition for Discretionary Review was served upon the persons indicated below via electronic mail addressed as follows:

Sarah G. Boyce
Terence Steed
Mary Carla Babb
sboyce@ncdoj.gov
tsteed@ncdoj.gov
mcbabb@ncdoj.gov

*Counsel for Defendants*

Jim W. Phillips, Jr.
Shana L. Fulton
William A. Robertson
James W. Whalen
Eric M. David
jphillips@brookspierce.com
sfulton@brookspierce.com
wrobertson@brookspierce.com
jwhalen@brookspierce.com
edavid@brookspierce.com

Christopher E. Babbitt
Daniel S. Volchok
Christopher.babbitt@wilmerhale.com
Daniel.volchok@wilmerhale.com

*Counsel for Intervenor-Defendant*

This, the 1st day of November, 2024.

/s/ Phillip J. Strach
Phillip J. Strach

## VERIFICATION

The undersigned attorney for Plaintiffs, after being duly sworn, says:

The contents of the foregoing petition are true to my knowledge, except those

matters stated upon information and belief and, as to those matters, I believe them to be true.

Pursuant to Appellate Rule 23, I also hereby certify that the documents attached to this

Petition for Writ of Supersedeas are true and correct copies of the pleadings and other documents

in the file in Wake County Superior Court, including documents that were served or submitted for

consideration as contemplated by Appellate Rule 11.

_____
Jordan A. Koonts


Wake County, North Carolina

Sworn and subscribed before me this 1st day of November, 2024.

Jessica Liliana Phoenix

Notary's Printed Name, Notary Public

My Commission Expires: May 2, 2029

[Notary Seal]

JESSICA LILIANA PHOENIX
NOTARY PUBLIC
Wake County
North Carolina
My Commission Expires May 2, 2029

## **ATTACHMENTS**

Attached to this Petition for Writ of Supersedeas and Motions for Temporary Stay are copies of the following documents from the trial court record:

Exhibit 1     Complaint, filed October 2, 2024 and all exhibits thereto.

Exhibit 2     Summonses to (i) North Carolina State Board of Elections; (ii) Karen Brinson Bell, in her official capacity as Executive Director of the North Carolina State Board of Elections; (iii) Alan Hirsch, in his official capacity as Chair of the North Carolina State Board of Elections; (iv) Jeff Carmon, in his official capacity as Secretary of the North Carolina State Board of Elections; (v) Stacy Eggers IV, (vi) Kevin N. Lewis, and (vii) Siobhan O'Duffy Millen, in their official capacities as members of the North Carolina State Board of Elections, all issued on October 2, 2024

Exhibit 3     Motion for Preliminary Injunction

Exhibit 4     Order on Plaintiff's Motion for Preliminary Injunction

Exhibit 5     Plaintiff's Notice of Appeal, filed 22 October 2024

Exhibit 6     North Carolina Federal Postcard Application – as presented by Defendants' Counsel at October 21, 2024 hearing.

Exhibit 7     Court of Appeals Order on Plaintiffs' Petition for Writ of Supersedeas and Motion for Temporary Stay and Temporary Injunction.

# EXHIBIT 1

24CV031557-910

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | Case No.: 24 CV _____ |

TELIA KIVETT; WANDA NELSON
FOWLER; the REPUBLICAN NATIONAL
COMMITTEE; and the NORTH CAROLINA
REPUBLICAN PARTY,

               *Plaintiffs*

v.

NORTH CAROLINA STATE BOARD OF
ELECTIONS; KAREN BRINSON BELL, in
her official capacity as Executive Director of
the North Carolina State Board of Elections;
ALAN HIRSCH, in his official capacity as
Chair of the North Carolina State Board of
Elections; JEFF CARMON, in his official
capacity as Secretary of the North Carolina
State Board of Elections; STACY EGGERS
IV, KEVIN N. LEWIS, and SIOBHAN
O'DUFFY MILLEN, in their official
capacities as members of the North Carolina
State Board of Elections,

               *Defendants.*

**COMPLAINT**

NOW COMES Plaintiffs Telia Kivett, Wanda Nelson Fowler (collectively "Individual Plaintiffs"), the Republican National Committee ("RNC"), and the North Carolina Republican Party ("NCGOP") (collectively, " Plaintiffs"), by and through undersigned counsel and pursuant to Rules 7 and 57 of the North Carolina Rules of Civil Procedure and N.C. Gen. Stat. § 1-253 *et seq.*, files this Complaint for Declaratory Judgment against Defendants the North Carolina State Board of Elections ("NCSBE") and its members, Alan Hirsch, Jeff Carmon, Siobhan Millen, Stacy Eggers IV, and Kevin Lewis in their respective official capacities, and the NCSBE's Executive

1

Director Karen Brinson Bell (collectively "Defendants"). Plaintiffs seek a declaratory judgment and preliminary and permanent injunctive relief confirming that certain provisions of North Carolina law, specifically, Article 21a of the North Carolina General Statutes, violate Article VI § 2 of the North Carolina Constitution, and remedying the same. In support, Plaintiffs allege as follows:

## INTRODUCTION

1.      The North Carolina Constitution limits voter qualifications to North Carolina residents and only North Carolina residents.

2.      As set forth in Article VI § 2 of the state Constitution, "Any person who has resided in the State of North Carolina for one year and in the precinct, ward, or other election district for 30 days next preceding an election, and possesses the other qualifications set out in this Article, shall be entitled to vote at any election held in this State."

3.      This fundamental voter qualification requirement has been repeatedly reaffirmed by the North Carolina Supreme Court. *See, e.g., Hall v. Wake Cnty. Bd. of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972) ("Since 1868 our Constitution has required a voter to be a person who has 'resided' in the State.").

4.      Congress enacted the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301, *et. seq.* ("UOCAVA") to ensure our military servicemembers and certain other overseas citizens may register and vote in federal elections in a state they are temporarily absent from or previously resided. UOCAVA has the effect of partially preempting state residency requirements for *some*, but not all, overseas voters.

5.      Despite the state Constitution's unambiguous requirement of residency as a prequalification to vote, North Carolina's Uniform Military and Overseas Voters Act ("UMOVA")

2

purports to extend voter qualifications to certain individuals not covered by UOCAVA and who do not and have never resided in North Carolina. *See* N.C. Gen. Stat. § 163-258.2(1)(e). Specifically, UMOVA defines "covered voter"—a person entitled to all of the voter eligibility, registration, and absentee ballot privileges afforded by the law—to include certain persons overseas who never actually resided in North Carolina. *Id.* Indeed, these overseas "covered voters" may never have resided *anywhere* in the United States, let alone North Carolina. This is a group of voters that fall outside the scope of UOCAVA.

6.    As a result, under UMOVA, certain people not covered by UOCAVA who have never resided in North Carolina (or perhaps anywhere else in this country) are registering to vote and voting in all its elections, including local, state, and federal contests, statewide ballot measures, and any other election where absentee ballots are employed. *See* N.C. Gen. Stat. § 163-258.3.

7.    This is not only a violation of the North Carolina Constitution, but, as applied to Plaintiffs, it dilutes their votes and harms their organizational missions.

8.    Further, North Carolina election officials have unlawfully treated UMOVA voters as if they were UOCAVA voters, including by exempting them from voter identification requirements found in N.C. Gen. Stat. § 163-166.12 that apply to first-time voters. Only UOCAVA voters—not UMOVA voters—are entitled to exemption from those requirements. Accordingly, North Carolina election officials have registered to vote people who have never resided in North Carolina and have allowed them to vote in North Carolina's state and federal election without taking the required steps to verify their identities. This not only exposes our elections to substantial risk of fraud and other misconduct, but it is contrary to state law.

## PARTIES

9.    Telia Kivett is a resident of Salemburg, North Carolina. She is a registered Republican voter in Sampson County. Ms. Kivett has voted in previous local, state, and federal

3

elections and she intends to vote in future elections. As a concerned citizen and a registered voter in North Carolina, Ms. Kivett has an interest in protecting her vote from being diluted by votes cast by individuals who were unlawfully registered as a result of Defendants' unconstitutional actions.

10.     Wanda Nelson Fowler is a resident of Cape Carteret, North Carolina. She is a registered Republican voter in Carteret County. Ms. Fowler has voted in previous local, state, and federal elections and she intends to vote in future elections. As a concerned citizen and a registered voter in North Carolina, Ms. Fowler has an interest in protecting her vote from being diluted by votes cast by individuals who were unlawfully registered as a result of Defendants' unconstitutional actions.

11.     The Republican National Committee is the national committee for the Republican Party; representing all registered Republicans across both the state and nation, as well as the values they stand for. The RNC serves as the collective voice for the Republican Party's platform. It is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14) and a political party as defined by N.C. Gen. Stat. § 163-96. The RNC's principal place of business is 310 First Street SE, Washington, D.C.

12.     The RNC's core mission involves organizing lawful voters and encouraging them to support Republican candidates at all levels of government, including throughout North Carolina. The RNC expends significant time and resources fighting for election security and voting integrity across the nation, including in North Carolina. These efforts are intended to ensure that the votes and voices of its members, its candidates, and the party are not silenced or diluted in any way. Recent rises in non-citizens and other unqualified persons voting or seeking to vote in elections

4

has forced the RNC to divert its efforts and funds in order to hold elections officials accountable to what both federal and state laws require.

13.     The North Carolina Republican Party is a state committee of the Republican Party, as defined by 52 U.S.C. § 30101(15), and a political party as defined by N.C. Gen. Stat. § 163-96. The NCGOP represents the interests of registered Republicans across North Carolina. Its headquarters and principal place of business is 1506 Hillsborough St, Raleigh, NC 27605. The NCGOP represents the interests of registered Republican voters, residing across all one hundred counties in the state. The NCGOP also advocates for the interests of tens of thousands of non-affiliated voters who align with various aspects of the Republican Party platform.

14.     The NCGOP's mission and platform largely mirror that of the RNC, including an emphasis on election integrity and security. The NCGOP's core mission includes counseling interested voters and volunteers on election participation including hosting candidate and voter registration events, staffing voting protection hotlines, investigating reports of voter fraud and disenfranchisement, and providing election day volunteers in all one hundred counties across North Carolina. The NCGOP spends tremendous time and effort advocating for its members throughout all levels of state government, working to make sure they are heard both at the ballot box and beyond.

15.     The RNC and NCGOP have organizational standing to bring this action. Defendants' as-applied violations of the State Constitution directly impact the RNC and NCGOP's core organizational missions of election security and providing services aimed at promoting Republican voter engagement and electing Republican candidates for office. Defendants' violations of the State Constitution have forced the RNC and NCGOP to divert significantly more of their resources into combatting election illegalities in North Carolina. The RNC and NCGOP's

5

organizational and voter outreach efforts have been and will continue to be significantly stymied due to Defendants' ongoing failures. As a result, the RNC and NCGOP will have no choice but to expend increased amounts of time and money, beyond what they would have already spent, in order to combat this unwarranted interference with their central activities. For example, because of Defendants' violations of the State Constitution, the RNC and NCGOP will need to commit added time and resources into monitoring North Carolina's voter rolls, voter activity, and responding to instances of potential illegal voting in upcoming elections—tasks required of Defendants by law.

16. Additionally, the NCGOP has associational standing because its members have standing in their own right to challenge Defendants' actions here. The NCGOP represents millions of registered Republican voters across the state of North Carolina, including at least one registered Republican voter in every one of the state's one hundred counties, which is a matter of public record. The NCGOP's members are directly harmed by non-resident voters registering and voting in the state's elections. These members' votes are undoubtedly diluted as a result ineligible voters participating in elections due to Defendants' actions. Additionally, these members' rights to participate in a fair and secure electoral process, free from illegal voting, will be significantly hindered. Ensuring such freedom and security in all elections throughout North Carolina is germane to the NCGOP's organizational mission.

17. Plaintiffs are further harmed in their ability to effectively compete in elections across the state as Defendants' refusal to ensure that only qualified voters may register and vote in the state's elections risks opening the door to potentially illegal voting and inaccurate election results.

6

18.     The North Carolina State Board of Elections is the state agency tasked with "general supervision over primaries and elections of the state." *See* N.C. Gen. Stat. § 163-22. NCSBE is tasked with ensuring that elections in North Carolina comply with all relevant state and federal laws and, in NCSBE's own words, "ensur[ing] that elections are conducted lawfully and fairly." The NCSBE is the agency responsible for implementing UMOVA. *See* N.C. Gen. Stat. § 163-258.4.

19.     Karen Brinson Bell is the Executive Director of NCSBE and the state's "Chief Election Official" as defined by N.C. Gen. Stat. § 163-82.2. In this capacity, Ms. Brinson Bell oversees elections in all one hundred counties in North Carolina and administers all elections occurring therein. *See* N.C. Gen. Stat. § 163-27(d). Ms. Brinson Bell is sued in her official capacity.

20.     Alan Hirsch is the Chair of NCSBE. He resides in Chapel Hill, North Carolina. Mr. Hirsch is sued in his official capacity.

21.     Jeff Carmon is the Secretary of NCSBE. He resides in Snow Hill, North Carolina. Mr. Carmon is sued in his official capacity.

22.     Stacy Eggers, IV is a member of NCSBE. He resides in Boone, North Carolina. Mr. Eggers, IV is sued in his official capacity.

