No.                                                          TENTH JUDICIAL DISTRICT

SUPREME COURT OF NORTH CAROLINA
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| TELIA KIVETT; WANDA NELSON FOWLER; the REPUBLICAN NATIONAL COMMITTEE; and the NORTH CAROLINA REPUBLICAN PARTY<br><br>               Plaintiffs,<br><br>vs.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections; ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; JEFF CARMON, in his official capacity as Secretary of the North Carolina State Board of Elections; STACY EGGERS IV, KEVIN N. LEWIS, and SIOBHAN O'DUFFY MILLEN, in their official capacities as members of the North Carolina State Board of Elections,<br><br>               Defendants,<br><br>and<br><br>THE DEMOCRATIC NATIONAL COMMITTEE,<br><br>           Intervenor-Defendant. | From NCCOA<br><u>No. P24-735</u> |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFFS' PETITION FOR WRIT OF SUPERSEDEAS AND FOR
DISCRETIONARY REVIEW**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ........................................................................................................... 3

FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 6
I.    Factual Background ............................................................................................... 6
II.   Procedural Background ......................................................................................... 7

REASONS WHY THIS WRIT SHOULD ISSUE .......................................................... 9
I.    A Writ Of Supersedeas Will Preserve The Status Quo And Avoid Irreparable Harm To Plaintiffs'
      Constitutional Rights. .......................................................................................... 9
II.   Plaintiffs Are Likely To Succeed On The Merits ................................................ 11
III.  Plaintiffs Are Likely To Suffer Irreparable Harm Unless Relief Is Granted. ............ 13

PETITION FOR DISCRETIONARY REVIEW ........................................................... 16
I.    Reasons Why Certification Should Issue ............................................................ 16
II.   Issue To Be Briefed ............................................................................................ 18

CONCLUSION ............................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Cases**                                                                     Page(s)

*City of New Bern v. Walker*,
  255 N.C. 355 (1961) ................................................................ 9

*Craver v. Craver*,
  298 N.C. 231 (1979) ................................................................ 9

*Dunn v. Blumstein*,
  405 U.S. 330 (1974) ................................................................ 3

*Hall v. Wake Cnty. Bd. of Elections*,
  280 N.C. 600 (1972) ......................................................... 3, 6, 12

*James v. Bartlett*,
  359 N.C. 260, 607 S.E.2d 638 (2005) ................................... 2,3

*Kennedy v. N. Carolina State Bd. of Elections*,
  905 S.E.2d 55 (N.C. 2024) ...................................................... 9

*State v. Jordan*,
  385 N.C. 753 (2024) ................................................................ 9

**North Carolina Constitution**

N.C. Const. art. VI § 2 ......................................................... Passim
N.C. Const. art. I § 10 ...................................................... 13, 16

**Statutes**

52 U.S.C. § 20301 ................................................................ 6

N.C. Gen. Stat. § 1-269 ......................................................... 9
N.C. Gen. Stat. § 7A-31 .................................................. 2, 3, 15
N.C. Gen. Stat. § 163-258.1 ........................................ 6, 10, 15, 16
N.C. Gen. Stat. § 163-89 ....................................................... 10
N.C. Gen. Stat. § 163-258.2 ........................................ 6, 4, 8, 16
N.C. Gen. Stat. § 7A-31 ........................................................ 16

**Rules**

N.C. R. App. P. 15 ................................................................ 2
N.C. R. App. P. 23 .............................................................. 2, 9

No.                                                 TENTH JUDICIAL DISTRICT

SUPREME COURT OF NORTH CAROLINA
**************************************

TELIA KIVETT; WANDA NELSON
FOWLER; the REPUBLICAN
NATIONAL COMMITTEE; and the
NORTH CAROLINA REPUBLICAN
PARTY

                            Plaintiffs,                    From NCCOA
                                                          No. P24-735
vs.

NORTH CAROLINA STATE BOARD
OF ELECTIONS; KAREN BRINSON
BELL, in her official capacity as Executive
Director of the North Carolina State Board
of Elections; ALAN HIRSCH, in his
official capacity as Chair of the North
Carolina State Board of Elections; JEFF
CARMON, in his official capacity as
Secretary of the North Carolina State
Board of Elections; STACY EGGERS IV,
KEVIN N. LEWIS, and SIOBHAN
O'DUFFY MILLEN, in their official
capacities as members of the North
Carolina State Board of Elections,

                            Defendants,

and

THE DEMOCRATIC NATIONAL
COMMITTEE,

                    Intervenor-Defendant.

