# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**No. 5:24-cv-724-M**

JEFFERSON GRIFFIN,    )
    )
    Petitioner,    )
    )
    v.    )
    )
NORTH CAROLINA STATE BOARD OF    )    **BRIEF OF *AMICUS CURIAE* BY**
ELECTIONS,    )    **INDIVIDUAL NORTH CAROLINA**
    )    **VOTERS AND THE LEAGUE OF**
    Respondent,    )    **WOMEN VOTERS OF NORTH**
    )    **CAROLINA OPPOSING**
    and    )    **PETITIONER'S MOTION FOR A**
    )    **PRELIMINARY INJUNCTION AND**
ALLISON RIGGS, NORTH CAROLINA    )    **REMAND**
ALLIANCE FOR RETIRED    )
AMERICANS, VOTEVETS ACTION    )
FUND, TANYA WEBSTER-DURHAM,    )
SARAH SMITH, JUANITA ANDERSON,    )
    )
    Intervenor-Respondents.    )

## INTRODUCTION

*Amici* are numerous eligible and longtime North Carolina voters whom Jefferson Griffin

seeks to disenfranchise after he narrowly lost a hard-fought election for Associate Justice on the

North Carolina Supreme Court. Rather than accept defeat, he now seeks to overturn the will of

the voters by invalidating over 60,000 eligible votes based on what comes down to a paperwork

or data-entry error at no fault of the affected voter. To grant Griffin's requested relief would

allow him to pursue a path contrary to both the Due Process and Equal Protection Clauses of the

Fourteenth Amendment. But Griffin's arguments give short shrift to the serious constitutional

violations that these voters would suffer if he got his way. He dismisses the fact that, for each

day these meritless protests are allowed to continue, targeted North Carolinians are harmed from the distress of having their vote baselessly put in jeopardy. *Amici* urge the Court to deny Griffin's requested relief for an injunction or a remand and end his gambit to unconstitutionally seat a losing candidate at the expense of voters' fundamental rights.

## INTEREST OF *AMICI*

*Amici* are (1) registered North Carolina voters and U.S. citizens who meet the eligibility requirements for voting in the 2024 election, but who appear on Jefferson Griffin's election protest lists; and (2) a membership organization dedicated to encouraging broad participation in our government, including through voter registration and advocacy for voting rights, whose members appear on Griffin's election protest lists. Each *amicus* would have their or their members' votes invalidated should Griffin prevail in his baseless election protests. *See* Exs. 1-6.[1]

**Susan Copland Arnold Rudolph** was born and raised in Asheville, North Carolina, and is 57 years old. *See* Ex. 1. Her family has been in Western North Carolina since the early 1800s. Rudolph's great-grandmother worked the polls every election and often took Rudolph with her. While out of state for college, she voted for the first time in 1988. She returned to North Carolina after graduation, registering to vote in the state decades ago, and has resided and voted in North Carolina at the same address for the last 12 years. Rudolph is a regular voter in North Carolina elections. This year, she voted in-person in the primary and general elections, both times using

---

[1] *Amici* requests that the Court take judicial notice of the letters *amici* submitted to the North Carolina State Board of Elections ("NCSBE") (Exs. 1-6) for its consideration ahead of the December 11 hearing concerning Griffin's protests of their votes. *See, e.g.*, *N. Carolina ex rel. N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, No. 5:13-CV-633-BO, 2015 WL 224740, at *3 (E.D.N.C. Jan. 15, 2015) (taking judicial notice of facts submitted from an *amicus*). These letters from affected individual voters are relevant and part of the administrative record, the accuracy of which is not reasonably subject to dispute. *See* Fed. R. Evid. 201; *accord CBP Res., Inc. v. SGS Control Servs., Inc.*, 394 F. Supp. 2d 733, 737 (M.D.N.C. 2005) (considering records before administrative body).

her North Carolina driver's license as her required photo ID. She learned from a voting rights advocate that her name was on a list of voters in Buncombe County subject to an election protest from Griffin based on an allegedly "incomplete" voter file. She has seen no correspondence from Griffin or anyone else alerting her to this challenge. Rudolph is not aware of Griffin or anyone else producing to the North Carolina State Board of Elections ("NCSBE") any individualized evidence that she is not properly registered to vote in Buncombe County or that she has ever failed to provide information requested of her by elections officials. To the best of her knowledge, she has complied with all applicable rules for registering and voting.

**Heba Salama** was born in Chapel Hill in 1978, lived in Chapel Hill her entire childhood, and first registered to vote in North Carolina when she turned 18 in 1996. *See* Ex. 2. She has since remained a regular North Carolina voter and has never resided out of state. She has provided sufficient information to election officials to prove her identity and eligibility to vote, including when she voted in the 2024 primary and general elections, showing her North Carolina driver's license both times. She has received no notice from Griffin about his election protest, and learned only from a contact at a voting rights organization that her name was on his protest list due to a purportedly incomplete voter file.

**Jennifer Baddour** was born and raised in North Carolina and has lived in-state almost her entire life. *See* Ex. 3. She is 50 years old. She registered to vote in 1992 and has since regularly voted in North Carolina elections, including for the past 15 years from her current address. She voted in person in the 2024 primary and general elections, and showed her North Carolina driver's license as her required photo ID. Baddour volunteered as a greeter at the polling place on UNC-Chapel Hill's campus and was overwhelmed with pride and excitement to see so many first-time voters exercise their right to vote. Weeks after the election, Baddour

received a notice addressed to "JENNIFER BADDOUR OR CURRENT RESIDENT" from the North Carolina Republican Party stating that her ballot "may be affected by one or more protests filed in relation to the 2024 General Election," *see* Ex. 3, but it contained no guidance on how to ensure her ballot was counted. She learned from voting rights advocates that Griffin is challenging her vote because he alleges her voter registration is "incomplete." To the best of her knowledge, neither Griffin nor anyone else has proffered individualized evidence to the NCSBE that she is not properly registered to vote or that she ever failed to provide information requested of her by election officials.

**Spring Dawson-McClure** was born and raised in North Carolina and attended college at UNC-Chapel Hill. *See* Ex. 4. She registered to vote for the first time in 1994 when she was 18 years old. Dawson-McClure moved out of state for graduate school and to begin her career, but returned to North Carolina in 2012 and has resided at the same Orange County address ever since. She votes in almost every election and believes she has missed only one primary since moving home to Hillsborough over a decade ago. Prior to voting this year, she confirmed on the NCSBE online portal that her registration was active after hearing reports of attempts to disenfranchise voters. She voted in person in the 2024 primary and general elections and showed her North Carolina driver's license as her required photo ID. Dawson-McClure received a notice from the North Carolina Republican Party stating that her ballot "may be affected by one or more protests filed in relation to the 2024 General Election," but the card contained no guidance on how to ensure her ballot was counted. She learned from voting rights advocates that Griffin is challenging her ballot because he alleges her voter registration is "incomplete." To the best of her knowledge, neither Griffin nor anyone else has proffered individualized evidence to the NCSBE

that she is not properly registered to vote or that she ever failed to provide information requested of her by elections officials.

**Iryna Merideth** registered to vote 11 years ago using a form provided at her naturalization ceremony in Durham, North Carolina. *See* Ex. 5. She was born and raised in Ukraine and chose to become a U.S. citizen, like her husband and child, in 2013. She has lived at her current address in Orange County for 10 years and voted regularly in North Carolina elections. She voted in person during the 2024 primary and general elections and showed her North Carolina driver's license to poll workers in both elections. Like Baddour and Dawson-McClure, Merideth received a postcard from the North Carolina Republican Party stating that her ballot "may be affected" by a protest, but the notice did not tell her how to protect her vote. To the best of her knowledge, neither Griffin nor anyone else has proffered individualized evidence to the NCSBE that she is not properly registered to vote or that she ever failed to provide information requested of her by elections officials.

**Rani Dasi**, a Chapel Hill resident, immediately registered to vote when she turned 18, and has voted in nearly every election over the next four decades. *See* Ex. 6. She is a three-time elected official in North Carolina, meaning that her registration status has been repeatedly verified by the NCSBE. When she voted most recently in the 2024 general election, she showed her North Carolina driver's license as her required photo ID and, worried about efforts to disenfranchise voters, confirmed with election officials that no information was missing in her voter registration file. She was surprised to see her name and the names of others, including other elected officials who have consistently been confirmed as registered voters, on Griffin's protest list.

The **League of Women Voters of North Carolina** ("LWVNC" or "the League") is a nonpartisan, grassroots, nonprofit organization dedicated to encouraging informed and active participation in government, including through registering voters and advocating for voters' rights in North Carolina. LWVNC has 15 local League chapters and almost 2,000 members, several of whom are among those Griffin targets, including at least seven already identified members who are longtime registered and eligible voters who have, collectively, voted in dozens of North Carolina elections spanning decades. League members work to protect fair representation and the belief that each voter plays a critical role in North Carolina's democracy. *See Democracy N.C. v. Hirsch*, No. 1:23-CV-878, 2024 WL 1415113, at *6 (M.D.N.C. Apr. 2, 2024) (recounting membership and organizational facts).

