IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:24-cv-724-M

JEFFERSON GRIFFIN,                           )
                                             )
                    Petitioner,              )
                                             )
            v.                               )
                                             )
NORTH CAROLINA STATE BOARD OF                )
ELECTIONS,                                   )
                                             )
                    Respondents,             )
                                             )
ALLISON RIGGS, NORTH CAROLINA                )
ALLIANCE FOR RETIRED AMERICANS,              )
VOTEVETS ACTION FUND, TANYA                  )
WEBSTER-DURHAM, SARAH SMITH, and             )
JUANITA ANDERSON,                            )
                                             )
            Intervenor-Respondents.)

**MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO REMAND**

Petitioner Judge Jefferson Griffin respectfully requests that the Court remand this case to the North Carolina Supreme Court. This action arose out of Judge Griffin's state-law protests regarding the results of a state election. Respondent, the North Carolina State Board of Elections, ultimately denied Judge Griffin's protests, and he sought review of that decision—in the form of a petition for a writ of prohibition arising under state law—before the North Carolina Supreme Court. But rather than allow the state's highest court to determine whether the Board had correctly decided unsettled issues regarding the state's election laws, the Board removed that proceeding to this Court.

The Board contends that removal is appropriate because in its decision denying Judge Griffin's protests it alternatively held that it would have violated several federal statutes and the Fourteenth Amendment if it had sustained them under state law.

This Court should abstain and remand under *Pullman* and *Quackenbush*. In this case, the Board not only decided novel issues of state law but also raised questions arising under the federal constitution. But a serious respect for preserving harmonious federal-state relations and a need to avoid unnecessary decisions of constitutional issues requires this Court to abstain and remand this case to the North Carolina Supreme Court to decide those state-law issues.

Further, none of the general removal statutes permit removal of an appellate action like this one. And neither of the specific removal provisions on which the Board relies—28 U.S.C. §§ 1441, 1443(2)—permits removal here. That's because this state-election case neither falls within the "slim category" of cases arising under state law that raise serious federal interests, as required by section 1441, nor is based on the Board's refusal to do anything, as required by section 1443.

1

At bottom, the Board's attempted removal threatens our system of federalism.  This case primarily turns upon unsettled issues of state election law.  And states—not the federal government—have the primary responsibility to regulate elections for state offices.  But the Board has attempted to circumvent a decision by the state's highest court by injecting a slew of inapplicable federal defenses and meritless arguments about their application solely for the purposes of obtaining federal jurisdiction.  If this Court maintains jurisdiction here, that decision will only incentivize the Board to repeat these tactics in the future.

For all the reasons explained below, this Court should remand the case to the North Carolina Supreme Court.

## STATEMENT OF FACTS

This case presents significant and novel issues of North Carolina election law.  Indeed, the Board has acknowledged that this case raises legal questions of "statewide significance."  D.E. 1-5 at 44.

The court that decides this case will be required to interpret state election laws dating back to the American Revolution.  Since 1776, the North Carolina Constitution has required voters to be bona fide residents of the state.  N.C. Const. of 1776, art. VIII; *see* N.C. Const. art. VI, § 2(1).  Since 2004, state law has required voters to provide a driver's license or Social Security number to register to vote.  N.C. Sess. Law 2003-226, §§ 2, 9; N.C. Gen. Stat. § 163-82.4(a)(11).  And since 2018, both the state constitution and statutory provisions have mandated photo identification for voting, including absentee ballots.  N.C. Const. art. VI, §§ 2(4), 3(2); N.C. Gen. Stat. §§ 163-231(b)(1), 163-230.1(a)(4), (b)(4), (e)(3), (f1); § 163-166.16(a).  These longstanding requirements were well-established before the November 2024 general election.  Yet, the Board refused to enforce them in Judge Griffin's race.

During the November 2024 election, Judge Griffin, the Republican candidate for Seat 6 on the North Carolina Supreme Court, faced Justice Allison Riggs in a close race in which a margin of only a few hundred votes separated the candidates out of more than 5.5 million cast. D.E. 1-4 at 16, 18. As the county boards of elections canvassed the vote, Judge Griffin identified irregularities involving ballots that violated the state constitutional and statutory provisions outlined above, among others. *Id.* at 18-21. He therefore filed election protests with the county boards across the state, seeking to prohibit the counting of ballots cast in violation of state law. *Id.* (Importantly, in those protests, Judge Griffin raised no federal laws as bases to sustain his protests nor requested that the Board remove any voters from the state's registration rolls.) Concurrently, Judge Griffin sent notice of his protests to affected voters. D.E. 1-5 at 174-78.

Thereafter, the Board assumed jurisdiction over protests involving more than 60,000 ballots. *Id.* at 4. These protests included challenges to ballots cast by (1) individuals who had not legally registered to vote; (2) non-residents who did not meet the state constitution's residency requirement; and (3) overseas voters who did not submit the required photo identification or exemption documentation with their ballots. *See* D.E. 1-5 at 4, 10–30.

The Board denied Judge Griffin's protests. In its written order, it reasoned that each of his protests failed under state law. *Id.* at 41–80. But to buttress that decision, the Board alternatively held that it would have violated federal law had it sustained any of his protests. *Id.* Specifically, the Board said that the notices Judge Griffin sent to affected voters failed to comply with the Fourteenth Amendment's procedural-due-process requirements. *Id.* at 51-55. The Board also said that sustaining Judge Griffin's challenges to ballots cast by individuals who had not legally registered to vote would violate the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). *Id.* at 66-67. Additionally, the Board stated that even if North

Carolina law required overseas voters to present photo identification along with their absentee ballots, it could not enforce those laws because they would likely conflict with the Uniform and Overseas Citizens Absentee Voting Act ("UOCAVA"). *Id.* at 77-79. Finally, the Board reasoned that enforcing any of the state-law provisions raised by Judge Griffin as the bases of his protests would violate the Fourteenth Amendment's substantive-due-process doctrine. *Id.* at 63, 72, 79.