23.     Kevin N. Lewis is a member of NCSBE. He resides in Rocky Mount, North Carolina. Mr. Lewis is sued in his official capacity.

24.     Siobhan O'Duffy Millen is a member of NCSBE. She resides in Raleigh, North Carolina. Ms. Millen is sued in her official capacity.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over the claims asserted herein pursuant to N.C. Gen. Stat. § 1-253, *et seq.* and N.C. Gen. Stat. 7A-245.

7

26.     This Court has personal jurisdiction over NCSBE as it is a state agency in North Carolina.

27.     This Court has personal jurisdiction over Executive Director Karen Brinson Bell, Chair Alan Hirsch, Secretary Jeff Carmon, Stacy Eggers IV, Kevin Lewis, and Siobhan O'Duffy Millen as each is sued in their official capacities as appointed officials in North Carolina. Each is a citizen of North Carolina and each resides in the state.

28.     Venue is proper in this court pursuant to N.C. Gen. Stat. § 163-22(l) and N.C. Gen. Stat. § 1-82.

## FACTUAL ALLEGATIONS

29.     As alleged above, the North Carolina Constitution limits voting eligibility to persons who are residents of the state. N.C. Const. art. VI, § 2.

30.     For presidential elections, the state Constitution allows the General Assembly to reduce the time of residency requirement for those who wish to vote. *Id.* at § 2(2). It does not, however, allow for any alteration to the prerequisite of actual residency.

### I.  *UMOVA Purports to Provide the Right to Vote in North Carolina's Elections to Persons Who Do Not and Have Never Resided in North Carolina.*

31.     Article 21A of Chapter 163 of North Carolina's General Statutes—Uniform Military and Overseas Voters Act ("UMOVA")—sets forth certain conditions upon which non-resident uniformed and overseas voters may register and vote in North Carolina elections. *See generally,* N.C. Gen. Stat. § 163-258.1 *et seq.*

32.     UMOVA defines a "covered voter" within the scope of the statute as:

> "a.     A uniformed-service voter or an overseas voter who is registered to vote in this State.
>
> [ . . .]

8

      c.    An overseas voter who, before leaving the United States, was last eligible to vote in this State and, except for a State residency requirement, otherwise satisfies this State's voter eligibility requirements.

      d.    An overseas voter who, before leaving the United States, would have been last eligible to vote in this State had the voter then been of voting age and, except for a State residency requirement, otherwise satisfies this State's voter eligibility requirements.

      e.    An overseas voter who was born outside the United States, is not described in sub-subdivision c. or d. of this subdivision, and, *except for a State residency requirement*, otherwise satisfies this State's voter eligibility requirements, if:

          1.    The last place where a parent or legal guardian of the voter was, or under this Article would have been, eligible to vote before leaving the United States is within this State; and

          2.    The voter has not previously registered to vote in any other state."

*Id.* at § 163-258.2(1) (emphasis added).

    33.    Critically, under subsection (e) UMOVA's definition of a "covered voter" encompasses certain persons who have *never* been residents of North Carolina, provided that their parent or current legal guardian would have been eligible to vote in North Carolina before leaving the United States and that they have not previously registered to vote in another state. *Id.* at § 163-258.2(1)(e)(1)(2); *see also* §§ 163-258.6 - 258.17 (UMOVA statutes permitting "a covered voter" to register, apply for, and vote an absentee ballot in the same manner as UOCAVA voters).

    34.    For clarity, this means that UMOVA extends the right to register to vote and to vote in North Carolina's elections to persons who have never lived in the United States, let alone in North Carolina. UMOVA could also be read to extend those rights to certain persons living overseas who may have, at one time, lived in a state other than North Carolina, provided they did

not ever register to vote in that state, depending on whether their parent or current legal guardian was eligible to vote in North Carolina "before leaving the United States." [1]

35.     The fact that this subsection allows non-residents to vote in North Carolina elections is buttressed by other definitions within the same section of UMOVA, including subsection (c) which covers persons who were eligible to vote in North Carolina prior to leaving the United States, and subsection (d) which covers persons who would have been eligible to vote in North Carolina prior to leaving the United States but-for the voting age requirement at the time of their departure. *Id.* at § 163-258.2(1)(c)-(d).

36.     Simply put, UMOVA purports to allow certain persons who have never resided in North Carolina—or potentially never set foot in the state—to register and vote in all of the state's elections. *Id.* at § 163-258.3.

## II.     *UOCAVA Does Not Preempt State Residency Requirement for People Who Have Never Resided in the State.*

37.     Federal law partially preempts the North Carolina Constitution's residency requirement for some, but not all, of the overseas voters to whom UMOVA provides the right to vote.

38.     Although UOCAVA may preempt Article VI, § 2 of the North Carolina Constitution's residency requirement for certain voters participating in federal elections, it does not preempt the requirement for voters who never resided in the state, as described in § 163-258.2(1)(e). In short, those voters are not UOCAVA voters, nor are they within UOCAVA's scope.

---

[1] On its terms, the law would even appear to extend North Carolina voting rights to a person who has absolutely no connection to North Carolina at all. Consider, for example, a person whose parents gave birth to him after they left the United States from Florida, who returned to North Carolina without him after he turned eighteen, and who thereafter then left the United States again.

10

39.     UOCAVA requires states to "permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office[.]" 52 U.S.C § 20302(a)(1).

40.     UOCAVA's definitions of "absent uniformed services voter" and "overseas voter" do not encompass individuals who have never resided in the state in which they wish to register and vote, including those § 163-258.2(1)(e) purports to exempt from the state constitution's residency requirement. UOCAVA addresses two categories of voters. First, an "absent uniformed services voter" means a "member of a uniformed service on active duty" or "the merchant marine who, by reason of service" who is "absent from the place of residence where the member is otherwise qualified to vote" and such an individual's "spouse or dependent . . . who by reason of the active duty or service of the member, is absent from the place of residence where the spouse or dependent is otherwise qualified to vote[.]" *Id.* § 20310(1). Second, is an "overseas" voter which "means":

> (A) an absent uniformed services voter who, by reason of active duty or service is absent from the United States on the date of the election involved;
> (B) a person who resides outside the United States and is qualified to vote in the last place in which the person was domiciled before leaving the United States; or
> (C) a person who resides outside the United States and (but for such residence) would be qualified to vote in the last place in which the person was domiciled before leaving the United States.

*Id.* § 20310(5).

41.     In both form and function, UOCAVA only extends voter eligibility to voters who are temporarily away from the state and others who at least have been domiciled in the state at some point. *Id.*

42.    UOCAVA, consequently, does not preempt the North Carolina Constitution's residency qualification for voters who never resided in the state, which applies to "any election held in this State." *See* N.C. Const. art. VI, § 2.

43.    Section 163-258.2(1)(e) conflicts with N.C. Const. art. VI, § 2 to the extent it is implemented to exempt certain voters from the residency requirement for individuals voting in North Carolina elections and because neither UOCAVA nor any other federal law preempts art. VI, § 2's residency requirement as it applies to voters who never resided in the state.[2]

### III.    *Defendants' Implementation of UMOVA Violates State and Federal Law*

44.    Defendant NCSBE members are responsible for "implementing" UMOVA. N.C. Gen. Stat. § 163-258.4(a).

#### a.    Defendants' Violations of the State Constitution

45.    Section 163-258.4 imposes various responsibilities on Defendants to administer UMOVA's voting requirements, including the provision of an "electronic transmission system through which covered voters may apply for and receive voter registration materials, military-overseas ballots, and other information…." *Id.* at (c). Defendants' responsibilities also include developing various voting materials for UMOVA voters and instructions for UMOVA voters. *Id.* at (d).

46.    UMOVA also permits Defendant NCSBE members to delegate some of the Board's responsibilities for administering UMOVA to Defendant Brinson Bell, including the requirement

---

[2] The final report of the Uniform Military and Overseas Voting Act from the National Conference of Commissioners on Uniform State Laws noted that it expressly intended to expand voting eligibility beyond UOCAVA: "Although UOCAVA makes no provision for these citizens" "[t]he definition of "covered voter," in paragraph (1)(E), also extends the act's coverage to U.S. citizens born abroad who have not established a voting residency in the United States." Uniform Military and Overseas Voters Act, National Conference of Commissioners on Uniform State Laws, Sept. 30, 2010, at 5, available at: https://tinyurl.com/26uuflrj

to "make available to covered voters information regarding voter registration procedures for covered voters and procedures for casting military-overseas ballots." *Id.* § 163-258.4(b).

47.     UMOVA allows a covered voter to register and apply for an absentee ballot utilizing the Federal Post Card Application ("FPCA") or a federal Write In Absentee Ballot ("FWAB"). N.C. Gen. Stat. § 163-258.6.

48.     Notably, both the FPCA registration form and the FWAB require voters to affirm they meet one of several voter eligibility options, one of which states "I am a U.S. citizen living outside the country, and I have never lived in the United States."[3]

49.     Upon information and belief, if an applicant selected this option on the FPCA or FWAB, the NCSBE would accept and process the application, even if the applicant is not a resident of North Carolina and has never been a resident of the state.

50.     The NCSBE website's "FAQ: Military and Overseas Voting" page confirms this: "North Carolina allows citizens who have never resided in the United States to use a parent's voting residence as their own to register to vote, and may request a military/overseas absentee ballot."[4]

51.     Defendants are thus facilitating ongoing violations of the North Carolina Constitution by carrying out their UMOVA responsibilities which necessarily entail permitting unqualified non-residents to vote in North Carolina elections.

52.     As applied to Individual Plaintiffs, this impermissibly dilutes their votes, and as applied to all Plaintiffs, it infringes upon their Constitutional and statutory rights.

---

[3] The FPCA is available at: https://votebymail.ncsbe.gov/app/fpca/fpca-form (last accessed Sept. 27, 2024); the FWAB is available at: https://s3.amazonaws.com/dl.ncsbe.gov/Forms/2021-09-13-FWAB.pdf (last accessed September 29, 2024); and North Carolina's online FPCA form is available at: https://votebymail.ncsbe.gov/app/fpca/fpca-form (last accessed September 29, 2024).
[4] Available at: https://tinyurl.com/24xfp323 .

**b.  Defendants' Additional Violations of State Voter Identification Law**

53.     Additionally, Defendants are, upon information and belief, impermissibly using UMOVA to circumvent their obligations to require certain identification from persons registering to vote. Defendants' failure to require this identification threatens the integrity of North Carolina's elections because it permits the counting of ballots that do not meet the state's legal requirements for counting and it degrades the validity and accuracy of the state's voter registration lists.

54.     The federal Help America Vote Act ("HAVA") requires an individual registering to vote to provide certain identifying information on their application. 52 U.S.C. § 21083(a)(5)(A). Individuals who have a driver's license must provide their license number. *Id.* § 21083(a)(5)(A)(i)(I). All others must provide the last four digits of their social security number. *Id.* § 20507(a)(5)(A)(i)(II). Voters who have neither are exempt from this requirement. *Id.* § 21083(a)(5)(A)(ii).

55.     North Carolina has enacted a statute to implement this HAVA requirement. N.C. Gen. Stat. §§ 163-82.4(a)(11), 163-82.12, 163-12(d).

56.     HAVA further provides for a process to match the identifying information provided by the individual applying to register with the "State motor vehicle authority" and "Commissioner of Social Security" "to verify the accuracy of the information provided…." 52 U.S.C. § 21083(a)(5)(B).

57.     North Carolina has similarly enacted a statute to implement this HAVA requirement. N.C. Gen. Stat. § 163-82.12(3), (6)-(8).

58.     HAVA requires certain first-time voters who register by mail—either those whose identification numbers officials could not verify or voters who did not provide the identification number—to provide certain identification, or in the case of an absentee voter, a copy of

14

identification when returning their ballot (the "HAVA ID Requirement"). 52 U.S.C. § 21083(b)(2)(A), (b)(3)(B).

59.     HAVA does not exempt a UOCAVA voter from the requirement to provide the driver's license number or last four digits of their social security number, if the individual has either, or the requirement that the state verify the information provided. HAVA does, however, exempt UOCAVA voters from the HAVA ID Requirement. *Id.* § 21083(b)(3)(C)(i).

60.     HAVA requires states treat an absentee ballot from a voter subject to the HAVA ID Requirement, but who fails to comply with it, as a provisional ballot. *Id.* § 21083(b)(2)(B)(ii). HAVA defers to state law on whether that ballot is ultimately counted. *Id.* § 21082(a)(4).

61.     North Carolina has enacted statutes to implement these HAVA requirements. *See* N.C. Gen. Stat. § 163-166.12. One departure from HAVA is that North Carolina applies the HAVA ID Requirement to all registrants whose information officials were unable to match, not just those registering by mail. *Id.* § 163-166.12(d).

62.     North Carolina specifically exempts from its HAVA ID Requirement "[a]n individual who is entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act." N.C. Gen. Stat. § 163-166.12(f)(3).

63.     North Carolina statutes do not exempt voters who have never resided in the state from its HAVA ID Requirement, including UMOVA voters.

64.     On September 24, the NCSBE, through its General Counsel, transmitted to all county election officials guidance (the "Guidance") explaining the applicability of and exemptions from the HAVA ID Requirement for overseas voters. A true and accurate copy of the Guidance is attached hereto as **Exhibit A**.