*******************************************************
**PLAINTIFFS' PETITION FOR WRIT OF SUPERSEDEAS AND FOR
DISCRETIONARY REVIEW**
*******************************************************

**TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF NORTH CAROLINA:**

Plaintiffs Telia Kivett, Wanda Nelson Fowler, the Republican National Committee, and the North Carolina Republican Party (collectively, "Plaintiffs"), pursuant to N.C. R. App. P. 23, respectfully petitions this Court to issue a writ of supersedeas of the Court of Appeals' October 29, 2024 order denying Plaintiffs a writ of supersedeas and a temporary stay and injunction of the Superior Court's October 21, 2024 order. Plaintiffs seek a simple but necessary solution to remedy an ongoing and increasingly dangerous threat to the integrity of North Carolina's elections. Evidence in the record makes clear that Defendants are allowing, in their own words, an "unknown" number of overseas citizens who have never resided in North Carolina to register and vote in the state's elections. This is an unabashed violation of Article VI § 2 of the state Constitution. Thus, Plaintiffs seek an order enjoining Defendants from counting these potentially illegal ballots and instead segregating and counting them as provisional ballots until the voter's qualifications under all applicable and constitutional state and federal laws can be adequately established. This Court's inherent power to command such actions is well-recognized. *See James v. Bartlett*, 359 N.C. 260, 607 S.E.2d 638 (2005) (holding that NCSBE improperly counted certain identifiable groups of provisional ballots in violation of North Carolina law). Because these ballots are readily identifiable and the harm easily remedied, Plaintiffs respectfully request emergency relief from this Court.

Alongside this petition for a writ of supersedeas, Plaintiffs submit a petition for discretionary review pursuant to N.C. Gen. Stat. § 7A-31(c) and N.C. R. App. P. 15(a), respectfully requesting this Court to certify for discretionary review of the Court of Appeals' October 29, 2024 order denying Plaintiffs' request for a writ of supersedeas regarding the Superior Court's October 21, 2024 order denying Plaintiffs' request for injunctive relief. The October 21, 2024 order is

attached hereto as Exhibit 7. Plaintiffs maintain that review is appropriate because the subject matter of this appeal has significant public interest and involves principles of major significance. *See* N.C. Gen. Stat. § 7A-31(c)(1), (2).

Due to the exigent circumstances presented herein, Plaintiffs respectfully request expedited treatment of these petitions. Defendants are actively allowing certain groups of people who have never resided in the United States, let alone in North Carolina, to participate in the state's ongoing elections in plain violation of Article VI Section 2 of the North Carolina Constitution. As explained below, this Court has the power to grant effective relief prior to November 5, 2024, but it must act swiftly. By acting now this Court can still avoid the irreparable harm which would befall Plaintiffs and the voting populace of North Carolina, should persons ineligible to do so participate in this state's elections, potentially with decisive effect on races up to and including the contest for President of the United States.

## **INTRODUCTION**

"To permit unlawful votes to be counted along with lawful ballots in contested elections effectively " disenfranchises" those voters who cast legal ballots, at least where the counting of unlawful votes determines an election's outcome." *James v. Bartlett*, 359 N.C. 260, 270, 607 S.E.2d 638, 644 (2005).

Article VI Section 2 of the North Carolina Constitution limits voter qualifications to North Carolina residents and only North Carolina residents. This limitation has been in place since 1868 and has been upheld by this Court. *See Hall v. Wake Cnty. Bd. of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972).[1] It is a fundamental principle of our state's elections: Subject to any

---

[1] Plaintiffs note that in their appellate papers below, both Defendants and Intervenor-Defendant questioned the viability of the North Carolina Constitution's voter residency requirement in light

constitutional federal law to the contrary, only North Carolina residents can participate in North Carolina elections.

This case is about Defendants' failure to adhere to that fundamental principle. Contrary to the constitution, they are allowing certain adults who have resided overseas for their entire lives, many of whom may have never stepped foot in the United States, let alone North Carolina, to nevertheless have a say—a potentially decisive one at that—in the state's November 5, 2024 election results. These "Never Residents" are adults born overseas to U.S. Citizen-parents whose last residence in this country was North Carolina. While Never Residents are U.S. Citizens, they have never resided in North Carolina, and for that reason, they are—and always have been—constitutionally ineligible to vote in this state. Nevertheless, Defendants have inexplicably and unjustifiably opened up North Carolina's ballot boxes to these individuals. This Court must act to ensure North Carolina's elections are, as its Constitution demands, for North Carolinians and <u>only</u> North Carolinians.