## ARGUMENT

Griffin has no chance of success on the merits because upholding his election protests would violate fundamental federal constitutional rights. Griffin's effort to disenfranchise these voters is based on the unsubstantiated assertion that over 60,000 registered voters "never provided the statutorily required information to become lawful voter registrants," Ex. A - Pet. for Writ of Prohibition of the Hon. Jefferson Griffin at 7, ECF No. 1-4. Even a cursory review of Griffin's list of targeted voters—a task Griffin apparently never undertook—belies his claim that improperly registered voters cast ballots in his race. Instead the list of targeted voters includes longtime North Carolina residents, like *amici*, who followed the rules in place when they registered and cast their ballots, and who have voted repeatedly—many for decades—without notice from elections officials of any deficiency in their registration. Griffin seeks to achieve this electoral coup despite having never provided the voters whose ballots he is challenging with adequate notice of his complaints or an opportunity to be heard. He seeks to invalidate these

ballots only for his own race, and he only challenges ballots of voters whose names appear in a public records request and who voted early in-person or by absentee ballot, leaving in the final tally identically situated voters who cast ballots on election day.

These efforts are unconstitutional. The Due Process Clause requires that, before a voter is deprived of a protected liberty interest like the fundamental right to vote, she must have sufficient notice and an opportunity to be heard. The Due Process Clause also protects a voter's reliance interests, meaning the government cannot allow its citizens to vote under one set of rules for decades, then cast out their ballots applying a new standard after an election has closed. And the Equal Protection Clause requires that when making determinations about the validity of its citizens' ballots, the government cannot apply one set of rules to, say, early in-person and absentee voters and a different set of rules to similarly situated voters who cast their ballots on election day. Nevertheless, Griffin asks government officials to ignore all of these constitutional prohibitions and install him as a jurist on North Carolina's highest court. It is past time to end these efforts that threaten to violate the targeted voters' due process and equal protection rights.

### A. Enabling Judge Griffin to continue pursuing his election protests would violate voters' procedural due process rights

"Where the government seeks to deprive someone of a liberty interest protected by due process, due process demands that certain procedural safeguards be provided." *United States v. Baker*, 45 F.3d 837, 843 (4th Cir. 1995). Voters have a constitutionally protected liberty interest in their right to vote. *See, e.g.*, *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 227 (M.D.N.C. 2020); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 229, 247 (4th Cir. 2014) ("The right to vote is fundamental."). Under state law, election protests are deemed quasi-judicial proceedings. *Rotruck v. Guilford Cty. Bd. of Elections*, 833 S.E.2d 345, 349-350 (2019) (due process protections apply in county election board proceedings). When the

NCSBE acts in this quasi-judicial capacity, the due process rights of the participants must be protected. *See, e.g.*, *id.*; *Schweiker v. McClure*, 456 U.S. 188, 195 (1982) ("[D]ue process demands impartiality on the part of those who function in judicial or quasi-judicial capacities.").

To protect against wrongful deprivations of liberty interests, "procedural due process requires fair notice of impending state action and an opportunity to be heard." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). "[A]t minimum," this means "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313-14 (1950). "Process which is a mere gesture is not due process." *Id.* at 315.

In determining the level of process due in a given proceeding, courts apply the *Mathews* test, which balances "the private interest that will be affected by the official action; . . . the risk of an erroneous deprivation of such interest through the procedures used . . . ; and . . . the Government's interest, including . . . the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. This balancing is calibrated to the general population of eligible voters facing wrongful deprivations, not to the small population of potentially ineligible voters (if any). *See Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 321 (1985) ("[P]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions."); *see also Ga. Muslim Voter Project v. Kemp*, 918 F.3d 1262, 1270 (11th Cir. 2019) (Pryor, J., concurring).

Here, Griffin's protest efforts violate procedural due process in two main respects: (1) he failed to provide constitutionally adequate notice to targeted voters, depriving them of the

opportunity to be heard; and (2) he has repeatedly sidestepped other processes in state law—such as the voter challenge process and his attempts to skip proceedings in the Wake County Superior Court—in favor of an effort to avoid the facts and categorically disenfranchise over 60,000 voters without a shred of evidence of their ineligibility.

1. **Griffin's protests would violate procedural due process by disenfranchising eligible North Carolina voters without affording them adequate notice and an opportunity to be heard**

Griffin's vague and incomplete attempted notice mailed to *some* targeted voters in a junk-mail postcard violates the Due Process Clause. To safeguard procedural due process rights, North Carolina law requires that the protesting candidate must provide sufficient notice by informing affected voters of the identity of the protestor, the basis of the protest, and the remedy for any deficiencies identified. N.C. Gen. Stat. § 163-182.9(b). In addition, the NCSBE's regulations require service of "copies of all filings on every person with a direct stake in the outcome of this protest" by "personal delivery" or "transmittal through U.S. Mail or commercial carrier service." 8 N.C. Admin. Code 2.0111. Alternative means of service, such as electronic service, are permissible only if "affirmatively authorized by the Affected Party." *Id.*

Griffin's notice program falls far short of the state legal requirements and what due process commands because it is not "reasonably calculated … to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane*, 339 U.S. at 314. He mailed the targeted voters a vague postcard, which predictably could have been mistaken for scam or political junk mail rather than a legal notice document; voters likely discarded the mailing rather than view it as key to protecting their rights. Ex. B-App. at 45, ECF No. 1-5. Additionally, he mailed the document by non-forwardable mail, meaning that some recipients who were temporarily away and who gave forwarding addresses to the U.S. Postal Service would not have received notice at all. *See* N.C. State Bd. of Elections Bd. Hr'g at

01:12:19 - 01:12:40 (Dec. 11, 2024), https://tinyurl.com/mr4xynxn. To the best of their knowledge, *Amici* Rudolph and Salama never received the postcard and first learned they were on the protest list only after being contacted by voter advocacy groups. *See* Ex 1; Ex. 2.

Further, Griffin's notice failed to reasonably inform those who did receive it how to respond. The postcard simply states, "Your vote may be affected by one or more protests filed in relation to the 2024 General Election." Ex. B-App. at 45, ECF No. 1-5. It does not explain that Griffin is filing the protests or that the recipient's vote was actually affected by a protest, nor does it inform the addressee which category of protests applies to them. Instead, the postcard contains a QR code that leads to a disorganized website containing multiple links to hundreds of PDFs of protest filings with unalphabetized tables of names. *Id.* at 45-47. The website URL is not included in the postcard text. *Id.* at 45. The postcard contains no information on the timing of NCSBE proceedings nor how to participate in them to prevent being wrongly disenfranchised. It makes no mention of any opportunity to cure any purported deficiencies. Further, not all affected voters know how to access a QR code and have a smart phone capable of doing so. *Amici* Baddour, Dawson-McClure, Merideth, and Dasi indeed received the postcard but did not understand what it purported to require them to do. *See* Exs. 3, 4, 5, 6.

Griffin trivializes the constitutional rights at stake, stating that his postcard notice was "adequate to give [recipients] notice to the proceeding" because they can then, on their own, "find a way to be heard." N.C. State Bd. of Elections Hr'g at 29:31 - 29:59 (Dec. 11, 2024). Further, he adds, because people sometimes use QR codes at restaurants, these codes should suffice to give voters legal notice of efforts to invalidate their vote. *Id.* at 30:13 - 30:43. The Due Process Clause protects against such a cavalier approach to giving voters notice that their fundamental rights are at stake.

### 2. Seeking to invalidate the targeted votes through the election protest process is an improper attempt to circumvent the due process protections in the challenge process.

To ensure the accuracy of North Carolina elections, the North Carolina General Assembly has established two processes by which voters and candidates may raise concerns: (1) they may challenge individual voters' registration and casting of ballots, *see* N.C. Gen. Stat. § 163 Article 8; and (2) they may file protests "concerning ***the conduct*** of the election," *see id.* at 163-182.9-12 (emphasis added). Griffin elected not to challenge the registration or ballots of *amici* through the legislatively created process for doing so, which includes a number of procedural protections for voters, but instead waited to lodge his complaints about their participation in the election as protests after county canvasses showed him losing his race.

The General Assembly has empowered the NCSBE to "prescribe forms for filing protests," N.C. Gen. Stat. § 163-182.9(c), and the NCSBE issued a protest form warning that protests "shall not be used to challenge the registration of an individual voter." 8 N.C. Admin. Code 2.0111. Further, the Protest Procedures Guide clarifies that "[a]llegations of unqualified voters participating may not be brought as election protests; these must be brought as voter qualification challenges filed within the time period required by law." NCSBE, *Election Protest Procedures Guide* at 9 (June 27, 2022), https://perma.cc/PD92-HWDZ.