Following the Board's decision, Judge Griffin petitioned the North Carolina Supreme Court for a writ of prohibition, asking that court to stay the Board's issuance of a certificate of election and to conclude that the Board had incorrectly applied the law. *See* D.E. 1-4. Judge Griffin's petition—like his election protests—argued that state law prohibited the Board from counting the contested ballots, and that the Board was acting outside its authority by refusing to enforce those laws. *Id.* Judge Griffin's petition also rebutted the arguments under federal law the Board had raised to defend its refusal to enforce state law. *Id.*

In an unprecedented move, the Board thereafter removed Judge Griffin's petition from the North Carolina Supreme Court to this one. *See generally* D.E. 1. Judge Griffin now moves this Court to remand this case to the North Carolina Supreme Court for lack of subject-matter jurisdiction.

**LEGAL STANDARD**

Where a district court "lacks subject matter jurisdiction," it must remand a removed case to state court. 28 U.S.C. § 1447(c). Thus, in removal cases, a federal court must first confirm that it has subject matter jurisdiction. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Subject matter jurisdiction is a "threshold matter" that a court must consider prior to addressing the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir.

2005) ("[S]ubject-matter jurisdiction is a necessary prerequisite to any merits decision by a federal court.").

Courts "must strictly construe removal jurisdiction" because it raises "significant federalism concerns." *Common Cause v. Lewis*, 956 F.3d 246, 252 (4th Cir. 2020) (quotations omitted). "If federal jurisdiction is doubtful, a remand is necessary." *Id.*; *see Palisades Collections LLC v. Shorts*, 552 F.3d 327, 336 (4th Cir. 2008) (recognizing the "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand"). The burden of establishing federal jurisdiction falls on the party seeking removal. *Mulcahey*, 29 F.3d at 151.

## ARGUMENT

The Board cannot satisfy its burden to establish federal jurisdiction over this case for four reasons. First, since a decision in favor of the Board on the unsettled questions of state election law raised in Judge Griffin's petition would moot the federal constitutional issues the Board purports to raise, *Pullman* abstention is warranted and provides a basis for remand of this case because the petition seeks discretionary relief. Second, the general removal statutes prohibit appellate removal of Judge Griffin's petition. Third, this case does not fall within the "slim category" of cases arising under state law in which serious federal interests allow this court to exercise jurisdiction under 28 U.S.C. § 1441. And finally, this case is not removable under 28 U.S.C. § 1443(2) because it is not a suit grounded in the Board's refusal to do anything; rather, Judge Griffin seeks a writ of prohibition to stop the Board from taking action: namely, counting unlawful ballots.

## I.     The Court should remand under *Pullman*.

Although Judge Griffin raised the argument that *Pullman* abstention serves as a basis to remand this case, D.E. 32 at 9-10, the Board and the Intervenors have failed to respond. *See*

*generally* D.E. 39, 40, 42. That omission is telling. For that doctrine has direct application in this case. *Pullman* abstention applies when (1) a case involves uncertain issues of state law, (2) state court clarification of those issues could resolve or significantly narrow the federal constitutional questions, and (3) the case otherwise warrants deferral to state adjudication. *See Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983). And when a federal court chooses to abstain, it may dismiss or remand a case in which a party seeks discretionary relief. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996) ("Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary").

Here, Judge Griffin's protests and petition rest on interpretations of state law that remain unresolved. As the briefing reveals, the parties hotly dispute these issues, and "[t]his very conflict suggests the issue is far from settled." *Wise v. Circosta*, 978 F.3d 93, 101 (4th Cir. 2020) (en banc).

The Board applied these unsettled state laws to deny Judge Griffin's protests in the first instance. D.E. 1-5 at 41-80. Only then did it alternatively deny the protests, claiming that sustaining them under state law would violate the Fourteenth Amendment. *Id.* at 63, 72, 79. Thus, were the North Carolina Supreme Court to endorse the Board's interpretation of those state-law issues, any federal constitutional problems the Board has raised would be rendered moot. This Court should therefore abstain under *Pullman*. *Wise*, 978 F.3d at 102 ("*Pullman* abstention [is] appropriate where the resolution of an issue concerning state [law] would moot the constitutional questions presented").

And abstention here provides yet another basis for remand. That's because Judge Griffin's petition unquestionably seeks discretionary relief. *See State v. Inman,* 224 N.C. 531, 542 (1944). Thus, under *Quackenbush*, that request for discretionary relief provides the Court with authority

to remand the case. 517 U.S. at 731. Indeed, such a result is especially warranted where, as here, the case will be remanded to the North Carolina Supreme Court, which "stands ready to act." *Wise*, 978 F.3d at 103. And ordering remand will prevent "needless federal intervention into local affairs" regarding the state's election laws. *Id.* at 102; *see Quackenbush*, 517 U.S. at 728 (noting that the power to dismiss or remand a case on abstention grounds is based in the fact that a court's exercise of discretion "must reflect principles of federalism and comity." (cleaned up)).

For these reasons, *Pullman* abstention provides yet another ground for remanding this case to the North Carolina Supreme Court.

## II. Supreme Court precedent and the text of the general removal statutes prohibits removal of this case.

The Board has claimed an extraordinary power: the power to remove a petition for a writ of prohibition from a state supreme court to a federal district court. Counsel is aware of no federal court that has ever blessed such a maneuver.

The United States Supreme Court has held that where "a supplementary proceeding so connected with the original suit as to form an incident to it, and substantially a continuation of it" federal courts may not "properly entertain jurisdiction of the case." *Barrow v. Hunton*, 99 U.S. 80, 82-83 (1878). State-court proceedings reviewing state agency rulings are "merely supplementary" because they form "an integral part of the administrative enforcement scheme." *Armistead v. C & M Transp., Inc.*, 49 F.3d 43, 46 (1st Cir. 1995) (ordering remand of proceeding to enforce state agency's decision). None of the Board's authorities address these kinds of supplementary proceedings. D.E. 39 at 9-17.

Here, the Board, acting as a state tribunal, issued an order denying Judge Griffin's election protests. Judge Griffin then asked North Carolina Supreme Court to review and reject that order by filing a petition for writ of prohibition. *See generally* D.E. 1-4. Judge Griffin's petition, then,

is simply a "supplementary proceeding," which is a substantial continuation of the election-protest proceedings originally decided by the Board. Under the principles set out in *Barrow*, such a proceeding cannot be removed to this Court. *See Barrow*, 99 U.S. at 82-83; *Armistead*, 49 F.3d at 46.