65.     The Guidance explained correctly the state and federal legal requirements that individuals registering to vote through an FPCA or FWAB must provide a driver's license number or last four digits of their social security number and that county officials are required to attempt to match that information with records in official databases.

66.     The Guidance also stated: "Unlike civilian voters, North Carolina law expressly exempts UOCAVA voters from the requirement to provide HAVA ID if the number fails to match across agency databases. *See* GS 163-166.12(f)(3)." *See* Ex. A.

67.     The Guidance conflates "UOCAVA voters" as UOCAVA defines them, and the UMOVA voters who have never resided in North Carolina, despite the latter plainly not being UOCAVA voters.

68.     For example, the Guidance states: "I'm writing to clarify the requirement for identification numbers for new registrants who register via FPCA or FWAB." *See* Ex. A. North Carolina allows voters who have never resided in the state to utilize an FPCA or FWAB to register to vote. N.C. Gen. Stat. § 163-258.6(a), (b).

69.     On August 25, 2024, Defendant Brinson Bell emailed a member of the Henderson County Board of Elections and blind carbon copied Defendant NCSBE Members and all county election directors (the "Email"). A true and accurate copy of the email is attached hereto as **Exhibit B**.

70.     The Email states: "When a military or overseas citizen voter submits their ballot, neither federal nor state law requires them to provide ID when returning their ballot." *See* Ex. B.

71.     The Email fails to make any distinction between UOCAVA voters who are exempt from the HAVA ID Requirement under state and federal law and voters who never resided in the state who, by definition, are not UOCAVA voters.

16

72.     The Guidance and Email make abundantly clear that Defendants are disregarding the requirements of N.C. Gen. Stat. § 163-166.12(f)(3), which exempts from its HAVA ID Requirement only individuals who are "entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act."

## CLAIMS FOR RELIEF
### Count One:
### Declaratory Judgment & Permanent Injunction – Violation of N.C. Const. art. VI § 2 as applied to Plaintiffs

73.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

74.     Plaintiffs bring this claim for declaratory judgment pursuant to N.C. Gen. Stat.§ 1-253 *et seq.* as to the rights, status, or other legal relations between Plaintiffs and Defendants.

75.     NCSBE is an agency created by statute that only has the authority expressly provided to it by the North Carolina General Assembly and the Constitution of the State of North Carolina.

76.     Article VI, § 2 of the North Carolina Constitution expressly limits the right to vote in the state's elections to those persons who are residents of the state.

77.     Defendants are implementing N.C. Gen. Stat. § 163-258.2(1)(e) in a manner that violates the North Carolina Constitution.

78.     Upon information and belief, NCSBE allows and has allowed persons to register to vote under N.C. Gen. Stat. § 163-258.2(1)(e), including persons who were never and are not presently residents of North Carolina.

79.     As applied to Individual Plaintiffs, this impermissible action dilutes their votes and infringes on their right to free and fair elections. *See* N.C. Const. art. I, § 10.

80.    Similarly, NCSBE's violation of the North Carolina Constitution as applied to Plaintiff RNC and NCGOP has directly harmed their organizational missions, including election integrity, voter outreach, and working so that Republican candidates are elected to office.

81.    Defendants must immediately cease their violations of the North Carolina Constitution and take all steps necessary to remedy the harm they have caused to Plaintiffs by allowing non-resident voters who are not eligible to vote under UOCAVA to register to vote in North Carolina elections.

82.    An actual, real, presently existing, concrete and justiciable controversy exists between Plaintiffs and Defendants in regard to, among other things, whether the NCSBE may allow non-residents to register and vote in North Carolina elections.

83.    Further, the NCSBE's actions have harmed and will continue to harm Plaintiffs by infringing on their constitutional and statutory rights as citizens, voters, participants in the electoral process, and a political party under the North Carolina General Statutes.

84.    Specifically, Plaintiffs seek a declaratory judgment that:

a.  The NCSBE's use of N.C. Gen. Stat. §163-258.2(1)(e) is unconstitutional as applied to Plaintiffs as it specifically violates Article VI, § 2 of the North Carolina Constitution; and

b.  Any participation by a non-North Carolina resident who has never resided in the state in the state's elections is a violation of Article VI, § 2 of the North Carolina Constitution as applied to Plaintiffs.

c.  In order to remedy their violations, Defendants must immediately instruct county boards of election to not process and to segregate any ballots returned by individuals who have never resided in the state, including but not be limited to,

anyone who registered to vote by submitting an FPCA or FWAB and checked the aforementioned box on the application;

d. Defendants must also remove the aforementioned eligibility box that applies to voters who have never resided in the United States from its online FPCA application, as allowing it to remain risks facilitating both new and ongoing violations of Plaintiff's Constitutional and statutory rights;

85.     Additionally, Defendants must be preliminarily and permanently enjoined from utilizing N.C. Gen. Stat. § 163-258.2(1)(e) in this manner and ordered to cease and correct the harm their unconstitutional actions have caused Plaintiffs, including:

a. Defendants must immediately instruct county boards of election to not process and to segregate any ballots returned by individuals who have never resided in the state, including but not be limited to, anyone who registered to vote by submitting an FPCA or FWAB and checked the aforementioned box on either form;

b. Defendants must also remove the aforementioned box from North Carolin's online FPCA application as allowing it to remain risks facilitating both new and ongoing violations of Plaintiff's Constitutional and statutory rights;

c. Defendants must reject voter registration applications in any form from individuals who have never resided in North Carolina;

d. Defendants must take all steps necessary to ensure that votes from individuals who have checked the aforementioned box on an FPCA or FWAB are not transmitted or counted in any elections;

e. Defendants must update their website in order to specify the Constitutional requirements to vote in North Carolina, including the prohibition on non-residents voting in the state's elections; and

f. Defendants must notify the U.S. Department of Defense's Federal Voting Assistance Program ("FVAP") that individuals who have never resided in North Carolina are ineligible to vote in the state's elections and to provide FVAP with updated state-specific instructions to include in FVAP's materials made available to UOCAVA voters on its website and through other means.

**Count Two:**
**Declaratory Judgment and Permanent Injunction– Defendants' Policy and Guidance Regarding UMOVA Voters' Exemptions from the HAVA ID Requirement Violates North Carolina Law**

86.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

87.     Plaintiffs bring this claim for declaratory judgment pursuant to N.C. Gen. Stat.§ 1-253 *et seq.* as to the rights, status, or other legal relations between Plaintiffs and Defendants.

88.     North Carolina General Statute § 163-166.12(f)(3) expressly exempts UOCAVA voters from the state's HAVA ID Requirement.

89.     In contrast, the statute does not exempt UMOVA voters. and they are thus subject to the default HAVA ID Requirement in § 163-166.12(f)(3).

90.     As such, the NCSBE's guidance and policies directing county election officials to exempt certain UMOVA voters—specifically those who never resided in the state—from N.C. Gen. Stat. § 163-166.12's HAVA identification provisions is in direct violation of state law.

91.     An actual, real, presently existing, concrete and justiciable controversy exists between Plaintiffs and Defendants in regard to, among other things, whether the NCSBE may allow non-residents and non-citizens to register and vote in North Carolina elections.

92.  Specifically, Plaintiffs seek a declaratory judgment that:

    a.  The NCSBE's policy and guidance to county election officials that voters who never resided in North Carolina but are attempting to register to vote in the state are exempt from the HAVA ID Requirement is null and void because it conflicts with the plain language of N.C. Gen. Stat. § 163-166.12 as the statute specifically only exempts a UOCAVA voter from the HAVA ID Requirement.

93.  Additionally, Defendants must be preliminarily and permanently enjoined from enforcing N.C. Gen. Stat. § 163-258.2(1)(e) in a manner that nullifies N.C. Gen. Stat. § 163-166.12's HAVA ID Requirement, and they must be ordered to cease and correct the extreme harm their unlawful actions have caused Plaintiffs, including:

    a.  The NCBSE must issue a directive to county boards of elections stating that voters who never resided in North Carolina but are attempting to register to vote in the state are subject to the same HAVA ID Requirement as all non-UOCAVA voters, which may include the requirement to return an identification acceptable under § 163-166.12 or the person's ballot will not be counted;

    b.  The NCSBE must instruct county boards of election that any voters who have never resided in North Carolina but are attempting to register to vote in the state but who have not satisfied the HAVA ID Requirement must do so in order for their ballot to count;

    c.  The NCSBE must update all guidance and instructions on its website and on other materials to make clear that voters who have never resided in North Carolina but are attempting to register to vote in the state are subject to the HAVA ID Requirement.

d. Defendants must notify FVAP that individuals who have never resided in North Carolina are not exempt from the HAVA ID Requirement and to provide FVAP with updated state-specific instructions on the requirement for it to include in FVAP's materials made available to overseas voters on its website and through other means.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue a declaratory judgment that:

    a. The NCSBE's use of N.C. Gen. Stat. §163-258.2(1)(e) is unconstitutional as applied to Plaintiffs to the extent it violates Article VI, § 2 of the North Carolina Constitution; and

    b. Any participation by a non-North Carolina resident who has never resided in the state in the state's elections is a violation of Article VI, § 2 of the North Carolina Constitution as applied to Plaintiffs.

2. Issue a declaratory judgment that:

    a. The NCSBE's policy and guidance to county election officials that voters who never resided in North Carolina but are attempting to register to vote in the state are exempt from the HAVA ID Requirement is null and void because it conflicts with the plain language of N.C. Gen. Stat. § 163-166.12 as the statute specifically only exempts a UOCAVA voter from the HAVA ID Requirement.

3. Preliminarily and permanently enjoin Defendants from accepting any voter registration forms, in any format, from individuals who register or attempt to register under N.C. Gen. Stat. §163-258.2(1)(e) unless and until such persons can confirm residency and provide the necessary HAVA ID Requirement;

22

4. Order Defendants to take all steps necessary to remedy the harm caused by their unconstitutional actions, including:

   a. Issuing all necessary directives and guidance to county elections officials;

   b. Updating all necessary voter registration forms, including but not limited to the aforementioned FPCA and FWAB forms; and

   c. Updating all public facing websites and voter registration portals within Defendants' custody or control to reflect the constitutional prohibition on non-residents voting in North Carolina elections.

5. Award Plaintiffs their reasonable attorney's fees, litigation expenses, and associated costs incurred in connection with this action, as otherwise permitted by law; and

6. Grant such further relief deemed just and proper.

This, the 2nd day of October, 2024.

<div style="margin-left:40%">

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Counsel for Plaintiffs*

</div>

23

EXHIBIT

A

**From:** Holland, Parker <Thomas.Holland@ncsbe.gov>
**Sent:** Wednesday, September 4, 2024 5:39 PM
**To:** Holland, Parker <Thomas.Holland@ncsbe.gov>
**Subject:** RE: PLEASE READ: UOCAVA Requests for new registrants

Directors (via BCC):

This is a follow up from the previous email by General Counsel Paul Cox. We have notified the impacted counties individually of those FPCA or FWABS processed without an identification number. Please follow the guidance below for any UOCAVA Requests for new registrants. If you have any questions, please feel free to reach out.

Best Regards,

**Parker Holland, CERA**
**Elections Administration Manager**
O: (919) 814-0727
M: (919) 480-9855



**From:** Cox, Paul <paul.cox@ncsbe.gov>
**Sent:** Wednesday, September 4, 2024 1:01 PM
**To:** SBOE_Grp - Legal <Legal@ncsbe.gov>
**Subject:** PLEASE READ: UOCAVA Requests for new registrants

Directors (via BCC):

I'm writing to clarify the requirement for identification numbers for new registrants who register via FPCA or FWAB. I addressed this briefly in the Huddle chat last Wednesday, but we've gotten some additional questions. So we wanted to be clear about the proper procedures, since UOCAVA ballots start going out Friday.

**If a person is registering for the first time using an FPCA or FWAB, the requirement to provide driver's license/DMV number or, if they don't have it, last four of their social security number, applies to these voters—just like for all other new registrants.** This requirement in HAVA applies to all new registrants, whether they are civilian or UOCAVA registrants. *See* 52 USC 21083(a)(5)(A)(i).

These new registrants were included in the State Board's decision last December to require new registrations going forward to include one of these numbers, unless the registrant affirms that they don't have either number. We regret if that was not clear.

We are going to have our IT department run a list of **new** FPCA/FWAB registrants since the State Board's order was released in December 2023, to flag any that may have been processed without one of these numbers, and we'll share that data with your office for review and action. The list should not be very long, since most FPCA/FWAB voters come through the portal, and the portal doesn't allow a UOCAVA voter to submit their request without including one of these numbers.

**In the meantime, please review your pending FPCAs before ballot transmission on Friday, to ensure that they included one of these numbers**. Be sure to include that number when you enter data into VoterScan. If the record doesn't result in a database match, the FPCA (registration and ballot request) must still be processed. Unlike civilian voters, North Carolina law expressly exempts UOCAVA voters from the requirement to provide HAVA ID if the number fails to match across agency databases. *See* GS 163-166.12(f)(3).