North Carolina has notoriously close elections. From the top of the ballot to the bottom, recent memory proves that some of the state's top races can be decided by a few votes. Now more than ever, counting every legitimate vote from every eligible voter—and **only** legitimate votes from eligible voters—matters. Defendants' justification for violating the Constitution does not hold water. They point to a certain provision of North Carolina's Uniform Military and Overseas Voters Act, N.C. Gen. Stat. § 163-258.2(1)(e)(1)(2) ("UMOVA"), as justification for their granting

---

of the Supreme Court case, *Dunn v. Blumstein*, 405 U.S. 330 (1974). However, *Dunn* and its progeny make clear that *bona fide* residency requirements, such as the one in Article VI Section 2, are perfectly acceptable and remain in full effect. *See id.* at 343; *see also Holt Civic Club v. City of Tuscaloosa*, 439, U.S. 60, 68-69 (1978). As such, any attempts to conflate North Carolina's constitutional residency requirement with that of *Dunn* is both misplaced and of no effect.

voting rights to Never Residents. But a statute cannot override the Constitution. And Defendants must enforce the Constitution first and foremost.

The consequences of Defendants' conduct are significant. First, they are allowing ineligible persons to participate in North Carolina's elections, with potentially decisive effect. This year, the potential consequences are particularly dire, as the results of the presidential election *in this state* could very well determine the race. To state it plainly: If the margin of victory in this state is less than the number of ballots cast by Never Residents, the President of the United States very well may be elected by votes cast by persons ineligible to participate in the state's elections. Second, although Never Residents are supposed to register at the address at which their parents lived 18 or more years ago when they departed the United States, they have no personal knowledge that their parents ever lived at any such address. After all, they never lived at that address. And Defendants do not take *any steps at all* to verify Never Residents' claim to be connected to any given address. As a result, Never Residents can effectively float their vote throughout the state, picking and choosing the congressional, legislative, or other districts in which they feel their vote might have the most impact.

The Superior Court and Court of Appeals substantially erred when they denied Plaintiffs the narrowly tailored but vitally important requested relief. The Superior Court based its denial in large part on its view that there was no evidence of a Never Resident having yet actually voted. But that is belied by Defendants' own admissions. And even if it were true that Never Residents have never voted in North Carolina's elections, that would only confirm that *no harm* whatsoever could come from a judicial decree compelling Defendants to enforce the Constitution of this state preventing them from doing so in this election. Considering the quickly closing window for effective pre-election relief, Plaintiffs turn to this Court seeking a writ of supersedeas and a petition

for discretionary review. Absent this Court's issuance of a writ of supersedeas, staying the Court of Appeals' order and preserving the status quo, Plaintiffs will suffer irreparable harm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    FACTUAL BACKGROUND

The North Carolina Constitution explicitly limits voting eligibility to residents of the state, providing: "Any person who has resided in the State of North Carolina for one year and in the precinct, ward, or other election district for 30 days next preceding an election, and possesses the other qualifications set out in this Article, shall be entitled to vote at any election held in this State." *See* Complaint ("Compl."), at ¶ 2 (attached hereto as Exhibit 1); *see also Hall v. Wake Cnty. Bd. of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972).

North Carolina law, N.C. Gen. Stat. § 163-258.1, *et seq.* ("UMOVA"), identifies several categories of U.S. citizens, including both military personnel, their dependents, and certain civilians, who may vote in North Carolina despite living overseas.[2] The vast majority of UMOVA is unobjectionable; it largely confers voting rights on citizens that already have those exact came rights pursuant to a federal law–52 U.S.C. § 20301, *et seq.*, the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"). Further UMOVA generally confers voting rights only on people who have, at some point, actually resided in North Carolina. UMOVA has one provision which differs from UOCAVA—subsection (1)(e). This subsection is the vehicle by which Defendants are conferring the right to vote in North Carolina upon people who have never lived in the United States, let alone this state.

---

[2] Plaintiffs are not challenging the eligibility of uniformed service members and their spouses and qualified dependents to vote in North Carolina under both federal law and provisions of state law which are not at issue here. To be clear, nothing in Plaintiffs' requested relief would in any way impact affect these voters' rights. *See* N.C. Gen. Stat. § 163-258.2(1)(a)-(d); *see also* 52 U.S.C. § 20310(1).

Defendants can easily identify and segregate ballots received from Never Residents. That is because when an overseas person registers to vote in North Carolina they submit either a Federal Post Card Application ("FPCA") or a Federal Write-In Absentee Ballot ("FWAB"). *See* Compl. at ¶¶ 47-49. North Carolina's FPCA form contains an option for a registrant to certify that they are a United States citizen who has *never* lived in the United States. *See id.* at ¶ 48; *see also* NC FPCA, attached hereto as Exhibit 6.This box is a massive red flag for Never Residents attempting to vote, thus warranting immediate further inquiry. Evidence in the record makes clear that Defendants have instructed county elections officials to accept and process applications from persons who register to vote by selecting this option without any further inquiry into the registrants' qualifications to vote. *Id.* at ¶¶ 45-51.