Nevertheless, Griffin filed hundreds of "protests" that are in essence out-of-time voter challenges[2] that aim to circumvent legal protections voters are due under the statutory regime

---

[2] A pre-election challenge to a person's voter registration must be filed by the 25th day before election day—this year, October 11, 2024. N.C. Gen. Stat. § 163-85(a). An in-person challenge to a person's eligibility to vote must be made at the voting site during early voting or on election day—*i.e.*, between October 17 and November 5, 2024. *Id.* § 163-87. And a challenge to an absentee ballot must be filed by 5 p.m. on the fifth business day after the election—this year, November 13, 2024. *Id.* § 163-89(a). On the other hand, a protest alleging irregularities not involving tabulation must be filed by 5 p.m on the second business day after the canvass—*i.e.*, November 19, 2024. *Id.* § 163-182.9.

established by the General Assembly, which outlines appropriate grounds for voter challenges and does not include the absence of a driver's licence number or the last four digits of a social security number in the voter registration record. N.C. Gen. Stat. §§ 163-85(c), -87, -89(c). Further, under state law, a challenge can be made only if the challenger "knows, suspects or reasonably believes" the challenged voter is not qualified or entitled to vote. *Id.* § 163-90.1(a). Challenges cannot be made indiscriminately, and knowingly providing false testimony in support of a challenge is a felony. *Id.* § 163-90.3. Finally, any challenge made within 90 days of a federal general election must be based on "individualized" evidence about the challenged voter's "specific circumstances." *N.C. State Conf. of NAACP v. Bipartisan Bd. of Elections & Ethics Enf't*, No. 16-cv-1274, 2018 WL 3748172, at *7 (M.D.N.C. Aug. 7, 2018).

Of course, Griffin's protest cannot meet these requirements for a successful challenge. So instead he seeks to bypass them and shoehorn what are in fact voter eligibility challenges into the post-election protest process based on the bare, unsubstantiated assertion that winning his protests would tip the election in his favor. Pet'r's. Mem. in Supp. of Mot. for Prelim. Inj. at 3, ECF No. 32. In doing so, he attempts to disenfranchise tens of thousands of voters without the requisite fact-finding and procedural protections that exist to protect voters' rights.[3]

### B. The election protests violate due process by threatening arbitrary, retroactive disenfranchisement of over sixty thousand voters

*Amici*, like the tens of thousands of other North Carolinians Griffin seeks to disenfranchise, are eligible registered voters who provided the information requested of them by

---

[3] Griffin's disregard for fact-finding and due process is further illustrated by his attempt to skip proceedings in Wake County Superior Court and bring his grievances over the NCSBE's decision directly before the North Carolina Supreme Court, relying on no more than his say-so regarding the facts. *See, e.g.*, Pet'r's. Mem. in Supp. of Mot. for Prelim. Inj. at 3 n.2, Pet'r's. Mem. in Supp. of Mot. for Prelim. Inj. at 3 n.2, ECF No. 32 (proclaiming that there is a sufficient factual record to grant the requested injunction because Griffin's attorney submitted a verification of counsel).

government officials, and cast their ballots, year after year after year, checking in with poll workers at their precinct–some even checking online or calling county elections officials in advance to confirm that all they needed to do was show up and cast a ballot–and this year, showing those poll workers their valid North Carolina driver's license to prove they were indeed the person who appears as a registered voter on the county's rolls. The government cannot now, after the election is over, cast aside their ballots based on an alleged paperwork error, likely decades-old and committed by the government itself. To do so would arbitrarily and retroactively rob them of their status as eligible North Carolina electors, violating their substantive due process rights.

The Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them," *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citations omitted), and that protected liberty includes the "right to vote … and to have [ones'] votes counted." *Reynolds v. Sims v. Sims*, 377 U.S 533, 533, 554 (1964) (internal citations omitted). Due Process rights are violated where "the election process reaches the point of 'patent and fundamental unfairness,'" such that it "erodes the democratic process." *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978)). In evaluating due process claims in the elections context, courts generally consider "(1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures." *Bennett v. Yoshina*, 140 F.3d 1218, 1226-27 (9th Cir. 1998).[4]

---

[4] The analysis is essentially the same if the Court considers this issue under the *Anderson-Burdick* balancing framework applied to government infringements of the right to vote. *See, e.g.*, *Greidinger v. Davis*, 988 F.2d 1344, 1353 (4th Cir. 1993); *Voto Latino v. Hirsch*, 712 F. Supp. 3d 637, 664 (M.D.N.C. 2024); *Democracy N.C.*, 476 F. Supp. 3d at 192. As described here, arbitrarily disenfranchising over 60,000 voters despite their settled expectations

Griffin's election protests infringe voters' reliance interests and threaten massive disenfranchisement. He asks that tens of thousands of votes be negated over an alleged registration paperwork error by election officials, ignores the reality that most if not all voters have already supplied any supposedly missing information, and is based on a target list of purportedly affected voters that is faulty in numerous respects. Here, Griffin asks the court to *mandate* this unconstitutional result, but federal courts have instead used their equitable powers to *prevent* similar efforts that violate federal due process rights. *See, e.g.*, *Griffin*, 570 F.2d at 1075-76; *Roe v. Alabama*, 43 F.3d 574, 580-81 (11th Cir. 1995) (holding that "a post-election departure from previous practice" in the state violates due process).

### 1. The protests violate voters' reliance interests and upset the status quo

The targeted voters have well-founded and settled expectations—based on the representations of election officials for years, including this fall—that they were properly registered and could vote in this election. The protests violate due process by upending the "reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election." *Bennett*, 140 F.3d at 1226-27. These voters' reliance interests are significant and, in many cases, span decades, such as for several *amici* who have been registered in North Carolina for as long as they have been eligible to vote. Exs. 1-6.

A basic principle of due process is that the government must "give[] people confidence about the legal consequences of their actions." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 266 (1994). For years and as recently as this fall, the government rightfully gave *amici* confidence

---

relying on election officials is a severe burden on the right to vote that requires strict scrutiny. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 190 (2008) (plurality op.); *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012). There is no legitimate countervailing state interest that would permit this capricious and broad-scale disenfranchisement.

that their votes would count. The NCSBE's role is to promulgate the correct voter registration application consistent with state and federal law, and the county election boards are responsible for registering voters after determining their eligibility. N.C. Gen. Stat. §§ 163-82.1(b), 163-82.7(a), 163-82.11(d).[5] Thus, in "the process of reviewing voter registration applications," it is election officials' responsibility to "keep[] official voter lists both 'accurate'—free from error—and 'current'—most recent." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012).

These burdens fall on the government, not on individual voters who lack the tools and information that would be needed to second-guess whether the state registration form is correct or question if they are not properly registered, despite what the NCSBE online portal and county elections workers tell them, as Griffin seemingly demands. *See, e.g.*, N.C. State Bd. of Elections Hr'g at 31:34-31:45 (Dec. 11, 2024), https://tinyurl.com/mr4xynxn (during the hearing, Griffin's counsel relied primarily "on a common maxim in the law [that] ignorance of the law is no excuse for failing to comply with the law"); Pet'r's. Mem. in Supp. of Mot. for Prelim. Inj. at 19, ECF No. 32 (similar). North Carolina voters depend on election officials to perform this role by correctly informing them what was required when they registered and whether they were in fact properly registered to vote in this election. Based on that reliance, these voters have participated in several elections with confidence that their vote will be counted and election officials would alert them if something changed about their registration. *See* Exs. 1-6. This includes voters who, like some of the *amici*, even double-checked their registration ahead of this election. *See, e.g.*,

---

[5] As the NCSBE concluded, it is not clear as a matter of state law that county election officials were required to actually *reject* applications that lack a driver's license or last four digits of a social security number. Ex. B-App. at 54-55, ECF No. 1-5. The relevant state law only requires that the NCSBE's application form must "request" that information. N.C. Gen. Stat. § 163-82.4(a). The Court need not decide that issue of state law because, either way, the relief Griffin seeks is unconstitutional.

[Ex. 4](); [Ex. 6](). Without, in most cases, even knowing that they are on this manufactured list of targeted voters, these over 60,000 North Carolinians cast their vote this fall just like any other of the 5.5 million voters in the state. They did so by relying in good faith on election officials informing them that they are lawfully registered because they already (and often long ago) provided everything the government needed to confirm their eligibility. *See* Exs. 1-6.