The text of the general removal statutes also does not permit appellate removal. For example, the two statutes under which the Board has attempted to remove this case, 28 U.S.C. §§ 1441(a) and 1443(2), both permit removal only of a "civil action." But the Board did not remove a civil action. It removed a petition for a writ of prohibition filed with the North Carolina Supreme Court, arising under the North Carolina Constitution, and seeking the exercise of that court's unique writ power and its power to supervise and control the exercise of judicial power in the state.

At common law, a petition for a writ of prohibition is not a "civil action," and is therefore not removable to federal court. *N.C. Pub. Serv. Co. v. S. Power Co.*, 104 S.E. 872, 873 (N.C. 1920) ("It seems to be well settled that a proceeding for a writ of mandamus in a state court is not a suit of a civil nature at law or in equity which can be removed from the state to the federal courts")[1]; *Marshall v. Crotty*, 185 F.2d 622, 626 (1st Cir. 1950); *N.C. Pub. Serv. Co. v. S. Power Co.*, 282 F. 837, 840 (4th Cir. 1922) ("The District Court of the United States has no original jurisdiction in mandamus, and therefore a mandamus proceeding is not removable"); *Rosenbaum v. Bauer*, 120 U.S. 450, 455 (1887); 2 Russell J. Davis et al., *Cyclopedia of Federal Procedure* § 3:25 (3d ed.

---

[1] In North Carolina, mandamus and prohibition are two sides of the same coin. One writ issues to compel action, the other to restrain action. *State v. Whitaker*, 19 S.E. 376, 376 (N.C. 1894) ("The writ of prohibition is the converse of mandamus. It prohibits action, while mandamus compels action"). They are often considered "interchangeable" according to the Supreme Court of North Carolina. N.C. R. App. P. 22, Drafting Committee Note (1975), *reprinted at* 287 N.C. 671, 732, *available at* https://perma.cc/QV85-WNHY.

Westlaw 2024) ("Removal of mandamus proceedings from a state court has been denied on the ground that the federal court has no original jurisdiction of them or that they are not civil actions.").

Unlike a civil action, which pits parties against one another, "prohibition is an extraordinary judicial writ, issuing to a court from another court having supervision and control of its proceedings." *Whitaker*, 19 S.E. at 376. Appeals in general, and petitions for extraordinary writs in particular, are not "civil actions" as that term is used in the general removal statutes. Indeed, that Congress does not allow removal of these types of actions is buttressed by the general removal statutes' requirement that a party may only remove an action from "a State court." 28 U.S.C. §§ 1441(a), 1443(2). There, Congress defined "State" to "include[] the District of Columbia," *id.* § 1451(2), but "State court" to include only "the Superior Court of the District of Columbia," *id.* § 1451(1). Congress thereby specifically excluded the appellate court sitting above the D.C. Superior Court—the District of Columbia Court of Appeals. *See, e.g.*, *Shafique v. Equity Residential Real Est. Inv. Tr.*, No. 1:24-CV-00380 (UNA), 2024 WL 1989113, at *2 (D.D.C. May 1, 2024) (case cannot be removed from the District of Columbia Court of Appeals); *Victoria Palms Resort Inc. v. City of Donna*, 234 F. App'x 179, 180 (5th Cir. 2007) (finding "no support for removal of *any* non-FIRREA cases to federal district courts while still on appeal in the state court system").

The Board counters with several cases, *see* D.E. 39 at 10, but none are availing. For they address different removal statutes and fact patterns. *See Harris v. U.S. Dep't of Transp. FMCSA*, 122 F.4th 418, 422 (D.C. Cir. 2024) ("liberally constru[ing]" federal-officer-removal statute); *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 970 (7th Cir. 2013) (allowing removal after "an interlocutory order" before any state-court appeal); *Resol. Tr. Corp. v. Allen*, 16 F.3d 568, 572 n.4 (4th Cir. 1994) (FIRREA removal).

Thus, Supreme Court precedent and the language of the removal statutes all caution against the novel removal power claimed by the Board here.

### III.    This case is not among the "slim category" of cases arising under state law which are removable under 28 U.S.C. § 1441(a).

Other reasons also compel this Court to conclude that the Board improperly removed this action under 28 U.S.C. § 1441(a).  Most cases invoking removal under 28 U.S.C. § 1441(a) involve disputes where "federal law creates the cause of action asserted."  *Gunn v. Minton*, 568 U.S. 251, 257 (2013).  But here, neither Judge Griffin's petition nor his election protests arise under federal law.  *See* N.C. Const. art. IV, § 12(1); *State v. Allen*, 24 N.C. (2 Ired.) 183, 188-89 (1841); N.C. Gen. Stat. § 163-182.9.

The United States Supreme Court has nonetheless recognized a "special and small category" of cases in which courts have federal-question jurisdiction even though the petitioner's claim "finds it origins in state rather than federal law."  *Gunn*, 568 U.S. at 258 (explaining that this is a "slim category" of cases); *W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, 23 F.4th 288, 307 (4th Cir. 2022) (same).  In this narrow class of cases, federal jurisdiction over a state law claim will lie if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *W. Va. State Univ. Bd. of Governors*, 23 F.4th at 307 (quoting *Gunn*, 568 U.S. at 258).  But courts must be "cautious in exercising jurisdiction of this type, which lies at the outer reaches" of federal-question jurisdiction.  *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810 (1986)).

Here, none of the federal questions raised in the Board's order satisfies all four of these requirements.  This Court therefore lacks jurisdiction.  *See W. Va. State Univ. Bd. of Governors*, 23 F.4th at 307 (explaining that all four requirements must be met for jurisdiction to be proper).

10

**A. None of the federal questions the Board asserts are "necessarily raised."**

    **a. Judge Griffin's petition merely argues that the Board's invocation of federal law is insufficient to defeat his state-law claims.**

To determine whether a federal question is "necessarily raised," federal courts apply the "well-pleaded complaint" rule. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9-10 (1983) (explaining that the rule "severely limits the number of cases in which state law 'creates the cause of action' that may be initiated in or removed to federal district court, thereby avoiding more-or-less automatically a number of potentially serious federal-state conflicts"); *Burrell*, 918 F.3d at 381 ("A federal question is necessarily raised for purposes of [federal question jurisdiction] only if it is a necessary element of one of the well-pleaded state claims" (cleaned up)). Under that rule, whether a case arises under federal law "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Bd.*, 463 U.S. at 10 (quotations omitted). A federal court therefore "does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts . . . that a federal defense the defendant may raise is not sufficient to defeat the claim." *Id.*; *Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 343, 351 (4th Cir. 2024) ("[T]o establish federal-question jurisdiction, it is *not* enough that federal law becomes relevant by virtue of a defense, even if it is anticipated in the plaintiff's complaint" (emphasis in original) (cleaned up)).