If any new FPCA/FWAB registrant did not include DL/DMV number or last four of their SSN as of December 14, 2023, and they do not state in writing that they lack these numbers, you will need to reach out to the registrant to obtain one of these numbers before processing their registration/ballot request. Please email the voter the attached letter requesting this information. If you do not have an email address for the voter, contact the voter by any other means you have available to obtain the information. Should the letter be returned, you will need to scan in the letter as VOTER CHANGE/UPDATE DOCUMENT in the web scanning app. If the voter does not return the request for information the FPCA request will need to be spoiled. Please include in the comments "Spoiled-ID not provided." Spoiling a ballot will need to occur before ballots go out on Friday, for any pending requests that did not include one of the required numbers.

Best regards,

**Paul Cox**
General Counsel
NORTH CAROLINA STATE BOARD OF ELECTIONS
RALEIGH, NC 27611
919.814.0700
www.ncsbe.gov

EXHIBIT
B

From: "Bell, Karen B" <Karen.Bell@ncsbe.gov>
Sent: Sunday, August 25, 2024 5:04pm
To: "lrevelle@reagan.com" <lrevelle@reagan.com>
Cc: "SBOE_Grp - Legal" <Legal@ncsbe.gov>, "Gannon, Patrick" <Patrick.Gannon@ncsbe.gov>
Subject: Your recent letter

Ms. Rebuck, (bcc: State Board Members and county election directors)

We write to express concern about a letter that you wrote that was forwarded to us by the elections director in another county, who received it from a state legislator asking her to respond. Your letter has been forwarded to a wide audience, and unfortunately, it contains false and misleading statements, and partisan remarks.

We are forwarding your letter and our response to the five members of the State Board of Elections and to all county directors so they can respond as necessary if they receive inquiries. This has required State Board staff to spend our limited resources drafting this letter and researching and providing the facts.

We are always available to county board members with questions or concerns about election administration, and we hope that in the future you will reach out to us should you need clarification to avoid the potential spread of false or misleading information, which undermines our common goals of administering elections according to the law and promoting confidence in our elections.

Please see our responses in red to your italicized statements below. We are happy to answer any questions you have about them.

*"I am a member of the Henderson County Board of Elections and have served on the Board for over 6 years. I am frankly very discouraged about the upcoming election. I want to strongly state my belief that if you do not intervene immediately either legislatively or legally, we are going to lose NC to the Dems in November which will likely mean we lose the country. The responsibility will be yours, one way or the other."*

Given the partisan statements in the above, we remind you of the requirements of Article 4A of Chapter 163 of the North Carolina General Statutes. Whether or not the statements violate these provisions, it undermines the public's confidence in the fair administration of elections if their elections officials are widely communicating their desire for a particular outcome in an election they oversee.

*"I am aware that Henderson County has recently received hundreds of new UNOCAVA (Overseas Civilian) applications." There is NO requirement to verify these people AND they do NOT have to provide ID when sending back their vote (by mail or email)."*

UOCAVA, which stands for Uniformed and Overseas Citizens Absentee Voting Act, is a federal law prescribing specific procedures for military and overseas citizens to be allowed to vote in federal elections. Our state has adopted laws under Article 21A of Chapter 163 to carry out these procedures. When military and overseas citizens register to vote under these procedures, they typically provide either their Social Security Number or driver's license on the prescribed federal form. When county officials input those values into the statewide database, the statewide database

automatically attempts to validate those numbers with the DMV and Social Security Administration. For civilian voters, if a number does not validate, state law requires the voter to provide an alternative form of ID before they vote for the first time. UOCAVA voters are expressly exempt from this requirement by state statute and have been for nearly 20 years. GS 163-166.12(f)(3).

When a military or overseas citizen voter submits their ballot, neither federal nor state law requires them to provide ID when returning their ballot.

*"I believe this is a concerted effort to turn Henderson County blue. However, I believe that if you check with other counties, you will see that the numbers have grown substantially in every county. I have heard numbers as high as 300,000 statewide so far. I believe that there is a statewide effort under way to undermine the election."*

Again, we caution you about statements favoring or opposing particular outcomes in the elections you oversee.

We spoke with the Henderson County director, and she confirmed on August 23 that Henderson had received fewer than 150 UOCAVA requests. In 2020, according to State Board data, Henderson County received 347 requests for absentee ballots from military and Henderson County voters living abroad at the time. So, the number of requests is not necessarily high in 2024 as you suggest. Ballots go out in two weeks.

It is also possible that advocacy groups and others are encouraging military and overseas voters who are U.S. citizens to request their ballots. There is nothing wrong with that and, in fact, that is activity protected by the First Amendment of the U.S. Constitution.

Until ballot styles are finalized, we do not know how many UOCAVA requests have come in statewide. However, the State Board has no evidence of a "statewide effort underway to undermine the election." If you have actual evidence of such, please provide it to the State Board or to the law enforcement agency of your choice. Otherwise, your statements are sensationalistic and inflammatory and will undermine voter confidence with no facts to back them up.

*"Additionally, Henderson County has received numerous new voter applications that do not have HAVA required information to register (missing Driver's License and/or last 4 of SS or those numbers were not validated). The State BOE has instructed Counties to go ahead a register them without verification."*

This is false. The State Board, both in emails and in a statewide Huddle training session, have instructed county boards as follows:

·    If a new voter does not provide their driver's license number or last four digits of their Social Security number and does not check the box to indicate that they do not have either of these numbers, then the voter will not be registered and will be sent an incomplete letter seeking the missing information.

·    If an applicant provides a driver's license number or last four of their Social Security number but that number does not validate, then their registration should be processed but they must be sent a "request for identification letter." If the voter subsequently provides the ID information, their

profile is updated. If they do not, they must provide an alternative ID proving their identity (so-called "HAVA ID") before voting, or vote provisionally. See GS 163-166.12(c). See the Request for Identification Information letter.

· If a new voter checks the box to indicate they do not have either identification number, then they will be sent a "request for identification" letter and be required to show a HAVA ID before they vote.

*"There have been over 10,000 voters registered state-wide in the last 3 months with unverified or no Dr License or last 4 of SS numbers and therefore HAVE NOT BEEN VERIFIED. So even though the information provided does not match (validated) the application is automatically approved. This is just common sense-the identity of the voter should be verified before entering them on the voter rolls. This is an open invitation for missing or unvalidated applications to be approved and entered into the system."*

See the note above about the additional verification requirement for voters whose ID numbers fail to validate.

Here's some additional important context. When a number does not match, SEIMS will not populate that field, so if we run a query in the database to see which registrations lack these identifiers, the query shows registrations where an identifier *was* provided but the number did not validate. To attempt to validate DLs or last-four SSNs, the SEIMS system sends a database query to DMV databases and the Social Security Administration databases, asking those databases to attempt to match specific information in records on both sides. It is not uncommon for a person's ID to fail validation. There are a number of benign reasons this can occur, and occur regularly, which has been well documented. The DMV/SSA requires exact field matching on name, DOB, DL/SSN so there is no current way to identify possible matches. Common reasons for validation failure are: misspelling of names, variation of names (Bob vs. Robert, maiden name vs. married name, varied designation of surnames for minority ethnicities, etc.), nickname or a missing suffix missing (Jr. or Sr.), inadvertent typos like missed numbers or transposed numbers in DL or last-four SSN, typos in birthdates, and situations where a registrant listed month/day/year in the wrong order on their registration form (there could be national origin-based reasons for this). Recognizing the faults in matching between distinct databases, the General Assembly enacted the provisions in GS 163-166.12(c) which allow a registrant whose DL or SSN did not match to provide HAVA ID either before or when first voting.

*"Another concern is preventing non-citizens from voting. Putting the matter on the ballot in November is too little, too late. The legislature passed SB 747 requiring clerks of superior court to provide lists of people who have been excused from jury duty indicating that they are not US citizens. However, according to the SBOE this will not take place until after the November election."*

This is false. The superior court clerks are (and have) provided such lists, and State Board staff is reviewing those and contacting any registered voters who are identified and for whom a state and federal database check does not show they have obtained citizenship. After nearly every county clerk submitted any records of jurors excused for non-citizenship, there were 9 registrants total identified through these checks statewide. While it is true that federal law (NVRA) prevents us from outright removing these records this close to a federal election, we are nonetheless going to

encourage any of these identified registrants to cancel their registration if they indeed lack citizenship. After the federal election, we can resume this program and conduct removals similar to how we process felon removals, rather than the notices and invitation to cancel registration which is as much as we can do and still comply with federal law.

*"You have allowed the SBOE to drag its feet (I believe on purpose) on all of these matters. This must be rectified if you want to win in November. I am not asking for anything that would be unfair to anyone, I just want the laws enforced to make it fair for everyone. Frankly, the county BOEs are nothing more than a rubber stamp and we have to sit there and vote to certify without any real ability to legally object. Again, the success or failure of this election in November is on you. I implore you to either fix this legislatively or in Court.*

*Best wishes in November, you will need it!"*

Again, we remind you of the prohibitions in the law on political activity by county board members.

We again invite you to contact us in the future to clear up your misunderstandings about election processes and the law.

Regards,

**Karen Brinson Bell, CERA, PMP**

Executive Director, NCSBE

(919) 814-0700 Main Line

 NORTH CAROLINA
STATE BOARD OF ELECTIONS

# EXHIBIT 2

# STATE OF NORTH CAROLINA

WAKE _____ County

File No.
24CV031557-910

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff | |
|---|---|
| TELIA KIVETT, et al. | |

| Address | |
|---|---|

| City, State, Zip | |
|---|---|

**CIVIL SUMMONS**

☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

**VERSUS**

G.S. 1A-1, Rules 3 and 4

| Name Of Defendant(s) |
|---|
| North Carolina State Board of Elections, et al. |

| Date Original Summons Issued |
|---|

| Date(s) Subsequent Summons(es) Issued |
|---|

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| North Carolina State Board of Elections<br>c/o Paul Cox, General Counsel<br>Dobbs Building, 3rd Floor, 430 N. Salisbury Street<br>6400 Mail Service Center, Raleigh, NC          27603-1362 | |

**IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as
possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
¡NO TIRE estos papeles!**

**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible
acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos
documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been
   served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Phillip J. Strach and Jordan A. Koonts<br>Nelson Mullins Riley & Scarborough LLP<br>301 Hillsborough Street, Suite 1400<br>Raleigh                         NC          27603 | 10/2/2024 | 3:57:32 pm  ☐ AM ☒ PM |

Signature  /s/ Lillian Miller

☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time |
|---|---|---|
| This Summons was originally issued on the date indicated<br>above and returned not served. At the request of the plaintiff,<br>the time within which this Summons must be served is<br>extended sixty (60) days. | | ☐ AM ☐ PM |

Signature

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or
less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if
so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 12/23
© 2023 Administrative Office of the Courts

| RETURN OF SERVICE | | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 1. ☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 2. ☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 12/23
© 2023 Ad

# STATE OF NORTH CAROLINA

_____ WAKE _____ County

File No.

24CV031557-910

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| _Name Of Plaintiff_<br>TELIA KIVETT, et al. | |
| _Address_ | **CIVIL SUMMONS** |
| _City, State, Zip_ | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |

**VERSUS**

G.S. 1A-1, Rules 3 and 4

_Name Of Defendant(s)_
North Carolina State Board of Elections, et al.

_Date Original Summons Issued_

_Date(s) Subsequent Summons(es) Issued_

## To Each Of The Defendant(s) Named Below:

| _Name And Address Of Defendant 1_ | _Name And Address Of Defendant 2_ |
|---|---|
| Karen Brinson Bell, in her official capacity as Executive Director of<br>the North Carolina State Board of Elections<br>Dobbs Building, 3rd Floor, 430 N. Salisbury Street<br>6400 Mail Service Center, Raleigh, NC          27603-1362 | |

**IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as
possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible
acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos
documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| _Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)_ | _Date Issued_ 10/2/2024 | _Time_ 3:57:32 pm ☐ AM ☒ PM |
|---|---|---|
| Phillip J. Strach & Jordan A. Koonts<br>Nelson Mullins Riley & Scarborough LLP<br>301 Hillsborough Street, Suite 1400<br>Raleigh, NC 27603 | _Signature_   /s/ Lillian Miller | |
| | ☒ _Deputy CSC_   ☐ _Assistant CSC_   ☐ _Clerk Of Superior Court_ | |

| ☐ ENDORSEMENT (ASSESS FEE) | _Date Of Endorsement_ | _Time_ ☐ AM ☐ PM |
|---|---|---|
| This Summons was originally issued on the date indicated<br>above and returned not served. At the request of the plaintiff,<br>the time within which this Summons must be served is<br>extended sixty (60) days. | _Signature_ | |
| | ☐ _Deputy CSC_   ☐ _Assistant CSC_   ☐ _Clerk Of Superior Court_ | |

**NOTE TO PARTIES:** _Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 1.<br>☐ Other: (type or print name) | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 2.<br>☐ Other: (type or print name) | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 12/23
© 2023 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

WAKE                    County

File No.