Defendants are acutely aware of these registrations and ballots. *See* Compl. at Ex. A. Defendants have separately identified and segregated these registrations for use in other contexts. *See id.* Defendants have also marketed to the public the exact process by which Never Residents could register to vote and apply for absentee ballots in North Carolina. *Id.* at ¶ 50. Thus, upon information and belief, Defendants have allowed and will continue to allow Never Residents to register and participate in North Carolina elections. *Id.* at ¶¶ 51, 53. *See* Defs. Brf. in Opp. to Mtn. for PI, at p. 2 (noting that "many" Never Residents "**have almost certainly already cast ballots.**") (emphasis added).

## II.     PROCEDURAL BACKGROUND

On October 2, 2024, Plaintiffs filed their Verified Complaint. On October 11, 2024, Plaintiffs filed their Motion for Preliminary Injunction ("Motion for PI"). Then, on October 21, 2024, the Motion for PI was heard before the Honorable Judge John W. Smith. In their Motion for PI, Plaintiffs asked the Court to enter an order directing Defendants to instruct the county boards

of election to immediately separate and segregate ballots received from readily identifiable potential Never Resident voters and hold them pending confirmation of the person's qualifications to vote in the state. *See* Motion for PI, attached hereto as Exhibit 4, at ¶¶ 35-37. Plaintiffs made clear that once that confirmation is made—whether through NCSBE independently determining the person is covered by federal law or an unchallenged section of UMOVA, or by the individual offering proof of qualification once contacted—that the vote can and should be counted by the canvass date. *See id.*

On October 21, 2024, Judge Smith denied the Motion for PI (the "Order"), finding that Plaintiffs had failed to meet their burden insofar as they did not identify a specific Never Resident voter whom Defendants had allowed to vote. Judge Smith further stated his personal opinion, completely at odds with Defendants' position in this litigation, that Defendants would not "knowingly" allow such persons to vote in the state's election. Order at ¶ 5. Judge Smith also held that Plaintiffs would have an adequate remedy at law, should Never Resident votes be cast in the state's elections. *Id.* at ¶ 8. However, the Order did not specifically identify what that "remedy" might be. *Id.* Additionally, the Order artificially narrowed Plaintiffs' claims to ones of "fraudulent[ ]" voting occurrences under § 163-258.2(1)(e)(1)(2). *Id.* at ¶ 4.[3]

Plaintiffs filed their Notice of Appeal with the trial court on October 22, 2024. *See* Ex.5. Soon thereafter Plaintiffs filed a petition for writ of supersedeas with the Court of Appeals, based on the fact that the Order failed to prevent serious and ongoing violations of the North Carolina Constitution, all of which are readily and easily redressable, the beginning of early voting notwithstanding. As a result, Plaintiffs filed their petition to preserve the status quo—i.e., uphold

---

[3] This standard reflects an erroneous view of Plaintiffs' allegations as the Complaint and Motion for PI focused on Defendants misleading Never Residents into believing they were eligible to vote in North Carolina. Plaintiffs do not allege claims of "fraudulent" voting.

and reaffirm the Constitution's longstanding residency requirement by segregating ballots cast by potential Never Resident voters—until Plaintiffs' appeal can be heard. On October 29, 2024, the Court of Appeals, denied Plaintiffs' petition. *See* Ex. 4. The Court of Appeals' order failed to meaningfully address the substantial and heightened risk of harm caused by Defendants' actions. Because the risk of irreparable harm to Plaintiffs due to Defendants' ongoing Constitutional violations has significantly increased even since the Superior Court and the Court of Appeals' orders, a writ of supersedeas should be issued.

## REASONS WHY THIS WRIT SHOULD ISSUE

**I.     A WRIT OF SUPERSEDEAS WILL PRESERVE THE STATUS QUO AND AVOID IRREPARABLE HARM TO PLAINTIFFS' CONSTITUTIONAL RIGHTS.**