Griffin has little regard for this reality. He instead asks the NCSBE, the North Carolina courts, and this Court to upset the status quo so he can trample voters' reliance interests to reverse his loss. This willingness to violate the rights of voters to serve political ambitions is as appalling as it is unfounded. It is reminiscent of—and even worse than—the failed efforts of a losing candidate to throw out thousands of votes in *Griffin v. Burns*, the paradigmatic case of a substantive due process violation in the elections context. There, a losing candidate contested the validity of all votes cast by absentee ballot in a primary election because state law did not permit absentee voting, despite years of allowing it in practice; the state supreme court agreed with the candidate and discarded the absentee votes. 570 F.2d at 1068. The First Circuit upheld an injunction to protect voters' due process rights threatened by the "broad-gauged unfairness" of *post hoc* changes to the prevailing understanding of the voting rules and disenfranchising absentee voters who relied on those rules. *Id.* at 1075-77. The court reasoned that "issuance of [absentee] ballots followed long-standing practice; and in utilizing such ballots voters were doing no more than following the instructions of the officials charged with running the election." *Id.* at 1075-76. The "state's retroactive invalidation" of those ballots "violate[d] the voters' rights under the fourteenth amendment." *Id.* at 1070; *accord Hoblock v. Albany Cnty. Bd. of Elections*, 487 F. Supp. 2d 90, 94-6 (N.D.N.Y. 2006) (similarly reasoning that voters who should have been required to reapply to receive absentee ballots under state law reasonably relied on election

officials' erroneous issuance of absentee ballots, and refusing to count their votes violated due process rights).

The same reasoning and conclusions apply here. No one disputes that state election officials designed current and previous registration forms to inform voters of what was required to register, voters complied with the given instructions, county election officials reviewed their applications and registered them to vote, and voters have since participated in elections without issue. This has been the status quo for decades. Indeed, many of Griffin's targeted voters, including *amici*, were registered long before there was any federal or state requirement to supply driver's license or social security information to register and had only since needed to adjust their existing, still valid registration (such as from a name or address change) in more recent years. *See* Ex. 1 (first registering in 1988); Ex. 2 (in 1996); Ex. 3 (in 1992); Ex. 4 (in 1994); Ex. 6 (estimating over 40 years of voting in North Carolina elections). The typical voter had no reason to suspect that anything about their registration could be questioned until now, several weeks after this election was completed; they are rightfully outraged that their vote is in jeopardy because of a claimed paperwork error that, through no fault of their own, may have happened many years ago. *See* Exs. 1-6.

Even the most risk-averse and resourceful voter made aware this fall that their registration may be in dispute would have been relieved by the government's repeated reassurances that their vote was secure for this election, with only potential prospective corrections to their registration record. The NCSBE declined a request to force these voters to reestablish their voting eligibility at the last minute, given their reliance interests and the lack of any reason to suspect that ineligible persons were voting. Ex. B-App. at 165-66, ECF No. 1-5. And this Court rejected the notion that these voters could be disenfranchised during this election

cycle. *See* Order at 4, *Republican Nat'l Comm. v. N.C. State Bd. Elections*, No. 5:24-cv-00547 (E.D.N.C. Nov. 22, 2024), ECF No. 73 (ruling that efforts to reject these voters are "not going to obtain any relief in connection with the most recent election" and "the outcome of this suit will have no bearing on the most recent election").

Maintaining the status quo in this manner makes sense: potential administrative error adjudicated on the eve of an election cannot justify throwing out tens of thousands of votes, particularly where there are high risks of wrongful deprivations compared to zero evidence that the voters are ineligible. As the Arizona Supreme Court recognized this fall when faced with an analogous circumstance, the Due Process Clause protects voters from having their votes put at risk in the runup to the election, without time or sufficient process to guard against erroneous disenfranchisement. *Richer v. Fontes*, No. CV-24-0221-SA, 2024 WL 4299099, at *3 (Ariz. Sept. 20, 2024) (refusing to "disenfranchise voters en masse from participating" because of their reliance interests and abiding "principles of due process"); *see also Briscoe v. Kusper*, 435 F.2d 1046, 1054–56 (7th Cir. 1970) (holding that the board of elections violated due process rights in the elections context because it "deviate[d] from … prior rules of decision … without announcing in advance its change in policy" and "those interested require certain knowledge of what is expected of them by the state"). These cautions required under the Due Process Clause only amplify when the election has already completed, after voters have acted on their reasonable reliance on the status quo. *Griffin*, 570 F.2d at 1075-76; *see also Trump v. Biden*, 951 N.W.2d 568, 577 & n.12 (Wis. 2020) (declining to discard thousands of votes cast based on guidance from election officials, noting that "[g]ranting the relief requested by the Campaign may even be unconstitutional"). In short, all the targeted voters have relied in good faith on election officials informing them that they are successfully registered and eligible to vote;

allowing the retroactive negation of their votes would "reach[] the point of 'patent and fundamental unfairness,'" and "erode[] the democratic process" in violation of the Fourteenth Amendment. *See Hendon*, 710 F.2d at 182. The Court should deny Griffin's requested relief.

## 2. The protests threaten arbitrary, broad-gauged disenfranchisement

Despite Griffin's efforts to frame this case in procedural or technical terms, the true stakes of his actions are stark: if Griffin's arbitrary and unreliable protests are successful, thousands of North Carolinians will be disenfranchised because information most (if not all) of them have repeatedly provided is missing from their registration file due to someone else's error. Such "broad-gauged" disenfranchisement violates due process. *Griffin*, 570 F.2d at 1077; *accord Bennett*, 140 F.3d at 1226-27.

On its face, Griffin's reason for throwing out these votes is trivial. Again, the basic claim is that these voters were registered, often decades ago, even though *some* of them *may* not have provided a driver's license or the last four digits of their social security number on that initial registration form. For no legitimate reason, Griffin treats that form as talismanic for whether the voter has "failed to verify their identity" and asks the courts to ignore the realities of the rest of the voting process in North Carolina. Pet'r's. Mem. in Supp. of Mot. for Prelim. Inj. at 3, ECF No. 32. He ignores that these voters, including *amici*, have repeatedly confirmed their eligibility by providing election officials with their driver's license or social security number when they have voted over many years. *See* Exs. 1-6.

In fact, North Carolina's voting rules for both in-person and absentee voting guarantee that virtually all voters will have provided that information to election officials at some point—even if that information is not captured in their current voter file. North Carolina requires photo identification for in-person voting, either during early voting or on election day. N.C. Gen. Stat. § 163-166.16(a). Showing a North Carolina driver's or non-operating license is the primary

form of identification voters use, and several other accepted IDs require having a social security number or establishing the voter's eligibility with government officials before the ID can be obtained. *See id*. Voters also have to show proof of their current residence in North Carolina. *Id.* §§ 163-166.40(h), 163-166.7(a), 163-166.11(3).

Based on statistical analyses of prior North Carolina elections, it is likely that most voters on this list will have voted in person this election and shown their valid driver's license before they voted. *See, e.g.*, *N.C. State Conf. of the NAACP v. McCrory*, 182 F. Supp. 3d 320, 366-68 (M.D.N.C. 2016), *rev'd and remanded on other grounds N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016); *see also* 2022 EAVS Data Brief: North Carolina, U.S. Election Assistance Comm'n, https://tinyurl.com/28jk9ea3.[6] That includes all individual *amici*, who each showed their valid North Carolina driver's license to vote early in person this year. *See* Exs. 1-6. In addition, both state and federal law require that first-time voters who registered without providing accurate driver's license or social security information on their form must show identification that confirms their eligibility the first time they vote after applying to register. *See* N.C. Gen. Stat. §§ 163-82.12(9), 163-166.12(a); 52 U.S.C. §§ 21083(b)(1)-(3). These frameworks together mean that this year almost all targeted voters provided at the time of voting whatever information Griffin claims may be missing. And in previous years, state and federal law required any voters actually missing the correct information on the registration form to have voted using strictly HAVA-compliant identification the first time they voted. The sum is that most (if not all) of these targeted voters have provided identification to election officials that proves their eligibility to vote using the forms of ID Griffin says are required.

---

[6] The exact rate of usage of different forms of identification to vote is currently under consideration in *N.C. State Conf. of the NAACP v. Cooper*, Case No. 1:18-cv-01034-LCB (M.D.N.C.), which is awaiting a post-trial decision and the consideration of expert reports on the subject of ID usage.

Voters who participate absentee also clearly provided their driver's license or social security number to election officials, in writing, even if it might be missing from their registration record. State law requires that voters requesting to vote absentee in a given election must provide their driver's or non-operating license number or the last four digits of their social security number. N.C. Gen. Stat. §§ 163-230.2(a)(4) (paper form requests), 163-230.3(b)(1) (online requests); Ex. B-App. at 367, ECF No. 1-5. This requirement for requesting an absentee vote has long been in place, including when many North Carolinians voted by mail in 2020. *Id.* § 163-230.2(a)(4) (2020). A comparison of the list of the voters Griffin protests this election and the publicly available absentee voters lists from 2018, 2020, 2022, and 2024 shows that at least 2,415 of the targeted voters have in fact provided the information that Griffin claims is missing.[7] For these voters, Griffin seeks to negate their fundamental rights because they provided their driver's license or social security number on their absentee request form in recent years but allegedly not on their registration form long ago (when it may or may not have been legally required). North Carolina law recognizes that the initial registration form is merely a "backup to the official registration record of the voter," not the be-all-end-all of whether a voter has established their eligibility. N.C. Gen. Stat. § 163-82.10(a). Griffin contests none of this and tries to throw out 60,000 votes anyway. Pet'r's. Mem. in Supp. of Mot. for Prelim. Inj. at 12, ECF No.