Here, all the federal questions the Board raises are merely defenses asserted to protect its decision to deny Judge Griffin's state-law election protests. To reiterate, Judge Griffin's petition and protests arise under state law. *Allen*, 24 N.C. at 188-89; N.C. Gen. Stat. § 163-182.9. And none of the relief that Judge Griffin has requested either in his election protests or in his petition

has as "an element"—"and an essential one" at that—a "right or immunity created by the Constitution or laws of the United States." *Franchise Tax Bd.*, 463 U.S. at 10-11 (quotation omitted); *see* D.E. 1-5 at 10-36.

None of Judge Griffin's protests mention federal law. *See N.C. Dem. Party v. N.C. State Bd. of Elecs.*, No. 5:24-cv-699 (E.D.N.C.) D.E. 1-2, 1-3, 1-4 (protests). And to the extent Judge Griffin's petition mentions federal law at all, it does so only to rebut the Board's (erroneous) invocation of those laws as defenses to defeat his state-law claims. To reiterate, the Board's order denied each of Judge Griffin's protests on state-law grounds. D.E. 1-5 at 46-80. As alternative reasons for denying each of those protests, however, the Board stated that it would have violated various federal laws if it had sustained his protests. *Id*. Although Judge Griffin's petition primarily focuses on why the Board erred in its application of state law when it denied his protests, it also discusses each of the federal laws the Board invoked, but only to explain why the Board's appeals to those federal defenses are insufficient to defeat his state-law claims. *Id.* at 40-46, 59-60, 67-74; *see also Franchise Tax Bd.*, 463 U.S. at 10 (explaining that where a plaintiff's complaint merely explains that a "federal defense . . . is not sufficient to defeat" his state-law claims, that does not provide a federal court with federal-question jurisdiction); *id.* at 13 ("[F]ederal law becomes relevant [here] only by way of a defense to an obligation created entirely by state law, and then only if [petitioner] has made out a valid claim for relief under state law. The well-pleaded complaint rule was framed to deal with precisely such a situation." (quotation omitted)); *Anne Arundel Cnty.*, 94 F.4th at 351.

What's more, the Board's characterizations of Judge Griffin's discussions of federal law clearly show they are raised as defenses. The Board says the petition seeks a decision from the North Carolina Supreme Court "*rejecting* all arguments under the NVRA, HAVA, the VRA, and

the Civil Rights Act, as well as under the federal constitution that would *bar* [Judge Griffin's] requested relief." D.E. 39 at 11 (emphasis added) (cleaned up); *see id.* at 13 ("The petition specifically requests a judicial decree . . . that its requested relief *does not violate* four federal statutes.").

Judge Griffin's references to federal law in his petition are therefore insufficient to provide this court with subject-matter jurisdiction under 28 U.S.C. § 1441.

### b. None of Judge Griffin's claims "hinges" on the determination of a federal issue.

All these federal questions also are not "necessarily raised" for a separate reason. To "necessarily raise a federal issue, a state law claim must hinge on the determination of a federal issue." *W. Va. State Univ. Bd. of Governors.*, 23 F.4th at 307 (quoting *Burrell v. Bayer Corp.*, 918 F.3d 372, 383 (4th Cir. 2019)). That is, the "federal issues must be 'essential to resolving [the] state-law claim.'" *Id.*

Here, none of Judge Griffin's election protests hinges on a determination of federal law. Indeed, each of his protests alleged violations only of *state* law. Specifically, those protests asked the Board (and by extension on review, the North Carolina Supreme Court) to correct the vote count in his election because numerous individuals cast ballots without satisfying the state's legal registration, residency, and photo identification requirements, which are set out in the North Carolina Constitution and the General Statutes. N.C. Const. art. VI, §§ 2(1), (4), 3(2); N.C. Gen. Stat. §§ 163-82.4(a)(11), 163-231(b)(1), 163-230.1(a)(4), (b)(4), (e)(3), (f1); § 163-166.16(a).

The Board acknowledges that Judge Griffin has brought "only state-law claims" but erroneously asserts that those claims "necessarily" raise federal-law issues. D.E. 39 at 10-11.

First, the Board contends that "[d]eciding whether . . . voters were properly registered necessarily requires this Court to construe HAVA," *id.* at 11, but a court can and should decide

Judge Griffin's state-law claim without interpreting HAVA at all. Judge Griffin's claim expressly asserts a violation of "state law." D.E. 1-4 at 33. Indeed, Judge Griffin's petition affirmatively disclaims any reliance on HAVA. *See id.* at 40 ("HAVA and NVRA have nothing to do with this case"). The fact that North Carolina's statute contains provisions substantively similar to HAVA's provisions does not transform the interpretation of a North Carolina law into a federal issue. *See Nicholson v. City of Gary*, No. 2:18-cv-257, 2020 WL 2744286, at *6 (N.D. Ind. May 27, 2020) (remanding to state court and rejecting the defendant's argument "that a decision based on [a state statute] also necessarily raises a federal issue because the language in [the state statute] is substantially similar to language in" a federal statute); *Childers v. Cynosure, Inc.*, No. CV 12-67-ART, 2012 WL 13026974, at *3 (E.D. Ky. Oct. 30, 2012) ("If a state-law claim requires a plaintiff to prove a set of facts that would also prove a similar, but not raised, federal-law claim, the case will not turn on an issue of federal law.").

The Board's reliance on *Republican National Committee v. North Carolina Board of Elections* does not help it. 120 F.4th 390 (4th Cir. 2024) ("*RNC*"). In that case, the court could not decide the state-law claim without interpreting HAVA because the state law allegedly violated in that case "does nothing more than require the State Board to 'meet the requirements of [S]ection 303(a) of [HAVA].'" *RNC*, 120 F.4th at 401 (quoting N.C. Gen. Stat. § 163-82.11(c)). In this case, by contrast, the state statutory provision that the Board violated—though setting out similar requirements to those required by HAVA—establishes its own rule without incorporating HAVA by reference. *See* N.C. Gen. Stat. § 163-82.4(a)(11) (requiring a form to "request the applicant's . . . Drivers license number or . . . the last four digits of the applicant's social security number"). And as explained above, and unlike the plaintiffs in *RNC*, Judge Griffin does not allege that the

Board "violated HAVA and, as a result, state law." *RNC*, 120 F.4th at 399. That case is therefore inapposite here.