24CV031557-910

In The General Court Of Justice
☐ District    ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>TELIA KIVETT, et al. | |
| *Address* | **CIVIL SUMMONS** |
| *City, State, Zip* | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |

**VERSUS**

G.S. 1A-1, Rules 3 and 4

| | |
|---|---|
| *Name Of Defendant(s)*<br>North Carolina State Board of Elections, et al. | *Date Original Summons Issued* |
| | *Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1*<br>Alan Hirsch, in his official capacity as Chair of the North Carolina<br>State Board of Elections<br>Dobbs Building, 3rd Floor, 430 N. Salisbury Street<br>6400 Mail Service Center, Raleigh          NC          27603-1362 | *Name And Address Of Defendant 2* |
|---|---|

⚠️ **IMPORTANT! You have been sued!** These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as
possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra!** Estos papeles son documentos legales.
¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible
acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos
documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been
   served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Phillip J. Strach & Jordan A. Koonts<br>Nelson Mullins Riley & Scarborough LLP<br>301 Hillsborough Street, Suite 1400<br>Raleigh, NC 27603 | *Date Issued* 10/2/2024   *Time* 3:57:32 pm   ☐ AM  ☒ PM |
|---|---|
| | *Signature*    /s/ Lillian Miller |
| | ☒ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated<br>above and returned not served. At the request of the plaintiff,<br>the time within which this Summons must be served is<br>extended sixty (60) days. | *Date Of Endorsement*          *Time*          ☐ AM  ☐ PM |
|---|---|
| | *Signature* |
| | ☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or
less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if
so, what procedure is to be followed.*

(Over)

| RETURN OF SERVICE | | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 1.<br>☐ Other: (type or print name) | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 2.<br>☐ Other: (type or print name) | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

# STATE OF NORTH CAROLINA

_____WAKE_____ County

File No.
24CV031557-910

In The General Court Of Justice
☐ District  ☒ Superior Court Division

*Name Of Plaintiff*
TELIA KIVETT, et al.

*Address*

*City, State, Zip*

## CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

## VERSUS

G.S. 1A-1, Rules 3 and 4

*Name Of Defendant(s)*
North Carolina State Board of Elections, et al.

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

### To Each Of The Defendant(s) Named Below:

*Name And Address Of Defendant 1*
Jeff Carmon, in his official capacity as the Secretary of the North
Carolina State Board of Elections
Dobbs Building, 3rd Floor, 430 N. Salisbury Street
6400 Mail Service Center, Raleigh, NC          27603-1362

*Name And Address Of Defendant 2*

**IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as
possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible
acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos
documentos!**

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been
served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

*Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*
Phillip J. Strach & Jordan A. Koonts
Nelson Mullins Riley & Scarborough LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603

*Date Issued*           *Time*
10/2/2024  3:57:32 pm   ☐ AM  ☒ PM

*Signature*
/s/ Lillian Miller

☒ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated
above and returned not served. At the request of the plaintiff,
the time within which this Summons must be served is
extended sixty (60) days.

*Date Of Endorsement*        *Time*
                             ☐ AM  ☐ PM
*Signature*

☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or
less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if
so, what procedure is to be followed.*

(Over)

| **RETURN OF SERVICE** |
|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Acceptance of service.
Summons and complaint received by: ☐ Defendant 1.
☐ Other: (type or print name)

| Date Accepted | Signature |
|---|---|

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Acceptance of service.
Summons and complaint received by: ☐ Defendant 2.
☐ Other: (type or print name)

| Date Accepted | Signature |
|---|---|

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

**STATE OF NORTH CAROLINA**

WAKE _____ County

File No.
24CV031557-910

In The General Court Of Justice
☐ District  ☒ Superior Court Division

*Name Of Plaintiff*
TELIA KIVETT, et al.

*Address*

*City, State, Zip*

**CIVIL SUMMONS**
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

**VERSUS**

G.S. 1A-1, Rules 3 and 4

*Name Of Defendant(s)*
North Carolina State Board of Elections, et al.

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

**To Each Of The Defendant(s) Named Below:**

*Name And Address Of Defendant 1*
Stacy Eggers IV, in his official capacity as a Member of the North
Carolina State Board of Elections
Dobbs Building, 3rd Floor, 430 N. Salisbury Street
6400 Mail Service Center, Raleigh, NC        27603-1362

*Name And Address Of Defendant 2*

**IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!**
**You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as**
**possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.**
**¡NO TIRE estos papeles!**
**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible**
**acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos**
**documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been
    served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

*Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*
Phillip J. Strach & Jordan A. Koonts
Nelson Mullins Riley & Scarborough LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603

*Date Issued*
10/2/2024

*Time*
3:57:32 pm   ☐ AM ☒ PM

*Signature*
/s/ Lillian Miller

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated
above and returned not served. At the request of the plaintiff,
the time within which this Summons must be served is
extended sixty (60) days.

*Date Of Endorsement*

*Time*
☐ AM ☐ PM

*Signature*

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** *Many counties have* **MANDATORY ARBITRATION** *programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 12/23
© 2023 Administrative Office of the Courts

| | | | | |
|---|---|---|---|---|
| | | **RETURN OF SERVICE** | | |

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Acceptance of service.
Summons and complaint received by: ☐ Defendant 1.
☐ Other: (type or print name)

| Date Accepted | Signature |
|---|---|

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Acceptance of service.
Summons and complaint received by: ☐ Defendant 2.
☐ Other: (type or print name)

| Date Accepted | Signature |
|---|---|

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

# STATE OF NORTH CAROLINA

WAKE _____ County

File No.
**24CV031557-910**

In The General Court Of Justice
☐ District   ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>TELIA KIVETT, et al. | |
| *Address* | **CIVIL SUMMONS** |
| | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *City, State, Zip* | |

| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
|---|---|
| *Name Of Defendant(s)*<br>North Carolina State Board of Elections, et al. | *Date Original Summons Issued* |
| | *Date(s) Subsequent Summons(es) Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| Kevin Lewis, in his official capacity as a Member of the North<br>Carolina State Board of Elections<br>Dobbs Building, 3rd Floor, 430 N. Salisbury Street<br>6400 Mail Service Center, Raleigh, NC          27603-1362 | |

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as
possible, and, if needed, speak with someone who reads English and can translate these papers!
¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible
acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos
documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Phillip J. Strach & Jordan A. Koonts<br>Nelson Mullins Riley & Scarborough LLP<br>301 Hillsborough Street, Suite 1400<br>Raleigh, NC 27603 | *Date Issued*          10/2/2024 3:57:32 pm   ☐ AM  ☒ PM |
|---|---|
| | *Signature*          /s/ Lillian Miller |
| | ☒ *Deputy CSC*   ☐ *Assistant CSC*   ☐ *Clerk Of Superior Court* |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated<br>above and returned not served. At the request of the plaintiff,<br>the time within which this Summons must be served is<br>extended sixty (60) days. | *Date Of Endorsement* | *Time*          ☐ AM  ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC*   ☐ *Assistant CSC*   ☐ *Clerk Of Superior Court* | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 1.<br>☐ Other: (type or print name) | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 2.<br>☐ Other: (type or print name) | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

| | File No. |
|---|---|
| **STATE OF NORTH CAROLINA** | 24CV031557-910 |

WAKE _____ County

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>TELIA KIVETT, et al. | |
| *Address* | **CIVIL SUMMONS** |
| | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *City, State, Zip* | |

| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
|---|---|
| *Name Of Defendant(s)*<br>North Carolina State Board of Elections, et al. | *Date Original Summons Issued* |
| | *Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1*<br>Siobhan O'Duffy Millen, in her official capacity as a Member of the<br>North Carolina State Board of Elections<br>Dobbs Building, 3rd Floor, 430 N. Salisbury Street<br>6400 Mail Service Center, Raleigh, NC            27603-1362 | *Name And Address Of Defendant 2* |
|---|---|

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as
possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible
acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos
documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Phillip J. Strach & Jordan A. Koonts<br>Nelson Mullins Riley & Scarborough LLP<br>301 Hillsborough Street, Suite 1400<br>Raleigh, NC 27603 | *Date Issued*<br>10/2/2024 | *Time*<br>3:57:32 pm ☐ AM ☒ PM |
|---|---|---|
| | *Signature*<br>/s/ Lillian Miller | |
| | ☒ *Deputy CSC*   ☐ *Assistant CSC*   ☐ *Clerk Of Superior Court* | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated<br>above and returned not served. At the request of the plaintiff,<br>the time within which this Summons must be served is<br>extended sixty (60) days. | *Date Of Endorsement* | *Time*<br>☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC*   ☐ *Assistant CSC*   ☐ *Clerk Of Superior Court* | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 1. ☐ Other: (type or print name) | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 2. ☐ Other: (type or print name) | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

# EXHIBIT 3

STATE OF NORTH CAROLINA

COUNTY OF WAKE

TELIA KIVETT, *et al.*,

        *Plaintiffs,*

v.

THE NORTH CAROLINA STATE BOARD
OF ELECTIONS, *et al.*,

        *Defendants.*

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Case No. 24CV031557-910

**MOTION FOR PRELIMINARY
INJUNCTION**

*Emergency Relief Requested*

NOW COMES Plaintiffs Telia Kivett, Wanda Nelson Fowler, the Republican National Committee, and the North Carolina Republican Party ("Plaintiffs"), by and through undersigned counsel and pursuant to Rule 65 of the North Carolina Rules of Civil Procedure, move this Court to issue a preliminary injunction. Specifically, this Court should, under the North Carolina Constitution, prohibit Defendants the North Carolina State Board of Elections and its members and Executive Director Brinson Bell ("NCSBE" or "Defendants") from relying on North Carolina General Statute § 163-258.2(1)(e) as a basis for allowing the acceptance or processing of any voter registration forms, absentee ballot applications, or ballots from individuals who have affirmed that they have never resided in North Carolina. In support of this Motion, Plaintiffs show the Court as follows:

## INTRODUCTION

1.    North Carolina's elections are notoriously close, especially in recent election cycles. The November 5, 2024 general election will likely be one of the state's closest yet.

2.    Now more than ever, counting every legitimate vote from every eligible voter— and **only** legitimate votes from eligible voters—matters.

1

3.      Across the nation, overseas voters make up a growing portion of the electorate.[1]

4.      Worryingly, this has led to an increasing trend of third party organizations such as Democrats Abroad spearheading efforts to register U.S. citizens who live overseas and who have never resided in a state (hereafter "Never Residents") to nevertheless register to vote in certain targeted states' elections. North Carolina is one such state where efforts to register Never Residents are underway.[2]

5.      North Carolina's elections are already close and the November 5, 2024 contest will be no different. However, the risk that such close results could be decided by the votes of Never Residents is unjustifiable, in direct contravention of North Carolina law, and a serious threat to public trust and confidence in this election.

6.      To allow illegal votes to decide an election at any stage or race would be nothing short of a tragedy for democracy. Eligible voters, and only eligible voters, should be the ones deciding their state's elections.

7.      Considering Defendants' open disregard of North Carolina law in allowing Never Residents to register to vote in the state's elections, Plaintiffs are forced to turn to this Court for immediate relief.

8.      Plaintiffs initiated this action by filing a Complaint for declaratory and injunctive relief on October 2, 2024. Individual Plaintiffs Telia Kivett and Wanda Nelson Fowler

---

[1] *See, e.g.*, Shia Kapos, Could voters abroad hold all the cards?, POLITICO (Sept. 21, 2024), available at: https://www.yahoo.com/news/could-overseas-voters-ticket-winning-202651757.html?Guccounter=1 (last accessed Oct. 10, 2024); *see also* Terri Schultz, Democratic voters overseas could help clinch the election in swing states, NPR (Sept. 10, 2024), available at: https://www.npr.org/2024/09/10/nx-s1-5094907/democratic-voters-overseas-could-help-clinch-the-election-in-swing-states (last accessed Oct. 10, 2024).

[2] *See, e.g.,* Corey Clippinger, Key Dates and Information for voting in North Carolina elections from overseas, DEMOCRATS ABROAD (Oct. 01, 2024), available at: https://www.democratsabroad.org/coreyclip/how_to_vote_from_abroad_in_north_carolina (last accessed Oct. 11, 2024).

subsequently filed verifications of the Complaint soon thereafter. Plaintiffs attach the Complaint, all exhibits thereto, and Individual Plaintiffs' verifications, in support of this Motion.

9.      Through the Complaint Plaintiffs seek, among other forms of relief:

a.      A declaration that Defendants' use of N.C. Gen. Stat. § 163-258.2(1)(e) is unconstitutional as applied to Plaintiffs to the extent it violates Article VI, § 2 of the North Carolina Constitution. Compl. ¶ 84(a);

b.      A declaration that any participation by a Never Resident in the state's elections is a violation of Article VI, § 2 of the North Carolina Constitution as applied to Plaintiffs. Compl. ¶ 84(b);

c.      An order that Defendants must immediately instruct county boards of election to segregate and not process any ballots returned to them by individuals who have never resided in the state, including but not limited to those persons who registered to vote via submitting a Federal Post Card Application ("FPCA") or Federal Write-In Absentee Ballot ("FWAB") and selected the option stating "I am a U.S. citizen living outside the country, and I have never lived in the United States," and that those ballots may not be processed unless and until such persons can confirm residency in the state of North Carolina pursuant to § 163-166.12 *et seq*. Compl. ¶¶ 48, 84(c), 85(a);

d.      An order that Defendants must remove the aforementioned option from the state's FPCA registration forms. Compl. ¶¶ 84(d), 85(b);

e.      An order that Defendants must reject voter applications in any form from Never Residents. Compl. ¶ 85(c);

3

f.     An order directing Defendants to update their website to specify North Carolina's constitutional residency requirement and the prohibition on Never Residents voting in the state's elections. Compl. ¶ 85(e);

g.     An order requiring Defendants to notify the U.S. Department of Defense's Federal Voting Assistance Program ("FVAP") that Never Residents are ineligible to vote in the state's elections and to provide FVAP with North Carolina-specific instructions to include with FVAP materials made available to UOCAVA voters on its website and through other means. Compl. ¶ 85(f); and

h.     A declaration that Defendants' policy and guidance sent to county elections officials regarding voter registration and identification requirements for Never Residents (as attached to the Complaint) are null and void as they directly conflict with N.C. Gen. Stat. § 163-166.12 *et seq*. Compl. ¶ 92(a).