The purpose of a writ of supersedeas is "to preserve the status quo pending the exercise of the appellate court's jurisdiction" and "is issued only to hold the matter in abeyance pending review." *City of New Bern v. Walker*, 255 N.C. 355, 356, 121 S.E.2d 544, 545-46 (1961). A writ of supersedeas is available "to stay the . . . enforcement of any . . . order, or other determination of a trial tribunal which is not automatically stayed by the taking of appeal when an appeal has been taken . . . ." N.C. R. App. P. 23(a)(1); *see also* N.C. Gen. Stat. § 1-269 (authorizing the writ of supersedeas). "The writ of supersedeas may issue in the exercise of, and as ancillary to, the revising power of an appellate court," and the writ's purpose "is to preserve the status quo pending the exercise of appellate jurisdiction." *Craver v. Craver*, 298 N.C. 231, 237-38, 258 S.E.2d 357, 362 (1979); *see also City of New Bern v. Walker*, 255 N.C. 355, 121 S.E.2d 544, 545-46 (1961). Based upon the limited record before the Court at this juncture, the Court's review is limited to the legal questions presented and Plaintiffs have provided substantial evidence to support their legal theories, thus warranting the narrow relief requested. *See Kennedy v. N. Carolina State Bd. of*

*Elections*, 905 S.E.2d 55 64-65 (N.C. 2024) (Dietz, J., dissenting) (citing *State v. Jordan*, 385 N.C. 753, 757, 898 S.E.2d 279 (2024)).

In this case, a writ of supersedeas is proper because it would preserve the status quo immediately prior to the trial court's Order. Specifically, Never Residents will, consistent with the Constitution of this state, not be allowed to participate in the state's elections. This has been the status quo in North Carolina since 1868. The trial court's Order eviscerates that well-established principle based on little more than an observation that N.C. Gen. Stat. § 163-258.1 *et seq.* was passed in 2011 and that the RNC and NCGOP have engaged in general elections without litigation since 2011. Order at ¶ 3. This passing—and irrelevant—observation does little to account for the substantial rights implicated and the potential harm facing Plaintiffs should Never Residents' ballots be counted. *See* Compl. at ¶¶ 79-83. As such, the true status quo—the status quo reflected in our Constitution—should remain while this Court reviews and addresses that Order.[4] By refusing to provide injunctive relief, the Order, without any justification, cancels Plaintiffs' statutory and constitutional rights, inflicting grave harm on them while votes from Never Residents are freely cast and counted in an election expected to be decided by a razor-thin margin. And while the trial court's order generally refers to Plaintiffs having "adequate remedies at law" should Never Resident votes be cast,[5] this finding is simply wrong. It premised on the tenuous assumption that Plaintiffs would be able to timely identify and challenge such ballots after they have been

---

[4] Defendants and Intervenor-Defendant both argued in their appellate papers that the status quo here is limited to the passage of UMOVA in 2011 to the present. To the extent this argument is grounded in an unconstitutional application of UMOVA, Plaintiffs maintain that this cannot constitute the basis for denying Plaintiffs their requested relief.

[5] It is unclear from the Order what the trial court meant in this regard. However, based upon the court's questioning at the October 21, 2024 hearing, Plaintiffs interpret this reference to mean a post-election voter challenge. That would be no remedy to the harms alleged in this suit which will be complete and irreparable after November 5, 2024.

tabulated. *See* N.C. Gen. Stat. § 163-89. And any remedy available to Plaintiffs, at any time, will necessarily be injunctive—and thus equitable in nature.

## II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Plaintiffs have established a reasonable likelihood of success on the merits of their claims through, *inter alia*, pointing to Defendants' own guidance to both county elections officials and the public in general, all of which clearly establish that Defendants allow Never Residents to register and vote in North Carolina's elections. Compl. ¶¶ 50 n. 4, 64-72. Based on the evidence presented it is evident that Defendants are actively violating the Constitution and Plaintiffs' rights thereunder.

Defendants' first effort to resist the obvious conflict between the North Carolina Constitution and UMOVA is to cast this litigation as an effort to disenfranchise American Citizens. This rhetoric is detached from reality. North Carolina has never lawfully conferred the franchise on Never Residents in the first place. But for Defendants' actions here, this would remain the case. People who have not been lawfully enfranchised, cannot be disenfranchised. Further, Plaintiffs' requested relief which would simply require ballots to be segregated until a Court determines that Never Residents likely can lawfully vote in this state or until Defendants otherwise confirm voter qualifications, is readily attainable and necessary.[6]

Next, Defendants try to say that the legislature can, under Article VI § 2(2) of the North Carolina Constitution, eliminate the residency requirement by "reduc[ing] the time of residence to

---

[6] In the October 21, 2024 hearing Defendants did not take the position that they cannot comply with the relief Plaintiffs request, rather, Defendants' arguments solely rested on the alleged burden they contend compliance would create. Defendants did not introduce any evidence of burden into the record, effectively waiving the argument for purposes of this motion.

zero." This is nonsensical.[7] If Defendants were correct that the North Carolina Constitution empowers the legislature to reduce residency to zero, then it could extend the franchise to any United States citizen, including South Carolinians, Texans, and even residents of far-flung territories like Guam. There is no evidence, *anywhere*, that the North Carolinians who ratified that section of the Constitution so radically surrendered their sovereignty when they enhanced the legislature's flexibility to reduce the residency period solely for President and Vice President.