---

[7] This total likely underestimates the number of absentee voters who supplied their driver's license or social security number. For example, this number only concerns the North Carolinians who ultimately *voted* absentee and does not reflect the additional voters who *requested* an absentee ballot (providing on their application the information that Griffin demands) but in the end decided to spoil that absentee ballot and instead vote in person. *See FAQ: Voting By Mail*, N.C. State Bd. of Elections https://tinyurl.com/yc84jm92 (last visited Dec. 28, 2024) (Q: "If I've received my ballot by mail, may I still vote in person?" A: "Yes. You may still vote in person as long as you do not return your absentee ballot. Your absentee ballot will be spoiled after you vote in person. You may simply discard your absentee ballot. There is no need to bring it with you to a polling place.").

32. Conditioning voters' rights on such a trivial and arbitrary distinction is precisely what the Due Process Clause prohibits.

Even if the basic premise of Griffin's protest were correct (it is not) that a sufficient number of voters to affect the election have never provided their driver's license or social security information to election officials, his target list is not a trustworthy source of who those voters are. Griffin's target list is itself likely highly inaccurate because it fails to remove voters who are not required under law to provide the information, does not cull the list for voters who have already cured any alleged missing information, and acknowledges but fails to account for expected data entry errors or database mismatches after voters, for instance, like some *amici*, married and changed their last names. These fundamental flaws in the target list present a high risk of wrongful deprivations that would violate due process. *See Slochower v. Bd. of Higher Ed.*, 350 U.S. 551, 559 (1956).

To start, both North Carolina and federal law permit voters to register to vote even when their driver's license or social security number is unavailable. N.C. Gen. Stat. § 163-82.4(b) ("The State Board shall assign a unique identifier number to an applicant for voter registration if the applicant has not been issued either a current and valid drivers license or a social security number."); *see also* 52 U.S.C. § 21083(a)(5)(ii) (similar federal requirement). The North Carolina Republican Party admits that voters in these circumstances would lack that information in their voter records for valid reasons, but it has nonetheless facilitated and funded the protests of these voters here. *See Federal Appeals Court weighs fate of GOP challenge of 225,000 NC voter registrations*, Carolina J. (Oct. 28, 2024), https://tinyurl.com/23ppyn5a (quoting counsel for state Republican Party groups as saying the number of affected voters in this category "could

be 2,000. It could be 25,000. We don't know.").[8] Thus, Griffin's target list includes an unknown number of people whom he is aware are in fact properly registered and eligible to vote under state law despite not having a particular number in their voter file. The NCSBE explained this to Griffin's counsel during the December 11 hearing, yet he continues to contest these votes anyway. *See* N.C. State Bd. of Elections Hr'g at 1:00:00 - 1:01:45 (Dec. 11, 2024), https://tinyurl.com/mr4xynxn.

Another serious flaw in Griffin's target list concerns voters who provided a driver's license or social security number on their registration application, but it was not recorded in the voter file because the provided number did not match in the backend database checks that county officials perform, because of, for instance, clerical errors, legibility issues, or name changes. *See* N.C. Gen. Stat. § 163-82.12(6)-(9) (describing database matching process for registrants). But state law is clear that a failure to match a supplied driver's license or social security number on the registration form to a voter's information "shall not prevent that individual from registering to vote and having that individual's vote counted" if the voter can still establish her eligibility before voting. *Id.* § 163-166.12(d) (2024). As explained above, before an applicant in these circumstances votes for the first time after registering, she must still provide her driver's license or social security number by showing a strictly qualifying voter ID. *See id.* §§ 163-82.12(9), 163-166.12(a) (2024); 52 U.S.C. § 21083(b)(1)-(3). Thus, voters in this category *did* provide election officials their correct information when voting for the first time after registering, even if that information may not have been ultimately reflected in their state voter file.

---

[8] For example, the North Carolina Republican Party apparently facilitated Griffin's constitutionally deficient postcard to the targeted voters and has hosted the protests on its website. *See Election Protest 2024*, North Carolina Republican Party (last visited Dec. 24, 2024), https://www.nc.gop/griffin_protest.

Finally, routine data entry errors also undoubtedly account for many voters who in fact provided the information that Griffin's protests arbitrarily deem dispositive, even if it is not reflected in the voter file. Elections officials perform a valiant and often thankless task. But because elections offices are understaffed and overworked, inadvertent human error is unavoidable and may account for the voter file missing information that registrants supplied on their form. Ex. B-App. at 61 n.16, ECF No. 1-5 (citing NCSBE Order); *VoteAmerica v. Schwab*, 671 F. Supp. 3d 1230, 1254 (D. Kan. 2023) (describing testimony about overtaxed election officials and errors on election forms), *rev'd and remanded on other grounds*, 121 F. 4th 822 (10th Cir. 2024).

Griffin's counsel acknowledged during the hearing before the NCSBE that "when people register to vote, mistakes are made all the time. And it's the county board's job to jump on that and get it fixed. Most everything can be fixed." N.C. State Bd. of Elections Hr'g at 01:02:45 - 01:03:40 (Dec. 11, 2024), https://tinyurl.com/mr4xynxn. Self-described "election integrity" activists considered and declined to lodge registration challenges on these grounds because any error represents "a records keeping problem on the part of the state board," and asking to invalidate voters' ballots on these grounds would be "voter suppression" and "there's no way a court" would uphold it. *See* Doug Bock Clark, *A North Carolina Supreme Court Candidate's Bid to Overturn His Loss Is Based on Theory Election Denier's Deemed Extreme*, ProPublica (Dec. 23, 2024, 12:05 PM), https://tinyurl.com/puxxtcp3. And again, the North Carolina Republican Party facilitating these protests admits that government data-entry errors likely account for voters who purportedly lack a driver's license or social security number in their voter file, at no fault of their own. *See* Will Doran, *Republican Party leaders seek to purge 225,000 NC voters ahead of 2024 elections, citing worries dismissed by state officials*, WRAL (Aug. 26, 2024),

https://tinyurl.com/5fnxyejb (acknowledging data-entry errors). Griffin nonetheless seeks to disenfranchise voters because of inevitable government data-entry errors. But the time to rectify potential missing information is in the normal course of county election officials working with voters to make sure that voter records are accurate and complete, not through a cynical effort to install a losing candidate as a winner by discarding over 60,000 votes.

In short, there are significant flaws in Griffin's list of protested voters, with the likelihood that many of the voters who are being targeted either provided the purported missing information but it was not recorded or were never required to provide the information in the first place. These uncertainties evince a significant risk of wrongful deprivations of voters' fundamental right to vote. Because "the very essence of due process" is "the protection of the individual against arbitrary action," the significant doubts about Griffin's list of protested voters alone warrants rejecting his request for a preliminary injunction. *Slochower*, 350 U.S. at 559.

### 3. There is no legitimate interest in retroactively rejecting 60,273 eligible votes

There is no legitimate state interest in granting Griffin's requested injunction or a remand, thereby allowing a meritless protest of over 60,000 eligible votes to continue to sow doubts in this election. At the outset, the government's foremost objective must be to protect the public's "strong interest in exercising the fundamental political right to vote," which "favors permitting as many qualified voters to vote as possible." *League of Women Voters of N.C.*, 769 F.3d at 247-48 (quotation omitted). The fact that not one state "official has stepped forward . . . to tout the need for the" reevaluation of these votes in this election "fairly support[s] the view that" there is no compelling state interest in doing so. See *Common Cause R.I. v. Gorbea*, 970 F.3d 11, 15 (1st Cir. 2020), *denying stay on similar grounds*, *Republican Nat'l Comm. v. Common Cause R.I.*,

141 S. Ct. 206 (2020). The overriding state interest favors counting these eligible votes, not calling them into doubt weeks after the election is over.

Stunningly, Griffin still insists that he is the one seeking to vindicate "important interests the public has in election integrity and in preventing voter disenfranchisement." Pet'r's. Mem. in Supp. of Mot. for Prelim. Inj. at 6, ECF 32. The opposite is true. Appeals to voter confidence and election integrity are not magic words; repeating them does not make them real. Griffin's failure to even attempt to substantiate his claims reveals their emptiness. Instead, Griffin's effort to disenfranchise over 60,000 legitimate votes in the Supreme Court race—not to mention calling into doubt the same voters' votes that may be decisive in several other races—undermines rather than supports voter confidence and integrity in North Carolina's elections. *See, e.g.*, *Mi Familia Vota v. Fontes*, No. 22-cv-00509, 2024 WL 862406, at *16 (D. Ariz. Feb. 29, 2024) (noting the detrimental effects on voter confidence of baseless claims). Thus, the "cloud of illegitimacy" Griffin complains of is one of his own making and cannot be used to then justify his ploy to reject eligible votes. Pet'r's. Mem. in Supp. of Mot. for Prelim. Inj. at 9, ECF 32.[9]

The true interest Griffin pursues here is misusing the judicial process to throw out votes through an exercise of raw political power. That warrants zero credence. The Supreme Court has long made clear that efforts at "'[f]encing out' from the franchise a sector of the population because of the way they may vote is constitutionally impermissible." *Dunn v. Blumstein*, 405 U.S. 330, 355–56 (1972); *accord Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 203 (2008) (plurality op.).