Second, the Board claims that applying North Carolina law to "overseas voters who did not include a copy of a photo ID" will require interpretation of "a federal statute: UOCAVA," but that elides the key distinction between that federal statute and the state law underlying Judge Griffin's claim. D.E. 39 at 12. Again, Judge Griffin expressly brought a claim under North Carolina law. *See* D.E. 1-4 at 53 ("State law requires these voters to submit photo identification . . . ."). That state law does not incorporate UOCAVA by reference. On the contrary, it sets its own substantive rule. *See, e.g.*, N.C. Gen. Stat. § 163-230.1(e)(3) (listing failure "to include . . . a photocopy of identification . . . or an affidavit" as "a curable deficiency"). That is why Judge Griffin could expressly disclaim any reliance on federal law for this claim, too. *See* D.E. 1-4 at 59 ("[F]ederal law has no application here.").

The Board insists that federal law is relevant because *other* provisions of North Carolina law—not the ones the Board is being sued for violating—refer to UOCAVA, *see* D.E. 39 at 12, but that is irrelevant to removal jurisdiction. The Board can raise those issues as a potential (and meritless) defense to Judge Griffin's claim, but (as explained above) "to establish federal-question jurisdiction, it is *not* enough that federal law becomes relevant by virtue of a defense, even if it is anticipated in the plaintiff's complaint." *Anne Arundel Cnty.*, 94 F.4th at 351 (emphasis in original) (cleaned up).

Finally, the Board argues that Judge Griffin sought "a judicial decree declaring that [his] requested relief does not violate" federal law, but that is both wrong and irrelevant. As an initial matter, Judge Griffin did not request a declaratory judgment about the meaning of federal law. The relief Judge Griffin sought was for the North Carolina Supreme Court "to issue a writ of prohibition

to stop the State Board of Elections from counting unlawful ballots cast in the 2024 general election." D.E. 1-4 at 14. To be sure, Judge Griffin asked the Court "[i]n the interests of finality and expediency" to address various legal issues through its "hold[ings]," D.E. 1-4 at 83, but the fact that Judge Griffin (correctly) anticipated the Board's defenses and asked the North Carolina Supreme Court to reject them has no bearing on federal jurisdiction. Moreover, even if Judge Griffin had sought a declaratory judgment about the meaning of federal law, that still would not support federal jurisdiction here. When analyzing federal-question jurisdiction over a declaratory-judgment suit, courts "must conceptualize a world where declaratory judgment actions do not exist and then theorize the coercive suit that would have arisen between the same parties in such a reality." *Capitol Broad. Co., Inc. v. City of Raleigh*, 104 F.4th 536, 540 (4th Cir. 2024). Only "if *that* suit would satisfy the well-pleaded complaint rule, then the overarching declaratory judgment action does too." *Id.* Here, identifying the relevant coercive suit is easy; it is the suit the Judge Griffin actually brought: election protests under state law challenging unlawful ballots. And that suit does not satisfy the well-pleaded complaint rule for all of the reasons identified above. The Board's argument about declaratory relief adds nothing to the analysis.

Thus, the state-election laws undergirding Judge Griffin's protests are not "state cause[s] of action in name only," *RNC*, 120 F.4th at 401; rather, they impose freestanding requirements with which individuals must comply for their votes to be counted in a state election. Hence, the "federal issues" raised by the Board are not "essential to resolving" Judge Griffin's claims. *W. Va. State Univ. Bd. of Governors.*, 23 F.4th at 307. They are therefore not "necessarily raised" here. *Id.*

### B. Neither the applicability of the Civil Rights Act nor the Voting Rights Act is "actually disputed."

Federal issues are "actually disputed" only when "the parties disagree about the effect of federal law." *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 209 (4th Cir. 2022). Here,

the Board's order expresses no disagreement with Judge Griffin's position that neither the Civil Rights Act nor the Voting Rights Act applies to this case. *See* D.E. 1-5 at 41-80. Although Justice Riggs raised arguments regarding both those provisions before the Board when it was considering Judge Griffin's protests, the Board did not determine that those laws apply here. *See id.* Judge Griffin only mentioned those provisions in his petition in anticipation of defenses Justice Riggs raised before the Board. *See* D.E. 1-4 at 67-69 (pointing out that Justice Riggs raised these arguments before the Board). In response to the Court's Show Cause Order, the Board does not argue that these issues are disputed. *See* D.E. 39 at 13. Absent disagreement between the Board's order and Judge Griffin's petition, the inapplicability of those laws to his protests is not an issue that is "actually disputed" here. *Mayor & City Council of Balt.*, 31 F.4th at 209.

> **C. There is no "substantial" federal interest in this case because the federal questions the Board raises are meritless, require fact-bound determinations, or are governed by clear federal precedent.**

A federal court may only exercise jurisdiction over the federal questions in a case if they are "substantial," meaning that they are important "to the federal system as a whole." *Gunn*, 568 U.S. at 260 (explaining that "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim necessarily raises a disputed federal issue" (cleaned up)). The substantiality requirement is a "high bar," even where the federal issue "would otherwise be within the exclusive jurisdiction of federal courts." *Friedler v. Stifel, Nicolaus, & Co.*, 108 F.4th 241, 247 (4th Cir. 2024).

Here, the Board cannot satisfy that standard for several reasons. First, where a party invokes federal law "solely for the purpose of obtaining jurisdiction," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89-90 (1998), or where the federal issues raised are "obviously without merit," those issues are per se insubstantial, *Hagans v. Lavine*, 415 U.S. 528, 537 (1974); *see* 13D

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3564 (3d ed. Westlaw 2024). Here, after the Board denied Judge Griffin's protests on state-law grounds, it invoked the NVRA, HAVA, and UOCAVA as alternative reasons to justify its decision. But those statutes are clearly inapplicable to this case.