## FACTUAL BACKGROUND

10.     Article VI § 2 of the North Carolina Constitution explicitly limits voting eligibility to residents of the state, providing: "Any person who has resided in the State of North Carolina for one year and in the precinct, ward, or other election district for 30 days next preceding an election, and possesses the other qualifications set out in this Article, shall be entitled to vote at any election held in this State." Compl. ¶ 2.

11.     Both North Carolina law, N.C. Gen. Stat. § 163-258.1, *et seq.* ("UMOVA"), and federal law, 52 U.S.C. § 20301, *et seq.* ("UOCAVA"), provide certain criteria upon which persons who are not currently residing in the United States may nevertheless register for and vote in elections in the state. Compl. ¶¶ 4, 5.

4

12. While the two statutes overlap, their coverage is not identical. In this regard, UMOVA purports to extend voting eligibility to Never Residents in North Carolina, whereas UOCAVA does not. *See* N.C. Gen. Stat. § 163-258.2(1)(e); *see also* Compl. ¶¶ 5, 31-36, 38-42.

13. As such, federal law confers no rights on Never Residents, and UMOVA's effort to confer voting rights on these individuals under state law directly conflicts with N.C. Const. art. VI § 2. Compl. ¶¶ 42-43.

14. Defendants have instructed county elections officials to accept and process applications from persons who apply to register to vote or request an absentee ballot via either a Federal Post Card Application ("FPCA") or a Federal Write-In Absentee Ballot ("FWAB"), including for Never Residents. Compl. ¶¶ 45-51. They have also marketed to the public the exact process by which Never Residents could register to vote and apply for absentee ballots in North Carolina. *Id.* at ¶ 50.

15. Additionally, Defendants recently provided written guidance to county boards of elections and elections officials instructing them to consider Never Residents who register under, *inter alia* N.C. Gen. Stat. § 163-258.2(1)(e), as "exempt" from certain voter identification requirements as set forth in § 163-166.12 *et. seq*. Compl. ¶¶ 53-72.

16. Defendants' guidance fails to account for the fact that the statutory provisions cited in support of this exemption apply only to UOCAVA voters, **not** to UMOVA voters and thus not to the Never Residents to whom UMOVA purports to extend the right to vote. Compl. ¶¶ 64-72. In other words, UOCAVA voters are exempt from state laws that would otherwise require them to produce identification to vote. Never Residents do not enjoy the same exemption because, even if UMOVA could have conferred upon them a right to vote—which it could not do—such persons are not covered by UOCAVA. Accordingly, they are not entitled to its exemptions.

5

17.     Thus, upon information and belief, Defendants have allowed and will continue to allow Never Residents to register and participate in North Carolina elections despite a constitutional prohibition against such participation or, at a minimum, without requiring such persons to produce identification documents otherwise required by state law. Compl. ¶¶ 51, 53.

18.     Upon information and belief, Defendants can easily identify any Never Residents who have registered to vote in the state by segregating those individuals who selected the aforementioned FVAP or FWAB boxes. Compl. ¶¶ 47-49.

## ARGUMENT

19.     Plaintiffs seek injunctive relief because they will be seriously and irreparably harmed by Defendants' actions in permitting Never Residents to register and vote in North Carolina elections, including the upcoming November 5, 2024 contest.

20.     Unless the court grants injunctive relief, Defendants will continue to facilitate ongoing violations of the North Carolina Constitution, which, as applied to organizational Plaintiffs, will diminish their respective missions, election-related efforts, and their electoral prospects. As applied to individual Plaintiffs, these violations will impermissibly dilute their votes and violate their clearly established constitutional rights.

## I.     Standard

21.     This court has the inherent authority to issue injunctive relief upon application from a party. *State v. Fayetteville St. Christian Sch.*, 299 N.C. 351, 357, 261 S.E.2d 908, 913, *on reh'g*, 299 N.C. 731, 265 S.E.2d 387 (1980) (stating that injunctive relief is "a matter of discretion to be exercised by the hearing judge after a careful balancing of the equities.").

22. Issuance of a preliminary injunction is appropriate when necessary to avoid immediate and irreparable injury to a party. *See* N.C. R. Civ. P. 65; *see also A.E.P. Indus., Inc. v. McClure*, 309 N.C. 393, 401, 302 S.E.2d 754, 759 (1983).

23. To demonstrate entitlement to a preliminary injunction, Plaintiffs must establish: (1) likelihood of success on the merits; and (2) that they are likely to sustain irreparable loss unless the injunction is issued, or if, in the Court's opinion, issuance is necessary for the protection of Plaintiffs' rights during the course of the litigation. *See Ridge Cmty. Invs., Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977).

24. Notably, Plaintiffs' likelihood of success on the merits means a "reasonable likelihood." *See A.E.P. Indus., Inc.*, 308 N.C. at 402, 302 S.E.2d at 760.

## II.  Plaintiffs Are Likely to Succeed on the Merits of their Claims

25. Plaintiffs have established a reasonable likelihood of success on the merits of their claims through, *inter alia*, pointing to Defendants' own guidance to both county elections officials and the public in general, all of which clearly allow Never Residents to register and vote in North Carolina's elections. Compl. ¶¶ 50 n. 4, 64-72.

26. Further, the plain language of N.C. Const. art. VI § 2 makes clear that North Carolina residents, and only North Carolina residents, may vote in the state's elections. *See* N.C. Const. art. VI § 2; *see also* Compl. ¶2; *Hall v. Wake Cnty. Bd. of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972).

27. Yet, as Plaintiffs have described in detail, Defendants are utilizing N.C. Gen. Stat. § 163-258.2(1)(e) to circumvent this constitutional requirement, allowing Never Residents to register and vote in North Carolina. *See* Compl. ¶¶ 32, 48-51.

7

28.     At the same time Defendants are violating the North Carolina Constitution's residency requirement, they are unlawfully exempting those same ineligible voters from the state's law that requires individuals who have failed to supply adequate identifying information at the time of registration to produce acceptable identification documentation at the time of voting. *See* Compl. ¶¶ 53-72.

29.     As applied to Organizational Plaintiffs, these constitutional and statutory violations significantly harm their missions, organizational efforts, and electoral prospects. They do this by authorizing ineligible persons to participate in elections and by disregarding protections that help ensure that such persons are who they say they are. That is, protections that help ensure that Never Residents are not, for example, underage persons or foreign citizens. The magnitude of these harms is substantially increased in light of the impending November 5, 2024 election. *See* Compl. ¶ 7, 52, 80.

30.     As applied to Individual Plaintiffs, these constitutional and statutory violations impermissibly dilute their votes, resulting in immediate and irreparable harm, the magnitude of which is likewise substantially enhanced by the impending November 5, 2024 election. *See* Compl. ¶¶ 52, 79.

31.     Considering the foregoing, Plaintiffs have established more than a reasonable likelihood of success on the merits of their claims.

**III.     Plaintiffs Are Likely to Suffer Irreparable Harm Unless Relief Is Granted and A Preliminary Injunction is Necessary to Protect Plaintiffs' Rights During the Course of Litigation**

32.     Plaintiffs' undeniable constitutional and statutory rights to vote in free and fair elections, where only qualified voters participate, are at immediate risk, absent an injunction. *See* N.C. Const. art. VI § 2; *see also* N.C. Const. art. I § 10.

8

33.     Absent an injunction, organizational Plaintiffs' will be substantially and irreparably harmed in their respective missions, election-related efforts, and their electoral prospects. Further, individual Plaintiffs' constitutional rights will be substantially harmed and their votes will be impermissibly diluted. As to both sets of Plaintiffs, this harm will be exacerbated, should relief not be available before the November 5, 2024 election. Simply put, the bulk of the damage will already be done.

34.     In contrast, Defendants will suffer little if any harm, should the injunction issue.

35.     Registration forms submitted by Never Residents are readily and easily identifiable and Defendants can, upon information and belief, readily identify Never Residents by ordering county officials to segregate those FVAP or FWAB registration forms where the registrant selected one of the aforementioned boxes attesting that they are a U.S. citizen who lives outside the country and has never lived in the United States or by querying information in the State Elections Information Management System (SEIMS) or other systems accessible to Defendants.

36.     Upon information and belief, Defendants should be able to identify, locate, and segregate ballots that Never Residents return to election officials or order county officials to do so.

37.     Accordingly, the applications, registrations, and any ballots cast by Never Residents are both readily identifiable and segregated until such point that residency can be confirmed.

38.     Considering that Never Residents would have resided outside of the United States for at least eighteen (18) years, there is no justifiable reliance interest at issue as Never Residents, by their very nature, have taken no actions to establish residency in North Carolina.[3]

---

[3] For this consideration in balancing the equities, it is also worth noting that there are other instances of U.S. citizens who cannot vote in a state's elections such as U.S. citizens residing in U.S. territories.

9

39.     Defendants are already constitutionally prohibited from allowing Never Residents to vote in North Carolina's elections. Thus, to the extent Defendants claim a burden in having to ensure residency requirements of a subset of registrants, the same is already required by North Carolina law.

40.     In sum, the equities favor Plaintiffs especially insofar as they are seeking to vindicate pre-established rights and protect the validity of their votes.

WHEREFORE, Plaintiffs respectfully request this Court enter an Order:

    a.      Declaring that Defendants' use of N.C. Gen. Stat. § 163-258.2(1)(e) is unconstitutional as applied to Plaintiffs to the extent it violates Article VI, § 2 of the North Carolina Constitution and enjoining Defendants from using the same to allow any Never Resident to vote in North Carolina's elections;

    b.      Declaring that any participation by a Never Resident in the state's elections is a violation of Article VI, § 2 of the North Carolina Constitution as applied to Plaintiffs and enjoining Defendants from taking any actions which would allow Never Residents to participate in North Carolina's elections;

    c.      Directing Defendants to immediately instruct county boards of election to segregate and not process any ballots returned to them by Never Residents, including but not limited to those persons who registered to vote via submitting an FPCA or FWAB and selected the option stating "I am a U.S. citizen living outside the country, and I have never lived in the United States," and that those ballots may not be processed unless and until such persons can confirm residency in the state of North Carolina pursuant to § 163-166.12 *et seq*. or eligibility to vote under UOCAVA; and

10

    d.      For any other relief deemed just and proper.

Respectfully submitted, this, the 11th day of October, 2024.

                                       **NELSON MULLINS RILEY &**
                                       **SCARBOROUGH LLP**

                                       By: /s/   Phillip J. Strach
                                       Phillip J. Strach
                                       North Carolina State Bar no. 29456
                                       Jordan A. Koonts
                                       North Carolina State Bar no. 59363
                                       301 Hillsborough Street, Suite 1400
                                       Raleigh, North Carolina 27603
                                       Ph: (919) 329-3800
                                       phil.strach@nelsonmullins.com
                                       jordan.koonts@nelsonmullins.com

                                       *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 11th day of October, 2024, I served a true and accurate copy of the foregoing **MOTION FOR PRELIMINARY INJUNCTION** upon all counsel of record by using the Odyssey e-file and serve feature, sending a copy of the same to all counsel of record via e-mail, and sending a copy via U.S. Mail, postage prepaid and addressed as follows:

Terence Steed
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
Tsteed@ncdoj.gov

Mary Carla Babb
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
MCBabb@ncdoj.gov

*Counsel for Defendants*

/s/ Phillip J. Strach
Phillip J. Strach

# EXHIBIT 4

FILED   -App. 124-
DATE: October 21, 2024
TIME: 4:27:51 PM
WAKE COUNTY
CLERK OF SUPERIOR COURT
BY: S. Jones

NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 24CV031557-910

TILIA KIVETT; WANDA NELSON
FOWLER; THE REPUBLICAN
NATIONAL COMMITTEE; and THE
NORTH CAROLINA REPUBLICAN
PARTY,

    *Plaintiffs*

    vs.