In any event, there is no support in the text of UMOVA for the novel proposition that it reduces the residency requirement to zero. UMOVA itself references the state's "residency requirement." N.C. Gen. Stat. § 163-258.2(1)(e). There is only one such requirement and it is set forth in Article VI, § 2(1). UMOVA purports to exempt persons from that requirement. It does not reduce that requirement..

Lastly, Defendants argue that Never Residents somehow "inherit" North Carolina residency from their parents. As they see it, so long as a Never Resident's parent never formed an intent to remain overseas, they retained their North Carolina residency and passed that residency on to their children, who are now voting-age adults. This argument fails on many fronts. To begin, there is no reason to believe that Never Residents' parents remained North Carolina residents while overseas for at least 18 years. Second, even if some did, there is no reason to believe that their now adult children—the Never Residents themselves—never formed an intent to remain overseas. Third, the argument ignores that while children might share a residence with their parents since they have limited autonomy to decide where to live, the same is not true for adults. And every

---

[7] Although Defendants' interpretation of Article VI is incorrect, if it were accurate, it would only entitle a Never Resided individual to vote for President and Vice President. Defendants have not argued, nor have they presented any evidence to show that they are in fact limiting these voters to only voting for President and Vice President.

Never Resident is, indisputably, an adult. Finally, Defendants' argument ignores the fact that North Carolina law is clear that residency is established first by "presence" and second by an "intent to remain," and for those who have departed the state, by an "intent to return." *See Hall v. Wake Cnty. Bd. of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972). To have an "intent to return," to a place, an adult must first have lived in that place. Never Residents cannot satisfy that requirement because, by definition, they have never lived in North Carolina.

Finally, while the trial court's Order faulted Plaintiffs for not being able to specifically identify a Never Resident voting in the ongoing election, it ignored the fact that Defendants implicitly conceded that these voters exist, just that the number of voters is, at this point, unknown. Thus, as was explained to the trial court, the exact extent of harm caused by Never Residents will be uncovered in discovery. However, the heightened risk of Never Resident votes illegally infecting North Carolina's election results clearly exists, and coupled with the record evidence which shows Defendants' acute awareness of these voters, proves why Plaintiffs' narrowly tailored injunctive relief remains necessary.

## III.   PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM UNLESS RELIEF IS GRANTED.

Plaintiffs' undeniable constitutional and statutory rights to vote in free and fair elections, where only qualified voters participate, are at immediate risk, absent an injunction. *See* N.C. Const. art. VI § 2; *see also* N.C. Const. art. I § 10. This harm will be immensely exacerbated, should relief not be granted before the November 5, 2024 election. Simply put, the bulk of the damage will already be done. The trial court and Court of Appeals chose to ignore this risk, relegating it to conclusory labels despite ample record evidence warranting the narrow relief Plaintiffs seek.

In contrast, Defendants will suffer little if any harm, should the injunction issue. Registration and absentee application forms submitted by Never Residents are readily and easily

identifiable as seen by evidence attached to the Complaint. *See* Compl. at Ex. A. As these exhibits make clear, Defendants have previously directed their staff to run reports to filter down to certain registrants. *Id.* Defendants can run those same reports and cross-reference them with ballots received from those registrants, then segregate those ballots until the voter's qualifications under all applicable and constitutional state and federal law can be adequately established.

Additionally, the relief Plaintiffs seek is in both form and function identical to actions Defendants are already taking. For example, if an in-person voter forgets their identification and does not certify a reasonable impediment, then the voter's ballot is cast as provisional, pending them providing the necessary information to the county boards.

Defendants can identify, locate, and segregate ballots returned by potential Never Residents. Accordingly, the applications, registrations, and any ballots cast by Never Residents are both readily identifiable and should be segregated until such point that the voters' qualifications can be adequately established. As Plaintiffs made clear to the trial court, just because a registrant selects the aforementioned FPCA option does not mean their registration or vote is *per se* invalid, rather, it operates as the starting point for relief and a warning sign for possible Never Residents attempting to vote.[8] Considering the severe and irreparable risk of harm created by Never Resident voting, Plaintiffs' narrowly-tailored relief is that much more necessary and the public interest favors such relief.