_____

[9] Tellingly, Griffin does not claim his protests could actually promote any anti-fraud interests. And in any event, merely invoking "the possibility and potential for voter fraud," based only on "hypotheticals, rather than actual events," does not suffice. *See Donald J. Trump for President, Inc., v. Boockvar*, 493 F. Supp. 3d 331, 406 (W.D. Pa. 2020).

## C.  The protest of early voters but not similarly situated election-day voters violates the Equal Protection Clause

Griffin arbitrarily protests the votes of North Carolinians who voted early in-person or by mail, but not voters in precisely the same alleged circumstances who happened to vote on election day. In all cases, these votes are legitimate and must be counted. But Griffin's differential treatment of similarly situated North Carolina voters further shows that his requested relief violates the Fourteenth Amendment.

The Equal Protection Clause ensures that "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn*, 405 U.S. at 336 (1972). As part of this guarantee, it requires that the state in counting votes "may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (per curiam). Numerous courts have applied this rule to prohibit a lack of uniformity that allows adopting a double standard to count some votes but not others where "there [wa]s no relevant distinction between the two groups." *Obama for Am. v. Husted*, 697 F.3d 423, 435 (6th Cir. 2012).[10]

Here, Griffin only asks to disenfranchise early and mail voters, not in-person election day voters. He may well have political reasons for making such a distinction. But there is no legal basis for doing so. Both categories of voters are under the same registration conditions. Both have to show specific identification proving eligibility the first time they vote if there is an issue with their driver's license or social security number on their registration form, as described

---

[10] *See also Lecky v. Va. State Bd. of Elections*, 285 F. Supp. 3d 908, 920 (E.D. Va. 2018) ("Courts have generally found equal protection violations where a lack of uniform standards and procedures results in arbitrary and disparate treatment of different voters."); *Ne. Ohio Coal. for Homeless*, 696 F.3d at 598 (recognizing continued availability of *Bush v. Gore* arbitrary and disparate treatment equal protect claim); *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 882, 894 (9th Cir. 2003) (same), *rev'd on reh'g en banc on other grounds*, 344 F.3d 914 (9th Cir. 2003).

above. And in this election, both had to provide proof of identification to cast their ballot, either by showing a photo-ID to vote early in person or on election day, or inputting their driver's license or social security number before requesting an absentee ballot. Targeting one category of voters but not another is clear "later arbitrary and disparate treatment" that attempts to "value one person's vote over that of another" with no legitimate reason concerning their eligibility to vote. *Bush*, 531 U.S. at 104–05. That violates the Equal Protection Clause.

## CONCLUSION

For the foregoing reasons, the Court should deny Griffin's requests for a preliminary injunction or a remand.


This 1st Day of January 2025       Respectfully Submitted,

Protect Democracy Project

/s/ Jessica A. Marsden
Jessica A. Marsden
Protect Democracy Project
510 Meadowmont Village Circle, No. 328
Chapel Hill, NC 27517
jess.marsden@protectdemocracy.org
(202) 579-4582
Fax: 202-769-3176
State Bar No. 50855
*Attorney for Amicus Curiae*


Anne Harden Tindall*
Protect Democracy Project
510 Meadowmont Village Circle, No. 328
Chapel Hill, NC 27517
anne.tindall@protectdemocracy.org
(202) 579-4582
Fax: 202-769-3176
State Bar No. 31569

Hayden Johnson*
Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite # 163
Washington DC 20006
hayden.johnson@protectdemocracy.org
(202) 579-4582
Fax: 202-769-3176
D.C. Bar No. 1671830


John Paredes*
Protect Democracy Project
82 Nassau Street, #601
New York, NY 10038
john.paredes@protectdemocracy.org
(202) 579-4582
Fax: 202-769-3176
N.Y. Bar No. 5225412

*Counsel for Amicus Curiae*

*Notice of Special Appearance and ECF attorney registration form pending

**INDEX OF EXHIBITS**

Attached to this Brief of Amicus Curiae are the following documents:

Exhibit 1    Email correspondence between Susan Copland Arnold Rudolph and the North Carolina State Board of Elections

Exhibit 2    Email correspondence between Heba Salama and the North Carolina State Board of Elections

Exhibit 3    Email correspondence between Jennifer Baddour and the North Carolina State Board of Elections

Exhibit 4    Email from Spring Dawson-McClure to the North Carolina State Board of Elections

Exhibit 5    Email correspondence between Iryna Merideth and the North Carolina State Board of Elections

Exhibit 6    Email correspondence between Rani Dasi and the North Carolina State Board of Elections

# EXHIBIT 1



## Fwd: 6th generation North Carolinian - MY VOTE IS VALID

**Copland Rudolph** <copland.rudolph@acsgmail.net>                    Thu, Dec 19, 2024 at 2:07 PM
To: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### Copland Arnold Rudolph

**Executive Director  |She/Her/Hers**



PO Box 3196
Asheville, NC 28802.....
(828) 350-6174

🌐 www.acsf.org
⚫ @ACSFound
f  @ACSF828
⚫

To schedule a meeting with me visit: **Copland's Calendar**

**NOTE: I live and work on traditional Cherokee lands**. ᎠᏆᎵ ᏏᎻᏍᏬ ᏣᏬ�, home to members of the Tsalagiyi Detsadanilvgi, ᏣᏬᏯᏫᏍᏣᏞᎻᏗᎩ, the Eastern Band of the Cherokee Indians. (Guide to indigenous land and territorial acknowledgements)

---------- Forwarded message ---------
From: **SVC_SBOE.Elections** <Elections.SBOE@ncsbe.gov>
Date: Fri, Dec 6, 2024 at 8:14 AM
Subject: RE: [External] 6th generation North Carolinian - MY VOTE IS VALID
To: Copland Rudolph <copland.rudolph@acsgmail.net>

Good morning,

Thank you for contacting the NC State Board of Elections.

A candidate for N.C. Supreme Court, Jefferson Griffin, has challenged the election results and has alleged that some voters were not eligible to vote in the election.

If you received a notice from the North Carolina Republican Party stating, "your vote may be affected by one or more protests filed in relation to the 2024 general election," it means that Mr. Griffin has alleged that your ballot is ineligible.

The State Board and county boards of elections are considering these challenges in the coming weeks. If you would like to get in touch with the parties to this proceeding, the email address for the candidate bringing the challenges is info@jeffersongriffin.com. The email address for the candidate opposing the challenges is team@riggsforourcourts.com.


Thank you for contacting us.


Regards,

**Jessica Buie**

**Learning and Operations Manager**

www.ncsbe.gov



---

**From:** Copland Rudolph <copland.rudolph@acsgmail.net>
**Sent:** Thursday, December 5, 2024 9:35 PM
**To:** SVC_SBOE.Elections <Elections.SBOE@ncsbe.gov>
**Subject:** [External] 6th generation North Carolinian - MY VOTE IS VALID

You don't often get email from copland.rudolph@acsgmail.net. Learn why this is important

**CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

Dear Chair and Members of the Board of Elections:


My name is Susan Copland Arnold Rudolph, and I am an eligible, registered North Carolina voter and a U.S. citizen. I learned from a voting rights advocate that my name is on a list of voters in Buncombe County subject to an election protest from Judge Jefferson Griffin based on allegedly "incomplete" voter files. I've seen no correspondence from Judge Griffin or anyone else alerting me to this challenge to my vote.


I am 57 and was born and raised in Asheville, North Carolina. My family has been in Western North Carolina since the early 1800's and my great grandmother worked the polls every election and she often took me with her. While out of the state for college, I voted for the first time in 1988 . I have returned and voted in North Carolina several times in my adult life and have been back here for twelve years at the same address. I am a regular voter in NC elections. This year, I voted in-person in the primary and general elections, both times using my NC Drivers' License as my required Photo ID.
I'm not aware of Judge Griffin or anyone else producing to the NCSBE any individualized evidence that I am not properly registered to vote in Buncombe County or that I've ever failed to provide information requested of me by elections officials. If my voter file is "incomplete," I don't know why. If my file includes any errors or is missing information, that is not my fault and certainly shouldn't invalidate my vote. **I followed all of the rules in registering and voting; to throw out my ballot after the election would be undemocratic, would cast doubt on the validity of the Supreme Court election, and would violate my constitutional rights.**

I work in public education and have spent my entire career in service to my community. Hurricane Helene has been devastating to our region and yet we voted in record numbers despite not having potable water or wifi or electricity when voting started. To have a sore loser challenge my vote is worse than insulting- it is tone deaf to the reality on the ground. To my knowledge, the last person found committing voter fraud in our region was Mark Meadows.