Judge Griffin's petition and protests are limited to challenging the votes of individuals who cast ballots in a *state* election in which he ran as a candidate. D.E. 1-4. But the plain text of the NVRA, HAVA, and UOCAVA clearly indicates that they apply only to *federal* elections. *See* 52 U.S.C. §§ 21081(a), 21083(A)(1)(a)(viii) (HAVA); *id.* §§ 20302 (a)(1)-(3), (6)-(8), (b)(1), (c) (UOCAVA); *id.* §§ 20507(a), (c)(2) (NVRA). Indeed, Congress passed these statutes under its Elections Clause power, which permits it to prescribe rules only for federal elections, so applying these statutes to a state election (like the one at issue here) would not pass constitutional muster. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1; *Moore v. Harper*, 600 U.S. 1, 10 (2023); *Arizona v. Inter Tribal Council of Am., Inc.*, 570 U.S. 1, 15 (2013); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008).

Moreover, had the Board granted Judge Griffin the relief he requested, that would have resulted only in a correction to the vote count for his state election, not to the removal of any voters from the voter rolls for federal and state elections. *See* D.E. 1-5 at 31; N.C. Gen. Stat. § 163-182.10(d)(2)(e)(1)-(2); *Bouvier v. Porter*, 386 N.C. 1, 4 (2024) (indicating that a successful election protest cannot result in anyone being removed from the voter rolls, but only in the correction of inaccurate results or a recount). But the NVRA and HAVA only prohibit the latter, *i.e.*, voter-list maintenance insofar as it relates to registrations for federal elections, not the former. 52 U.S.C. § 20507(a)(3), (c); *id.* § 21083(a)(2)(B). The Board and Intervenors attempt to equate the two, arguing that this is a "distinction without a difference" for purposes of these federal

statutes. D.E. 42 at 28. But the case the parties cite involved challenges to voter eligibility in both state and *federal* elections. *See Majority Forward v. Ben Hill Cnty. Bd. of Elecs.*, 512 F. Supp. 3d 1354, 1368 (M.D. Ga. 2021) (recognizing that the NVRA applies to "elections for *federal* office" and stating that the NVRA "prohibits states from removing voters from registration lists within ninety days of a primary or general election for *federal* office" (emphasis added)); D.E. 1-5 at 66; D.E. 42 at 28. It is therefore inapposite here.

The Board also reasoned that if it were to apply state law in the manner Judge Griffin had asked, it would have applied a "newly announced rule of law" to this election, in violation of the Fourteenth Amendment's substantive-due-process doctrine. D.E. 1-5 at 72, 79 (citing nothing in support). But that reasoning, too, is without merit.

The provisions of state law at issue here were on the books well before the November 2024 general election. N.C. Const. of 1776, art. VIII; N.C. Const. art. VI, §§ 2(1), (4), 3(2); N.C. Gen. Stat. §§ 163-82.4(a)(11), 163-231(b)(1), 163-230.1(a)(4), (b)(4), (e)(3), (f1). Simply put, the Board gets the chronology backwards. And here, if the North Carolina Supreme Court (or this Court) determines that Judge Griffin's interpretation of the state laws at issue is correct, that would simply mean that the ballots he has challenged cannot be counted under laws which had been in force for years preceding the November 2024 election. Such a decision would not announce "new principle of law," but rather would apply the "law prevailing at the time" of the election. *Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 180, 191-93 (1990). Indeed, for all these reasons, this is not a case in which Judge Griffin is attempting to apply state laws to "conduct antedating [their] enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994). This observation fatally flaws the Board's substantive-due-process reasoning on this point.

Thus, the Board's invocation of the NVRA, HAVA, UOCAVA, as well as the Fourteenth Amendment's substantiative-due-process doctrine are clearly "without merit," and appear to have been made solely for the purposes of obtaining federal jurisdiction. *Lavine*, 415 U.S. at 534; *Steel Co.*, 523 U.S. at 89-90. For those reasons, any federal questions raised by the Board regarding those provisions are insubstantial.

Second, "fact-bound and situation-specific" questions of federal law ordinarily do not satisfy the substantiality requirement. *Burrell*, 918 F.3d at 385. Here, after denying Judge Griffin's protests for a purported failure to satisfy state regulatory and statutory notice and service requirements, the Board alternatively held that Judge Griffin had failed to comport with the Fourteenth Amendment's procedural-due-process requirements. D.E. 1-5 at 51-54. But that question is considerably fact-bound. By way of brief background, Judge Griffin notified individuals that his protests affected their votes by sending them postcards containing QR-code links to his protest filings. *Id.* at 48. The Board, however, held that those postcards did not provide sufficient notice to those individuals under the Fourteenth Amendment. But, as the Board pointed out in its order, that question requires an assessment whether: (1) voters considered the postcards "junk mail"; (2) voters were able to use the QR codes on the postcards to view the protest filings; (3) the postcards informed voters which candidates were challenging their votes; and (4) voters could effectively locate their names in the protest filing spreadsheets, among others. *See* D.E. 1-5 at 45-51.

The Board's separate appeal to substantive due process is also considerably fact bound. There, the Board argues that insofar as individuals cast unlawful ballots because the Board did not instruct them to comply with state law, it would violate the Fourteenth Amendment to ignore those ballots when deciding the election. *See id.* at 63-65. As an initial matter, this is not a situation in

20

which an election official's error prevented eligible voters from casting their ballots. Rather, this is an instance in which, after the Board decided to not inform individuals of certain requirements, the individuals' ignorance of those requirements resulted in them failing to take the steps necessary to become eligible voters. But, in this situation, it is not unconstitutional to require the public to be as knowledgeable of election laws as other laws. More to the point, a determination whether the Board instructed individuals to ignore the various state-law requirements at issue here would require an extensive consideration of exactly what instructions the Board gave those individuals. *See id.* at 64.

Resolution of these fact-bound questions "is not substantial in the relevant sense because it lacks importance more generally" to the federal system as whole. *Burell*, 918 F.3d at 385 (cleaned up). Thus, these federal questions are also insubstantial.

Third, where "state courts can be expected to hew closely to the pertinent federal precedents," that counsels against finding that the federal questions in a case are substantial. *Gunn*, 568 U.S. at 262. Here, there is no reason to suspect that the North Carolina Supreme Court will not follow federal precedents when interpreting the federal statutes or constitutional provisions raised by the Board. Additionally, to the extent that any of the federal issues purportedly raised in this case are "novel," they will "at some point be decided by a federal court." *Id.* (explaining that "[i]f the question arises frequently, it will soon be resolved within the federal system, laying to rest any contrary state court precedent; if it does not arise frequently, it is unlikely to implicate substantial federal interests"). What's more, any decision regarding those issues here will be subject to immediate review by the United States Supreme Court, the ultimate arbiter of these questions within the federal system. 28 U.S.C. § 1257(a). And that Court is the only one with

appellate jurisdiction over the North Carolina Supreme Court.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005).