NORTH CAROLNA STATE BOARD OF
ELECTIONS; KAREN BRINSON BELL
in her official capacity as Executive
Director of the North Carolina State Board
of Elections; ALAN HIRSCH in his
official capacity as Chair of the North
Carolina State Board of Elections; JEFF
CARMON in his official capacity
Secretary of the North Carolina State
Board of Elections; STACY EGGERS IV,
KEVIN N. LEWIS, and SIOBHAN
O'DUFFY MILLEN in their official
capacities as members of the North
Carolina State Board of Elections,

    And

DEMOCRATIC NATIONAL
COMMITTEE

    *Defendants*

ORDER

DENYING PLAINTIFFS' MOTION

FOR TEMPORARY RESTRAINING ORDER

AND DENYING, IN THE ALTERNATIVE,

AN EXPEDITED PRELIMINARY INJUNCTION

THIS MATTER came before the undersigned during this October 21, 2024, regular

session of Wake County Superior Court upon plaintiff's motion for a temporary restraining order

or in the alternative an emergency preliminary injunction; and all parties appeared through

counsel and had received notice of this hearing and were prepared to go forward with the

hearing; and the court having jurisdiction over both the subject matter and the parties; and the court having heard from counsel for the Plaintiffs and Defendants on the record in open court; and the court having carefully considered the allegations and contentions of the Plaintiffs and having reviewed the entire record, including the verified complaint; the court makes the following findings and conclusions:

1. Plaintiffs announced that they are proceeding only on the first claim for relief.

2. Plaintiffs contend North Carolina General Statute 163-258.2(1)(e) is being misinterpreted by the State Board of Elections so as permit the registration of non-residents to vote in violation of the United States Constitution and the North Carolina Constitution. The provision on which Plaintiffs focus is part of the Uniform Military and Overseas Voters Act, that defines a "covered voter" as follows:

> e . An overseas voter who was born outside the United States, is not described in sub-subdivision c. or d. of this subdivision, and, except for a State residency requirement, otherwise satisfies this State's voter eligibility requirements, if:
>> 1. The last place where a parent or legal guardian of the voter was, or under this Article would have been, eligible to vote before leaving the United States is within this State; and
>> 2. The voter has not previously registered to vote in any other state.

3. That statue has been on the books at least since 2011 as a bill adopted with bi-partisan support under Speaker of the House Thom Tillis and President *pro tem* of the Senate Walter Dalton; and has not been challenged until the filing of this complaint and motion. Both the Plaintiffs and the Defendants have been involved in elections under the existing statute since its passage without complaint.

4. Plaintiffs have presented no substantial evidence of any instance where the harm that plaintiffs seek to prevent has ever "fraudulently" occurred. Plaintiffs have contended on the record in this hearing that subsection 163-258.2(1)(e) is facially constitutional. Although

- 2 -

Plaintiffs have failed to present evidence of any actual occurrence, the court does infer that there may be persons who fall within the very narrow statutory exemption who may have registered and may have voted; but there is absolutely no evidence that any person has ever fraudulently claimed that exemption and actually voted in any North Carolina election. Plaintiffs concede and the court finds that Plaintiffs have not presented any evidence of even a single specific instance of any registrant unlawfully availing themselves of the statutory provision.

5. All of the factual evidence presented to this court shows that Defendants have not and will not knowingly allow a non-resident who does not fall within the statutory exception to register or vote in our state elections.

6. Plaintiffs implicitly seek to have this court determine that they are likely to succeed in nullifying or modifying the implementation of a provision of the Uniform Military and Overseas Voters Act of the North Carolina General Statutes that allows adult children of North Carolina residents born outside of the United States who have not resided within the state to register to vote in this state under very narrow circumstances. The plaintiffs have failed to persuade this court that they are more likely than not to succeed on that claim.

7. Plaintiffs have failed to show any likelihood of irreparable harm.

8. Should the speculative possibility of a person fraudulently claiming a privilege of voting under subsection (e) actually occur, the Plaintiffs have other adequate remedies at law to address and rectify any instance in which Plaintiffs can show that they may have been adversely affected in any election.

9. Plaintiffs have failed to show that the issuance of a preliminary injunction is necessary to maintain a *status quo* during this litigation since the effect of the relief sought by way of a

- 3 -

mandatory injunction would in fact change the *status quo* which has been in place since at least 2011.

10. This court has weighed the hypothetical possibility of harm to plaintiffs against the rights of the defendants and finds that on balance the equitable discretion of this court should not be invoked to treat an entire group of citizens differently based upon unsupported and speculative allegations for which there is not even a scintilla of substantive evidence.

11. Plaintiffs have failed to show to the satisfaction of this court that an injunction is necessary to protect Plaintiff's rights during this litigation.

THIS COURT CONCLUDES:

1. Plaintiffs have failed to show that they will suffer irreparable harm if a temporary restraining order or emergency preliminary injunction is not issued.

2. Plaintiffs have failed to make a threshold showing that they are likely to succeed on the merits of their claim.

3. There is no showing that this court should exercise its discretion, and Plaintiffs are not entitled to the relief sought as a matter of law.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Plaintffs' motion for a temporary restraining order or, in the alternative, an emergency preliminary injunction should be and hereby is DENIED.

SO ORDERED this the 21st day of October, 2024.

John W. Smith
Superior Court Judge Presiding

# EXHIBIT 5

STATE OF NORTH CAROLINA

COUNTY OF WAKE

TELIA KIVETT; WANDA NELSON
FOWLER; the REPUBLICAN NATIONAL
COMMITTEE; and the NORTH CAROLINA
REPUBLICAN PARTY,

*Plaintiffs*

v.

NORTH CAROLINA STATE BOARD OF
ELECTIONS; KAREN BRINSON BELL, in
her official capacity as Executive Director of
the North Carolina State Board of Elections;
ALAN HIRSCH, in his official capacity as
Chair of the North Carolina State Board of
Elections; JEFF CARMON, in his official
capacity as Secretary of the North Carolina
State Board of Elections; STACY EGGERS
IV, KEVIN N. LEWIS, and SIOBHAN
O'DUFFY MILLEN, in their official
capacities as members of the North Carolina
State Board of Elections,

*Defendants.*

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Case No. 24CV031557-910

**PLAINTIFFS' NOTICE OF APPEAL**

**TO THE HONORABLE COURT OF APPEALS OF NORTH CAROLINA:**

Plaintiffs Telia Kivett, Wanda Nelson Fowler, the Republican National Committee, and the

North Carolina Republican Party ("Plaintiffs"), by and through undersigned counsel, hereby give

notice of appeal to the North Carolina Court of Appeals pursuant to Rule 3 of the North Carolina

Rules of Appellate Procedure from the Order denying Plaintiffs' Motion for Preliminary Injunction

entered on October 21, 2024 by Superior Court Judge John W. Smith.

1

Respectfully submitted, this 22nd day of October 2024

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
Phillip J. Strach
North Carolina State Bar No. 29456
Jordan A. Koonts
North Carolina State Bar No. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Counsel for Plaintiffs*

2

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon counsel of record

via email, pursuant to N.C. R. Civ. P. 5 as follows:

Sarah G. Boyce
Terence Steed
Mary Carla Babb
sboyce@ncdoj.gov
tsteed@ncdoj.gov
mcbabb@ncdoj.gov

*Counsel for Defendants*

Jim W. Phillips, Jr.
Shana L. Fulton
William A. Robertson
James W. Whalen
Eric M. David
jphillips@brookspierce.com
sfulton@brookspierce.com
wrobertson@brookspierce.com
jwhalen@brookspierce.com
edavid@brookspierce.com

Christopher E. Babbitt
Daniel S. Volchok
Christopher.babbitt@wilmerhale.com
Daniel.volchok@wilmerhale.com

*Counsel for Intervenor-Defendant*

This, the 22nd day of October, 2024.

/s/ Phillip J. Strach
Phillip J. Strach

3

# EXHIBIT 6

# Voter Registration and Absentee Ballot Request

Federal Post Card Application (FPCA)

**This form is for absent Uniformed Service members, their families, and citizens residing outside the United States. It is used to register to vote, request an absentee ballot, and update your contact information. See your state's guidelines at FVAP.gov.**

Print clearly in blue or black ink, please see back for instructions.

## 1. Who are you? Pick one.

I request an absentee ballot for all elections in which I am eligible to vote AND:

☐ I am on active duty in the Uniformed Services or Merchant Marine **-OR-** ☐ I am an eligible spouse or dependent.
☐ I am a U.S. citizen living outside the country, and I intend to return.
☐ I am a U.S. citizen living outside the country, and my intent to return is uncertain.
☐ I am a U.S. citizen living outside the country, and I have never lived in the United States.

☐ Mr.   ☐ Miss
☐ Mrs.  ☐ Ms.

| | |
|---|---|
| Last name | Suffix (Jr., II) |
| First name | Previous names (if applicable) |
| Middle name | Birth date (MM/DD/YYYY)      /      / |
| Social Security Number    -    - | Driver's license or State ID # |

## 2. What is your address in the U.S. state or territory where you are registering to vote and requesting an absentee ballot?

Your voting materials will not be sent to this address. See instructions on other side of form.

| | |
|---|---|
| Street address | Apt # |
| City, town, village | State |
| County | ZIP |

## 3. Where are you now? You MUST give your CURRENT address to receive your voting materials.

Your mailing address. (Different from above)    Your mail forwarding address. (If different from mailing address)

## 4. What is your contact information? This is so election officials can reach you about your request.

Provide the country code and area code with your phone and fax number. Do not use a Defense Switched Network (DSN) number.

| | |
|---|---|
| Email: | Phone: |
| Alternate email: | Fax: |

## 5. What are your preferences for upcoming elections?

A. How do you want to receive voting materials from your election office? (Select One)
☐ Mail
☐ Email or online
☐ Fax

B. What is your political party for primary elections?

## 6. What additional information must you provide?

Puerto Rico and Vermont require more information, see back for instructions. *Additional state guidelines* may be found at FVAP.gov. You may also use this space to clarify your voter information.

## 7. You must read and sign this statement.

**I swear or affirm, under penalty of perjury, that:**
- The information on this form is true, accurate, and complete to the best of my knowledge. I understand that a material misstatement of fact in completion of this document may constitute grounds for conviction of perjury.
- I am a U.S. citizen, at least 18 years of age (or will be by the day of the election), eligible to vote in the requested jurisdiction, and
- I am not disqualified to vote due to having been convicted of a felony or other disqualifying offense, nor have I been adjudicated mentally incompetent; or if so, my voting rights have been reinstated; and
- I am not registering, requesting a ballot, or voting in any other jurisdiction in the United States, except the jurisdiction cited in this voting form.

Sign here X _____

Today's date (MM/DD/YYYY)      /      /

This information is for official use only. Any unauthorized release may be punishable by law.    Previous editions are obsolete.    Standard Form 76 (Rev.09-2021), OMB No. 0704-0503

# You can vote wherever you are.

## 1. Fill out your form completely and accurately.

- Your U.S. address is used to determine where you are eligible to vote absentee. For military voters, it is usually your last address in your state of legal residence. For overseas citizens, it is usually the last place you lived before moving overseas. You do not need to have any current ties with this address. DO NOT write a PO Box # in section 2.

- Most states allow you to provide a Driver's License number or the last 4 digits of your SSN. New Mexico, Tennessee, and Virginia require a full SSN.

- If you cannot receive mail at your current mailing address, please specify a mail forwarding address.

- Many states require you to specify a political party to vote in primary elections. This information may be used to register you with a party.

- **Section 6 Requirements:** If your voting residence is Vermont, you must acknowledge the following by writing in section 6: "I swear or affirm that I have taken the Vermont Voter's Oath." If your voting residence is in Puerto Rico, you must list your mother's and father's first name.

- We recommend that you complete and submit this form every year while you are an absentee voter.

## 2. Remember to sign this form!

## 3. Return this form to your election official. You can find their contact information at FVAP.gov.

- Remove the adhesive liner from the top and sides. Fold and seal tightly. If you printed the form, fold it and seal it in an envelope.

- All states accept this form by mail and many states accept this form by email and fax. See your state's guidelines at FVAP.gov.

### Agency Disclosure Statement

The public reporting burden for this collection of information, OMB Control Number 0704-0503, is estimated to average 15 mintues per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding the burden estimate or burden reduction suggestions to the Department of Defense, Washington Headquarters Services, at whs.mc-alex.esd.mbx.dd-dod-information-collections@mail.mil. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number. DO NOT SUBMIT YOUR FORM TO THE E-MAIL ADDRESS ABOVE.

### Privacy Advisory

When completed, this form contains personally identifiable information and is protected by the Privacy Act of 1974, as amended.

## Questions?
## Email: vote@fvap.gov

The address can be found online at FVAP.gov.)
(Fill in the address of your election office.

To

NO POSTAGE NECESSARY IN THE U.S. MAIL – DMM 703.8.0

OFFICIAL ABSENTEE BALLOTING MATERIAL – FIRST CLASS MAIL



U.S. Postal Service, APO/FPO/DPO system, or diplomatic pouch.
International airmail postage is required if not mailed using the

PAR AVION



39 USC 3406
U.S. Postage Paid

(Your name and mailing address)
From

# EXHIBIT 7



# North Carolina Court of Appeals

**EUGENE H. SOAR, Clerk**
Court of Appeals Building
One West Morgan Street
Raleigh, NC 27601
(919) 831-3600

Fax: (919) 831-3615
Web: https://www.nccourts.gov

Mailing Address:
P. O. Box 2779
Raleigh, NC 27602

**No. P24-735**

**TELIA KIVETT; WANDA NELSON FOWLER; THE REPUBLICAN NATIONAL COMMITTEE; AND THE NORTH CAROLINA REPUBLICAN PARTY**

**v.**

**NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; ALAN HIRSCH, IN HIS OFFICIAL CAPACITY OF CHAIR OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; JEFF CARMON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE NORTH CAROLINA BOARD OF ELECTIONS; STACY EGGERS IV, KEVIN N. LEWIS, AND SIOBHAN O'DUFFY MILLEN IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS**

From Wake
( 24CV031557-910 )

## O R D E R

The following order was entered:

By unanimous vote, the "Petition for Writ of Supersedeas and Motion for Temporary Stay and Temporary Injunction" filed in this cause by petitioners Telia Kivett, Wanda Nelson Fowler, the Republican National Committee, and the North Carolina Republican Party on 23 October 2024 is decided as follows: The petition for writ of supersedeas is denied. The motion for temporary stay and temporary injunction is dismissed as moot.