In both their briefings and the October 21, 2024 hearing, Defendants and Intervenor-Defendants raised the specter of voter disenfranchisement and reliance, but both arguments are

---

[8] Because there are potentially conceivable circumstances where an otherwise qualified registrant may check the identified FPCA or FWAB options, Plaintiffs' requested relief is narrowly tailored to require Defendants to confirm voter qualifications instead of presuming them. This significantly addresses the risk of Never Resident voters while providing qualified voters the opportunity to confirm their ability to vote in North Carolina under all relevant state and federal laws.

misplaced. First, as explained throughout, Plaintiffs do not ask the Court to engage in any *per se* vote rejection. Instead, Plaintiffs have identified Defendants' ongoing and increasing violations of the state Constitution which demand immediate relief in the form of a simple additional layer of inquiry. Second, because Never Residents would have resided outside of the United States for at least eighteen (18) years, there is no justifiable reliance interest at issue here. Never Residents, by their very nature, are adults who have never lived in the state and have taken no actions to establish residency in North Carolina.[9] In the October 21, 2024 hearing Defendants tellingly argued to the trial court that, had these persons known they might not be able to vote in North Carolina, then they might have looked to register elsewhere. That is exactly the issue. Defendants' implicit advocacy for voter registration forum-shopping proves Plaintiffs' point; the Gene ral Assembly could not have intended for N.C. Gen. Stat. § 163-258.2(1)(e)(1)(2) to be applied in such a manner.

Defendants are already constitutionally prohibited from allowing Never Residents to vote in North Carolina's elections. Thus, to the extent Defendants claim a burden in having to ensure residency requirements of a group of individuals, the same is already required by North Carolina law. In sum, the equities favor Plaintiffs especially insofar as they are seeking to vindicate pre-established rights and protect the validity of their votes.

As Plaintiffs have repeatedly explained, the relief they seek is narrowly tailored and readily attainable, yet it avoids an immense and imminent harm. Defendants are already actively segregating ballots and counting them as provisional pending voter qualification confirmation in other contexts; that is all Plaintiffs seek here. To the extent there is any doubt whatsoever, the Court should err on the side of caution, ordering Defendants to immediately identify and separate

---

[9] For this consideration in balancing the equities, it is also worth noting that there are other instances of U.S. citizens who cannot vote in a state's elections such as U.S. citizens residing in U.S. territories.

these ballots until the voter's qualifications under all constitutional state and federal laws can be confirmed or until a Court determines that Never Residents likely can lawfully vote in this state. Indeed, once these ballots are counted, there is no going back.

\* \* \* \*

## PETITION FOR DISCRETIONARY REVIEW

Pursuant to N.C. Gen. Stat. § 7A-31(c) and Rule 15(a) of the North Carolina Rules of Appellate Procedure, Defendants respectfully petition this Court to certify discretionary review of the Court of Appeals' October 29, 2024 order denying Plaintiffs' request for a writ of supersedeas regarding the Superior Court's October 21, 2024 order denying Plaintiffs' request for injunctive relief.

Review is appropriate because of the significant public interest involved and the serious legal principles at issue, all of which directly affect North Carolina's constitution and its election integrity. *See* N.C. Gen. Stat. § 7A-31(c)(1) and (2).

## I.    REASONS WHY CERTIFICATION SHOULD ISSUE

Plaintiffs incorporate by reference the background section set forth in their petition for writ of supersedeas.

North Carolina General Statute 7A-31 allows this Court to certify a decision of the Court of Appeals for discretionary review when the decision is one of "significant public interest" or when it "involves legal principles of major significance." *Id.* at (c)(1) and (2). Each of these options are soundly established.

First, the issue presented—whether or not Defendants' allowing Never Residents to vote in North Carolina's elections is a violation of the state Constitution's residency requirement and whether such a practice violates Plaintiffs' clearly established constitutional rights—is one of foundational election integrity and, by its nature, a significant public interest. As explained in their petition for writ of supersedeas, Defendants are applying North Carolina law in such a way that flies in the face of the state Constitution and infringes Plaintiffs' rights. The North Carolina public certainly has an interest in ensuring its elections are determined only by the votes of qualified voters. Absent relief from this Court, Defendants would allow Never Residents to pick and choose which races they want to affect and potentially sway with their votes, regardless of any connection—or lack thereof—to the district(s) and race(s) they choose to vote in. This directly implicates several provisions of the state Constitution, including Article I Section 10.