There is work to be done in our city and the fact that I have to worry about my vote being overturned leaves me gravely concerned for the state of our state. At a time when politicians should be rolling up their sleeves and supporting WNC, Judge Griffin is demonstrating why the majority of voters in NC made a different choice.


In community,
Copland Rudolph


**Copland Arnold Rudolph**
**Executive Director  ₁She/Her/Hers**

PO Box 3196
Asheville, NC 28802…..
(828) 350-6174

www.acsf.org
@ACSFound
@ACSF828

To schedule a meeting with me visit: Copland's Calendar

**NOTE: I live and work on traditional Cherokee lands**. ᎠᏡᎵ ᏏᏥᏌᏫ ᏓᎳᎩ, home to members of the Tsalagiyi Detsadanilvgi, ᏣᎳᎩᏱᏗᏎᏟᏂᏐᎩ, the Eastern Band of the Cherokee Indians. (Guide to indigenous land and territorial acknowledgements)

# EXHIBIT 2



## ATTN: ELECTIONS BOARD *IMPORTANT*

**Heba Salama Photography** <heba@hebasalama.com>      Thu, Dec 5, 2024 at 1:42 PM

the response I got:

---------- Forwarded message ---------
From: **SVC_SBOE.Elections** <Elections.SBOE@ncsbe.gov>
Date: Thu, Dec 5, 2024 at 12:34 PM
Subject: RE: [External] ATTN: ELECTIONS BOARD *IMPORTANT*
To: Heba Salama Photography <heba@hebasalama.com>


Good afternoon, Heba.


Thank you for contacting the NC State Board of Elections.


A candidate for N.C. Supreme Court, Jefferson Griffin, has challenged the election results and has alleged that some voters were not eligible to vote in the election.


If you received a notice from the North Carolina Republican Party stating, "your vote may be affected by one or more protests filed in relation to the 2024 general election," it means that Mr. Griffin has alleged that your ballot is ineligible.


The State Board and county boards of elections are considering these challenges in the coming weeks.

If you would like to get in touch with the parties to this proceeding, the email address for the candidate bringing the challenges is info@jeffersongriffin.com. The email address for the candidate opposing the challenges is team@riggsforourcourts.com.


In terms of when or whether you would need to provide information, the State Board first must decide whether the protest makes legally valid arguments before the protests would move toward a hearing on the evidence as to specific voters' eligibility. If the State Board determines that this will go to a hearing, you and any other affected voters will be contacted in writing, either by the State Board or your county board of elections.


Thanks again for contacting us.


NCSBE Operation Support



**From:** Heba Salama Photography <heba@hebasalama.com>
**Sent:** Thursday, December 5, 2024 10:52 AM
**To:** SVC_SBOE.Elections <Elections.SBOE@ncsbe.gov>
**Subject:** [External] ATTN: ELECTIONS BOARD *IMPORTANT*

---

You don't often get email from heba@hebasalama.com. Learn why this is important

**CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

---

Dear Chair and Members of the Board of Elections:

My name is Heba Salama, and I am an eligible registered voter in North Carolina and a U.S. citizen. While I have received no notice from Judge Jefferson Griffin about his protest of his election loss, I learned from a contact at a voting rights organization that my name is on the list of Orange County voters whose ballots he is protesting because of supposedly incomplete voter registration files. This protest threatens my fundamental constitutional rights, and I ask that the Board reject it and finalize NC elections.

I was born at UNC hospital in Chapel Hill in 1978, lived in Chapel Hill my entire childhood, and first registered to vote in North Carolina when I turned 18 in 1996. I've been a regular voter in NC ever since. I have never had an address outside of the state of North Carolina. I have moved occasionally within the Triangle area, most recently from Chatham County back to Orange County 7 years ago.

**My vote is lawful and must be counted**. Judge Griffin has not provided any individualized evidence that I failed to provide all the information that election officials asked me to provide when I submitted my voter registration application decades ago or when I updated it over the years as I continued to be a consistent participant in NC elections.

Regardless of what is in my voter file, I have provided sufficient information to election officials to prove my identity and eligibility to vote, including when I voted early in-person in the 2024 general election at Seymour Center on Homestead Road, in Chapel Hill, and showed my NC Driver's License. I also showed my NC Driver's License when I voted in this year's primary election in March. Because of this, I have already given election officials whatever information the protest claims is missing from my voter file.

If there was some mistake made by election officials, that cannot be a reason to reject my vote. I have relied in good faith on my election officials informing me that I am properly registered to vote. My vote shouldn't be taken away because of any mistake the government made that is completely out of my control.

I am shocked that my name appears on any list, as I have lived in Chapel Hill or Raleigh my entire 46 years, and I am a business owner in the area for over 15 years. This protest is not about election integrity; throwing out my valid vote would harm the integrity of this election. I followed the rules, and any effort to change the rules applying to my ballot after the election is over would be undemocratic.

This feels very much like I am being profiled because of the origin and ethnicity of my name (which I have also never changed for marriage). I expect that you will take this information, from myself and others affected, and do what is right to uphold our votes.

Sincerely,
Heba Salama

--

---

## www.hebasalama.com

### Best of the Knot

### Best Photographer: Chapel Hill Magazine

### 919-368-1506

### heba@hebasalama.com

[Quoted text hidden]

# EXHIBIT 3



## Fwd: [External] A very eligible voter

**Jennifer Baddour** <jenbaddour@gmail.com>                                      Tue, Dec 10, 2024 at 10:34 AM

*Always,*
*Jen*

Begin forwarded message:

**From:** SVC_SBOE.Elections <Elections.SBOE@ncsbe.gov>
**Subject: RE: [External] A very eligible voter**
**Date:** December 9, 2024 at 8:40:10 AM EST
**To:** Jennifer Baddour <jenbaddour@gmail.com>

Good morning, Jennifer.

Thank you for contacting the NC State Board of Elections.

In terms of when or whether you would need to provide information, the State Board first must decide whether the protest makes legally valid arguments before the protests would move toward a hearing on the evidence as to specific voters' eligibility. If the State Board determines that this will go to a hearing, you and any other affected voters will be contacted in writing, either by the State Board or your county board of elections.

Thanks again for contacting us.

NCSBE Operation Support

**From:** Jennifer Baddour <jenbaddour@gmail.com>
**Sent:** Friday, December 6, 2024 4:44 PM
**To:** SVC_SBOE.Elections <Elections.SBOE@ncsbe.gov>
**Subject:** [External] A very eligible voter

You don't often get email from jenbaddour@gmail.com. Learn why this is important
**CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

Dear Chair and Members of the Board of Elections:

My name is Jennifer Baddour, and I am an eligible, registered North Carolina voter and a U.S. citizen. I received notice from the North Carolina Republican Party that Judge Jefferson Griffin is protesting my vote. He appears to be alleging that my vote shouldn't count because my voter registration is "incomplete." He did not provide any guidance on how I can make sure that my ballot is not tossed out.

I was born and raised in North Carolina and have lived in the state all but 1.5 years of my 50 years of life. I registered to vote in 1992 and have regularly voted in North Carolina elections ever since, including for 15 years from my current address. When I voted in person in this year's primary and general election, I showed poll workers my NC Driver's License as my required photo ID.

As far as I know, neither Judge Griffin nor anyone else has offered individualized evidence to the NCSBE that I am not properly registered to vote in Orange County or that I've ever failed to provide information requested of me by elections officials. I followed the rules in registering to vote and in being a regular participant in NC elections for more than 3 decades. **To toss out my valid ballot based on someone else's alleged data error or omission would be unfair, undemocratic, and violate my sacred right to vote.**

I volunteered as a greeter at the polls on UNC's campus and was overwhelmed with pride and excitement to see so many first time voters exercise their right to vote. We rang a bell and cheered them on, and I told them that while they might not see actual fireworks, they will feel them in their heart when they put their vote in to be counted. To think that my vote is in question is nothing short of devastating. We can do better.

Sincerely,
Jennifer Baddour



Non-Profit
US Postage
**PAID**
North Carolina
Republican Party

1506 Hillsborough Street
Raleigh, NC 27605

## *** NOTICE ***

Jennifer Lynn Baddour, your vote may be affected by one or more protests filed in relation to the 2024 General Election.

**Please scan this QR code to view the protest filings.** Please check under the county in which you cast a ballot to see what protest may relate to you.



For more information on when your County Board of Elections will hold a hearing on this matter, please visit the State Board of Elections' website link found on the Protest Site (via the QR code).