That this case involves a state—and not a federal election—only buttresses the conclusions above that none of the federal questions the Board attempts to raise are substantial.  In *RNC*, the Fourth Circuit explained that a state court's ruling on the issues presented there "could very much change how *federal* law is enforced for this *federal* election and in future elections."  *RNC*, 120 F.4th at 404 ("Where the answer to a question of federal law could potentially determine whether nearly a quarter-of-a-million voters may have their ballots counted in a *federal* election, it is one of substantial federal importance." (emphasis added)).  But with this challenge to the results of a state election under state law, that is emphatically not the case.

For all these reasons, the Board cannot satisfy the "high bar" of showing that the federal issues implicated here are "substantial."  *Friedler*, 108 F.4th at 247.

### D. Retaining federal jurisdiction over this dispute regarding a state election would fundamentally upset the "federal-state balance."

The final *Gunn* factor asks courts to consider whether exercising federal jurisdiction would "disrupt[] the federal-state balance approved by Congress" and upset our federal system's delicate "balance of federal and state judicial responsibilities."  *Gunn*, 568 U.S. at 258, 262.  This factor requires courts to consider whether maintaining jurisdiction over the federal questions will "attract[] a horde of original filings and removal cases raising other state claims" or "portend only a microscopic effect" on "the normal currents of litigation."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315, 318-19 (2005).

"[G]enerally, federal courts review federal agencies and state courts review state agencies." *Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 386 (4th Cir. 2000).  Maintaining that balance is particularly appropriate here because Judge Griffin's election protests are based on

violations of North Carolina's Constitution and its General Statutes. To be sure, after the Board denied his protests based on erroneous interpretations of those state laws, it raised a slew of federal defenses as alternative grounds to justify its decision. *See generally* D.E. 1. But if the Court chooses to maintain jurisdiction here, that will only incentivize the Board and candidates to repeat the same tactic in every future decision regarding an election protest—which are not rare in North Carolina—brought under state law. *Cf.* D.E. 39 at 14. And that will necessarily attract a "horde" of "removal cases" raising other state election law claims, upsetting the federal-state balance which commits such claims to the state courts. *Grable*, 545 U.S. at 318.

More to the point, concerns about the federal-state balance are particularly pronounced in this case, given that states have a "special responsibility" to regulate their elections. *Gunn*, 568 U.S. at 264. Indeed, the "conduct of elections" for state offices is a "matter committed primarily to the control of states." *Hutchison v. Miller*, 797 F.2d 1279, 1280 (4th Cir. 1986); *see Clingman v. Beaver*, 544 U.S. 581, 586 (2005) ("The Constitution grants States broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' which power is matched by state control over the election process for state offices." (citation omitted)); *Welch v. McKenzie*, 765 F.2d 1311, 1317 (5th Cir. 1985) (explaining that under our federal system, "states are primarily responsible for regulating their own elections").

Further, federal district courts do not generally intervene to instruct state officials to follow state election law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("A federal court's grant of relief against state officials on the basis of state law . . . does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"); *Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20CV457, 2020 WL

6383222, at *7 (M.D.N.C. Oct. 30, 2020) ("In the absence of a continuing federal violation, any order by this court that the [North Carolina State Board of Elections] conform their conduct with state laws is precisely the conduct the Supreme Court forbids . . . .").

It is also "fundamental" that state courts should be "left free and unfettered by [federal courts] in interpreting their state constitutions." *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940). Usurping that role from the North Carolina Supreme Court would "disregard[] principles of federalism" and "denigrate[] the state's authority to fashion independent constitutional law." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 367 (5th Cir. 1995). Moreover, the state constitutional provision at issue here—regarding the state's bona fide residency requirement—has no analog in the federal constitution. *Cf. Blankenship v. Bartlett*, 363 N.C. 518, 522 (2009) (indicating that the North Carolina Supreme Court generally follows the analysis of the Supreme Court when interpreting state constitutional provisions that have federal counterparts). Ultimately, it is the North Carolina Supreme Court—and not the federal courts—which possesses "independent authority to interpret state constitutional provisions" thereby reflecting "the unique role of state constitutions and state courts within our system of federalism." *State v. Kelliher*, 381 N.C. 558, 580 (2022).

For all these reasons, permitting federal jurisdiction here would disrupt the federal-state balance.

\*   \*   \*

The Board cannot meet its burden to show that removal is appropriate under 28 U.S.C. § 1441. This Court should therefore remand the case to the North Carolina Supreme Court.

### IV. This case is not removable under 28 U.S.C. § 1443(2).

The second removal statute the Board cites is the "refusal" clause in 28 U.S.C. § 1443(2), but it does not support removal either. *See* D.E. 1 ¶ 5

First, the Board cannot remove under section 1443(2) because it is not being sued "for refusing to act." 28 U.S.C. § 1443(2). A "state court action" is not removable when it "is not brought against the . . . Defendants 'for refusing to do' anything." *Common Cause v. Lewis*, 358 F. Supp. 3d 505, 510 (E.D.N.C. 2019), *aff'd*, 956 F.3d 246 (4th Cir. 2020). "[T]he distinction between a defendant's action versus inaction" is "[c]ritical." *Suttlar v. Thurston*, No. 4:22-cv-368, 2022 WL 2713648, at *5 (E.D. Ark. July 13, 2022). "[T]he 'refusal to act' clause is unavailable where the removing party's *action*, rather than its *inaction*, is the subject of the state-court suit." *City & Cnty. of S.F. v. Civil Serv. Comm'n of City & Cnty. of S.F.*, No. 3:02-cv-3462, 2002 WL 1677711, at *4 (N.D. Cal. July 24, 2002) (emphasis in original).