By order of the Court, sitting as a three-judge panel, this the 29th of October 2024.

WITNESS my hand and the seal of the North Carolina Court of Appeals, this the 29th day of October 2024.

*Eugene H. Soar*

Eugene H. Soar
Clerk, North Carolina Court of Appeals

Copy to:
Mr. Phillip J. Strach, Attorney at Law, For Kivett, Telia; Fowler, Wanda Nelson; Republican Nat'l Comm. - (By Email)
Mr. Jordan A. Koonts, Attorney at Law - (By Email)
Ms. Sarah G. Boyce, Deputy Attorney General, For The North Carolina State Board of Elections - (By Email)
Ms. Mary Carla Babb, Special Deputy Attorney General - (By Email)
Mr. Terence Steed, Special Deputy Attorney General - (By Email)
Mr. Jim W. Phillips, Jr., Attorney at Law - (By Email)

Ms. Shana L. Fulton, Attorney at Law - (By Email)
Mr. William A. Robertson, Attorney at Law - (By Email)
Mr. James W. Whalen, Attorney at Law - (By Email)
Mr. Eric M. David, Attorney at Law, For Democratic National Committee - (By Email)
Ms. Shaunesi Y. DeBerry - (By Email)
Mr. Jeffrey Loperfido, Attorney at Law - (By Email)
The Honorable Clerk of Superior Court, Wake County

STATE OF NORTH CAROLINA    )
COUNTY OF WAKE      )
             )
             )
**AFFIDAVIT OF KYLE OFFERMAN** )
             )
             )
_____ )

I, Kyle Offerman, being duly sworn, depose and state as follows:

## Background and Qualifications

1. I am over 18 years of age and fully competent to make this affidavit.

2. I have personal knowledge of the facts and matters set forth herein.

3. I am a citizen of the United States and a resident of Wendell, Wake County, North Carolina.

4. I am employed as the Chief Counsel of the North Carolina Republican Party.

## Preparation of Filing

5. In preparation for filing election protests related to the 2024 General Election, my team and I conducted a thorough review of 08 NCAC 02 .0111, which outlines the filing requirements for an Election Protest.

6. We assembled the list of all County Board of Elections Directors in North Carolina from https://vt.ncsbe.gov/BOEInfo/PrintableVersion/ to gather their applicable emails as provided by the State Board of Elections.

7. We then prepared one hundred emails to be sent to the County Board of Elections Directors with the applicable Jefferson Griffin protests for said county and a cover letter attached.

**Filing**

8. We then sent said Jefferson Griffin protests from legal@ncgop.org with the Counsel for Jefferson Griffin, Craig Schauer, carbon copied.

9. All protests on behalf of Jefferson Griffin were submitted by 5:00 PM Eastern Standard Time in accordance with N.C.G.S. § 163-182.9(b).

**Preparation of Service**

10. In preparation for filing election protests related to the 2024 General Election, my team and I conducted a thorough review of 08 NCAC 02 .0111, which outlines the service requirements for affected parties.

11. We compiled an Excel file containing the names and addresses of those parties affected by the protests filed by Jefferson Griffin, Ashlee Adams, Stacie McGinn, and Frank Sossaman.

12. To ensure conformity with North Carolina law and on behalf of these candidates, we created a webpage hosted on www.ncgop.org, accessible to those who receive service that a protest has been filed that may affect his or her vote.

13. A QR code was generated to provide a direct link to this webpage.

14. We designed a service postcard, incorporating the QR code, to notify all affected parties. A draft of this postcard is attached hereto as Attachment 1.

2

15. A third-party vendor was contracted to handle the mailing of these service postcards in compliance with 08 NCAC 02 .0111.

16. The third-party vendor was provided with the Excel file containing the names and addresses of all affected parties to facilitate the mailing process.

## Service

17. The third-party vendor prepared and mailed the service postcards to all affected parties by the deadline established in 08 NCAC 02 .0111.

18. Each postcard directs recipients, via the QR code, to the public webpage where all filed protests are uploaded and available for review.

19. Once on the webpage, affected parties can easily locate the relevant protest filed in their county in which they are named.

20. The process and manner of service adhered to the requirements set forth in 08 NCAC 02 .0111.

Further, the affiant sayeth not.

This __22__ day of November 2024.

_Kyle V. O[signature]_

KYLE OFFERMAN

STATE OF NORTH CAROLINA
COUNTY OF WAKE

Signed and sworn to (or affirmed) before me by _Kyle Offerman_ .

Date: _11/22/2024_

_[signature]_

[Official Signature of Notary]

DANIEL MILAN KRCHNAVEK
NOTARY PUBLIC
WAKE COUNTY, NC
[Official Seal]
My Commission Expires _04-04-2026_

_Daniel Milan Krchnavek_

Notary Public
[Notary's printed or typed name]

My commission expires: _04-04-2026_

4

# ATTACHMENT 1

1506 Hillsborough Street
Raleigh, NC 27605



### *** NOTICE ***

[[First Name]] [[Middle Name]] [[Last Name]], your vote may be affected by one or more protests filed in relation to the 2024 General Election.

**Please scan this QR code to view the protest filings.** Please check under the county in which you cast a ballot to see what protest may relate to you.



For more information on when your County Board of Elections will hold a hearing on this matter, please visit the State Board of Elections' website link found on the Protest Site (via the QR code).

Paid for by the North Carolina Republican Party.

# North Carolina Voter Registration Application *(Sections in red are required.)* **06w**

## Eligibility

You must be a U.S. citizen and old enough to register to submit this form. Required.

**1**

Are you a citizen of the United States of America?
*If you checked "no" in response to this question, do not submit this form. You are not qualified to vote.*   ☐ Yes  ☐ No

Will you be 18 years of age on or before election day?   ☐ Yes  ☐ No

If you answered "no" to the question above, are you at least 16 years of age and understand that you must be 18 years of age on or before election day to vote?   ☐ Yes  ☐ No

*If you checked "no" in response to both of these questions, do not submit this form. You are not qualified to register or preregister to vote.*

## Print your name

Required.

**2**

Last Name _____   Suffix (Jr, Sr., II, III, IV) _____

First Name _____   Middle Name _____

## Identification information

Required.

**3**

Date of birth _____
*(mm/dd/yyyy)*

**AND**

NC Driver's License/DMV ID number _____
**OR, if you do not have one**
Last 4 digits of your Social Security number _____
**OR**
☐ I do not have a driver's license/DMV ID or Social Security number.

## Residential address

Your home address. Required.

**4**

Address *(not P.O. Box)* _____   Apt/Unit # _____

City _____  **NC**  Zip _____  County _____

If you have lived at this address less than 30 days, when did you move here? *(mm/dd/yyyy)* _____

## Mailing address

If you do not receive mail at your residential address, you must provide a mailing address. Required.

**5**

☐ Same as above

Address or P.O. Box _____   Apt/Unit # _____

City _____   State _____   Zip _____

## No physical address?

If you do not have an address, show on the map where you live or normally sleep.

**6**

Write the names of the nearest crossroads (or streets). Draw an **X** on the map to show where you live/sleep.

Remember to provide a valid **mailing address** in Section 5 so that the board of elections can send you a voter card.

North

## About you

**7**

| Gender | Ethnicity | Race | | |
|---|---|---|---|---|
| ☐ Male | ☐ Hispanic/Latino | ☐ African American/Black | ☐ Asian | ☐ Native Hawaiian/ Pacific Islander |
| ☐ Female | ☐ Not Hispanic/Latino | ☐ American Indian/Alaska Native | ☐ White | ☐ Other |
| | | | ☐ Multiracial | |

## Political party affiliation

**8**

☐ Democratic Party   ☐ No Labels Party   ☐ Other _____
☐ Green Party   ☐ Republican Party
☐ Libertarian Party   ☐ Unaffiliated (No Party)

*If you select a party that is not recognized in North Carolina, you will be registered as Unaffiliated.*

## Old registration

If you are currently registered to vote somewhere else, complete this section so that your prior registration can be cancelled.

**9**

**Name and address on last registration to cancel**

Last Name _____   Suffix _____

First Name _____   Middle Name _____

Street _____

City _____   State _____   Zip _____   County _____

## Contact information

This optional information is helpful if we have questions.

**10**

Phone _____   Email _____

## Signature

Fraudulently or falsely completing this form is a Class I felony under Chapter 163 of the NC General Statutes.

**11**

I have reviewed the contents of this form and attest that:
• I am a U.S. citizen;
• I am at least 18 years old, or will be by the date of the general election; or I am at least 16 years old and understand that I must be at least 18 years old on the day of the general election to vote;
• I will have lived at the residence identified on this form for 30 days before the date of the election in which I intend to vote;
• If I filled out Section 9 above, I am requesting that my old registration be cancelled; and
• I am not currently serving a felony sentence (including any probation, post-release supervision, or parole).

**Voter, sign and date here** *(Required)*

X _____   Date *(mm/dd/yyyy)* _____   ☐ I would like to be contacted to be a poll worker.

2024.01





PLACE
STAMP
HERE

FROM:

TO: BOARD OF ELECTIONS

NC

City — State — Zip Code

USA

## APPLICATION INSTRUCTIONS

*Use this application to: (1) register to vote; (2) preregister to vote if you are at least 16 years old; (3) change party affiliation or unaffiliated status; (4) report a change of address within a county; or (5) report a name change.*

### Specific Instructions for Each Numbered Section of the Application:

**1.** Indicate whether you meet the citizenship and age qualifications to vote or preregister to vote: (1) you must be a citizen of the United States; and (2) you must be at least 18 years old, or you will be 18 years old by the next general election, or you must be at least 16 years old if you want to preregister to vote.

**2.** Provide your full legal name. If your name has changed, this form will be used to update your current voter registration.

**3.** Provide your date of birth. If you have an NC driver's license or NCDMV ID number, you must provide this number. If not, you must provide the last four digits of your social security number. If you have none of these ID numbers and you are registering to vote for the first time in North Carolina, you must check the box indicating that you do not have these forms of identification. If you check that box, you may attach to this application a copy of a current and valid photo identification, utility bill, bank statement, government check, paycheck, or other government document that shows your name and address.

**4-6.** Provide your home address as of today's date in **Section 4**. If you do not receive mail at the address listed in **Section 4** or you do not have a traditional address, you must provide your mailing address in **Section 5**. If you do not have a traditional address, show on the map where you live or normally sleep in **Section 6**. Be descriptive and note any nearby streets or landmarks.

**7.** You may choose to provide your gender, race, and ethnicity. You are not required to provide this information.

**8.** You may choose to affiliate with any political party recognized in North Carolina. If you do not want to affiliate with a political party, you may opt to be registered as *Unaffiliated*. If you are applying for new registration in the county and leave the party affiliation section blank, you will be registered as *Unaffiliated*.

**9.** If you are currently registered in another North Carolina county or another state, provide your name and previous address used on that prior registration. This information will be used to request the cancellation of your registration in the other county or state.

**10.** You may choose to provide your phone number and email address. This is helpful if the board of elections needs to contact you with any questions about the form.

**11.** You must sign this form or make your mark. Only the person applying for registration is eligible to sign this form. If you are applying for new registration in your county of residence, you must submit this form with your original signature on the form. By signing this form, you are attesting that you meet the qualifications to register to vote, as listed above your signature.

### National Voter Registration Act Statement

If you are submitting this application to an NVRA agency or the North Carolina Division of Motor Vehicles, the location or office where you submitted the application will remain confidential and will be used only for voter registration purposes. Public assistance agencies, disability services agencies, the North Carolina Division of Motor Vehicles, and unemployment services agencies must offer you the opportunity to register to vote at the initial application for service of assistance and during any recertification, renewal or change of address. If you decline to register to vote, the fact that you so declined will also remain confidential. If you would like help completing the voter registration application, the agency will help you. The decision whether to seek or accept help is yours. You may fill out the application form in private and return it to the agency that provided you the form or you may mail or deliver the form to your county board of elections office.

Applying to register or declining to register to vote will not affect the amount of assistance provided. If you believe that someone has interfered with your right to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with the State Board of Elections, P.O. Box 27255, Raleigh NC 27611-7255 or you may call the agency at 1-866-522-4723.

### Submitting Your Form:

You must mail or deliver this application in-person with your original signature if you are registering to vote for the first time in your county of residence. If you are changing your name, address or party affiliation within your current county of registration, in addition to mail, you may also fax or email a scanned image of your signed application. If you give your signed application to another person or organization to submit on your behalf, be sure the person or organization can commit to timely submitting your application to the proper board of elections.

**Submit this form to:**

NC State Board of Elections
P.O. Box 27255
Raleigh, NC 27611-7255