Second, the Court of Appeals' decision to reject Plaintiffs' petition below involved extremely significant legal principles. Namely, Defendants' practice of applying N.C. Gen. Stat. § 163-258.1 *et seq.* to allow Never Resident voting directly conflicts with the state Constitution and the rights of Plaintiffs derived thereunder. As explained prior, Defendants' and Intervenor-Defendant's attacks on the validity of North Carolina's residency requirement, along with their reading of N.C. Gen. Stat. § 163-258.2(1)(e)(1)(2) to implicitly eliminate the state's residency requirement by "reducing" it to zero days, defy the plain text of the Constitution and statute, and cannot be squared with common sense or canons of statutory interpretation. *See, e.g. Mazda Motors of Am., Inc. v. Sw. Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979). Additionally, Plaintiffs have made it abundantly clear that covered military members and their spouses and qualified defendants are in no way impacted by the relief Plaintiffs seek. Thus, Defendants have failed to articulate a colorable basis for allowing Never Resident voting in North

Carolina. Therefore, this case directly implicates this Court's role to provide guidance on significant legal issues, including those affecting the interpretation of the North Carolina Constitution.

## II.     ISSUE TO BE BRIEFED

If the Court allows the petition, Plaintiffs will offer the following issue for briefing:

> Did the Court of Appeals err by denying Plaintiffs' petition for a writ of supersedeas and motion for temporary stay requesting the identification, segregation, and confirmation of ballots received from potential Never Residents?

### CONCLUSION

Plaintiffs respectfully request that this Court grant their petition for writ of supersedeas and, if the Court determines a review of the Court of Appeals' decision below is necessary, then allow discretionary review of the question presented herein.

Respectfully submitted, this, the 1st day of November, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
By: _/s/   Phillip J. Strach_
Phillip J. Strach
North Carolina State Bar No. 29456
Jordan A. Koonts
North Carolina State Bar No. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

_Attorneys for Plaintiffs_

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Petition for Writ of Supersedeas and Petition for Discretionary Review was served upon the persons indicated below via electronic mail addressed as follows:

Sarah G. Boyce
Terence Steed
Mary Carla Babb
sboyce@ncdoj.gov
tsteed@ncdoj.gov
mcbabb@ncdoj.gov

*Counsel for Defendants*

Jim W. Phillips, Jr.
Shana L. Fulton
William A. Robertson
James W. Whalen
Eric M. David
jphillips@brookspierce.com
sfulton@brookspierce.com
wrobertson@brookspierce.com
jwhalen@brookspierce.com
edavid@brookspierce.com

Christopher E. Babbitt
Daniel S. Volchok
Christopher.babbitt@wilmerhale.com
Daniel.volchok@wilmerhale.com

*Counsel for Intervenor-Defendant*

This, the 1st day of November, 2024.

/s/ Phillip J. Strach
Phillip J. Strach

## VERIFICATION

The undersigned attorney for Plaintiffs, after being duly sworn, says:

The contents of the foregoing petition are true to my knowledge, except those matters stated upon information and belief and, as to those matters, I believe them to be true.

Pursuant to Appellate Rule 23, I also hereby certify that the documents attached to this Petition for Writ of Supersedeas are true and correct copies of the pleadings and other documents in the file in Wake County Superior Court, including documents that were served or submitted for consideration as contemplated by Appellate Rule 11.

_____
Jordan A. Koonts


Wake County, North Carolina

Sworn and subscribed before me this 1st day of November, 2024.

_Jessica Liliana Phoenix_

_Jessica Liliana Phoenix_
Notary's Printed Name, Notary Public


My Commission Expires: May 2, 2029

[Notary Seal]

JESSICA LILIANA PHOENIX
NOTARY PUBLIC
Wake County
North Carolina
My Commission Expires May 2, 2029

## **ATTACHMENTS**

Attached to this Petition for Writ of Supersedeas and Motions for Temporary Stay are copies of the following documents from the trial court record:

Exhibit 1    Complaint, filed October 2, 2024 and all exhibits thereto.

Exhibit 2    Summonses to (i) North Carolina State Board of Elections; (ii) Karen Brinson Bell, in her official capacity as Executive Director of the North Carolina State Board of Elections; (iii) Alan Hirsch, in his official capacity as Chair of the North Carolina State Board of Elections; (iv) Jeff Carmon, in his official capacity as Secretary of the North Carolina State Board of Elections; (v) Stacy Eggers IV, (vi) Kevin N. Lewis, and (vii) Siobhan O'Duffy Millen, in their official capacities as members of the North Carolina State Board of Elections, all issued on October 2, 2024

Exhibit 3    Motion for Preliminary Injunction

Exhibit 4    Order on Plaintiff's Motion for Preliminary Injunction

Exhibit 5    Plaintiff's Notice of Appeal, filed 22 October 2024

Exhibit 6    North Carolina Federal Postcard Application – as presented by Defendants' Counsel at October 21, 2024 hearing.

Exhibit 7    Court of Appeals Order on Plaintiffs' Petition for Writ of Supersedeas and Motion for Temporary Stay and Temporary Injunction.