Paid for by the North Carolina Republican Party.

58*1*16516*********5-DIGIT 27517
JENNIFER BADDOUR OR CURRENT RESIDENT

# EXHIBIT 4



**Protect Democracy**

███████████████████████████

---

## Fwd: How to protect my vote



---------- Forwarded message ---------

---------- Forwarded message ---------
From: **Spring Dawson-McClure** <srdm76@gmail.com>
Date: Fri, Dec 6, 2024 at 4:43 PM
Subject: How to protect my vote
To: <elections.sboe@ncsbe.gov>

Dear Chair and Members of the Board of Elections:

My name is Spring Dawson-McClure, and I am an eligible registered voter in North Carolina and a U.S. citizen. The NC Republican Party sent me a postcard with vague wording about an election protest, but it didn't include any information about how to protect my vote, so I am reaching out to you.

I was born and raised in North Carolina and attended UNC-Chapel Hill, registering to vote here for the first time when I was 18 years old in 1994. While out of the state for graduate school and to begin my career, I returned in 2012 and have lived at the same Orange County address ever since. I believe I've only missed one primary in that time.

Judge Griffin's protest doesn't include any individualized evidence that I failed to provide all the information the NCSBE requested when I registered to vote. If anything is missing from my voter file, I don't know why, but I do know that I showed my NC Driver's license to poll workers when I voted in person in the 2024 primary and general elections. I had also checked online to ensure that my registration was active after hearing reports of attempts to disenfranchise voters; my voter profile was indeed active. I'm a native North Carolinian, long time and regular voter, U.S. citizen, and it would be wrong, undemocratic, and violate my constitutional rights if the NCSBE were to throw out my vote.

I am shocked and distressed that it is even remotely possible that my vote and so many others' would not be counted. In this election cycle and so many others, I volunteered many weekends and evenings to get-out-the-vote efforts. I make this choice and commitment as a full-time working mother because I believe deeply that strong civic engagement is the foundation for the society that all of our children deserve. I've taken my kids to the polls their whole lives. With so much uncertainty in our country, I urge you to show our children that this fundamental aspect of democracy is intact.

Sincerely,
Spring Dawson-McClure, PhD

████████████████████████████████████████

# EXHIBIT 5



# Fwd: Protect my voting rights!

**Iryna Merideth** <iryna.merideth@gmail.com>                    Fri, Dec 6, 2024 at 4:16 PM

---------- Forwarded message ---------
From: **Iryna Merideth** <iryna.merideth@gmail.com>
Date: Fri, Dec 6, 2024 at 4:14 PM
Subject: Protect my voting rights!
To: <elections.sboe@ncsbe.gov>

Dear Chair and Members of the Board of Elections:

My name is Iryna Merideth and I am an eligible registered voter in North Carolina and a U.S. citizen. I received a notice from the NC Republican Party that my ballot is being challenged by Judge Jefferson Griffin in his protest of his loss to Justice Allison Riggs, but the notice did not tell me how to protect my vote.

I registered to vote 11 years ago at my naturalization ceremony in Durham, NC. I was born and raised in Ukraine and chose to become a U.S. citizen, like my husband and child (now children), in 2013. I have lived at my current address in Orange County for 10 years and voted regularly in NC elections.

As far as I'm aware, Judge Griffin hasn't offered any individualized evidence that I failed to provide all the information that election officials asked me to provide when I submitted my voter registration application. I don't know what, if anything, is missing from my voter file, but I do know I have provided sufficient information to election officials to prove my identity and eligibility to vote. For instance, I voted in person during both the 2024 primary and the 2024 general election and showed my NC Driver's license to poll workers in both elections. If there is an error in my file, it is not of my making, and it would be wrong to take away my vote because of a mistake (if there even was one) by someone at the Board of Elections.

**I am an eligible NC voter, U.S. citizen, and followed the rules for voting in this state. My ballot was rightly counted and to throw it out now would be undemocratic and violate my constitutional rights**.

I am deeply concerned about and frustrated with this attempt to interfere with my ability to exercise my voting rights, as well as with the lack of transparency demonstrated in Judge Griffin's protest. The right to vote - and have every vote count - is a cornerstone of democracy. For this right to be questioned in this way threatens the integrity of the electoral process.

Sincerely,
Iryna Merideth



████████████████████████████████████████████

## Fwd: Protect my voting rights!

**Iryna Merideth** <iryna.merideth@gmail.com>                    Mon, Dec 30, 2024 at 3:01 PM
████████████████████████████

████████████████████████████████████████████ Please find the NCSBE correspondence below.

Thanks,
- Iryna

---------- Forwarded message ---------
From: **SVC_SBOE.Elections** <Elections.SBOE@ncsbe.gov>
Date: Mon, Dec 9, 2024 at 8:27 AM
Subject: RE: [External] Protect my voting rights!
To: Iryna Merideth <iryna.merideth@gmail.com>


Good morning, Iryna.


Thank you for contacting the NC State Board of Elections.


*The State Board of Elections is providing the following information, in response to messages received from voters asking about a mailing they received concerning an election protest.*


A candidate for N.C. Supreme Court, Jefferson Griffin, has challenged the election results and has alleged that some voters were not eligible to vote in the election.

If you received a notice from the North Carolina Republican Party stating, "your vote may be affected by one or more protests filed in relation to the 2024 general election," it means that Mr. Griffin has alleged that your ballot is ineligible.

The State Board and county boards of elections are considering these challenges in the coming weeks.

If you would like to get in touch with the parties to this proceeding, the email address for the candidate bringing the challenges is info@jeffersongriffin.com. The email address for the candidate opposing the challenges is team@riggsforourcourts.com.


In terms of when or whether you would need to provide information, the State Board first must decide whether the protest makes legally valid arguments before the protests would move toward a hearing on the evidence as to specific voters' eligibility. If the State Board determines that this will go to a hearing, you and any other affected voters will be contacted in writing, either by the State Board or your county board of elections.


Thanks again for contacting us.


NCSBE Operation Support



**From:** Iryna Merideth <iryna.merideth@gmail.com>
**Sent:** Friday, December 6, 2024 4:14 PM
**To:** SVC_SBOE.Elections <Elections.SBOE@ncsbe.gov>
**Subject:** [External] Protect my voting rights!

You don't often get email from iryna.merideth@gmail.com. Learn why this is important

**CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

[Quoted text hidden]

 **image001.png**
31K

# EXHIBIT 6



## Fwd: [External] Please reject voter challenges

**Rani Dasi** <ranidasi@yahoo.com>                                    Tue, Dec 31, 2024 at 1:49 PM

What can you do to make the world better?  Consider the environment.  Please recycle.

Begin forwarded message:

**From:** "SVC_SBOE.Elections" <elections.sboe@ncsbe.gov>
**Date:** December 6, 2024 at 2:11:39 PM EST
**To:** Rani Dasi <ranidasi@yahoo.com>
**Subject: RE: [External] Please reject voter challenges**

Good afternoon,

Thank you for contacting the NC State Board of Elections.

A candidate for N.C. Supreme Court, Jefferson Griffin, has challenged the election results and has alleged that some voters were not eligible to vote in the election.

If you received a notice from the North Carolina Republican Party stating, "your vote may be affected by one or more protests filed in relation to the 2024 general election," it means that Mr. Griffin has alleged that your ballot is ineligible.

The State Board and county boards of elections are considering these challenges in the coming weeks.

If you would like to get in touch with the parties to this proceeding, the email address for the candidate bringing the challenges is info@jeffersongriffin.com. The email address for the candidate opposing the challenges is team@riggsforourcourts.com.

Thank you for contacting us.

Regards,

**Jessica Bule**

**Learning and Operations Manager**

www.ncsbe.gov



**From:** Rani Dasi <ranidasi@yahoo.com>
**Sent:** Friday, December 6, 2024 1:18 PM
**To:** SVC_SBOE.Elections <Elections.SBOE@ncsbe.gov>
**Subject:** [External] Please reject voter challenges

You don't often get email from ranidasi@yahoo.com. Learn why this is important

**CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

Dear members of the North Carolina Board of Elections,

I clearly remember excitedly looking forward to turning 18 so that I could vote. When my 18th birthday came, I immediately registered to vote and have consistently voted in nearly every election over the next 40+ years! I am also a three-time elected official which means my registration status has been repeatedly verified by the Board of Elections and when I voted most recently in the November 2024 general election, I showed my driver's license as required **AND** confirmed that there is no missing information in my voter registration file.

So you might imagine my surprise at seeing my name and the names of others who have consistently been confirmed as registered voters included on the list of protested voters. It seems clear that this "protest" includes a random list of names in a poorly disguised effort to suppress votes.

I ask the board not to throw out my vote and the votes of the many North Carolinians who participated in our democratic process.

Thank you for your service and please feel free to contact me if you have any questions or I can provide any other information.

Thank you

Rani Dasi