This case is about the Board's threat to take action, not any refusal to take action. That is why Judge Griffin is seeking "a writ of prohibition to stop the State Board of Elections from counting unlawful ballots," not a writ of mandamus compelling the Board to take actions it has refused to take. D.E. 1-4 at 14. Under North Carolina law, "[t]he writ of prohibition is the converse of mandamus. It prohibits action, while mandamus compels action." *State v. Whitaker*, 19 S.E. 376 (N.C. 1894). The fact that Judge Griffin seeks a writ of prohibition, and not a writ of mandamus, establishes that his suit against the Board is not based on any refusal to act. *See Common Cause*, 358 F. Supp. 3d at 511 (holding the refusal clause did not apply because

"Plaintiffs' prayer for injunctive relief" sought "to enjoin defendants from" acting and did "not seek an injunction compelling the Legislative Defendants to act").

"[T]he 'refusal' clause is unavailable in this case" because "the defendants' actions, rather than their inaction, are being challenged." *Mass. Council of Const. Emp., Inc. v. White*, 495 F. Supp. 220, 222 (D. Mass. 1980). The fact that Judge Griffin is challenging "an affirmative order" rather than "a failure to act" "is dispositive." *City & Cnty. of S.F.*, 2002 WL 1677711, at *4.

Second, removal under Section 1443(2) was improper because there is no colorable argument that Judge Griffin's request for relief is inconsistent with federal law. "If no colorable conflict between state and federal law exists then removal is improper." *Alonzo v. City of Corpus Christi*, 68 F.3d 944, 946 (5th Cir. 1995). This "is to be tested objectively; defendants cannot simply assert an unsupportable subjective belief that they are being asked to violate federal law." *Taylor v. Currie*, 386 F. Supp. 2d 929, 936 (E.D. Mich. 2005). "The defendant bears the burden of establishing its right to removal under § 1443," including pleading "a factual basis for § 1443 removal." *Charter Sch. of Pine Grove, Inc. v. St. Helena Par. Sch. Bd.*, 417 F.3d 444, 448 (5th Cir. 2005). Asserting a conflict with federal law "only in conclusory fashion" "is insufficient." *Id.*

In this case, the Notice of Removal includes no substantive allegations explaining the alleged conflict state law and federal law. It does not even argue that a conflict truly exists. Its only allegation on this topic is about the *basis* for the Board's supposed refusal, not the *legitimacy* of that basis. The Board alleges that, "[t]o the extent Defendant has indeed refused to take certain actions, its refusal was based on its obligation to comply with" certain provisions of federal law. D.E. 1 ¶ 4. The Notice of Removal does not substantively support any colorable argument for a conflict between federal and state law.

26

In any event, there is no colorable argument that Judge Griffin asked the Board to violate federal law. The Board claims in its Notice of Removal that Judge Griffin is seeking relief for the Board's refusal to act inconsistently with NVRA as well as 52 U.S.C. §§ 10101(a)(2) and 10307(a). D.E. 1 ¶ 5.[2] As an initial matter, the Board mentioned neither section 10101(a)(2) nor 10307(a) in its order as reasons for denying Judge Griffin's protests. *See* D.E. 1-5 at 41-80. Nor does the Board make any argument for why removal is justified under section 10101(a)(2) in its response to the Court's Show Cause order. *See* D.E. 39 at 14-17.[3] In any event, as for section 10307(a), the Board says that statute prohibits officials from failing to tabulate, count, and report the votes of individuals who were "qualified" to vote in the election. *See id.* at 16-17. But that statute cannot justify the Board's actions here because none of the individuals whose ballots Judge Griffin challenges were qualified to vote since they failed to comply with state-law voting and registration requirements. And as for the NVRA, that statute is both inapplicable to a state election, like the one challenged here, and only prohibits voter-list maintenance, something that Judge Griffin has not requested as relief in this case. *See supra* Section III.

## CONCLUSION

For the foregoing reasons, Judge Griffin respectfully requests that the Court remand this case to the North Carolina Supreme Court.

---

[2] The Board also maintains in its response to the Court's Show Cause order that removal is appropriate under the Equal Protection Clause. D.E. 39 at 17. But the Board does not cite that as a reason for refusing to act in its order. *See* D.E. 1-5 at 41-80. It therefore cannot rely on that provision to justify removal here. More to the point, all the Board's constitutional arguments are subject to *Pullman* abstention. *See supra* Section I.

[3] One of the Intervenors, in their response, asserts that sustaining Judge Griffin's claims would violate section 10101(a)(2) because providing a drivers license or Social Security number are immaterial requirements. D.E. 42 at 30. But requiring voters to submit information like this— designed to confirm a voter's identity and to ensure voter integrity—render these requirements material. *See Vote.Org v. Callanen*, 89 F.4th 459, 489 (5th Cir. 2023).

Dated: January 3, 2025

Respectfully Submitted,

*/s/ Mark M. Rothrock*
Mark Rothrock
56747 (NC)
LEHOTSKY KELLER COHN LLP
8513 Caldbeck Drive
Raleigh, NC 27615
(336) 416-3326
mark@lkcfirm.com

Craig D. Schauer
41571 (NC)
Dowling PLLC
3801 Lake Boone Trial, Suite 260
919 529-3351
cschauer@dowlingfirm.com

Troy D. Shelton
48070 (NC)
Dowling PLLC
3801 Lake Boone Trial, Suite 260
919 529-3351
tshelton@dowlingfirm.com

William T. Thompson*
24088531 (TX)
LEHOTSKY KELLER COHN LLP
408 W. 11st Street, 5th Floor
Austin, TX 78701
(512) 693-8350
will@lkcfirm.com

W. Michael Dowling
42790 (NC)
Dowling PLLC
3801 Lake Boone Trial, Suite 260
919 529-3351
mike@dowlingfirm.com

Philip R. Thomas
N.C. State Bar No. 53751
Chalmers, Adams, Backer & Kaufman,
PLLC
204 N Person St.
Raleigh, NC 27601
Telephone: (919) 670-5185
pthomas@chalmersadams.com

*Local Rule 83.1(d) special appearance
forthcoming*

*Attorneys for Petitioner*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(2)

I hereby certify that this Petitioner's Memorandum in Support of Motion to Remand is in compliance with Local Rule 7.2(f)(2), as the document contains no more than 30 pages.

/s/ *Mark M. Rothrock*
Mark M. Rothrock

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2025, I electronically filed the foregoing Petitioner's Memorandum in Support of Motion to Remand with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties.

/s/ *Mark M. Rothrock*
Mark M. Rothrock